United States District Court
District of Connecticut
FILED AT                    BRIDGEPORT
3 8 04                      20
Kevin F. Rowe, Clerk
By Tiffany R. Burnley
Deputy Clerk

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **DAVID E. CHARDAVOYNE,** | : | **3:03CV56 (WWE)** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THAMES WATER HOLDINGS** | : | |
| **INCORPORATED, THAMES WATER** | : | |
| **NORTH AMERICA INC** | : | **March 8, 2004** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

Plaintiff David E. Chardavoyne ("Plaintiff", "Chardavoyne") respectfully submits this

Memorandum in Opposition to the Motion of Defendants Thames Water Holdings Incorporated

("Thames Holdings") and Thames Water North America Inc. ("Thames North America") to

dismiss the Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the

alternative, for transfer of this action to the District of New Jersey pursuant to 28 U.S.C. §

1404(a), dated January 16, 2004 (hereinafter, the "Memorandum"). Defendants' motion is

wholly without merit and should be denied.


**PRELIMINARY STATEMENT**

Because Defendant Thames Holdings, and its subsidiary Thames North America, admit

that this Court has personal jurisdiction over them, venue is properly laid in this Court.

Notwithstanding their concession of jurisdiction, Defendants attempt to direct this Court's

attention away from its relationship with Connecticut by selectively pointing to business

operations elsewhere. That Defendants do business elsewhere is uncontroverted and, ultimately,

- 1 -

{00062997; 1; 1103-2}

irrelevant.    Notwithstanding those operations, Defendants cannot escape these basic jurisdictional facts: Defendants do business and make money in Connecticut, they employee people in Connecticut, and they have done so for several years.   Based on those facts, venue is properly laid here and the Court should deny Defendants' Motion to Dismiss or Transfer.

## STATEMENT OF FACTS

Plaintiff David E. Chardavoyne has served continuously as President and a director of Thames Holdings since February 15, 1999, pursuant to a written employment agreement with Thames Holdings (the "Agreement").   Plaintiff was also elected President and a director of Thames Water North America pursuant to the Agreement, and was paid his salary under the Agreement by Thames Water North America.   On or about May 29, 2002, purported representatives of Thames Water Americas, an allegedly related entity that does not appear to have any legal status (it does not seem to be incorporated or otherwise qualified to do business in any state), attempted to coerce Plaintiff's resignation.    Defendants later stopped paying Plaintiff's wages and benefits on June 6, 2003, cut off his employee benefits on May 29, 2003, and caused his medical benefits to expire without renewal on June 30, 2003.   Plaintiff brings this action to recover for unpaid wages and benefits wrongfully denied pursuant to Conn. Gen. Stat. § 31-72, and for a declaration (pursuant to 28 U.S.C. § 2201) that if Defendant Thames Water Holdings wishes to exercise the right of termination under the Agreement it may only do so by delivery of a properly authorized written notice of no less than twelve months.

Plaintiff was at all relevant times and continues to be a resident and domiciliary of the State of Connecticut.   Thames Holdings is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Pennsylvania.   First Chardavoyne

- 2 -

Affidavit at Exhibit 9. Thames North America is a Delaware corporation with its principal place

of business in New Jersey. Memorandum at 2. Thames Water North America is an operating

subsidiary of Thames Water Holdings and is registered to do business in Connecticut. *Id.* In

addition to Thames North America's continuing registration in Connecticut, Defendants have

transacted business in and purposely availed itself of Connecticut in the following manner:

a.     Defendants approached and substantially negotiated the Agreement to hire Plaintiff as their President in Connecticut.  Affidavit of David E. Chardavoyne, at ¶ 3, previously filed concurrently with Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, dated April 21, 2003, herein adopted by reference pursuant to Rule 10(c) Fed. R. Civ. P.

b.     Under the Agreement, Defendants assigned Plaintiff to work in Stamford, Connecticut, among other places, and Plaintiff performed a substantial portion of his work in Connecticut. *Id.* at ¶ 4.

c.     During the majority of Plaintiff's tenure, Defendant's principal place of business was Stamford, Connecticut, at 281 Tresser Boulevard (since 1999). *Id.* at ¶ 9.

d.     Defendants sent and received communications from the Stamford office, including without limitation telephone calls, facsimiles, and emails, and maintained public addresses, and telephone and fax numbers in Connecticut. *Id.* at ¶ 17.

e.     On Defendants' behalf, Plaintiff conducted substantial business activities in Connecticut, including the attempted acquisition of Aquarion Corp., then a publicly held corporation that owned and operated water utilities in Connecticut and maintained its principal office and operations in Bridgeport, Connecticut. Its principal operating utility was Bridgeport Hydraulic Company. *Id.* at ¶¶ 10-11.

f.     Plaintiff also attempted to acquire the water and wastewater businesses of Citizen Utilities Company of Connecticut for Defendants, a transaction also conducted substantially in Connecticut. *Id.* at ¶¶ 10, 12.

g.     Plaintiff supervised and coordinated from Connecticut the final contract negotiations for the acquisition of E'Town Corporation by Thames Holdings. *Id.* at ¶ 18.

- 3 -

{00062997; 1; 1103-2}

h.     Plaintiff conducted negotiations of terms and conditions for strategic alliances with Bechtel Corporation, Operations Management International, and Zachery Corporation at Defendants' Stamford offices on Defendants' behalf. *Id.* at ¶ 21.

i.     Plaintiff supervised at least seven other employees of Defendants in Connecticut. *Id.* at ¶ 15.

j.     Defendants conducted banking activities in Stamford, Connecticut. *Id.* at ¶ 16.

k.     Defendants conducted corporate governance activities in Stamford, Connecticut, including without limitation management and director meetings, and maintenance of their corporate books and records. *Id.* at ¶ 21.

l.     Defendants paid fees and taxes, including without limitation property, payroll, and sales taxes, in Connecticut. *Id.* at ¶ 28.

