UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE, | : | 3:03CV56 (WWE) |
| | : | |
| v. | : | |
| | : | |
| THAMES WATER HOLDINGS INCORPORATED, THAMES WATER NORTH AMERICA INC. | : | April 13, 2004 |

**PLAINTIFF'S SURREPLY TO DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR TRANSFER**

Plaintiff David E. Chardavoyne (the "Plaintiff," "Chardavoyne") respectfully submits this surreply in opposition to the motion of Defendants Thames Water Holdings Incorporated ("Thames Holdings") and Thames Water North America Inc. ("Thames North America") to dismiss the Amended Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) or, in the alternative, for transfer of this action to the District of New Jersey pursuant to 28 U.S.C. § 1404(a), dated January 16, 2004 (the "Second Motion to Dismiss"). Plaintiff previously filed his Opposition to Defendants' Motion to Dismiss (the "Opposition") on March 8, 2004, and Defendants replied thereto on April 1, 2004 (the "Reply").

1.   Chardavoyne submits this surreply because Defendants have now submitted two (2) new and additional affidavits in support of their Motion to Dismiss, which Chardavoyne never saw until he received Defendants' April 1, 2004 Reply. *See* Affidavits of James McGivern, dated February 24 (the "February 24th Affidavit") and March 29, 2004 (the "March 29th Affidavit"). These untimely affidavits, filed long after Chardavoyne opposed their

- 1 -

{00066663; 4; 1103-2}

Motion to Dismiss, showcase the serious defects in Defendants' factual allegations, which were submitted piecemeal and are rife with inaccuracy. For example:

    a. The February 24th Affidavit was supposed to be attached to Defendants' Second Motion to Dismiss on January 16, 2004, as noted in footnote 1 therein. Second Motion to Dismiss at 4, n. 1. That affidavit in fact accompanied Defendants' Reply on April 1st, well after Chardavoyne opposed the motion on March 8, 2004 and two months after the Second Motion to Dismiss.

    b. McGivern's March 29th Affidavit sets forth new and largely inaccurate factual allegations. McGivern swears that he was a "member of the board of directors for Thames North America, Inc. from February 1, 2001 to the present," but corporate minutes indicate that he was already a director by November 10, 2000, at which time he was *elected its Chairman*. See Affidavit of David E. Chardavoyne, dated April 12, 2004, at ¶ 2, attached hereto as Exhibit B to Plaintiff's motion(the "Chardavoyne Aff.").

    c. McGivern makes many of his statements in the above-referenced affidavits to the "best of his recollection," without any representations that he had personal knowledge of or participated in the matters referred to, or searched the corporate records to locate the best evidence of the matters asserted. March 29th Affidavit at 2.

    d. The previously submitted affidavits of Ari D. Levine, dated March 10, 2003, the Affidavit of A. Matthew Huckin, dated March 10, 2003, and the Affidavit of Ari D. Levine, dated May 5, 2003 have been shown to be inaccurate in many respects.

    e. Except for a copy of Chardavoyne's business card, none of Defendants' affidavits attach any corporate documents, which are in Defendants' exclusive control. There has been no discovery in the fifteen (15) months since this action was commenced.

    f. Defendants loudly protest in their Reply that Thames Holdings, Thames North America, and affiliated companies Applied Water Management ("AWM") and E'Town Corporation, are all distinct corporate entities with separate businesses, management and governance. Reply at 3, ¶ 5. Defendants omit to provide any documents in support of their position. However, Thames North America's November 10, 2000 board meeting minutes betrays that position. The Thames North America Board at that meeting arranged to coordinate their next board meeting with Thames Holdings and discussed at length their businesses as conducted through affiliates AWM and E'Town. *See* Ex. B attached to Plaintiff's motion, Chardavoyne Aff., at ¶ 2. Further, these minutes do not reflect any inconvenience to Defendants' directors, including James McGivern, William

{00066663; 4; 1103-2}

Alexander, and Jeremy Pelczer, among others, to attend this regularly scheduled board meeting in Connecticut. These minutes demonstrate that these businesses were governed as part of a single enterprise with extensive operations in Connecticut.

