UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID E. CHARDAVOYNE, | : |
| | : |
| Plaintiff, | : |
| | : No. 03-CV-56 (WWE) |
| V. | : |
| | : |
| THAMES WATER HOLDINGS | : |
| INCORPORATED and THAMES WATER | : |
| NORTH AMERICA, INC., | : |
| | : |
| Defendant. | : NOVEMBER 22, 2004 |

## **ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendants Thames Water Holdings Incorporated ("TWHI") and Thames Water North America, Inc. ("TWNA") (collectively "Thames Water"), for their answer to plaintiff's Amended Complaint dated July 16, 2003, state as follows:

1.  Thames Water admits the allegations of Paragraph 1.

2.  Thames Water lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2, and leaves plaintiff to his proof.

3.  Thames Water admits that TWHI is a corporation organized and existing under the laws of the State of Delaware, but denies that its principal place of business is in Pennsylvania.

4.  Thames Water admits the allegations of Paragraph 4.

5.  Thames Water admits that TWHI permitted Mr. Chardavoyne to maintain an office at 281 Tresser Boulevard, Stamford, Connecticut. Thames Water denies the

remaining allegations in Paragraph 5.  By way of further answer, Thames Water closed the Stamford office in or about in December 2001 and moved it to Voorhees, New Jersey.

      6.      Paragraph 6 states conclusions of law to which no response is required.  To the extent that a response is required to the allegations of paragraph 6, Thames Water denies the allegations.

      7.      Thames Water denies the allegations of Paragraph 7 as stated.   Thames Water admits that Thames Water Plc was a publicly held company until at least November 2000; that Thames Water Plc was engaged in the water and wastewater business in the United Kingdom; that TWNI and THWI and Thames Water Plc are subsidiaries of RWE AG; that RWE AG is a publicly held company organized under the laws of the Federal Republic of Germany with corporate headquarters in Essen, Germany; that RWE's lines of business include electricity, water and wastewater, waste and recycling, natural gas and other services; and, upon information and belief, that Thames Water Plc had operations and other businesses in 44 countries worldwide at the time of filing of the Amended Complaint.  Thames Water denies the remaining allegations of Paragraph 7.

      8.      Thames Water admits that a true copy of the Employment Agreement is attached to the Amended Complaint, and respectfully submits that the writing speaks for itself.  By way of further answer, Thames Water properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Agreement.

      9.      Thames Water admits that Mr. Chardavoyne was a member of the Board of Directors of TWHI until May 29, 2002 and that he served as President of TWHI from February 15, 1999 until May 29, 2002.  Thames Water denies the remaining allegations of Paragraph 9.

10. The Employment Agreement is attached to the Amended Complaint, and Thames Water respectfully submits that the writing speaks for itself. Thames Water admits that Mr. Chardavoyne was President and a Director of TWNA until May 29, 2002, and that TWNA paid his salary under the Employment Agreement. By way of further answer, Thames Water properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Employment Agreement.

11. The Employment Agreement is attached to the Amended Complaint, and Thames Water respectfully submits that the writing speaks for itself. By way of further answer, Thames Water properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Agreement.

12. The Employment Agreement is attached to the Amended Complaint, and Thames Water respectfully submits that the writing speaks for itself. By way of further answer, Thames Water continued to provide to Mr. Chardavoyne all benefits to which he was entitled under the Employment Agreement up to and including May 29, 2003, the date of termination of his employment – one year after Thames Water provided proper notice of his termination pursuant to the Employment Agreement.

13. The Employment Agreement is attached to the Amended Complaint, and Thames Water respectfully submits that the writing speaks for itself. By way of further answer, Thames Water permitted Mr. Chardavoyne to use the Company car up to and including May 29, 2003, despite the fact that he had no business use for the car between May 30, 2002 and May 29, 2003.

14. Thames Water admits that on or about May 29, 2002, James McGivern, Managing Director, Thames Water Americas (specified in Mr. Chardavoyne's Employment

Agreement as the Line Manager to whom Mr. Chardavoyne directly reported), and Matthew Huckin, Human Resources Director, Thames Water Americas, met with Mr. Chardavoyne. Thames Water admits that at that meeting, Mr. Huckin gave Mr. Chardavoyne an envelope containing a letter and a proposed agreement that, if accepted by Mr. Chardavoyne, would have modified the conditions of his separation from employment as established by the Employment Agreement. Thames Water admits that a true copy of the Letter is attached to the Amended Complaint as Exhibit 2, and that a true copy of the proposed agreement is attached to the Amended Complaint as Exhibit 3. Thames Water lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14, and leaves plaintiff to his proof. By way of further answer, at that meeting, Mr. McGivern advised Mr. Chardavoyne that his employment was being terminated effective May 29, 2003, and that the decision to terminate his employment was at the direction of William Alexander, Chief Executive Officer of Thames Water Plc.

