UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE | ) | |
| | ) | CASE NUMBER: |
| Plaintiff, | ) | 3:03CV56 (WWE) |
| | ) | |
| vs. | ) | |
| | ) | |
| THAMES WATER HOLDINGS | ) | |
| INCORPORATED, THAMES WATER | ) | |
| NORTH AMERICA INC., | ) | |
| | ) | |
| Defendants. | ) | January ____, 2005 |

## PROPOSED SECOND AMENDED COMPLAINT

Plaintiff David E. Chardavoyne, by his attorneys, Finn Dixon & Herling LLP, for his Second Amended Complaint, states as follows:

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2. David E. Chardavoyne ("Chardavoyne") was at all relevant times a citizen and resident of the State of Connecticut.

3. Thames Water Holdings Incorporated ("Thames Water Holdings") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Pennsylvania at the time this action was commenced.

4. Thames Water North America Inc. ("Thames Water North America") is a Delaware corporation with its principal place of business in New Jersey. Thames Water North America is an operating subsidiary of Thames Water Holdings. Thames Water North America is registered to do business in Connecticut. At certain times, Thames Water North America served

{00101268; 4; 1103-2}

as the agent of Thames Water Holdings with respect to the payment of Chardavoyne's salary and other matters. Thames Water Holdings and Thames Water North America are referred herein collectively as Thames Water.

5. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391. Thames Water Holdings and Thames North America have maintained an office at 281 Tresser Boulevard, Stamford, Connecticut and therefore each is a resident of Connecticut for purposes of 28 U.S.C. § 1391(a) and (c).

6. This is an action for, among other things, double damages for unpaid wages, payment of all other compensation and benefits due under a written agreement, payment of stock wrongfully withheld, and punitive damages and attorneys fees.

7. Defendants are subsidiaries of Thames Water Plc, which was, until November 2000, a publicly held company engaged primarily in the water products and services businesses in the United Kingdom with operations and other businesses in 44 countries worldwide. Thames Water Plc is now a subsidiary of RWE AG ("RWE"). RWE AG is a publicly held company organized and existing under the laws of the Federal Republic of Germany, with corporate headquarters in Essen, Germany. RWE has many lines of business in various industries including water, gas, electric, environmental services, industrial services, petroleum and chemicals, and construction businesses in Germany, the United Kingdom, Canada, the United States and elsewhere, worldwide. During the year 2002, RWE had revenues in excess of $50 billion dollars (US).

8. On or about January 15, 1999, defendant Thames Water Holdings and Chardavoyne entered into a written employment agreement (the "Agreement"). The Agreement

provides, *inter alia,* that effective February 15, 1999, Thames Water Holdings shall employ Chardavoyne and he shall serve as its President with all attendant responsibilities, duties and authorities until, in accordance with Section 12.3 of the Agreement, "[t]he employment of the Executive shall terminate automatically on his reaching 65 years of age." A true copy of that Agreement is attached as Exhibit A to this Second Amended Complaint.

9. Chardavoyne has served continuously as President of Thames Water Holdings from February 15, 1999 until December 10, 2004. Chardavoyne was also elected a member of the Board of Directors of Thames Water Holdings.

10. Section 2.5 of the Agreement further provides that Chardavoyne shall "so long as the Chief Executive requires, carry out such duties on behalf of any other Group company and shall carry out such duties as if they were to be performed by him on behalf of the Parent Company." Accordingly, Chardavoyne also was elected President and a director of Thames Water North America. Chardavoyne was paid his salary under the Agreement by Thames Water North America. Salary payments under the Agreement were made, at certain times, to Chardavoyne by and through Thames Water North America.

11. Section 11.1 of the Agreement states: "[s]ave as provided for in Clauses 12.1, 12.2 and 12.3 below, the Executive's [i.e., Chardavoyne's] employment hereunder shall continue subject to the terms of this Agreement until terminated: (a) by the Company [Thames Water Holdings] giving to the Executive <u>not less than twelve months' written notice</u> expiring at any time; or (b) by the Executive giving not less than six months' written notice expiring at any time." [Emphasis added].

