UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE | ) | |
| | ) | CASE NUMBER: |
| Plaintiff, | ) | 3:03CV56 (WWE) |
| | ) | |
| vs. | ) | |
| | ) | |
| THAMES WATER HOLDINGS | ) | |
| INCORPORATED, THAMES WATER | ) | |
| NORTH AMERICA INC., | ) | |
| | ) | |
| Defendants. | ) | January 18, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THE COMPLAINT**

INTRODUCTION

Plaintiff David E. Chardavoyne (the "Plaintiff," "Chardavoyne"), by his attorneys Finn Dixon & Herling LLP, respectfully submits this Memorandum in support of Plaintiff's Motion for Leave to Amend the Complaint (the "Motion to Amend"), and in particular for leave to file a Second Amended Complaint (the "Second Amended Complaint") substantially in the form attached as Exhibit A to the Motion. Plaintiff has requested, pursuant to FED. R. CIV. P. 15(a), that Defendants Thames Water Holdings Incorporated ("Thames Holdings") and Thames Water North America, Inc. ("Thames North America") (collectively, the "Defendants") consent to the Motion to Amend. Defendants have declined to do so, claiming that it is "too late" to amend because, allegedly, Plaintiff has been aware of the additional claims he proposes since the case commenced and there has already been a prior amendment. To the contrary, the Court should allow the requested amendment now precisely because these claims have not been known from the outset, and are based on continuing wrongful conduct. Far from being too late, Defendants

{00108037; 6; 1103-2}

filed an Amended Answer, including amended counterclaims, little more than a month ago; discovery has just begun; no depositions have been taken; and the delay in this case has been caused solely by Defendants' repeated and unsuccessful motions to dismiss or transfer. Because Defendants' ability to defend will not be prejudiced by the proposed amendment, and leave to amend is freely granted in this Court, the Court should grant Plaintiff's motion.

### BACKGROUND

This case arises from a dispute surrounding Chardavoyne's employment agreement (the "Employment Agreement"), the rights and obligations thereunder, and the conduct of the parties. On May 29, 2002, Chardavoyne was handed a letter and draft separation agreement that violated the Employment Agreement. After efforts to resolve this dispute proved unsuccessful, Chardavoyne brought a declaratory judgment action seeking a declaration of his rights under the Employment Agreement. At that time, Chardavoyne continued to receive his salary and benefits.

Rather than attempt to cooperate in the prompt resolution of this dispute, Defendants moved to dismiss for lack of personal jurisdiction and improper venue (the "First Motion to Dismiss"), seeking to disadvantage Plaintiff by attempting to move the case to a location inconvenient to Plaintiff and presumably more favorable to Defendants. While the motion was pending, Defendants stopped payment of Chardavoyne's salary and certain of his benefits. Plaintiff was compelled to amend his complaint as of right on July 16, 2003, as no answer had yet been filed (the "Amended Complaint"), to allege a claim for damages and to add Thames North America as a Defendant because it was the corporate entity through which Plaintiff received his compensation.

After the filing of the Amended Complaint, the Court denied the First Motion to Dismiss as moot, but Defendants moved to dismiss again for improper venue and for transfer (the

"Second Motion to Dismiss"). The Court later denied the Second Motion to Dismiss on October 26, 2004, adopting a Recommended Ruling by the Magistrate Judge which found that because Defendants omitted to move to dismiss based on lack of personal jurisdiction, they thereby affirmatively waived any personal jurisdiction argument. In so doing, Defendants also effectively conceded venue in this Court. Transfer was denied as well. The motions to dismiss having finally been rejected, Defendants later failed to file a timely answer on November 9, 2004, filing late on November 22, 2004, less than two months ago. On December 14, 2004, Defendants filed an Amended Answer, Affirmative Defenses and Counterclaims, barely a month ago.

