UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | No. 03-CV-56 (WWE) |
| V. | : | |
| | : | |
| THAMES WATER HOLDINGS | : | |
| INCORPORATED and THAMES WATER | : | |
| NORTH AMERICA, INC., | : | |
| | : | |
| Defendants. | : | February 9, 2005 |

### DEFENDANT THAMES WATER HOLDINGS INCORPORATED'S AND THAMES WATER NORTH AMERICA, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

The defendants, Thames Water Holdings Incorporated ("TWHI") and Thames

Water North America, Inc. ("TWNA") (collectively "Thames Water" or "Defendants")

submit this memorandum of law in opposition to the Motion For Leave to Amend the

Complaint ("Motion to Amend") filed by plaintiff, David E. Chardavoyne

("Chardavoyne" or "Plaintiff").  Thames Water opposes Plaintiff's motion because the

two additional counts contained in Plaintiff's proposed Second Amended Complaint

(attached as Exhibit A to Plaintiff's Motion to Amend the Complaint) are based on the

same facts that existed at the time Plaintiff filed his first Complaint in April 2003,

Plaintiff offers no satisfactory explanation for the almost 2-year delay between his first

Complaint and his Proposed Second Amended Complaint, and granting the motion will

cause Thames Water prejudice, as paper discovery is nearly complete.  Accordingly,

Thames Water respectfully requests that the Court deny Plaintiff's Motion to Amend the

Complaint so that the case can be economically and speedily tried on its merits, or in the

alternative, award to Thames Water costs of responding to a Second Amended
Complaint, and related discovery.

## I. BACKGROUND

The dispositive issue in this case is simply whether Thames Water provided the
proper 12 months' notice of termination of Plaintiff's employment under his Employment
Agreement. See Employment Agreement attached as Exhibit 1 to Plaintiff's Amended
Complaint, dated July 16, 2003. In both his original Complaint and his Amended
Complaint, Plaintiff sought a declaratory judgment that he had received sufficient notice,
and brought the breach of contract and wage claims to collect damages.

Plaintiff based his wage and breach of contract claims on the single ground that
Thames Water did not provide sufficient notice of termination, relying upon a very
strained and technical reading of section 11.1 of the Employment Agreement. Under the
Employment Agreement, Thames Water could terminate Plaintiff's employment for any
reason or no reason simply by providing 12 months' written notice pursuant to section
11.1. Under the Employment Agreement, Thames Water could also assign Plaintiff no
work and require him to stay away from its premises. See Employment Agreement § 14.

On May 29, 2002, James McGivern, Managing Director, Thames Water
Americas and Plaintiff's line manager, and Matthew Huckin, Human Resources Director,
Thames Water Americas, met with Plaintiff and told him that his services were no longer
needed. They told Plaintiff that William Alexander, CEO of Thames Water Plc., had
authorized the termination of Plaintiff's position. At that meeting, Mr. McGivern and
Mr. Huckin gave Plaintiff a letter, immediately relieving him of all duties for the twelve
months until his employment would be terminated on May 29, 2003. See Letter dated

May 29, 2002 (attached as Exhibit 2 to Amended Complaint).  Along with that letter,

McGivern and Huckin also provided to Plaintiff a proposed Separation Agreement setting

forth certain terms of separation of his employment, which by its terms made clear that it

was an <u>alternative</u> to the terms of separation under the Employment Agreement and that

Thames Water had provided notice of termination of Plaintiff's employment on May 29,

2002.  See Separation Agreement §§ 2.01, 2.02, 2.03, attached as Exhibit 3 to Plaintiff's

Complaint.  The May 29, 2002 letter advised Plaintiff of his right to consult his own

lawyer concerning the proposed Separation Agreement, and gave Plaintiff twenty-one

days to accept the Separation Agreement.  On June 3, 2002, Plaintiff rejected the

proposed Separation Agreement, leaving in place the Employment Agreement, which

terms governed his separation from Thames Water.  See Letter dated June 3, 2002

attached hereto as Exhibit 1.

        On June 3, 2002, Plaintiff disputed that the May 29, 2002 letter constituted proper

written notice of termination under the Employment Agreement.  See Exhibit 1.