In addition, Defendants continue to date to transact business in and purposely avail itself of Connecticut in the following manner:

m.     Defendants are part of an extensive international corporate family, controlled now by the entity RWE. The RWE conglomerate is a publicly-held company organized and existing under the laws of the Federal Republic of Germany, with corporate headquarters in Essen, Germany. RWE runs many of its water-related businesses through Thames Water Plc. Defendants Thames Holdings and Thames North America are subsidiaries of Thames Water Plc. Supplemental Affidavit of David E. Chardavoyne, at ¶ 3 – 4, attached hereto as Exhibit B ("Second Chardavoyne Aff.").

     As part of this structure, Thames Holdings continues to do business through its subsidiary, E'Town Corporation, which acts through yet another subsidiary, Applied Water Management, that currently owns and operates facilities in Clinton and Westbrook, Connecticut. Ex. A, First Chardavoyne Aff. at ¶ 18; Second Chardavoyne Aff. at ¶ 5.

n.     Much of Defendants' Connecticut-related business, including that of Thames Holdings' products subsidiaries, is controlled by and integrated within the Thames Water Plc group of subsidiaries, as described above. In addition to that group, RWE conducts other water-related businesses in

- 4 -

Connecticut through at least one other subsidiary, American Water Services, which has recently entered into a contract to perform water treatment facility operation and maintenance for the city of Waterbury, Connecticut. American Water Services is a successor entity in interest to many of the Connecticut-related activities formerly conducted directly by Thames Holdings and Thames North America. Ex. B, Second Chardavoyne Aff. at ¶ 6.

o.    In connection with RWE's acquisition of American Water Works Company, the parent company of the above-mentioned American Water Services, Defendant Thames Holdings contracted with Ronald E. Walsh of Fairfield, Connecticut, to provide certain consulting services, including monitoring certain legal proceedings at the Connecticut Department of Public Utility Control. Walsh performed those services from 2001 through early 2003 (including the period within which the original Complaint in this action was filed), and maintained a home office in Fairfield, Connecticut, for related business purposes. He continues to receive his Federal Income Tax Form 1099 from Thames Holdings for his work during that period. Ex. B., Second Chardavoyne Aff. at ¶ 7.

p.    Plaintiff continues to work for Defendants from his Trumbull, Connecticut home office. *Id.* at ¶ 8.

q.    Thames Holdings continues to register a vehicle and pay property taxes in Connecticut. *Id.* at ¶ 9.

{00062997; 1; 1103-2}

**ARGUMENT**

## I.    THIS DISTRICT IS THE PROPER VENUE FOR THIS ACTION BECAUSE OF DEFENDANTS' EXTENSIVE AND ONGOING CONTACTS WITH THE STATE

Plaintiff properly laid venue in this District pursuant to 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

It is Plaintiff's burden to establish that venue is proper in this District. *Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F.Supp.2d 222, 237 (D. Conn. 2001) (internal citations omitted) (holding that venue was properly laid in Connecticut as opposed to New Jersey). Much like the Plaintiff's burden to make a *prima facie* showing of personal jurisdiction,[1] Plaintiff must only make a facial showing to establish venue; "[t]he court must take all allegations in the complaint as true [and] . . . [t]he court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.* (internal citations omitted).[2] *Accord Roncaioli v. Investec Ernst & Co.,* No. Civ. 3:02CV2113 (SRU), 2003 WL 22244936, at * 1 (D. Conn. Sept. 26,

---

[1] *See* this Court's decision in *Federowicz v. Zenith Labs., Inc.,* Civ. No. B-90-588 (WWE), 1991 WL 218565, at * 1 (D. Conn. Jul. 15, 1991).

[2] The Court in *Indymac* also indicated that if Plaintiff's allegations are "contradicted by the defendants' affidavits" the court may examine facts outside the complaint to determine whether venue is proper. *Indymac,* 167 F.Supp. 2d at 237.

- 6 -

2003). To properly satisfy that burden, Plaintiff adopts and reaffirms its previously submitted affidavit attesting to jurisdictional facts, and has submitted a supplemental affidavit herewith.

Further, although Defendants seek to lay venue in New Jersey, venue may properly exist in more than one district. *Id.* *See also Divicino v. Polaris Indus.,* 129 F.Supp.2d 425, 435 (D. Conn. 2001) (internal citations omitted) (finding venue in Connecticut because "[t]he fact that venue may be proper in another district does not make venue in the District of Connecticut improper because venue may be properly be laid in more than one district"). In assessing between districts, the Court does not have to find that Connecticut is the *best* venue, but merely an appropriate one. *Nat'l Council on Compensation Ins., Inc. v. Caro & Graifman, P.C.*, 259 F.Supp.2d 172, 177 (D. Conn. 2003) (internal citation omitted) (holding that as to venue, "plaintiff has no obligation to file in the most convenient forum, only in a proper forum"). Under 28 U.S.C. § 1391(a)(2), Plaintiff is not required to establish that his chosen venue "has the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *Indymac,* 167 F.Supp.2d at 237 (internal citations omitted). *Accord Nat'l Council,* 259 F.Supp.2d at 177; *Becker v. DPC Acquisition Corp.,* No. 00 CIV 1035 WK, 2001 WL 246385, at * 2 (S.D.N.Y. Mar. 13, 2001). In this case, venue is properly laid in Connecticut pursuant 28 U.S.C. §§ 1391 (a)(1) (where all defendants reside) or 1391(a)(2) (where a substantial part of the events occurred).[3]

### A.    28 U.S.C. 1391(a)(1):  Venue is Conclusively Proper in this District Because Defendants Have Conceded Personal Jurisdiction

---

[3] 28 U.S.C. § 1391(a)(3) (where any defendant resides) is irrelevant here because it is applicable only if 28 U.S.C. §§ 1391(a)(1) or 1391(a)(2) do not apply, which is not the case here.