2.  In stark contrast to Defendants' inaccurate and unsupported affidavits, Chardavoyne carried his *prima facie* burden by demonstrating that this Court has personal jurisdiction over Defendants and that venue is properly laid here. Opposition at 14-24.[1] But Defendants also chose this district as the proper venue for this dispute by (a) waiving their objections to personal jurisdiction and (b) conducting its long-standing and extensive business activities in Connecticut.

   a.  First, Defendants waived their objections to personal jurisdiction and venue here by affirmatively choosing not to move to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Defendants now try to take back their waiver, and claim that they concede personal jurisdiction as to Thames North America but that they have been consistent in their objections to personal jurisdiction over Thames Holdings. Reply at 4. Yet Defendants never renewed their motion to dismiss Thames Holdings for lack of personal jurisdiction. Defendants never indicated that they waived their objections to personal jurisdiction under any reservation. Instead, in Defendants' own words, they admit that they "chose" not to "renew" their objections to personal jurisdiction because they did not want to "face two separate actions." Reply at 4. Defendants conduct comports only with a knowing and intentional waiver of their objections to personal jurisdiction. By conceding personal jurisdiction, they are deemed to reside in this district under 28 U.S.C. §§ 1391(a)(1) and 1391(c), and venue is therefore proper

---

[1] *See Indymac Mortgage Holdings, Inc. v. Reyad,* 167 F.Supp.2d 222, 237 (D. Conn. 2001) (plaintiff must make a *prima facie* showing to establish venue); *Federowicz v. Zenith Labs., Inc.,* Civ. No. B-90-588 (WWE), 1991 WL 218565, at * 1 (D. Conn. Jul. 15, 1991) (plaintiff must make *prima facie* showing to establish jurisdiction).

- 3 -

{00066663; 4; 1103-2}

here. This Court came to the same result in *Bridgeport Machines, Inc. v. Alamo Iron Works, Inc.*, 76 F.Supp.2d 214, 216 (D. Conn. 1999) (applying 28 U.S.C. §§ 1391(a)(1) and 1391(c) to hold that "[s]ince [defendant] has not challenged this Court's personal jurisdiction over it, the Court finds that venue is proper in this District."). *See also Chavis v. A-1 Limousine*, No. 95 CIV. 9560 (LAP), 1998 WL 78290, *4 (S.D.N.Y. Feb. 24, 1998) ("defendants' own concessions establish plaintiff's *prima facie* case for jurisdiction."). It is simply absurd to suggest that laying venue in this district upon the willing somehow offends jurisdictional principles or due process.

    b.  Second, Defendants affirmatively subjected themselves to the jurisdiction of this Court by engaging in a long, systematic and continuing course of business in this state. Defendants argue that *venue* is improper because this Court allegedly did not have personal jurisdiction over Thames Holdings "at the time the action [was] commenced," as provided by 28 U.S.C. § 1391(c). On the contrary, Thames Holdings established a fully functioning office in Connecticut, entered into at least one contract to be performed in Connecticut, through that contract made Chardavoyne its President in Stamford to oversee the operation and employees, conducted board meetings here, and through this Connecticut operation conducted its extensive water-related businesses, which included negotiating to acquire Connecticut-based businesses and acquiring businesses with Connecticut operations. Opposition at 3 – 4. Defendants attempt to say—apparently with a straight face—that none of this matters; that Thames Holdings can set up shop in Connecticut; that it can take advantage of the many business opportunities offered here; that it can breach its Connecticut contract and then abscond without becoming subject to jurisdiction therefor; and that negotiating, pursuing and "attempt[ing] [big] deals" here does not

mean they are doing business here (Reply at 7). This is desperate and absurd; Thames Holdings is exactly the kind of entity that the long-arm statute was intended to reach.[2]