15. Thames Water denies the allegations of Paragraph 15, including all of its subparts, and specifically denies that the Letter is not a notice of termination required under Section 11.1 of the Employment Agreement. By way of further answer, the Letter, either standing alone or in combination with the proposed agreement, provided proper notice of termination to Mr. Chardavoyne pursuant to the terms of the Employment Agreement.

16. Thames Water admits, upon information and belief, that Mr. Chardavoyne's date of birth is March 12, 1948. Thames Water denies the remaining allegations of Paragraph 16. By way of further answer, Mr. Chardavoyne was provided proper notice of the termination of his employment pursuant to the terms of the Employment Agreement.

17. Thames Water admits that Mr. Chardavoyne notified Thames Water that the proposed agreement was not acceptable to him.  Thames Water denies the allegations of Paragraph 17 to the extent inconsistent with the foregoing.

18. Thames Water admits that Mr. Chardavoyne has informed TWHI that he does not consider the Letter to be effective notice of the termination of his employment under Section 11.1 of the Agreement, and has stated his reasons.  To the extent the allegations of paragraph 18 are inconsistent with the foregoing, Thames Water denies them.  By way of further answer, on May 29, 2002, Mr. Chardavoyne was provided proper notice of the termination of his employment pursuant to the terms of the Employment Agreement.

19. Thames Water admits that the Letter, either standing alone or in combination with the proposed agreement, constituted proper written notice of termination of employment under Section 11.1 (a) of the Employment Agreement, and that Thames Water has so informed plaintiff.

20. Thames Water admits that it continues to maintain that the Letter, either standing alone or in combination with the proposed agreement, constituted sufficient written notice of termination of employment under Section 11.1(a) of the Employment Agreement. Thames Water denies the remaining allegations of Paragraph 20.

21. Thames Water admits that defendants have not paid Mr. Chardavoyne compensation after June 6, 2003.  By way of further answer, Thames Water had no obligation to do so because Mr. Chardavoyne's employment was properly terminated pursuant to the terms of the Employment Agreement on May 29, 2003, and Mr. Chardavoyne provided no services after May 29, 2002.

22. Thames Water admits the allegations of Paragraph 22. By way of further answer, Thames Water had no obligation to provide Mr. Chardavoyne with employee benefits after May 29, 2003 because Mr. Chardavoyne's employment was properly terminated effective May 29, 2003 pursuant to the terms of the Employment Agreement.

23. Thames Water denies the allegations of Paragraph 23. By way of further answer, Thames Water was under no obligation to provide medical insurance benefits after May 29, 2003 because it had properly terminated Mr. Chardavoyne's employment effective May 29, 2003, and Mr. Chardavoyne elected continuation coverage after June 30, 2003.

24. Thames Water denies that there is a "genuine" legal dispute between the parties as to whether the Letter is a notice of termination pursuant to Section 1.1. of the Agreement.

25. Thames Water denies the allegations of Paragraph 25. By way of further answer, William Alexander, Chief Executive Officer of Thames Water Plc, James McGivern, Managing Director, Thames Water Americas (specified on the Employment Agreement as the Line Manager to whom Mr. Chardavoyne directly reported) and Matthew Huckin, Human Resources Director, Thames Water Americas, exercised Thames Water's right to terminate Mr. Chardavoyne's employment pursuant to the terms of the Employment Agreement and provided proper notice of such termination on May 29, 2002.

**COUNT I**

26. Thames Water incorporates its answers to Paragraphs 1 through 23 by reference.

27. Thames Water denies the allegations of Paragraph 27. By way of further answer, Mr. Chardavoyne received all compensation and benefits due him pursuant to the Employment Agreement.

28. Thames Water denies the allegations of Paragraph 28. By way of further answer, Mr. Chardavoyne received all compensation and benefits due him pursuant to the Employment Agreement.

**COUNT II**

29. Thames Water incorporates its answers to Paragraphs 1 through 23 by reference.

30. Thames Water denies the allegations of Paragraph 30. By way of further answer, Thames Water properly terminated Mr. Chardavoyne's employment pursuant to the terms of the Employment Agreement.