12. Section 5.3 of the Agreement provides: "The Company shall during the continuance of the Executive's employment hereunder contribute on the Executive's behalf to its health, dental, life and long term disability insurance schemes from time to time in force. The Executive will also be entitled to participate in the Company's retirement benefits plan."

13. Section 7 of the Agreement provides: "The Company shall, during the term of this Agreement, provide the Executive with a car . . . and shall bear all standing costs relating thereto including the cost of insuring, testing, taxing, repairing and maintaining the same and shall reimburse the Executive's running expenses of the car . . . . The cost of all fuel will be met by the Company, including reasonable private mileage in the USA."

14. On or about May 29, 2002, James McGivern and Matthew Huckin, who represented themselves as the Managing Director, Thames Water Americas and the Human Resources Director of Thames Water Americas, respectively, unexpectedly requested to meet with Chardavoyne. At that meeting, Matthew Huckin gave Chardavoyne an envelope containing a letter (the "Letter") and a draft agreement (the "Draft Agreement"). A true copy of the Letter is attached as Exhibit B to this Second Amended Complaint. A true copy of the Draft Agreement is attached as Exhibit C to this Second Amended Complaint.

15. The Letter is not a notice of termination required under Section 11.1 of the Agreement for the following reasons, among others:

    a. The Letter purports to terminate Chardavoyne "with immediate effect."

    b. The Letter does not give any termination date that is "not less than twelve months written notice."

    c. The Letter is <u>not</u> from Thames Water Holdings, which is the party to the Agreement. The Letter is from Thames Water Americas, which was not even incorporated in any state of the United States.

    d.    Huckin was not an officer or director of Defendants nor was he even an employee thereof.

    e.    Prior to May 29, 2002, the directors of Thames Water Holdings had not delegated or appointed Thames Water Americas as its agent for purposes of giving notice under the Agreement.

    f.    There is no provision in Thames Water Holdings' by-laws that permits Thames Water Americas or Huckin to terminate its President.

    g.    The President of Thames Water Holdings may only be terminated in accordance with the Agreement and the bylaws of Thames Water Holdings.

    h.    There was no vote by the Board of Directors of Thames Water Holdings on or prior to May 29, 2002 to give Chardavoyne at least twelve months' written notice of termination of his employment as required by Section 11.1 of the Agreement.

16.    The Letter and the Draft Agreement are not notice of termination pursuant to Section 12.3. Chardavoyne could only be automatically terminated "with immediate effect" by his having reached age 65. Chardavoyne's date of birth is March 12, 1948.

17.    Chardavoyne has notified Thames Water Holdings that the Draft Agreement was not acceptable in the form handed to him.

18.    Chardavoyne has also repeatedly advised Thames Water Holdings that the Letter is not a notice of termination under Section 11.1 of the Agreement, and has repeatedly stated the reasons therefor.

19.    Subsequent to Chardavoyne's proposed modification to the Draft Agreement, Thames Water took the position that the Letter and Draft Agreement were notice of termination under Section 11.1 of the Agreement.

20. Thames Water has continued to maintain that position without ever providing any satisfactory explanation for how the Letter and Draft Agreement could fairly be read as a notice of termination under Section 11.1 of the Agreement.