Counsel for Chardavoyne first discussed the amendment proposed here with Defendants' counsel on or about December 3-4, 2004. Defendants' counsel indicated that he would not consent without first reviewing the proposed amendment. After further preparation and revision, a draft Second Amended Complaint was sent to Defendants' counsel on December 23, 2004. Defendants' counsel declined to consent on January 4, 2005, claiming that it was "too late" to amend because Plaintiff allegedly has been aware of the claims he proposes to add since the inception of this case, and Plaintiff has previously amended his complaint

### SUMMARY OF PROPOSED AMENDMENTS

Chardavoyne requests leave to file the Second Amended Complaint to amplify and expand his existing claims for breach of the Employment Agreement, and to add claims for conversion and for Defendant's bad faith and breach of the implied covenant of good faith and fair dealing. Count I of the Second Amended Complaint details the various ways in which Defendants breached the Employment Agreement and violated its terms. Defendants' refusal to pay Chardavoyne his wages, as well as company stock which he earned and to which he is

- 3 -
{00108037; 6; 1103-2}

entitled, has caused substantial damages; accordingly, Count II renews his existing claim for unpaid wages, and Count III states a new claim for wrongful conversion of the stock. Finally, Defendants' breach of the Employment Agreement has been willful and mean spirited, and their conduct—failing to give notice as required by the Employment Agreement, seeking to abrogate Chardavoyne's rights thereunder, threatening repeatedly to cut off or abrogate his rights under COBRA, directing him to "work at home" while unreasonably preventing him from looking for another job, withholding payment of stock, compensation and benefits, and threatening to interfere with his new employment—leads inevitably to the conclusion that Defendants are acting in bad faith with the intent to injure Chardavoyne and to deprive him of his rights under the Employment Agreement and at law. Chardavoyne has therefore stated a claim for breach of the implied covenant of good faith and fair dealing at Count IV. Now that Chardavoyne has alleged claims for damages, he will remove allegations relating to the claim for declaratory relief, since they are no longer necessary.

I.   **LEAVE TO AMEND IS FREELY GRANTED UNDER THE FEDERAL RULES**

Unless the amendment is to occur before a responsive pleading is served (or within 20 days of the original pleading if no responsive pleading is allowed), which is not the case here, Rule 15(a) of the Federal Rules of Civil Procedure provides

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

FED. R. CIV. P. 15(a). It is well-established that leave to amend under Rule 15(a) "shall be freely given when justice so requires," and that such liberality in pleading is a "mandate . . . to be heeded." *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Wells v. Harris,* 185 F.R.D. 128, 131 (D. Conn 1999) (Eginton, J.); *Victor G. Reiling Assocs. v. Fisher-Price, Inc.,* No. 3:03CV222 (JBA),

2004 WL 2381719, at * 2 (D. Conn. Sept. 30, 2004). As this Court has held: "This is well-settled law. It is rare that leave to amend should be denied." *Wells*, 185 F.R.D. at 131 (internal citations and quotations omitted).

The Supreme Court in *Foman* explained that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman,* 371 U.S. at 182. The decision whether to amend is committed to the discretion of the District Court, but the *Foman* Court directed that leave to amend shall not be denied except with justification of such factors as the following:

    a.    undue delay;

    b.    bad faith;

    c.    dilatory motive;

    d.    repeated failure to remedy problems in the complaint;

    e.    undue prejudice; or

    f.    futility of amendment.

*Id.* These liberal rules are intended to "avoi[d] piecemeal litigation" which "serves the interests of judicial economy." *Reiling*, 2004 WL 2381719, at * 5.

## II. ANY DELAY IN THIS CASE HAS BEEN CAUSED LARGELY BY DEFENDANTS

It is not "too late" to amend in this case. Defendants' two (2) unsuccessful motions to dismiss—based on personal jurisdiction and venue arguments that were essentially mooted by Defendants' own waiver of personal jurisdiction—consumed nearly a year and half of the 2 years that this case has been before the Court. The Second Motion to Dismiss was denied a little more than two months ago on October 26, 2004. Any further attempt by Chardavoyne to amend his

{00108037; 6; 1103-2}

Complaint during the pendency of these motions would have been procedurally confusing and may have contributed to further delay.

Because of Defendants' motions, this case has only just begun. Discovery is still in its preliminary stages: the parties' initial document productions are still in process and no depositions have been taken. Defendants' answer was late, and Defendants' amended answer and amended counterclaims were filed barely a month ago. Defendants' FED. R. CIV. P. 26(a) Initial Disclosures were also untimely, served only recently on November 17, 2004 and long after the parties' FED. R. CIV. P. 26(f) conference. This Court granted leave to amend in the similar *Reiling* case because the plaintiffs moved to amend "prior to the close of discovery and well before motions for summary judgment were due." The very same can be said of the case at bar. *Id.* at * 4. *See also Wells,* 185 F.R.D. at 132 (permitting amendment where the case was still in its "infancy," and prior to discovery).