Thereafter, beginning on June 10, 2002, Thames Water sent several letters to Plaintiff's

counsel, maintaining that the May 29, 2002 letter was in fact proper 12 months' notice of

the termination of Plaintiff's employment, any one of which was itself sufficient notice

under the Employment Agreement.  See, e.g., Letters dated June 10, 2002, July 3, 2002,

August 29, 2002 and November 8, 2002, attached hereto as Exhibit 2.   Nonetheless,

Plaintiff filed this claim in federal court in April 2003, arguing that he had never been

given proper written 12 months' notice under his Employment Agreement and that he

continued to be employed by Thames Water until such notice was provided.  On July 16,

2003, Plaintiff amended his complaint as of right, adding THNA as a defendant, but making no substantive changes to his claims.  See Amended Complaint.

The parties conducted no discovery while Defendants' Motion to Transfer Venue was pending, but on September 7, 2004, they agreed upon a proposed schedule, which provided that Plaintiff would be allowed to file motions to further amend his complaint until September 15, 2004.  Report of Parties' Planning Meeting, dated September 7, 2004 at 6.  On about October 18, 2004, Thames Water served on Plaintiff its interrogatories and request for documents and a notice of deposition of David E. Chardavoyne for December 3, 2004.  (Upon request by Plaintiff, Plaintiff's deposition was postponed from December 3, 2003, and a February deposition is now being discussed.)  On October 21, 2004, Plaintiff served his requests for documents on Thames Water.  On December 6 and 7, 2004, Plaintiff objected to Thames Water's Interrogatories and document Requests, and counsel subsequently resolved these issues by telephone.  On December 20, 2004, Thames Water objected to Plaintiff's Requests, and counsel subsequently resolved these issues by telephone as well.  On about January 18, 2005, Plaintiff provided to Thames Water's his responsive documents, and on about February 4, 2005, Thames Water provided to Plaintiff its responsive documents.   Upon information and belief, in January 2005, Plaintiff accepted employment in, and has relocated to, Texas.

Plaintiff now moves for leave to amend his Amended Complaint to add two new counts, conversion and breach of the implied covenant of good faith and fair dealing, arguing that "the Court should allow the requested amendment now precisely because these claims have not been known from the outset, and are based on continuing wrongful conduct."  Pl. Mem. at 1.

## II.    ARGUMENT

### A. STANDARD FEDERAL RULE CIVIL PROCEDURE 15A

Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'. . .   If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

"The [Federal] Rules themselves, [however], provide that they are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' Rule 1." *Foman*, 371 U.S. at 182.  Moreover, "[w]hile Rule 15(a) provides that leave to amend should 'be freely given,' it is within the Court's discretion 'to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Reiling v. Fisher Price*, 2004 WL 2381719 at *4 (D. Conn. 2004) (quoting *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990) (citations omitted)); *see also MacDraw, Inc. v. CIT Group Equipment Financing*, *Inc*., 157 F.3d 956,  962 (2d Cir. 1998).

Moreover, "[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." *Reiling*, 2004 WL 2381719 at *4 (Court granted motion to amend, which came one year after filing suit, and plaintiffs offered satisfactory explanations for their delay).

### B. THERE IS NO SATISFACTORY EXPLANATION FOR THE DELAY IN AMENDING.

Plaintiff asserts that it would have been procedurally confusing to amend the Complaint to include his new claims at an earlier date, see Plaintiff's Memorandum In

Support of Motion to Amend Complaint (hereinafter "Pl. Mem.") at 6, and that he should be permitted to amend at this time because these additional claims are "based on continuing wrongful conduct," and the Defendants have continued their course of wrongful bad faith conduct.   Pl. Mem. at 1, 6-8.

1.    THERE ARE NO CONTINUING WRONGFUL ACTS BY THE DEFENDANTS.

Plaintiff relies on *Wells v. Harris,* 185 F.R.D. 128 (D. Conn. 1999) for the proposition that Thames Water's defense "would not be prejudiced by the additional claims proposed, because these claims seek to amplify existing claims[1] and to redress a course of wrongful conduct *that continues*."  Pl. Mem. at 6 (emphasis in original).  Thus, Plaintiff bases his claim of a right to amend, more than one and half years after his first complaint and after already amending his complaint in July 2003, on Defendants' allegedly continuing wrongful conduct.  See Pl. Mem. at 1.