Defendants curiously lodge over ten (10) pages of arguments contesting personal jurisdiction in their Memorandum of Law in Support of their Motion to Dismiss or Transfer, though they have conceded it. *See* Memorandum at 5-15. Personal jurisdiction has been established because Fed. R. Civ. P. 12(g) directs that

> If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted.

Fed. R. Civ. P. 12(g). Rule 12(g) is entitled "Consolidation of Defenses in Motion," and directs that all Rule 12 objections be made in a single motion (except for certain exceptions inapplicable here). Rule 12(h) confirms that a failure to assert "[a] defense of lack of jurisdiction over the person . . . *is waived* . . . if omitted from a motion in the circumstances described in subdivision (g)." (emphasis added).

Defendants move here to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). In the alternative, Defendants seek transfer pursuant to 28 U.S.C. § 1404(a). Nowhere in this Rule 12 motion do Defendants assert that they move to dismiss pursuant to 12(b)(2), "lack of jurisdiction over the person." Fed. R. Civ. P. 12(b)(2). This cannot be the product of mistake or inadvertence. Defendants twice state the grounds for this motion; they first indicate in their Motion to Dismiss that they move "pursuant to Fed. R. Civ. P. 12(b)(3), for improper venue," and they repeat in their Memorandum that they move "pursuant to Federal Rule of Civil Procedure 12(b)(3), because venue is improper in this district." Motion to Dismiss at 1; Memorandum at 1. Moreover, Defendants previously filed a Motion to Dismiss Plaintiff's Complaint *for Lack of Personal Jurisdiction* and Improper Venue, dated March 28, 2003, which

- 8 -

Defendants acknowledge was denied without prejudice as moot in light of Plaintiff's filing of the Amended Complaint. Motion to Dismiss at 1. Defendants have affirmatively chosen not to renew their previously-asserted objection to personal jurisdiction, so it is conclusively waived.

Because Defendants have waived and thereby conceded personal jurisdiction, not only are their protests to jurisdiction here irrelevant, but they have thereby also conceded venue in Connecticut. This Court has held that if jurisdiction is proper over a foreign corporation, venue is automatically proper as well. The Court recently explained:

> 28 U.S.C. § 1391(c) states that, for venue purposes, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced . . . . *Essentially section 1391(c) equates jurisdiction with venue for corporate defendants.* Therefore, if the Court concludes that both defendants are subject to jurisdiction in this district, then they both reside here . . . and, therefore, venue is proper here [under 28 U.S.C. § 1391(a)(1)].

*Divicino,* 129 F.Supp.2d at 435 (internal citations and quotations omitted) (emphasis added). In *Divicino,* the defendant seller of all-terrain vehicles was based in Vermont. The defendant did not maintain an office in Connecticut, was not licensed to do business here, did not own any property, did not pay any taxes in Connecticut, and did not have Connecticut-based employees or agents or marketing staff; it did not have a Connecticut phone number, or bank accounts, or any dealings with any Connecticut businesses. The defendant did sell products to Connecticut residents, which was the source of the plaintiff's injury. The Court found personal jurisdiction over the Defendant, and although it acknowledged the possibility that venue might lay in Vermont under 28 U.S.C. 1391(a)(1), the Court held that it "need not address whether venue may properly be laid in another district." *Id.*

{00062997; 1; 1103-2}

This Court also found the same kind of "procedural waiver" in *Indymac*. In that case, the Court found that the defendant "waived any personal jurisdiction defense by filing her motion to dismiss based on improper venue" without also asserting an objection to personal jurisdiction. *Indymac*, 167 F.Supp.2d at 234. The Court admitted that it was granting the defendant "significant latitude" in that case because she was proceeding *pro se*. *Id.* at 231. Notwithstanding her defense *pro se*, the Court took very seriously the command of Fed. R. Civ. P. 12(g) to consolidate all Rule 12 motions into one motion, and denied her motion to dismiss for improper venue.

The result should be the same in this case. Under 28 U.S.C. § 1391(a)(1), Connecticut is the proper venue if *both* Defendants reside here. Although Defendants now protest that they do not reside in Connecticut, and that this Court does not have personal jurisdiction over them, they waived their objection to personal jurisdiction by affirmatively choosing to forgo a Fed. R. Civ. P. 12(b)(2) motion to dismiss on that ground, now waived by Fed. R. Civ. P. 12(g). They have conceded jurisdiction over *both* Defendants. Under 28 U.S.C. 1391(c), therefore, they also concede that *both* Defendants reside here for venue purposes. *Id.* This Court did not spare the defendants in *Divicino* nor *Indymac* from a finding of jurisdictional waiver and venue, and should similarly grant Defendants here no quarter; this Court should hold that by acquiring personal jurisdiction over both Defendants, the Court also properly acquired venue over this action.

**B.**    **28 U.S.C. § 1391(a)(2):    Venue is Also Proper in this District Because a Substantial Part of the Events or Omissions Giving Rise to Plaintiff's Claims Occurred Here**

{00062997; 1; 1103-2}

The result is no different under 28 U.S.C. § 1391(a)(2). A substantial part of the events or omissions giving rise to this action occurred in Connecticut. In the context of breach of contract suits such as this, this Court has based its determination of whether a substantial part of the events occurred here by considering the following factors:

> (1) where the contract was negotiated or executed; (2) where it was to be performed; (3) where the alleged breach occurred; and (4) where the alleged harm occurred.