        3.    For Defendants to prevail on their Motion to Dismiss or Transfer, this Court must rely upon Defendants' inaccurate and unsupported factual allegations as contained in their last minute affidavits. If Defendants are believed, the jurisdictional facts are at least highly disputed. In this case, "[t]he court must take all allegations in the complaint as true [and] . . . [t]he court must draw all reasonable inferences and *resolve all factual conflicts in favor of the plaintiff*." *Indymac*, 167 F.Supp.2d at 237 (internal citations omitted) (emphasis added). To clarify the disputed factual issues, if necessary, Chardavoyne moves that this Court defer its consideration of Defendants' Motion to Dismiss until such time that the parties have had an opportunity to conduct mutual discovery on an expedited basis to be commenced immediately and completed at a time mutually agreeable to the parties and this Court.

---

[2] *See Advanced Claims Servs. v. Franco Enter.*, No. CV000374548S, 2000 WL 1683416, at *4 (Conn. Super. Ct. Oct. 13, 2000) (finding long-arm jurisdiction based on contract to be performed in Connecticut under Conn. Gen. Stat. 33-939(f)(1)); *Hill v. W.R. Grace & Co.*, 42 Conn.Supp. 25, 29 (1991) (subjecting foreign corporation to jurisdiction based on transaction of business in Connecticut).

## CONCLUSION

For the foregoing reasons, Plaintiff David E. Chardavoyne respectfully requests that the Court (1) grant Chardavoyne leave to submit this surreply and, if necessary, (2) that the Court permit the parties to conduct immediate and expedited discovery and that it defer its consideration of Defendants' Second Motion to Dismiss until after such discovery has been completed, together with such other and further relief that the Court deems just and proper.

PLAINTIFF DAVID E. CHARDAVOYNE

James R. Hawkins II (CT 00128)
Finn Dixon & Herling LLP
One Landmark Square
Suite 1400
Stamford, CT 06901-2689
Telephone: (203) 325-5000
Facsimile: (203) 348-5777
E-mail: jhawkins@fdh.com

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID E. CHARDAVOYNE, | :     3:03CV56 (WWE) |
| v. | : |
| THAMES WATER HOLDINGS INCORPORATED, THAMES WATER NORTH AMERICA INC. | :     April 12, 2004 |

**SUPPLEMENTAL AFFIDAVIT OF DAVID E. CHARDAVOYNE**

STATE OF CONNECTICUT    )
                                   )    ss.: Stamford
COUNTY OF FAIRFIELD     )

        David E. Chardavoyne, being duly sworn, hereby deposes and says:

        1.     I am the Plaintiff in this action and I am filing this Affidavit in connection with my surreply in opposition to the Motion to Dismiss or Transfer of Defendants Thames Water Holdings Incorporated ("Thames Holdings") and Thames Water North America Inc. ("Thames North America"), dated January 16, 2004 (the "Second Motion to Dismiss").

        2.     I was present at the November 10, 2000 meeting of the Board of Directors of Thames North America. A true copy of the Minutes of the Meeting are attached hereto as Exhibit A.

                                                                    */s/ David E. Chardavoyne*
                                                               David E. Chardavoyne

Subscribed and sworn to before
me this 12th day of April, 2004.

_/s/_____
Commissioner of the
Superior Court

- 1 -

{00067145; 1; 1103-2}

**MINUTES OF THE MEETING**
**of the**
**BOARD OF DIRECTORS**
**of**
**THAMES WATER NORTH AMERICA INC.**

**November 10, 2000**

A meeting of the Board of Directors of Thames Water North America Inc. (the "Corporation") was held at the Corporation's Stamford, Connecticut office on November 10, 2000.

Jim McGivern, acting as Chairman, called the meeting together at 11:30 AM. Upon his designation, Ron Walsh acted as secretary of the meeting.