31. Thames Water admits that the defendants have properly demanded that the plaintiff return the Company Car, and admits that the Company Car is registered in Connecticut until May 2005. Thames Water denies the remaining allegations of Paragraph 31.

**COUNT III**

32. Thames Water incorporates its answers to Paragraph 1 through 23 by reference.

33. Thames Water denies the allegations of Paragraph 33. By way of further answer, Thames Water properly terminated Mr. Chardavoyne's employment pursuant to the terms of the Employment Agreement.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has been paid all compensation and benefits to which he is entitled under the terms of his Employment Agreement.

### SECOND AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over defendant Thames Water Holdings, Inc.

### THIRD AFFIRMATIVE DEFENSE

Venue of this action is not properly laid in this District.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to some or all of the relief he seeks, pursuant to the doctrine of "unclean hands."

WHEREFORE, defendants TWHI and TWNA pray that this Court enter judgment in their favor on all claims for relief asserted in plaintiff's Amended Complaint and that the Court award TWHI and TWNA their costs pursuant to Fed.R.Civ.P. 54(d)(1).

## COUNTERCLAIMS

Defendant/counterclaim-plaintiff Thames Water Holdings Incorporated ("TWHI"), for its Counterclaim against plaintiff/counterclaim-defendant David E. Chardavoyne, states as follows:

### JURISDICTION

1.    This Court's jurisdiction over these counterclaims is based on 28 U.S.C. §1367 because the counterclaims arise out of the same transaction or occurrence that is the subject matter of the plaintiff's claims as set forth in the Amended Complaint dated July 16, 2003.

### PARTIES

2.    TWHI is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New Jersey.

3.    David E. Chardavoyne ("Mr. Chardavoyne") is the plaintiff/counterclaim-defendant herein.

### FACTS

*The Agreement*

4.    On or about January 15, 1999, TWHI entered into an employment agreement ("Agreement") with plaintiff ("Executive").

5.    Paragraph 2.1 of the Agreement provides: "The appointment shall be effective from 15 February and the Company shall employ the Executive and the Executive shall serve the Company as President, US within Thames Water PLC with all attendant responsibilities, duties and authority, or in such other appointment as the Chief Executive may from time to time direct."

      6.      Paragraph 11.1 of the Agreement provides: "Save as provided for in clauses 12.1, 12.2. and 12.3 below, the Executive's employment hereunder shall continue subject to the terms of this Agreement until terminated (a) by the Company giving to the Executive not less than twelve months' written notice expiring at any time; or (b) by the Executive giving not less than six months' written notice expiring at any time."

      7.      Paragraph 7 of the Agreement provides: "The Company shall, during the term of this Agreement, provide the Executive with a car for his use in the business of the Company or any Group Company and shall bear all standing costs relating thereto including the costs of insuring, testing, taxing, repairing and maintaining the same and shall reimburse the Executive's running expense of the car in accordance with the Company's rules and procedures for the time being in force. The cost of all fuel will be met by the Company, including reasonable private mileage in the USA."

      8.      Paragraph 14 of the Agreement provides: "The Chief Executive may at any time during the term of the Executive's employment hereunder elect not to provide work for the Executive to do and/or require the Executive not to attend at the premises of any Group Company and no such event shall constitute a repudiation of this Agreement or a dismissal of the Executive whether constructive or otherwise."

      9.      Paragraphs 13 and 13.3 of the Agreement provide: "Upon termination of his employment with the Company for whatsoever reason the Executive shall without prejudice to any claim for damages or other remedy which either party might have against the other: . . . immediately return to the Company in good condition any car provided him to pursuant to Clause 8 above and any other communication or computing equipment and peripheral devices belonging to the Company."

*Notice of Termination and Termination of Employment*

10.     On May 29, 2002, TWHI and Thames Water North America, Inc. (collectively "Thames Water") gave Mr. Chardavoyne notice of the termination of his employment pursuant to Paragraph 11.1(a) of the Agreement.

11.     From and after May 29, 2002, as permitted by the Agreement, Thames Water assigned Mr. Chardavoyne no duties or responsibilities, and he performed no work for Thames Water.

12.     After May 29, 2002, Mr. Chardavoyne had no legitimate business use for the Company car provided to him by TWHI.

13.     Effective May 29, 2003, Mr. Chardavoyne's employment was properly terminated pursuant to the terms of the Agreement.

*The Car*

14.     On or about May 7, 2002, TWHI leased a 2002 Lincoln sedan, vehicle identification number 1LNHM87A62Y672200 ("the Car"), from Miller Auto Leasing Company.