21. Defendants have not paid Chardavoyne his wages for services after June 6, 2003.

22. On May 29, 2003, Defendants terminated payment of all of Chardavoyne's employee benefits.

23. On June 30, 2003, Chardavoyne's medical insurance benefits expired without renewal by Defendants.

24. Since Chardavoyne's May 29, 2002 meeting with James McGivern and Matthew Huckin, Defendants have repeatedly deprived and have attempted to deprive Chardavoyne of his rights and benefits under the Agreement, including, among other things:

- a. falsely representing to Chardavoyne that the benefits of the Draft Agreement were more favorable to Chardavoyne than the benefits secured by the Agreement when in fact they were not;

- b. threatening to withhold continuing medical insurance benefits to which Chardavoyne has a right by federal statute, including such rights and benefits under the Consolidated Omnibus Budget Reconciliation Act (COBRA), to coerce him to accept the Draft Agreement;

- c. failing and continuing to refuse to provide "written notice" of termination as required by the Agreement and Section 11.1. therein;

- d. contending that Defendants have given Chardavoyne notice of termination while simultaneously threatening to cut off his employee benefits if he sought employment elsewhere;

- e. falsely accusing Chardavoyne of harassing Defendants' employees and refusing to provide details of such alleged harassment;

- f. withholding payment of compensation which Chardavoyne earned and to which he is entitled;

      g.      withholding payment of RWE AG Stock which Chardavoyne earned and to which he is entitled, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan; and

      h.      refusing to provide Chardavoyne an accurate federal income tax W-2 form for 2003, despite Chardavoyne's repeated requests.

25. Simply stated, rather than to follow the well established rules of corporate governance, and to honor the contractual terms of the existing Agreement, certain employees within the Thames Water enterprise wrongfully sought to compel or pressure Chardavoyne's resignation with immediate effect in an effort to deny Chardavoyne his rights and to avoid Defendants' contractual and legal obligations. Although these employees of the Thames Water enterprise have been advised of the Company's legal obligations, they have refused to permit the Company to comply with those obligations, absent the filing of the original Complaint, the Amended Complaint and this Second Amended Complaint.

**COUNT I**
**(BREACH OF CONTRACT)**

26. Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 25 above as if fully restated herein.

27. Chardavoyne and Defendants were parties to a contract—the Agreement— under which Chardavoyne was entitled to receive, among other things, compensation and benefits as provided by the Agreement and the good faith and fair treatment demanded by law.

28. Further, Defendants were bound by the Agreement to follow specific procedures in the event Chardavoyne was to be terminated. Chardavoyne was not terminable at-will.

29. Chardavoyne fully performed under the Agreement and served Defendants with hard work and distinction in the critical roles of President and Country Director-US, among others, with the expectation that his efforts would be recognized and that the terms of the Agreement would be honored.

30. Instead, as set forth above and in particular in Paragraph 24, Defendants breached the Agreement, which has included, without limitation, the following:

   a. Defendants sought to compel or pressure Chardavoyne's resignation with "immediate effect."

   b. Defendants owe and have not paid Chardavoyne wages for his continuing service as President of Thames Water Holdings and Thames Water North America after June 6, 2003.

   c. Defendants have wrongfully withheld employee benefits due to Chardavoyne under the Agreement, including without limitation retirement benefits, medical insurance, dental insurance, life and long term disability insurance, company car, and bonuses. Chardavoyne's medical insurance benefits expired without renewal on June 30, 2003.

   d. Defendants owe and have wrongfully failed to pay shares of RWE AG stock to Chardavoyne which he earned and to which he is entitled, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan.

   e. Defendants owe and have not paid Chardavoyne all payments due for company car-related expenses pursuant to Section 7 of the Agreement. Defendants also demanded in violation of the Agreement that Chardavoyne deliver the company car to New Jersey, although the company car has now been retrieved by Defendants and returned to them.

31. Defendants have also breached the Agreement by making false accusations about Chardavoyne; threatening to withhold and cut off compensation and benefits, including medical benefits, to which he has a right; and refusing to allow him to seek employment or to provide him with necessary tax forms.

32. Chardavoyne has suffered substantial damages as a result of Defendants' breach of the Agreement.

## COUNT II
### (FAILURE TO PAY WAGES PURSUANT TO CONN. GEN. STAT. § 31-72)

33. Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 32 above as if fully restated herein.