## III. THE PROPOSED AMENDMENT WOULD NOT UNDULY PREJUDICE DEFENDANTS' DEFENSE

Defendants' opportunity and ability to defend in this case would not be prejudiced by any additional time necessary for the proposed amendment and responsive pleading. Likewise, Defendants' defense would not be prejudiced by the additional claims proposed, because these claims seek to amplify existing claims and to redress a course of wrongful conduct *that continues*. In *Wells*, the Court found:

> [T]he wrongful course of conduct as alleged in the 1990 amended complaint is alleged to have continued until 1992. A defendant is not prejudiced by an amendment adding allegations of further wrongful conduct by the defendant against the background of many similar allegations . . . *Amplification of previously alleged claims is one of the clearest cases for leave to amend.*

*Id.* Defendants' initial breach of contract, which Chardavoyne attempted to resolve through a declaratory judgment action, has regrettably blossomed into claims for damages, an action for conversion and for breach of the implied covenant of good faith and fair dealing, among other claims, because Defendants continue to attempt to abuse and injure Chardavoyne. Set forth below are recent examples of Defendants' continued bad faith efforts to injure Chardavoyne and to deny him his contractual rights:

a. Chardavoyne's claim for conversion accrued after Defendants failed to pay stock which he earned and to which he is entitled. Chardavoyne was awarded 872 shares of RWE AG stock as a bonus under the Thames Water/RWE Long Term Incentive Plan. If Chardavoyne was terminated on May 29, 2002, as Defendants allege, the stock should have been paid at that time. If not, Chardavoyne resigned on December 10, 2004, and should have been paid his stock then. No payment of the stock, which Chardavoyne earned and to which he is entitled, has been made.

b. On behalf of Defendants, James McGivern sent a letter to Chardavoyne dated December 21, 2004, in which he cited Chardavoyne's COBRA payments as proof of termination. Such payments were in fact expressly agreed by counsel to have been made without prejudice to Chardavoyne's position in this case.

c. In a letter from Joanne Volk, on behalf of Defendants, dated November 3, 2004, Defendants also threatened to prematurely cut-off Chardavoyne's COBRA benefits as of November 30, 2004, even though such benefits were to continue until December 31, 2004.

d. After Chardavoyne secured new employment as President and Chief Executive Officer of the San Antonio Water System ("SAWS"), which was announced publicly on November 21, 2004—and, importantly, after Chardavoyne had already resigned his position with Thames Holdings on December 10, 2004 and returned his company car to Defendants on December 14, 2004—Defendants' made a baseless counterclaim for statutory theft, including "embezzlement."

e. After Chardavoyne was elected to this new position, Defendants' counsel advised counsel for Chardavoyne on at least 2 occasions that they intended to take the deposition of Chardavoyne's new superiors, allegedly for the purpose of determining whether Chardavoyne made any misrepresentations or admissions during his interview, however unlikely. Coupled with its bad faith settlement offer, this was an attempt to extort a

favorable settlement by dragging Chardavoyne's new employer into this litigation.

No prejudice will come to Defendants' defense from amending the complaint to include claims for this bad faith conduct, which amplifies Defendants' breach of its obligations under the Employment Agreement and states additional claims for conduct that occurred even after the first amendment in this case. Denial of Chardavoyne's motion to amend, however, would prejudice his ability to seek redress for Defendants' continuing bad faith.

WHEREFORE, Plaintiff David E. Chardavoyne respectfully requests that the Court grant Plaintiff's Motion for Leave to File a Second Amended Complaint and such other and further relief as the Court may deem just and proper.

PLAINTIFF DAVID E. CHARDAVOYNE

By: *(signature)*
James R. Hawkins II (ct00128)
William M. Tong (ct25304)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689
Telephone: (203) 325-5000
Facsimile: (203) 348-5777
E-mail: jhawkins@fdh.com

## **CERTIFICATION**

This is to certify that a true and correct copy of the foregoing was delivered by United States Mail, first class, postage-prepaid to the following this 18th day of January, 2005:

>Jonathan B. Orleans, Esq.
>Zeldes, Needle & Cooper, P.C.
>1000 Lafayette Boulevard
>Suite 500
>Bridgeport, CT  06604

>_____
>James R. Hawkins II