Under *Wells*, "where . . . the original amended complaint placed the defendants on notice that the alleged wrongful conduct was of a continuing nature, the defendants are expected to defend against all claims arising out of that course of conduct, whether accruing before or after the amended complaint was filed."  *Wells*, 185 F.R.D. at 133.  The Court in *Wells* granted the motion to serve a supplemental pleading under F.R.C.P. 15(d),[2] where "these events [in the supplemental pleading] are directly connected to, and

---

[1]  Thames Water does not object to Plaintiff's changes in the wording of the original three counts. *See, e.g., Leased Optical Departments-Montgomery Ward, Inc. v. Opti-Center, Inc.,* 120 F.R.D. 476, 478 (D.N.J., 1988) (court granted motion to amend where "proposed amendment to Count I clarifies and draws focus to plaintiffs' allegations without making substantive changes. It performs the clarifying function envisioned by Rule 15(b), which freely permits amendments to conform to the evidence, and it injects no new cause of action.").

[2]  Although Plaintiff moves to amend under F.R.C.P. 15a, in *Wells*, the Court granted the motion to supplement facts of a continuing wrongful nature under 15d. 185 F.R.D. at 133. Moreover, the standard for such supplementation is lower than the standard under 15a. "Leave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading.  It should also be

6

a continuation of, the defendants' wrongful conduct  as set forth in plaintiffs' prior amended complaint as, again, a comparison of the two complaints demonstrates."  *Id.* ("A defendant is not prejudiced by an amendment adding allegations of further wrongful conduct by the defendant against the background of many similar allegations.").

Here, neither of Plaintiff's previous complaints provides Thames Water with notice of wrongful conduct that is of a continuing nature. See Complaint and Amended Complaint.  The gravamen of both the original Complaint and the Amended Complaint, is that on May 29, 2002, Thames Water did not provide proper 12 months' notice of termination of Plaintiff's employment and, accordingly, wrongfully terminated him effective May 29, 2003.   The Proposed Second Amended Complaint does not allege continuation of the same wrongful conduct as alleged by the Plaintiff in his Complaint and Amended Complaint that would support a motion to amend.

Rather, each of the continuing wrongful bad faith acts alleged in the Proposed Second Amended Complaint, rightfully and legitimately flows from Defendants' position that Mr. Chardavoyne was provided sufficient written notice of termination and his employment was properly terminated pursuant to the terms of his Employment Agreement, and from Defendants' subsequent legal defense of Plaintiff's ensuing lawsuit against them.  Plaintiff alleges the following as examples of Defendants' "continued bad faith efforts to injure Plaintiff and to deny him his contractual rights."  Pl. Mem. at 7:

a.     Plaintiff claims that Thames Water failed to pay Plaintiff 872 shares of RWE AG stock as a bonus under the Thames Water Long Term Incentive Plan.  *See* Pl.

---

granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay of trial, inconvenience and will not prejudice the rights of any other party."  *Id.*  at 132.  If plaintiff's motion to amend was read to be a motion to supplement, it should be denied for the same reasons as set forth in this memorandum.

Mem. at 7.   Plaintiff bases his proposed new claim for conversion on these allegations,

claiming he had earned the stock and was entitled to it on May 29, 2002, if he had been

terminated on May 29, 2002.  *See* Pl. Mem. at 7.[3]  Thus, these alleged bad-faith acts

occurred before Plaintiff's filing of the Complaint and Amended Complaint and cannot

reasonably be construed as continuing conduct merely because Defendants have

continued to maintain their position that the Long Term Bonus Plan is discretionary and

the Chief Executive exercised his direction and chose not to make any award to Plaintiff.

See Exhibit 2, Letter dated June 10, 2002 at 2.

> b.    Plaintiff construed a letter from Defendants to Plaintiff dated December

21, 2004 as an assertion that Plaintiff's payment of COBRA premiums was evidence of

termination, and objected because "[s]uch payments were in fact expressly agreed to by

counsel to have been made without prejudice to Chardavoyne's position in this case."  Pl.

Mem. at 7.   Defendants' counsel timely responded:

> I specifically dispute your assertion that Mr. McGivern's letter "attempts
> to disregard the agreement between us, on behalf of our clients, that [I]
> acknowledged within the last month that any 'COBRA' payments made
> by Mr. Chardavoyne were without prejudice."   We agreed that any
> COBRA payments made by Mr. Chardavoyne were without prejudice to
> his position that his employment with Thames Water Holdings had not
> been properly terminated.    Mr. McGivern's statements that Mr.
> Chardavoyne was "paid all compensation and benefits through May 2003
> consistent with the terms of [his] Employment Agreement, and [he has]
> been receiving COBRA continuation coverage" is in no way inconsistent
> with our agreement.