*Indymac,* 167 F.Supp.2d at 237; *Becker,* 2001 WL 246385, at * 2-3. *Accord,* Memorandum at 13. Just like Defendants here, a defendant in *Indymac* moved to dismiss for improper venue and sought to transfer the case to New Jersey. She claimed to live in New Jersey, and that she was not an owner, officer or guarantor of the Connecticut entity at the time the complaint was filed. Notwithstanding those allegations, the Court focused on her guaranty of loans that "was to be performed *at least partially* in Connecticut." *Indymac,* 167 F.Supp.2d at 238. The Court also acknowledged that the breach giving rise to the litigation also occurred in Connecticut, and that because the loans at issue in the case were originated in Connecticut, "much of the alleged harm occurred here as well." *Id.* The Court acknowledged that "venue may also lie in New Jersey and perhaps even California," but that venue could lie in more than one district. The court found that a substantial part of the events occurred in Connecticut under 28 U.S.C. § 1391(a)(2).

The U.S. District Court for the Southern District of New York came to the same result in *Becker.* 2001 WL 246385, at * 3. In that case, the Plaintiff asserted claims for breach of his employment contract, just like Plaintiff here. But unlike Plaintiff in this case, the *Becker* plaintiff did not even live in the district, and actually worked out of offices outside of the district. This did not dissuade the Court from finding proper venue in the Southern District. The Court

- 11 -

focused on the fact that the plaintiff's duties were to be performed "primarily in this District," though not completely. *Id.* at * 3. The Court was also convinced by the plaintiff's allegations of "a litany of transactions and meetings and engaged in during his tenure" in the district. In much the same way as this Court found in *Indymac*, the *Becker* plaintiff's contacts with the district were not perfect or exclusive, for this is not what the law demands, but only that a substantial part of the events occurred there.

As this Court recently observed, "[t]he 'substantial part' standard set forth in section 1391(a)(2) is *liberal*." *Roncaioli*, 2003 WL 22244936, at * 3 (internal citations omitted) (emphasis added). Even if the standard were more restrictive, there is no doubt that Connecticut played host to a substantial part of the facts at issue here. With regard to each of the four factors outlined in *Indymac*, each factor weighs in favor of venue in Connecticut:

### 1.   Negotiation

The employment agreement between the parties was substantially negotiated in Connecticut. Although Plaintiff executed the contract while in Texas, he was a resident and domiciliary of this state and was approached about the position in Connecticut. All of the terms of the agreement were negotiated substantially in Connecticut, and Connecticut counsel represented him. *See* Statement of Facts, ¶ (a), *supra*.

### 2.   Performance

The Agreement directed Plaintiff to work in Stamford, Connecticut, among other places, as Defendants concede. Memorandum at 8. Plaintiff worked out of Defendants' office at 281 Tresser Boulevard, in Stamford, Connecticut, and from that office served as Defendants' President. Plaintiff ran the office, employed staff therein, and for over three years conducted in

- 12 -

Connecticut a litany of business meetings and negotiations, sent and received business correspondence and communications, interacted with customers and other branches of the Company, solicited potential clients and business opportunities, led the company's several acquisitions and strategic alliances, paid property, payroll, and sales taxes, and generally ran its business in Stamford. Defendants prefer to cite to the 27 days in 2002 that Plaintiff worked in New Jersey, but those days are hardly worth comparing to Plaintiff's long service to Defendants in Connecticut. Importantly, because Plaintiff was never terminated pursuant to the Agreement, he continues to work for Defendants from his Trumbull, Connecticut office. *See* Statement of Facts, ¶¶ (b) through (l), *supra*. As noted above, the Court in both *Indymac* and *Becker* did not require that the contacts with the venue be perfect or exclusive, but substantial.

### 3.    **Breach**

Defendants' breach of the Agreement continues to occur in Connecticut. Defendants fail to acknowledge that 28 U.S.C. § 1391(a)(2) will lay venue where "omissions" occur that give rise to the cause of action. Each day that Defendants omit to pay Plaintiff, and omit to deliver his employee benefits and medical insurance coverage that are rightfully due, they omit to perform those duties to him in Connecticut, where he resides. Although Defendants would have the Court believe that the "entire dispute concerns the notice of termination and whether it was effective," this is a gross mischaracterization of Plaintiff's cause of action. Memorandum at 14. This was but one event, and though the May 29, 2002, meeting may have been held in New Jersey, during which purported representatives of Thames Water Americas (an entity with no legal status) attempted to coerce Plaintiff's resignation, that event is effectively irrelevant to the question of where the breach occurred because the Agreement was not, pursuant to its own

- 13 -

terms, terminated at that time. Defendants did not, in fact, breach the Agreement until it failed to compensate Plaintiff according to the terms of the still active Agreement, and they failed to do so in Connecticut.

### 4.    Harm

Each day that Defendants fail to pay Plaintiff, and fail to deliver employee benefits and medical insurance coverage, they injure Plaintiff in Connecticut, where he resides. Other injuries, including without limitation injuries to Plaintiff's personal and professional reputation, are also suffered by Plaintiff in Connecticut.

Based on the four factors detailed above, Plaintiff carried its burden to establish venue in Connecticut, where a substantial part of the events or omissions that give rise to this litigation occurred.

## II.    DEFENDANTS HAVE CONCEDED PERSONAL JURSIDCTION, BUT THE COURT HAS JURISDICTION OVER DEFENDANTS IN ANY EVENT

As shown above, an exposition on personal jurisdiction is not relevant to this 12(b)(3) motion to dismiss for improper venue (or to transfer), and is no longer relevant in this case because Defendants have conceded personal jurisdiction by procedural waiver. *See* discussion, Section I(A), *supra.*[4]  Notwithstanding its irrelevance, Defendants engage in a lengthy discussion about personal jurisdiction, which is largely inaccurate, to which Plaintiff is compelled to respond.