All Board members were present. In addition to the Board members, the following were in attendance: Kate Sellars, Ron Walsh, Jeremy Pelczer, John Catling, and, for part of the time, Bill Alexander.

The Chairman asked the Board to consider certain organizational matters, and, upon motions made and duly seconded and carried, the following resolutions were approved unanimously:

**RESOLVED,** that James McGivern be, and he hereby is, elected as Chairman of the Board of the Corporation.

**RESOLVED,** that the Board of Directors shall be expanded to six (6) members.

**RESOLVED,** that Michael Carmedy, Dreda Gaines and Ronald Walsh, be, and they are hereby, elected as Vice Presidents of the Corporation.

**RESOLVED,** that, Jeremy Pelczer be, and he hereby is, elected as a Director of the Corporation.

The Chairman then led a brief discussion of corporate governance issues. It was agreed that the Board should hold its future meetings on a quarterly basis. The next meeting will be scheduled for sometime during February of 2001, and it will be coordinated with both a meeting of the Board of Thames Water Holdings Incorporated and the issuance of financial reports. The Chairman, in consultation with Mr. Carmedy, will advise the Board members of the exact time, date and location of the next Board meeting. It was also agreed that Mr. Carmedy would explore with UK representatives the question of Directors and Officers' liability coverage (i.e., what insurance coverage exists). Finally, on this topic, Mr. Walsh was asked to locate, and circulate to the Directors, a summary of the fiduciary duties of directors.

The Chairman then suggested that for all future Board meetings, a standard agenda item be provided for; it is to entail approximately an hour's discussion of "strategic issues". In that same vein, Mr. Pelczer distributed an AWWARF paper, dated September 21, 2000, entitled: "A Strategic Assessment of the Future of Water Utilities". Mr. Pelczer also charted on the whiteboard a schematic of the topics under discussion; a rough copy of Mr. Pelczer's schematic is attached. A general discussion followed and the Directors were asked to consider and discuss:

> A/ Why some municipalities were buying back water assets;
>
> B/ whether we have a need to be more vertically integrated;
>
> C/ the kinds of competitive intelligence we have with respect to U.S. utilities such as American and United;
>
> D/ what we will (should?) look like in 2005;
>
> E/ how we bring the strengths of the Products operations into our planning;
>
> F/ the need to have a technology plan to underpin our business plan; and
>
> G/ looking to the future, what are the skills we need and how do we develop those.

Mr. Pelczer suggested, that each Board member should be prepared, at each meeting, to discuss these kinds of forward looking topics. The Chairman summarized by saying that it was important that these Board meetings deal with more than reports on where we stand; we must be looking at where we will be in the future and what we have to do to get there.

At about this point, Mr. Alexander joined the meeting. He led a discussion of our distinctive skills and asked how we should apply our skills to E'town so that it serves as our innovative model in the U.S. He asked that the Board consider, what skills we have and what additional skills we need to obtain. He was concerned, however, that we needed to understand exactly what technologies we want to be involved with, and also, that we should not attempt to take on too many strategies. He also said that we needed to develop the ability to understand, and predict, where environmental standards were going in the U.S.

Finally, Mr. Alexander gave a high level summary of the Thames/RWE relationship, and its potential impact on our business in the U.S. At approximately this point in the meeting, Mr. Alexander left.

At the Chairman's request, Mr. Chardavoyne, with help from Mr. Chapman and Mrs. Gaines, discussed Agenda item 7:"Alliance & Competition Updates", out of order. A general discussion ensued, including the need for billing and collection services to win large O&M.

In light of the shortness of time, a decision was taken to skip, until the next meeting, Agenda Item 3: "Financial Report".

Mrs. Gaines then reported on Agenda item 4: "Project Development Review". She specifically discussed the Halifax, Laredo and Vancouver projects. There ensued a general discussion during which the following topics were reviewed: accepting unlimited liabilities for the cities, the possible use of E'town's billing system on our bids, the need for stronger staffing of projects(especially technical writers) from the UK, and the ability

of Products to play a role in our bids. The Chairman agreed to follow up on the staffing question when he returns to the UK.