15.     The lease, which expires in May 2005, requires TWHI to make lease payments of $804.54 a month, and to pay 12¢ per mile above 45,000 miles for the term of the lease.

16.     TWHI, as the lessee, is responsible for operating expenses, such as: washing, parking, garage, highway and road service, towing charges or tolls and all fines incurred in connection with the Car; registration and inspection costs; taxes; and certain maintenance and repairs. Under the terms of the lease, TWHI "shall indemnify and hold harmless Miller and Miller's agents and employees from and against (i) any damage, loss,

theft or destruction of any Vehicle and its contents during the lease term, and (ii) any loss, damage, injury, claim, demand, cost and expense (including attorney's fees) arising out of or connected with the use, operation or condition (including all defects whether or not discoverable by either party) of any Vehicle during the Lease Term, except any portion of any such loss, etc. that is within the coverage of any insurance to be provided by Miller as specified in the applicable Schedule A."

17. TWHI provided the Car to Mr. Chardavoyne under the terms of the Agreement for his business use during his employment.

18. TWHI also permitted Mr. Chardavoyne to use the Car between May 29, 2002, the date he was notified pursuant to the Agreement that his employment would be terminated, and May 29, 2003, the effective date of termination of his employment, despite the fact that he had no business use for it during that period.

19. Mr. Chardavoyne was contractually obligated under Paragraph 13.3 of the Agreement to return the Car on May 29, 2003.

20. On May 28, 2003, and on several occasions since, TWHI has demanded that Mr. Chardavoyne return the Car.

21. Mr. Chardavoyne has not returned the Car, despite repeated demands by TWHI.

22. Knowing that his duties and responsibilities had been eliminated on May 29, 2002, that after May 29, 2002 he had no authority to conduct any business, and to the best of TWHI's knowledge did not conduct any business, on behalf of Thames Water, and that Thames Water had terminated his employment on May 29, 2003, Mr. Chardavoyne's wrongful retention of the car was wanton and wilful malicious misconduct.

23. TWHI continues to incur expenses – including but not limited to lease payments, insurance, and taxes – associated with the Car, and faces unquantifiable risks for damage to the Car or to the persons or property of others while the Car is in the possession of Mr. Chardavoyne.

**FIRST COUNTERCLAIM - REPLEVIN (C.G.S. §52-515 *et seq*.)**

24. TWHI repeats and realleges Paragraphs 1 through 23 above, as if fully set forth herein.

25. As a result of Mr. Chardavoyne's wrongful retention of the car, TWHI has suffered damages for which it may recover under C.G.S. § 52-515.

**SECOND COUNTERCLAIM – CONVERSION**

26. TWHI repeats and realleges Paragraphs 1 through 23 above, as if fully set forth herein.

27. Mr. Chardavoyne used the Company car leased by TWHI and provided to Mr. Chardavoyne pursuant to the Agreement during the time of his employment.

28. After his termination, Mr. Chardavoyne wrongfully converted such car to his own use, depriving TWHI of the use and enjoyment of such car, and interfered with Thames Water's lawful rights and interests in the car.

29. TWHI sustained damages as a result of Mr. Chardavoyne's unauthorized conduct in assuming and exercising control over TWHI's car, for which TWHI is entitled to both compensatory and punitive damages.

WHEREFORE, defendant/counterclaim-plaintiff TWHI prays for the following relief on its Counterclaims:

1. Immediate return of the car to TWHI;

2. Compensatory damages;

3. Punitive damages pursuant to common law;

4. Costs of this action; and

5. Said other and further relief as the Court deems fair, just and equitable.

        _____
        Jonathan B. Orleans (ct05440)
        Felice M. Duffy (ct21379)

        Zeldes, Needle & Cooper, P.C.
        1000 Lafayette Blvd., Suite 500
        Bridgeport, CT 06604
        Tel: (203) 333-9441
        Fax: (203) 333-1489
        e-mail:  jorleans@znclaw.com
                 fduffy@znclaw.com

        Attorney for Defendants Thames Water
        Holdings Incorporated and Thames Water
        North America, Inc. and Counter-Plaintiff
        Thames Water Holding Incorporated

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent via U.S. First Class Mail, postage prepaid, on this date, to:

>James R. Hawkins II, Esq.
>William Tong, Esq.
>Finn, Dixon & Herling LLP
>One Landmark Sq., Suite 1400
>Stamford, CT 06901-2689

Dated at Bridgeport, Connecticut on this 22nd day of November 2004.

_____
Felice M. Duffy