34. As described above, Defendants owe and have not paid Chardavoyne wages for his continuing service as President of Thames Water Holdings and Thames Water North America after June 6, 2003.

35. Pursuant to CONN. GEN. STAT. § 31-72, Chardavoyne is entitled to twice the full amount of wages unpaid and owed to him under the Agreement, as well as all costs and attorney's fees associated with this litigation.

## COUNT III
### (CONVERSION)

36. Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 35 above as if fully restated herein.

37. Chardavoyne has earned and is entitled to shares of RWE AG stock, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan (the "RWE Stock").

38. Defendants have not, to date, paid Chardavoyne the RWE Stock to which he is entitled, and have therefore wrongfully and indefinitely deprived Chardavoyne of his property.

39. Defendants have deprived Chardavoyne of his RWE Stock without authorization.

40. By depriving Chardavoyne of his RWE stock wrongfully, indefinitely and without authorization, Defendants have converted Chardavoyne's property and have caused him substantial damages.

### COUNT IV
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

41. Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 40 above as if fully restated herein.

42. As described above, Chardavoyne was entitled to receive, among other things, compensation and benefits as provided by the Agreement and the good faith and fair treatment demanded by law.

43. Chardavoyne fully performed under the Agreement and served Defendants with hard work and distinction in the critical roles of President and Country Director-US, among others, with the expectation that his efforts would be recognized and that the terms of the Agreement would be honored.

44. Further, Defendants were bound by the Agreement to follow specific procedures in the event Chardavoyne was to be terminated. Chardavoyne was not terminable at-will.

45. Instead, Defendants turned against Chardavoyne in bad faith, not only to avoid the Agreement but to injure him. As set forth above and in particular in Paragraph 24, Defendants purposely set out to harm and disadvantage Chardavoyne by seeking to compel or pressure his resignation with "immediate effect" in violation of the Agreement; by making false representations to him; making false accusations about him; refusing to pay him compensation, benefits and RWE AG stock which he has earned and to which he is entitled; threatening to

withhold and cut off compensation and benefits, including medical benefits, to which he has a right; and refusing to allow him to seek employment or to provide him with necessary tax forms.

46. Defendants have wilfully and maliciously denied Chardavoyne's right to receive some or all of the benefits as set forth in the Agreement in total disregard of his interests.

47. Defendants' misconduct is the product of an evil motive and dishonest purpose to serve their own self-interest. By their bad faith conduct, Defendants breached the implied covenant of good faith and fair dealing and caused Chardavoyne substantial damages.

48. Alternatively, to the extent Chardavoyne was terminable at will, Defendants' bad faith conduct violates important public policies, including, without limitation, protecting employees from their employer's threats and attempts to abrogate medical insurance rights granted by federal statute, protecting employees from unreasonable refusals to pay compensation and benefits properly earned, and preventing employers from interfering with an employee's compliance with the federal income tax laws.

WHEREFORE, the Plaintiff prays that this Court find that Defendants have breached the Agreement, failed to pay wages, converted Plaintiff's property, and breached the implied covenant of good faith and fair dealing, and award Plaintiff twice the full amount of wages unpaid and owed thereunder; the full value of all benefits owed and wrongfully withheld, including without limitation the value of all retirement benefits, medical and other insurance benefits, and the costs of company car expenses; the full value of all bonuses and incentive compensation owed and wrongfully withheld; shares of RWE Stock belonging to Chardavoyne, including without limitation 872 shares; punitive damages, including all costs and attorneys' fees related to this action; and such other and further relief as the Court may deem just and proper.

PLAINTIFF DAVID E. CHARDAVOYNE

By: _____
James R. Hawkins II (ct00128)
William M. Tong (ct25304)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689
Telephone: (203) 325-5000
Facsimile: (203) 348-5777
E-mail: jhawkins@fdh.com

{00101268; 4; 1103-2}