Letter dated January 11, 2005 attached hereto Exhibit 3.  This is not evidence of bad faith

or any wrong, much less a continuing wrong based on the same claims in Plaintiff's

Complaint and Amended Complaint.

---

[3]   Thames Water alleges that Plaintiff was given 12 months' notice on May 29, 2002 and Plaintiff's
position terminated on May 29, 2003.  Had Plaintiff been awarded the discretionary bonus, he would have
received it in April 2003.  See Exhibit 2, Letter dated June 10, 2002 at 2.

   c.  Plaintiff claims that in a letter dated November 3, 2004 from Joanne Volk, a Human Resources employee of Thames Water, Defendants threatened to prematurely cut off Plaintiff's COBRA benefits as of November 30, 2004, even though such benefits were to continue until December 31, 2004.  Pl. Mem. at 7.  Upon their receipt of Plaintiff's letter to Joanne Volk, counsel for Thames Water determined that Ms. Volk had mistakenly calculated the 18-month period for COBRA coverage.  Accordingly, counsel for Thames Water wrote to counsel for Plaintiff and cured the mistake, stating that "Thames Water Holdings, Inc. will continue Chardavoyne's COBRA medical coverage up to and including December 31, 2004."  See Letter dated December 1, 2004 attached hereto as Exhibit 4.   Again, this is not evidence of bad faith or any wrong, much less a continuing wrong based on the same claims in Plaintiff's Complaint and Amended Complaint.

   d.  Plaintiff claims that Defendants made a "baseless counterclaim for statutory theft, including embezzlement."  Pl. Mem. at 7.  Contrary to Plaintiff's assertion, the facts that Plaintiff had secured new employment and had already resigned his position shortly before such counterclaim was filed, *id.*, but more than a year and a half after he refused to return the car, do not invalidate the theft claim.  Defendants are entitled to pursue their legal remedies based on Plaintiff's wrongful conduct, and bringing a counterclaim cannot be construed as continuing any bad faith wrongful conduct that formed the basis of Plaintiff's claims brought in his Complaint and Amended Complaint.

   e.  Plaintiff claims that, coupled with Defendants' bad faith settlement offer, Defendants' counsel's notification to Plaintiff that they intended to take the depositions

of Plaintiff's new employers for the purpose of determining whether Plaintiff made any

misrepresentations or admissions during his interview, was an attempt "to extort a

favorable settlement by dragging Chardavoyne's new employer into this litigation." Pl.

Mem. at 7-8.

Counsel for Defendants timely responded to Plaintiff's letter regarding the above,

providing:

> In response to the final sentence of your letter, I assure you that Thames
> Water and American Water have no desire to interfere with Mr.
> Chardavoyne's new employment.  We are entitled, however, to discover
> statements and representations Mr. Chardavoyne has made to third parties
> concerning his employment with Thames Water and the termination of
> that employment, and we intend to take appropriate steps to discover that
> information.

 Exhibit 3, Letter dated January 11, 2005.  Thames Water merely asserted its legal right

to properly defend the lawsuit instigated by Plaintiff.

The above acts cannot reasonably be construed as bad faith or a continuation of

the same wrongful conduct that formed the basis of Plaintiff's Complaint or Amended

Complaint.  These allegations do not amplify any of Plaintiff's initial claims, [nor do they

add any new facts that go to the merits of Plaintiff's additional claims.]  Therefore, this

does not serve as a satisfactory explanation for the almost two-year delay in amending

Plaintiff's Complaint to add additional counts based essentially on facts that existed

before he filed his first Complaint.

## 2.    AN EARLIER AMENDMENT WOULD NOT HAVE BEEN PROCEDURALLY CONFUSING.

Plaintiff appears to blame the Defendants for delaying this case, and appears to

offer such delay as a reason for granting his Motion to Amend the Complaint.  Pl. Mem.

at 6.   The delays Plaintiff attributes to the Defendants are a normal feature of the

litigation process, and some such delays have been attributable to the Plaintiff as well.