---

[4] The fact that this Court has personal jurisdiction over defendants is relevant, however, to the 28 U.S. 1391(a)(2) inquiry, to establish that both Defendants reside in Connecticut and that venue is properly laid herein.

{00062997; 1; 1103-2}

In diversity cases, personal jurisdiction "is determined by the law of the forum in which the Court sits," in this case, Connecticut. *Federowicz v. Zenith Labs., Inc.,* Civ. No. B-90-588 (WWE), 1991 WL 218565, at * 1 (D. Conn. Jul. 15, 1991). Connecticut employs a two-step analysis to determine if a court has personal jurisdiction over a non-resident defendant: (1) the court must determine "whether the appropriate state [long-arm] statute reaches the foreign corporation," and (2) the court must decide whether the exercise of jurisdiction "exceeds the constitutional minimum contacts test required by due process." *Id. Accord Sherman Assocs. v. Kals,* 899 F. Supp. 868, 870 (D. Conn. 1995). Although the plaintiff has the burden of establishing jurisdiction, the plaintiff need only make a *prima facie* showing that jurisdiction exists upon a motion to dismiss; all pleadings and affidavits must be construed in a light most favorable to the plaintiff and all doubts are resolved in the plaintiff's favor. *Federowicz,* 1991 WL 218565, at * 1; *Sherman,* 899 F. Supp. at 870. Plaintiff carries that burden here.

**A.    Connecticut's Long-Arm Statute Reaches Defendants in this Action**

This Court has personal jurisdiction over Defendant Thames North America because it is registered to do business in Connecticut, which Defendants do not appear to dispute. Memorandum at 2. Defendants' discussion on personal jurisdiction, however, appears to focus solely on Thames Holdings, a Delaware Corporation with its principal place of business in Pennsylvania.

{00062997; 1; 1103-2}

1.    **Thames Holdings is Subject to this Court's Jurisdiction Under Conn.**
      **Gen. Stat. § 33-929(e)**

This Court has personal jurisdiction over Thames Holdings because it is a foreign

corporation subject to Connecticut's "long-arm" statute applicable to foreign corporations, Conn.

Gen. Stat. 33-929.[5]    As Defendants acknowledge, a foreign corporation not licensed to do

business in the State of Connecticut[6] will be subject to its jurisdiction if it "transacted business"

within the state and the plaintiff's cause of action "aris[es] out of" the transaction of such

business. Memorandum at 5. Conn. Gen. Stat. § 33-929(e) provides: "Every foreign corporation

which transacts business in this state [without being authorized to do so], shall be subject to suit

in this state upon any cause of action arising out of such business." The Supreme Court of

Connecticut has construed the concept of transacting business "to embrace a single purposeful

business transaction." *Zartolas v. Nisenfeld,* 181 Conn. 471, 474 (1981) (applying long/arm

statute applicable to individuals and foreign partnerships), *cited in Hill v. W.R. Grace & Co.,* 42

Conn.Supp. 25, 29 (1991) (borrowing standard from long-arm statute covering individuals and

foreign partnerships and applying it to foreign corporations context).    *See also Perkins v.*

*Benguet Consol. Min. Co.,* 342 U.S. 437, 445-46 (1952) (personal jurisdiction appropriate where

general manager/president of company moved the office to the forum state during war,

---

[5]  A foreign corporation is one that is incorporated under a law other than the laws of
Connecticut.    Conn. Gen. Stat. § 33-602(13).    Because the defendant is incorporated in
Delaware, it is considered a foreign corporation.

[6]  Thames Holdings is not authorized to do business in Connecticut because it does not hold a
valid certificate of authority as required by Conn. Gen. Stat. § 33-920. Defendants do not
dispute this fact.

- 16 -

maintained records, paid salaries, purchased equipment, held directors' meetings, and generally carried on continuous and systematic supervision of company).

Defendants' assertion that Thames Holdings does not do business in Connecticut is disingenuous. As noted above in the Statement of Facts, ¶¶ (a) through (q), Thames Holdings has transacted and continues to transact a host of business activities in Connecticut, and the examples thereof have been well documented by Plaintiff. Defendants appear to concede, in fact, that Thames Holdings did do business in Connecticut prior to January 2002. Memorandum at 6-7. Defendants claim, however, that Thames Holdings no longer does business in this state.

This is patently untrue. Thames Holdings continues to conduct business in Connecticut through its subsidiary, E'Town Corporation, which currently owns and operates facilities in Clinton and Westbrook, Connecticut, through its Applied Water Management subsidiary. *See* Statement of Facts, ¶ (m), *supra*. The successor in interest to Defendants Thames Holdings and Thames North America, American Water Services, recently entered into a contract to provide water treatment facility operation and maintenance services for the city of Waterbury, Connecticut. *See* Statement of Facts, ¶ (n), *supra*. Thames Holdings also hired Ronald E. Walsh as a consultant to provide services in connection with the acquisition of American Water Works Company by a subsidiary of RWE, including monitoring certain legal proceedings at the Connecticut Department of Public Utility Control. Walsh performed those services from 2001 through early 2003, including the period within which the original Complaint in this action was filed. Walsh conducted his activities through his home office in Fairfield, Connecticut, which he maintained for related business purposes, and received his Federal Income Tax Form 1099 directly from Thames Holdings for work performed in 2003. *See* Statement of Facts, ¶ (o),

- 17 -

*supra.* Thames Holdings continues to register a vehicle and pay property taxes in Connecticut. *See* Statement of Facts, ¶ (p), *supra.* Finally, because Plaintiff has never been terminated pursuant to the Agreement, he continues to be employed by Thames Holdings, and maintains a home office for that purpose in Trumbull, Connecticut. *See* Statement of Facts, ¶ (q), *supra.*