Next, Mr. Chapman made a presentation regarding Agenda item 5: "Project Development Review". He reviewed the structure of E'town's on-going development efforts, and he announced AWM's success in signing the contract for service to the new Patriot's Stadium in Massachusetts. Mr. Chapman asked for some assistance with AWM's reaching out to provide service to RWE's U.S. subsidiaries (Turner Construction and Consol); he also said that it would make sense for the AWM folks to work with the Products folks to look for areas of common benefit (especially with respect to chlorination equipment). A general discussion of these topics followed, and it was agreed that Mr. Chapman would prepare a paper on possible cooperation among Thames Water North America, Products and AWM with respect to acquiring local hub utilities.

Agenda item 6, with respect to the E'town integration and approval processes, was discussed by Mr. Carmedy. He presented a commercial development process and approval procedures (copies attached), which were well received by the Board. However, before adopting them, the Chairman proposed that they are discussed with Mr. Walker in the UK, and he agreed to contact Mr. Walker.

Under "Other Business" the Chairman authorized Mr. Walsh to send out a follow-up proposal with respect to Project Ulysses and also asked that a new MOU be prepared for discussion with Dorset Partners.

These being no other business to conduct, the meeting was adjourned at approximately 6:00 PM.

_____

Ronald E. Walsh

Secretary to the Meeting

Westlaw.

Not Reported in A.2d  
(Cite as: 2000 WL 1683416 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

ADVANCED CLAIMS SERVICE,  
v.  
FRANCO ENTERPRISES, et al.

No. CV000374548S.

Oct. 13, 2000.

MEMORANDUM OF DECISION RE: MOTION TO DISMISS DOCKET ENTRY NO. 101

MELVILLE.

*1 On May 22, 2000, the plaintiff, Advanced Claims Services, LLC, brought suit against the defendants, Franco Enterprises, Inc. and Robert Franco, both non-residents of the State of Connecticut. On June 29, 2000, the plaintiff filed an amended six-count complaint alleging causes of action against each defendant for breach of contract (counts one and two), quantum meruit (counts 3 and 4), and tortious misconduct (counts 5 and 6). According to the amended complaint, this action arises out of an agreement between the parties pursuant to which the plaintiff provided investigatory services in Connecticut for the defendants.

The present dispute arises out of the defendants' motion to dismiss the plaintiff's suit on the ground that the court lacks personal jurisdiction over the defendants.

A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. *Gurliacci v. Mayer,* 218 Conn. 531, 544, 590 A.2d 914 (1991). A ruling on a motion to dismiss is neither a ruling on the merits of the action nor a test of whether the complaint states a cause of action. Motions to dismiss are granted solely on jurisdictional grounds. *Malasky v. Metal Products Corp.,* 44 Conn.App. 446, 452, 689 A.2d 1145, cert. denied, 241 Conn. 906, 693 A.2d 293 (1997). A motion to dismiss tests, *inter alia,* whether, on the face of the record, the court is without jurisdiction. *Johnson v. Dept. of Public Health,* 48 Conn.App. 102, 107-08, 710 A.2d 176 (1998). In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. *Pamela B. v. Ment,* 244 Conn. 296, 308, 709 A.2d 1089 (1998).

When a defendant files a motion to dismiss challenging the court's jurisdiction over a nonresident, a two part inquiry is required. The trial court must first decide whether the applicable state longarm statute authorizes the assertion of jurisdiction over the defendants. If the statutory requirements are met, its second obligation is then to decide whether the exercise of jurisdiction over the defendants would violate constitutional principles of due process. *Knipple v. Viking Communications Ltd.,* 236 Conn. 602, 606, 674 A.2d 426 (1996). If a challenge to the court's personal jurisdiction is raised by a defendant, either by a foreign corporation or by a nonresident individual, the plaintiff bears the burden of proving the court's jurisdiction. *Id.,* 607, 674 A.2d 426.