Plaintiff also asserts that Defendants' filing of their first motion to dismiss based on

personal jurisdiction and venue, and their subsequent motion filed in response to

Plaintiff's Amended Complaint, "consumed nearly a year and a half of the 2 years that

this case has been before the Court." Pl. Mem. at 5. Plaintiff argues that amending the

"Complaint during the pendency of these motions would have been procedurally

confusing and may have contributed to further delay." *Id*. at 6.

To the contrary, an amendment at that time would have put Thames Water on

notice of what was needed to prepare its defense. At the least, Plaintiff should have

amended immediately after the motion to transfer was denied and before any discovery

had begun.

### 3. PERMITTING PLAINTIFF TO AMEND WILL CAUSE DELAY AND PREJUDICE TO THAMES WATER.

Permitting an amendment to Plaintiff's Amended Complaint, based on the same

conduct that was at issue in April 2003 when the suit was brought, after both sides have

responded to Requests for Production of Documents and Plaintiff has responded to

Interrogatories, when the deposition of Plaintiff is expected to be had shortly, and

discovery is scheduled to close on March 1, 2005, see Approval of Report of Parties'

Planning Meeting dated September 20, 2004, will significantly delay the case and cause

prejudice to the Defendants. *See MacDraw,* 157 F.3d at 962 (where "proposed…claim

would require additional discovery, causing undue prejudice to the defendants; and that

party's delay was unexplained….it was entirely reasonable for the judge to deny leave to

amend the Complaint."). Defendants will need to spend time and resources to respond to

the Second Amended Complaint by Motion to Dismiss and/or Answer and to serve or

respond to any additional interrogatories or requests for documents. Thames Water could have saved time and money by consolidating these efforts with earlier efforts, had it known that Plaintiff would bring these additional counts. *See, e.g., Leased Optical Departments-Montgomery Ward, Inc. v. Opti-Center, Inc.,* 120 F.R.D. 476, 478 (D.N.J. 1988) ("But for the tardy amendment, defendants' discovery relating to the contract claim could have been obtained in an essentially simultaneous manner with the fraud discovery. Due to plaintiffs' delay, however, the economies of simultaneous discovery have been lost, and piecemeal discovery results."); Pl. Mem. at 1 ("the Court should allow the requested amendment now precisely because these claims have not been known from the outset.").

### III.    CONCLUSION

Thus, Plaintiff's Motion to Amend the Complaint should be denied because Plaintiff has offered no satisfactory explanation for his delay in amending, and such amendment will prejudice Thames Water.

In the alternative, Defendants respectfully request that the Court award to Thames Water costs of responding to Plaintiff's Second Amended Complaint and any further discovery necessitated by the additional counts in Plaintiff's Proposed Second Amended Complaint. *See, e.g., Leased Optical Departments-Montgomery Ward, Inc. v. Opti-Center, Inc.,* 120 F.R.D. 476, 478 (D.N.J. 1988) ("The recovery of costs--in whole or in part--is '[t]he most common condition imposed on an amending party.' 6 Wright & Miller, § 1486 at 424 (citations omitted). If the opponent's pretrial preparation to address the amended claim 'results in his incurring further expense, the court may order that the amending party bear part or all of it.'" *Id.; see also Dussouy v. Gulf Coast Investment*

*Corp.,* 660 F.2d 594, 599 (5th Cir.1981) and *Estes v. Kentucky Utilities Co.,* 636 F.2d

1131, 1134 (6th Cir.1980).").

Respectfully submitted,

_____
Jonathan B. Orleans (ct 05440)
Felice M. Duffy (ct21379)

ZELDES, NEEDLE & COOPER,
1000 Lafayette Boulevard
P.O. Box 1740
Bridgeport, CT 06601-1740
Tel:  (203) 333-9441
Fax: (203) 333-1489
e-mail:  jorleans@znclaw.com
e-mail:  fduffy@znclaw.com

Attorneys for Defendants
Thames Water Holdings Incorporated and
Thames Water North America, Inc.

<u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent via U.S. First Class

Mail, postage prepaid, on this date, to:

        James R. Hawkins II, Esq.
        William Tong, Esq.
        Finn, Dixon & Herling LLP
        One Landmark Sq., Suite 1400
        Stamford, CT 06901-2689

Dated at Bridgeport, Connecticut on this __th day of February 2005.

_____
Felice M. Duffy