Defendants also attempt to argue that Plaintiff's cause of action does not arise out of its transaction of business, as required by Conn. Gen. Stat. § 33-929(e).  Connecticut courts have focused on "considerations of public policy, common sense, and the chronology and geography of the relevant facts" to determine whether a plaintiff's cause of action "arose" from the transaction of business. *Hill*, 42 Conn.Supp. at 32 (applying predecessor statute to Conn. Gen. Stat. § 33-929). *See also Zartolas v. Nisenfeld*, 184 Conn. 471, 477 (1981).  Connecticut courts "do not resort to a rigid formula." *Hill*, 42 Conn.Supp. at 32; *Zartolas*, 184 Conn. at 477.  As this Court held in *Adams v. Guthy Renker Corp.*, 106 F.Supp.2d 400, 404 (D. Conn. 2000) (applying Conn. Gen. Stat. § 33-929(f)(4)) (*citing Thomason v. Chemical Bank*, 234 Conn. 281, 291(1995)). "[s]ection 33-929 does not require a causal connection between the defendant's forum directed activities and the plaintiff's lawsuit, nor is the test one of 'but for' or 'proximate causation.'  Rather, the court looks at the "totality of the defendant's conduct and connection with this state." *Thomason*, 234 Conn. 281 at 291 (internal citations omitted).

In this case, the hiring of Plaintiff as its corporate President was undoubtedly a major business transaction for Defendants that took place in Connecticut.  Thames Holdings approached Plaintiff in Connecticut, negotiated with his legal representative in Connecticut, and although the Agreement was not executed here, he performed substantially all of his duties thereunder for three years from Thames Holdings' office in Stamford, Connecticut.  *See*

- 18 -

Statement of Facts, ¶¶ (a) – (l), *supra*. In connection with the employment transaction, Plaintiff ran Thames Holdings' extensive business operations, as detailed above. This is an action for breach of the Agreement, and for compensation and benefits due to Plaintiff for his activities on Thames Holdings' behalf in Connecticut, by whom he continues to be employed. It cannot seriously be contended that this case does not arise out of such transactions of business.

**2.    Thames Holdings is Subject to this Court's Jurisdiction Under Conn. Gen. Stat. § 33-929(f)(1)**

The long-arm statute also permits a court to assert jurisdiction over an unauthorized foreign corporation for claims arising out of a contract that was "made" or "to be performed" in Connecticut. Conn. Gen. Stat. § 33-929(f)(1) provides in pertinent part:

> Every foreign corporation shall be subject to suit in this state by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state . . . on any cause of action arising . . . (1) out of any contract made in this state or to be performed in this state.

To assert jurisdiction under this section, "the plaintiff must initially establish *prima facie* that (1) a contract existed and (2) the contract was to be performed in Connecticut within the meaning of General Statutes [§33-929(f)(1)]. *Advanced Claims Servs. v. Franco Enter.*, No. CV000374548S, 2000 WL 1683416, at *4 (Conn. Super. Ct. Oct. 13, 2000) (internal citations omitted) (ellipsis original). *See also Salisbury Group, Inc. v. Alban Inst., Inc.*, No. CV 960070036, 1996 WL 397692, at *3 (Conn. Super. Ct. July 3, 1996). The long-arm statute does *not* require that performance in Connecticut be by the party over whom jurisdiction is sought. *Advanced Claims*, 2000 WL 1683416 at *4; *Salisbury Group*, 1996 WL 397692, at *3. Finally,

- 19 -

a contract which contemplates substantial performance in Connecticut is sufficient to satisfy the long-arm statutory requirements. *Advanced Claims,* 2000 WL 1683416, at *4 (Conn. Super. Ct. Oct. 13, 2000) (finding jurisdiction under Conn. Gen. Stat. § 33-929(f)(1) where contract "contemplated substantial performance" by plaintiff in Connecticut); *Salisbury Group,* 1996 WL 397692, at *3 (plaintiff performed "bulk" of the contracted for services from Connecticut, subjecting defendant to personal jurisdiction even though it never actually entered Connecticut).

This Court has recently applied this section and found jurisdiction in cases just like this. In *Federowicz,* for example, the plaintiff was hired by a New Jersey corporation to act as its Vice President with responsibility for all accounts in Connecticut, including large accounts resulting in over one million dollars in revenue. *Federowicz,* 1991 WL 218565, at * 1. In his suit for age discrimination, this Court found that the plaintiff had made the requisite *prima facie* showing on those facts alone. Similarly, in *Haas v. Small,* the Court had "no difficulty" in finding personal jurisdiction where defendant "came into Connecticut to hire him and to negotiate the terms of the contract." Civ. No. H-89-194 (JAC), 1990 WL 129202, at *2 (D. Conn. 1990) (applying long-arm statute applicable to individuals and foreign partnerships).

This case is no different. Thames Holdings came into Connecticut to offer Plaintiff the position as its President, and negotiated the terms in Connecticut. *See* Statement of Facts, ¶ (a), *supra.* Thames Holdings does not appear to dispute the existence of the contract, nor the circumstances of its negotiation. As discussed in Section II(A)(1), above, it cannot seriously be contended that Plaintiff's claims do not arise out of that Agreement; in fact, they arise from no other place. Defendants' argument that the contract was not to be performed in Connecticut because it was also to be performed elsewhere is nonsense. Plaintiff could logically perform a

- 20 -

substantial part of his duties under the Agreement, which he did, while also performing additional duties wherever Thames Holdings so directed.   Connecticut law only requires that a substantial portion of his duties under the contract be performed in Connecticut for the proper exercise of jurisdiction, which is the case here.