A. Personal Jurisdiction Over Robert Franco Pursuant to General Statutes § 52-59b

*2 The defendants argue that because Franco has never been within the state of Connecticut and has not transacted any business in Connecticut, the court cannot assert personal jurisdiction over him pursuant to General Statutes § 52-59b(a)(1). The defendants further claim that because Franco has not committed a tortious act within Connecticut, the court cannot assert personal jurisdiction over him pursuant to § 52-59b(a)(2). The plaintiff contends, notwithstanding his physical absence from this state, § 52-59b(a)(1) the court has personal jurisdiction over Franco based on his contacts with the plaintiff in Connecticut. The plaintiff also contends that the court may properly assert personal jurisdiction over Franco pursuant to § 52-59b(a)(2) because he committed tortious acts within Connecticut.

Connecticut courts may assert personal jurisdiction

over a nonresident defendant under General Statutes § 52-59b(a), which provides in relevant part,

[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual who in person or through an agent: (1) Transacts any business within the state; or (2) commits a tortious act within the state..

However, the general rule is that there is no personal jurisdiction over nonresident officers of a corporation where their contact with the state was only in their capacity as a corporate officer. *Leach Family Holdings, Inc. v. Raymark Industries, Inc.*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 345036 (December 23, 1997) (Melville, J.) (21 C ONN.L.RPTR. 468, 469); *Charles Town Associates Limited Partnership v. Dolente*, Superior Court, judicial district of Litchfield, Docket No. 069233 (May 1, 1996) (Pickett, J.).

Although the plaintiff directed the second, fourth, and sixth counts of its amended complaint against Franco in his individual capacity, it has not presented sufficient facts to establish that Franco acted on his own behalf. The plaintiff has offered a letter dated December 27, 1999 to support its contention that Franco transacted personal business as distinguished from that as an officer of Franco Enterprises. In the letter, Franco outlines a payment schedule and requests the plaintiff to conduct specific investigations. The letter, written on N.E.F. & Associates letterhead, is signed "Robert D. Franco, License Private Investigator." From this evidence the court is unable to determine whether Franco was transacting business in his individual capacity or in his capacity as president of Franco Enterprises. The Connecticut Supreme Court has held that "[w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross- examine adverse witnesses." *Standard Tallow Corp. v. Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983). Therefore, an evidentiary hearing is the appropriate method to resolve the jurisdictional question under § 52-59b(a)(1) regarding Franco's capacity. Consequently, the parties are directed to schedule such a hearing with this judge's clerk at the earliest possible date. In count six, the plaintiff alleges a cause of action against Franco for tortious misconduct. It is black letter law that an officer of a corporation who commits a tort is personally liable to a victim regardless of whether the corporation itself is liable. *Kilduff v. Adams, Inc.*, 219 Conn. 314, 331-32, 593 A.2d 478 (1991). Where an agent or officer commits or participates in the commission of a tort, whether or not he acts on behalf of his principal or corporation, he is nevertheless liable to third parties injured thereby. *Scribner v. O'Brien, Inc.*, 169 Conn. 389, 404, 363 A.2d 160 (1975).