**B.**    **The Court's Exercise of Personal Jurisdiction Over Thames Holdings Comports with Due Process**

Having established that Thames Holdings' business transactions are sufficient to bring it within Connecticut's long-arm statute, the court must decide whether these contacts meet constitutional due process requirements.   The due process requirement for personal jurisdiction has two components: the minimum contacts inquiry and the reasonableness inquiry.   *Divicino*, 129 F.Supp.2d at 432, 434; *Federowicz*, 1991 WL 218565, at * 2.

**1.**    **Thames Holdings has the Requisite Minimum Contacts with Connecticut**

Due process requires first that the defendant have established "minimum contacts in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).   The test is whether the defendant purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.   *Id.* at 475.   In short, the inquiry turns on whether "the defendant could reasonably have anticipated being haled into court here." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

This case is not unlike the several other cases in which this Court and other Connecticut Courts have found personal jurisdiction.   *See Federowicz*, 1991 WL 218565 at *2 (soliciting bids, maintaining sales personnel and doing over $1 million in business here meet due process requirements); *Clemco Corp. v. Frantz Mfg. Co.*, 609 F.Supp. 56, 58 (D.Conn. 1985) (sufficient

- 21 -

contacts found where defendant made sales, advertised, sponsored events, had telephone number and address, shipped products and serviced customers in Connecticut); *Haas*, 1990 WL 129202, at *2 (finding that defendant purposely availed himself of Connecticut by coming in to hire plaintiff); *Salisbury Group*, 1996 WL 397692, at * 5 (agreement prominently displayed plaintiff's Connecticut address; fact that defendant initiated contact with plaintiff in Connecticut and paid his fees demonstrated minimum contacts). *Cf. F & F Screw Prods., Inc. v. Clark Screw Machine Prods. Co.*, No. CV000500360S, 2002 WL 31894843, at *8 (Conn. Super. Ct. Dec. 10, 2002) (defendant could not reasonably expect to be sued in Connecticut where it *never* had an office, employees, sales representatives or territory, never owned any real property, hold a bank account or have any warehouse, equipment or telephone number in the state).

Thames Holdings came into this State to hire Plaintiff to be its President, and through Plaintiff conducted extensive business activities for several years. *See* Statement of Facts, ¶ (a), *supra.* It now conducts business through its American Water Services successor in interest and its E'Town/Applied Water Management subsidiaries, and contracted with Ronald E. Walsh through early 2003 to provide consulting services in connection with the acquisition of American Water Works Company by a subsidiary of RWE, including monitoring certain legal proceedings at the Connecticut Department of Public Utility Control using his home office in Fairfield, Connecticut. Walsh continues to receive his Federal Income Tax Form 1099 from Thames Holdings. *Id.* at ¶¶ (m) through (o). Thames Holdings continues to employ Plaintiff at his home office in Trumbull, Connecticut, has never terminated that employment, and continues to register his company car and pay property taxes here. *Id.* at ¶¶ (p) though (q). Thames Holdings contacts with Connecticut far exceed the minimum necessary under principles of due process.

- 22 -

2.    **It is Constitutionally Reasonable for this Court to Assert Jurisdiction Over Thames Holdings**

As to the second prong of the due process inquiry, the "reasonableness" prong, this Court's assertion of jurisdiction must also comport with "fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945). The Court must evaluate the burden on Thames Holdings, the interests of Connecticut, the Plaintiff's interest in obtaining relief, the interstate judicial systems' interest, and the shared interest of the several states. *H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.,* 296 F.Supp.2d 234, 240 (D. Conn. 2003). *Accord Divicino,* 129 F.Supp.2d at 434; *Federowicz,* 1991 WL 218565, at * 2. This Court conducted this very inquiry in *Indymac,* and concluded that because New Jersey is "only 19 miles from the Connecticut border," the burden on the defendant was slight. *Indymac,* 167 F.Supp.2d at 236. The Court came to the same conclusion with regard to Vermont in *Divicino. Divicino,* 129 F.Supp.2d at 435. In both cases, Connecticut had a substantial interest because transactions were conducted in, and had an effect in, Connecticut. *Divicino* featured a Connecticut Plaintiff, who had an "interest in obtaining convenient and effective relief in this state." *Id.*

In this case, New Jersey remains but 19 miles from Connecticut. The burden on Thames Holdings, a corporation, in litigating in Connecticut, is slight. Connecticut served as the locus of the negotiation and execution of Plaintiff's contract, and the extensive business transactions that resulted from Plaintiff's efforts thereunder. Like *Divicino,* Plaintiff also has an interest in convenient and effective relief, and this Court is most able to provide it. The burden on Plaintiff, an individual who is no longer being compensated by defendants, to travel and litigate in New Jersey, is significant, and far outweighs any burden on Thames Holdings. The exercise of

- 23 -

personal jurisdiction over Thames Holdings demonstrably comports with traditional notions of fair play and substantial justice.

## III.    TRANSFER IS NOT WARRANTED UNDER 28 U.S.C. § 1404(a)

Because venue is properly laid in this District, transfer is not warranted pursuant to 28 U.S.C. § 1404(a). The statute provides:

> (a) For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C § 1404(a). This Court has observed that section 1404(a) serves to "prevent waste of time, energy and money and to protect litigants, witnesses and to protect the public against unnecessary inconvenience and expense." *Indymac,* 167 F.Supp.2d at 239. In order to transfer a matter under section 1404(a):

> The burden is on the moving party to clearly establish that a transfer is appropriate, by providing an affidavit containing detailed factual statements explaining why the transferee forum is more convenient, including the potential principal witnesses expected to be called and a general statement of the substance of their testimony.