In the amended complaint, the plaintiff alleges in count six that Franco "committed a tortious act in making misrepresentations in that it knew or should have known that [the] plaintiff would rely upon and act to his detriment in reliance upon said misrepresentations." (Plaintiff's Amended Complaint.) To satisfy its burden of establishing jurisdiction under § 52-59b(a)(2) the plaintiff must show that Franco engaged in at least a single act in Connecticut that would constitute the tort of fraudulent misrepresentation. See *Whitney v. Capullo*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 295347 (June 1, 1993) (Lager, J.) [14 Conn.L.Rptr. 334]. "False representations entering Connecticut by wire or mail constitute tortious conduct in Connecticut ..." [FN1] *Knipple v. Viking Communications, Ltd., supra*, 236 Conn. 610. See also *David v. Weitzman*, 677 F.Supp. 95, 98 (D.Conn.1987); *Cody v. Ward*, 954 F.Supp. 43, 45-46 (D.Conn.1997); *Center Capital Corp. v. Hall*, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 452084 (June 9, 1993) (Dorsey, J.T.R.) (9 CONN.L.RPTR. 265, 267). The plaintiff has offered the December 27, 1999 letter it allegedly received from Franco to support its contention that Franco made false representations in Connecticut.

FN1. In *Knipple v. Viking Communications, Ltd.*, the Connecticut Supreme Court cited *David v. Weitzman*, 677 F.Supp. 95, 98 (D.Conn.1987), wherein Judge Cabranes held that transmitting fraudulent misrepresentations into Connecticut by mail and telephone was "within the state" for purposes of both § 52-59b(a)(2) and § 33-411(c)(4). The Supreme Court's citation of *David v. Weitzman* indicates that it would construe the language of § 52-59b(a)(2) the same way it has now construed the nearly identical language of § 33-411(c)(4). See *Cody v. Ward*, 954 F.Supp. 43, 46 (D.Conn.1997).

*3 Based on the above mentioned authority, such communication would satisfy the contact requirement. Furthermore, for the reasons expressed in part C of this memorandum, the due process

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

requirements are also satisfied.

B. Personal Jurisdiction Over Franco Enterprises, Inc. Pursuant to General Statutes § 33-929

The defendants argue that because Franco Enterprises is not incorporated in the state of Connecticut and has no contact with Connecticut, the court has no personal jurisdiction over it. The defendants also argue that because Franco Enterprises has not committed a tortious act within Connecticut, the court cannot assert personal jurisdiction over it.

The plaintiff responds that Franco Enterprises is subject to the court's jurisdiction because the contract between Franco Enterprises and the plaintiff required the plaintiff to perform the contract in Connecticut. The plaintiff argues that it performed significant acts pursuant to the contract, and that Franco Enterprises knew the actions it requested the plaintiff to perform would be performed in Connecticut. The plaintiff also contends that the court may properly assert personal jurisdiction over Franco Enterprises because Franco Enterprises committed tortious acts within Connecticut.

Connecticut courts may assert personal jurisdiction over a foreign corporation under General Statutes § 33-929(f), [FN2] which provides in relevant part that

> FN2. Section 33-929(f) was formerly § 33-411(c).

[e]very foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state ... on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state ... or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts.

Section 33-929(f) directs the court to inquire not only into the various elements of the plaintiff's cause of action, but also into the totality of contacts which the defendant may have had with the forum. See *Flight Services Group, Inc. v. Asprey Leasing, Inc.,* Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 336870 (December 2, 1997) (Melville, J.).

*4 For a court to assert jurisdiction over a foreign corporation pursuant to General Statutes § 33-929(f)(1), the underlying contract must contemplate or encompass some contact with Connecticut. Thus, the plaintiff must initially establish *prima facie* that (1) a contract existed and (2) the contract was to be performed in Connecticut within the meaning of General Statutes [§ 33-929(f)(1) ]. *Allard v. Transtek International, Ltd.,* Superior Court, judicial district of Litchfield, Docket No. 065182 (December 7, 1993) (Picket, J.). Furthermore, "the language of § [33-929(f)(1) ] does not expressly require contemplated performance in this state by the party over whom jurisdiction is sought. *Gamlestaden PLC v. Lindholm,* Superior Court, judicial district of Stamford Norwalk at Stamford, Docket No. 130058 (February 28, 1996) (Karazin, J.), citing *Combustion Engineering, Inc. v. NEI International Combustion, Limited,* 798 F.Supp. 100, 104 (D.Conn.1992).