*Id.* (internal citations omitted). In this case, Defendants have referred to previously filed affidavits[7] in support of their previous Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, dated March 28, 2003, but they have not filed any affidavit containing the detailed factual statements demanded by this Court in *Indymac,* nor have they included any list

---

[7] Defendants' factual allegations in their motion to dismiss are based upon the Affidavit of Ari D. Levine, dated March 10, 2003, the Affidavit of A. Matthew Huckin, dated March 10, 2004, and the Affidavit of Ari D. Levine, dated May 5, 2003. Motion to Dismiss at 1-2, which have been shown to be inaccurate in many respects.

of potential witnesses or a general statement of the substance of their testimony. Defendants'

motion to transfer should be denied for this procedural default alone.

Even if this Court overlooks Defendants' failure to provide an affidavit in support of

transfer,[8] the Court must engage a two-pronged analysis: first, whether the action could have

been brought in the proposed transferee court, and second, whether, "considering the

convenience of the parties and witnesses and the interest of justice, a transfer is appropriate." *Id.*

Even if the Court assumes, *arguendo*, that this action could have been brought in a New Jersey

federal court, transfer is not appropriate under the second prong. In assessing the second prong,

the Court considers the following factors:

> (1) convenience of the parties; (2) convenience of the
> witnesses; (3) relative means of the parties; (4) locus of
> operative facts and relative ease to sources of proof; (5)
> availability of process to compel attendance of witnesses to
> testify at trial; (6) the weight afforded the plaintiff's choice
> of forum; (7) calendar congestion; (8) the desirability of
> having the case tried by the forum familiar with the
> substantive law to be applied; (9) practical difficulties; and
> (10) . . . the interests of justice, based on an assessment of
> the totality of the material circumstances.

*Id.* 239-240.

Defendants concede that Plaintiff's choice of forum is to be accorded considerable

weight, which can only be overcome by "clear and convincing evidence that private and public

interest factors favor trial in the alternative forum." Memorandum at 15; *Payne v. Taylor Vision

Resources,* No. Civ. 3:02CV2234 (AWT), 2003 WL 22218142, at *2 (D. Conn. Sept. 23, 2003)

In fact, this Court has recently directed that "[u]nless compelling circumstances warrant

---

[8] Defendants represent on page 4 of the Memorandum that another affidavit from James
McGivern is forthcoming; Plaintiff has not received any such affidavit yet, nor has any such
affidavit been filed with the Court.

otherwise, plaintiff's choice of forum should control." *H. Lewis Packaging,* 296 F.Supp.2d 234, 241(2003) (denying motion to transfer). *See also Indymac,* 167 F.Supp.2d at 240 (giving "substantial weight" to plaintiff's choice of Connecticut as forum). Furthermore, this Court has recently described Defendants' burden to establish the need for transfer as a "heavy" one. *Payne,* 2003 WL 22218142, at *2

Based on the factors enumerated above, transfer is plainly inappropriate. Among the factors that weigh most heavily toward Connecticut, Plaintiff has no contacts with New Jersey, but Defendants continue to have contacts with Connecticut, as detailed above (*see* Statement of Facts, ¶¶ (m) through (q), *supra*); the convenience of the parties and witnesses slightly favors Connecticut under factors (1) and (2). More importantly, factor (3) militates strongly in favor of Connecticut because Plaintiff is an individual who is no longer being paid, and has significantly more limited means than the corporate Defendants to travel and litigate elsewhere. Factor (6) favors Connecticut as Plaintiff's chosen forum. Factor (8) particularly favors Connecticut because Connecticut law is at issue here, specifically with regard to Plaintiff's right to damages for lost wages under Conn. Gen. Stat. § 31-72. Finally, factor (10) favors Connecticut because Plaintiff is the victim of attempts by individuals purportedly representing Defendants to wrongfully coerce his resignation, and Defendants have failed to compensate him and provide benefits under the Agreement. Plaintiff should be given the opportunity to seek redress in the federal courts of his home state, which have a facility with Connecticut law that serves as the bases for his causes of action, and have an interest in providing its citizens with a convenient and effective forum.

{00062997; 1; 1103-2}

Defendants fall far short of showing anything approaching clear and convincing evidence that this case should be transferred. Defendants claim that witnesses and documentary evidence are located in New Jersey; the same is true of Connecticut. Both parties have witnesses and evidence in their respective districts. The operative facts, furthermore, took place both in New Jersey and Connecticut. None of the reasons cited by Defendants strongly favors the choice of New Jersey, and are, at best, inconclusive and favor both parties. Indeed, "[i]t is not apparent, under the circumstances, that a change of venue will do more than shift the inconvenience from defendant to plaintiff." *H. Lewis Packaging*, 296 F.Supp.2d at 241. Defendants cannot muster the necessary clear and convincing evidence for this Court to jettison this action to New Jersey, and this Court should deny their motion to transfer accordingly.

- 27 -

**CONCLUSION**

For the foregoing reasons, Plaintiff David E. Chardavoyne respectfully requests that this Court deny Defendants' motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and also deny Defendants' motion in the alternative, for transfer of this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a), together with such other and further relief that the Court deems just and proper.

PLAINTIFF
DAVID E. CHARDAVOYNE

James R. Hawkins II (CT 00128)
Finn Dixon & Herling LLP
One Landmark Square
Suite 1400
Stamford, CT 06901-2689
Telephone: (203) 325-5000
Facsimile: (203) 348-5777
E-mail: jhawkins@fdh.com

- 28 -

## CERTIFICATION

I hereby certify that a true and correct copy of the foregoing was mailed, United

States mail, first class, postage prepaid to the following this 8th day of March, 2004:

        Jonathan B. Orleans, Esq.
        Zeldes, Needle & Cooper, P.C.
        1000 Lafayette Boulevard
        Suite 500
        Bridgeport, CT  06604

        James R. Hawkins II

{00062997; 1; 1103-2}