In this case, the plaintiff was to perform investigative services in Connecticut. Consequently, Franco Enterprises entered into a contract which contemplated substantial performance, albeit by the plaintiff, in this state. This is sufficient to satisfy the longarm statutory requirements of § 33-929(f)(1) for establishing personal jurisdiction over Franco Enterprises. See *Flight Services Group, Inc. v. Asprey Leasing, Inc., supra,* Superior Court, Docket No. 336870; *Thornton & Company, Inc. v. Pennsak, Inc.,* Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 490607 (November 20, 1998) (Robinson, J.) (23 CONN.L.RPTR. 532, 535); *Senior v. American Institute For Foreign Study, Inc.,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 139183 (February 7, 1996) (Karazin, J.).

Because § 33-929(f)(1) provides a sufficient basis for the exercise of personal jurisdiction over Franco Enterprises, the court need not address whether jurisdiction is also appropriate under § 33-929(f)(4).

C. Constitutional Requirement of Due Process

Before a Connecticut court can assert jurisdiction, it must determine whether the exercise of jurisdiction violates constitutional principles of due process. See *Knipple, supra,* 236 Conn. 606. "The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness." *United States Trust Co. v. Bohart,* 197 Conn. 34, 41, 495 A.2d 1034 (1985). The foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum state are such that the defendant should

Not Reported in A.2d
(Cite as: 2000 WL 1683416 (Conn.Super.))

Page 4

reasonably anticipate being haled into court in the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). *Id.*

Applying these standards, Franco Enterprises' contacts with the plaintiff in Connecticut were sufficiently substantial for it to have reasonably anticipated being sued here. The plaintiff has presented facts that show that Franco Enterprises knew it was contracting with a Connecticut corporation which would perform services for it in Connecticut. Furthermore, Franco Enterprises sent a fax, made telephone calls, and sent payments and other correspondence to the plaintiff in Connecticut. These purposeful contacts are sufficient to justify the exercise of personal jurisdiction over Franco Enterprises. See *Charlup v. Omnicorp Holdings, Inc.,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 121184 (August 24, 1993) (Nigro, J.) (fact that defendant sent faxes, paychecks, and correspondence and made telephone calls to Connecticut supported finding of jurisdiction); *Senior v. American Institute For Foreign Study, supra,* Superior Court, Docket No. 139183 (defendant could reasonably expect to be sued in Connecticut when it knowingly contracted Connecticut company to perform services in Connecticut); *Salisbury Group v. Alban Institute,* Superior Court, judicial district of Litchfield, Docket No. 070036 (July 3, 1996) (Pickett, J.) [minimum contact requirements met when plaintiff was hired by defendant foreign corporation, which never came to Connecticut, to do nationwide search primarily from Connecticut]; *Thorton & Company, Inc. v. Pennsak, Inc., supra,* 23 CONN.L.RPTR. 532.

*5 Having concluded that the threshold requirement of minimum contacts with Connecticut is satisfied and jurisdiction over Franco Enterprises on the basis of its contacts would not be unfair, see *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477-78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), and further concluding that Franco Enterprises has not shown that litigating in Connecticut would be so burdensome as to be unfair, the court's assertion of jurisdiction is found to be proper over the defendant corporation.

Accordingly, the defendants' motion to dismiss as to Franco Enterprises is *DENIED;* the defendants' motion to dismiss as to Robert Franko individually is yet to be determined after an evidentiary hearing to determine whether the acts complained of were corporate or individual.

2000 WL 1683416 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## CERTIFICATION

I hereby certify that a true and correct copy of the foregoing was mailed, United States mail, first class, postage prepaid to the following this 13th day of April, 2004:

>Jonathan B. Orleans, Esq.
>Zeldes, Needle & Cooper, P.C.
>1000 Lafayette Boulevard
>Suite 500
>Bridgeport, CT  06604

                        James R. Hawkins II

{00067146; 2; 1103-2}