1

# FINN DIXON & HERLING LLP
### ATTORNEYS AT LAW

ONE LANDMARK SQUARE
STAMFORD, CONNECTICUT 06901-2689
TELEPHONE (203) 325-5000
FACSIMILE (203) 348-5777

JAMES R. HAWKINS II

DIRECT DIAL: (203) 325-5000
INTERNET: JHAWKINS@FDH.COM

June 3, 2002

BY FAX

Mr. Matthew Huckin
Human Resources Director
Thames Water Americas
1101 Laurel Oak Road
Suite 120
Voorhees, New Jersey 08043

      RE: David E. Chardavoyne

Dear Mr. Huckin,

    I represent David E. Chardavoyne.

    I have reviewed Mr. Chardavoyne's agreement with Thames Water Holdings Inc dated January 15, 1999 (the "Agreement"), the draft separation agreement, (the "Draft"), your letter to Mr. Chardavoyne dated May 29, 2002 (the "Letter") and have discussed the matter with Mr. Chardavoyne.

    The Draft and the Letter are unacceptable to Mr. Chardavoyne, because they are in violation of the Agreement in numerous material respects. Nevertheless, Mr. Chardavoyne would be prepared to negotiate the terms of a separation agreement with the Company provided:

    1. The date of termination is a mutually agreeable date not earlier than July 17, 2003 (the "Termination Date."). In addition to his right to no less than 1 year's notice, Mr. Chardavoyne currently has 32 days accrued vacation;

    2. From now until the Termination Date, Mr. Chardavoyne shall be entitled to his full annual compensation including, base salary, bonuses, retirement benefits and all other benefits including, but not limited to, medical insurance and automobile;

Mr. Matthew Huckin
June 3, 2002
Page 2

    3. Within 30 days of the signing of the separation agreement, Mr. Chardavoyne shall be paid a settlement sum equal to one year's base salary; and

    4. The non compete obligations under the Agreement shall remain unchanged.

    If the foregoing terms are agreeable to the Company, please have an authorized representative of the Company or its counsel contact me.

Very truly yours,

James R. Hawkins II

CC: Mr. David B. Chardavoyne

# THE LOWENBAUM PARTNERSHIP, L.L.C.

222 South Central Avenue
Suite 901
St. Louis, Missouri 63105
(314) 863-0092
Facsimile: (314) 746-4848

**Gerald M. Richardson**
(314) 746-4830
gmr@lowenbaumlaw.com

June 10, 2002

FACSIMILE TRANSMISSION:
(203) 348-5777

James R. Hawkins II
Finn Dixon & Herling LLP
One Landmark Square
Stamford, Connecticut 06901-2689

    Re:    David E. Chardavoyne

Dear Mr. Hawkins:

    This firm represents Thames Water and its subsidiary companies in the Americas Region ("Company") in labor and employment related legal issues. Matthew Huckin has referred your letter to him dated June 3, 2002 to me to provide the Company's response.

    The Company views Mr. Chardavoyne's rejection of its separation agreement offer and his counterproposal as wholly unrealistic. Of course, Mr. Chardavoyne may reject the Company's offer. That circumstance, however, leaves him in the position of his having his employment terminated without cause pursuant to the employment agreement between him and the Company dated January 15, 1999 ("Agreement").

    Pursuant to the Agreement, the Company has the unqualified right to terminate Mr. Chardavoyne's employment without cause upon giving him twelve months' advance notice. The Company's communication of its intention to terminate his employment without cause in conjunction with its separation agreement offer initiated the beginning of the notice period if the parties reach no separation agreement. Consequently, absent such an agreement, Mr. Chardavoyne's employment ends on May 29, 2003.

    The Agreement, moreover, allows the Company to provide no work to Mr. Chardavoyne and to require him to stay away from its premises in its non-attendance provisions. Assuming the absence of a separation agreement, then the Company began its exercising of its rights pursuant to the Agreement's non-attendance provisions effective May 29, 2002. On that date, the Company clearly communicated its elimination of Mr. Chardavoyne's job, which left him with no duties to perform. In addition, it told him of its expectation for him to remove his personal belongings from the Company's premises and to return all of the Company's property in his possession or under his control.

    If the parties ultimately reach no separation agreement, the Company will continue to pay the base salary at the rate of $227,000 annually less all withholding required by law to Mr. Chardavoyne

Mr. James R. Hawkins II
June 10, 2002
Page 2

through May 29, 2003. The Company will also continue Mr. Chardavoyne's participation in its benefit plans. It, however, will give him and his dependents notices of the continuation of their health plan coverage pursuant to the Consolidated Budget Reform Act of 1985 ("COBRA") in the near future. The Company will pay that part of the COBRA continuation costs equivalent to the sums that it paid as the employer on behalf of Mr. Chardavoyne and his dependents before May 29, 2002 to continue their health plan coverage through May 29, 2003. In addition, the Company will withhold a sum equal to his contribution to health plan costs that the Company withheld from his paycheck before May 29, 2002 from its payments to him during the notice period.

In the absence of a separation agreement, Mr. Chardavoyne must take his accrued but unused vacation days that he had as of May 29, 2002 as vacation time during the notice period. As previously stated, furthermore, Mr. Chardavoyne will receive payments equal to his salary for one year, and he will have no duties. Consequently, any vacation that he will accrue between May 29, 2002 and May 29, 2003, or that he has accumulated prior to May 29, 2002 the Company requires him to take before May 29, 2003.

Mr. Chardavoyne is eligible, under the company bonus plan rules, to receive a bonus for the performance of his business unit and for his performance in relation to his personal targets, up to the date of termination, May 29, 2002. Bonus decisions are made in April of the following year to the calendar performance year in question. If at that time (April 2003) a bonus is deemed payable to Mr. Chardavoyne it will be paid with his April 2003 salary payment. The long-term incentive plan is a discretionary plan in which the Chief Executive Officer has the sole decision-making authority. The Chief Executive has exercised his discretion and chosen not to make any award to Mr. Chardavoyne.

In addition, the Agreement limited the Company's responsibility to provide a car to Mr. Chardavoyne to a specific purpose. In particular, it states: "The Company shall . . . provide the Executive with a car for his use in the business of the Company or any Group Company." If the parties reach no separation agreement, Mr. Chardavoyne lacks any need for the Company to furnish a car to him. He will do nothing between now and May 29, 2003 that would require his "use [of a car] in the business of the Company." Consequently, Mr. Chardavoyne has no right pursuant to the Agreement to a car during the notice period.

In the absence of a separation agreement, moreover, Mr. Chardavoyne has restrictions on his activities that bind him for a period of two years. During the period between May 29, 2002 and May 29, 2003, Mr. Chardavoyne cannot have any either self-employment or other employment. Pursuant to the Agreement's provisions regarding the hours of work, he must "devote the whole of his time, attention and abilities to the affairs of the Company." In addition, the Agreement imposes the following restrictions on his provision of services to any other employers:

> [T]he Executive shall not without the prior written consent of the Chief Executive directly or indirectly invest or participate in the management of, or in any capacity provide services to, any business.

Between May 29, 2003 and May 29, 2004, furthermore, the Agreement prohibits Mr. Chardavoyne from certain competitive activities. First, it forbids his either soliciting or accepting any business from the Company's either customers or prospective customers, or both. Second, the Agreement

Mr. James R. Hawkins II
June 10, 2002
Page 3

bars Mr. Chardavoyne from having either employment with or any interest in, or both, any of the Company's competitors. Third, it further prohibits him from providing any services to any of the Company's competitors, whether directly or indirectly. Finally, the Agreement forbids Mr. Chardavoyne's either soliciting any of the Company's employees to leave her or his employment with the Company.

The Company believes that it made a generous separation agreement offer to Mr. Chardavoyne given the alternative of his employment's termination without cause. Its offer provided advantages to Mr. Chardavoyne. The offer maintained the Company's payment of his salary for one year. It also added a lump sum payment of $50,000 that his employment's termination pursuant to the agreement lacks altogether. The separation agreement offer further eliminates the year of Mr. Chardavoyne's idleness that the Agreement essentially requires for a termination without cause. It further maintains essentially the same restrictive covenants as the Agreement, although it states them with greater specificity.

In view of these circumstances, the Company considers Mr. Chardavoyne's rejection of its separation agreement offer and his counterproposal to be unfortunate at a minimum. The Company asked me to explain Mr. Chardavoyne's current choices in detail, because his unrealistic counteroffer communicated two alternative messages. On the one hand, Mr. Chardavoyne misperceives the consequences of the Company's notice of his employment's termination without cause given to him on May 29, 2002. Alternatively, he lacks any desire to negotiate a separation agreement. The Company still believes that its offer presented Mr. Chardavoyne with a better alternative to the termination of his employment without cause pursuant to the Agreement. Although it will listen to any reasonable requests to negotiate changes to its offer, Mr. Chardavoyne's counteroffer far exceeded reasonable requests. Please contact me directly if Mr. Chardavoyne has a genuine interest in negotiating a realistic separation agreement and in concluding this matter within the 21-day period. Otherwise, the Company will proceed with its termination of his employment without cause pursuant to the Agreement.

Sincerely,

Gerald M. Richardson

cc:   Mr. Matthew Huckin

# THE LOWENBAUM PARTNERSHIP, L.L.C.

222 South Central Avenue
Suite 901
St. Louis, Missouri 63105
(314) 863-0092
Facsimile: (314) 746-4848

Gerald M. Richardson
(314) 746-4830

July 3, 2002

**FACSIMILE TRANSMISSION:**
(203) 348-5777

James R. Hawkins II
Finn Dixon & Herling LLP
One Landmark Square
Stamford, Connecticut 06901-2689

    Re:    David E. Chardavoyne

Dear Mr. Hawkins:

    Having consulted with my client, I am now in a position to respond to your letter to me dated June 24, 2002. You opened your letter with Mr. Chardavoyne's request for Thames Water ("Company") to pay more attorneys' fees on his behalf to compensate you to provide an alternative separation agreement. The Company will honor its agreement to pay up to $2,500 toward Mr. Chardavoyne's attorneys' fees incurred to advise him regarding his separation agreement on the basis that this should provide sufficient financial support to secure an agreement. No additional funds will be provided for this purpose.

    Your letter's second point concerned Mr. Chardavoyne's request to extend his employment. When the Company gave Mr. Chardavoyne a draft of a separation agreement on May 29, 2002, it gave him actual notice of its termination of his employment with immediate effect. In case Mr. Chardavoyne had any doubt as to the Company's intent, my letter to you dated June 10, 2002 plainly stated as follows:

> The Company's communication of its intention to terminate his employment without cause in conjunction with its separation agreement offer initiated the beginning of the notice period if the parties reach no separation agreement. Consequently, absent such an agreement, Mr. Chardavoyne's employment ends on May 29, 2003.

Consequently, on May 29, 2002, the Company started the clock running on the notice of its termination of Mr. Chardavoyne's employment effective May 29, 2003. The Company rejects his request for it to reconsider that decision.

James R. Hawkins II
July 3, 2002
Page 2

Your letter's third point involved COBRA health plan continuation rights. As I stated in our telephone conversation before you wrote your letter, the Company will continue Mr. Chardavoyne's health plan benefits during the notice period, or until May 29, 2003. It will then begin the COBRA continuation period for Mr. Chardavoyne. Consequently, he will have eligibility to continue health plan benefits at his own cost through the Company's group health plan between June 2003 and December 2004.

Your letter's fourth issue concerned vacation pay, outplacement services, and a letter of recommendation. The Company will pay a sum equal to Mr. Chardavoyne's previously accrued and unused vacation from before May 29, 2002 to him. Since Mr. Chardavoyne will do no work during the notice period, to the extent that he accrues any vacation between May 29, 2002 and May 29, 2003, he must take that vacation before May 29, 2003.

The Company will provide up to $15,000 for Mr. Chardavoyne to purchase outplacement services. He shall choose a provider of such services and provide details of the provider to the Company. It will pay the outplacement services provider directly for those services up to the stated maximum.

Similarly, the Company will provide an original reference letter from its CEO, William Alexander, if the parties enter a formal separation agreement. The letter will provide a reference that identifies the dates of Mr. Chardavoyne's employment, his job title, and his job duties. It will also thank Mr. Chardavoyne for "his contribution to the growth of the Company's business interests in the US market."

Finally, your letter states Mr. Chardavoyne's refusal to accept any changes to the restrictive covenants in his employment agreement with the Company "unless those changes reduce the scope and duration" of those restrictions. My letter dated June 10, 2002 proposed to reduce the duration of the restrictive covenants from the next two years to one year. Thus, the Company has previously made a proposal that your letter states Mr. Chardavoyne would accept. I, however, understood you to communicate his rejection of the Company's prior proposal. Please clarify exactly what Mr. Chardavoyne means by his willingness to accept changes to his restrictive covenants that reduce the scope and duration of those restrictions. Perhaps if Mr. Chardavoyne provides a specific proposal, we can negotiate a mutually acceptable modification of the restrictive covenants in his employment agreement.

If you have any questions regarding these matters, please call me to expedite matters. Otherwise, please supply me with a specific proposal from Mr. Chardavoyne regarding modifications to his restrictive covenants.

Sincerely,

Gerald M. Richardson

cc: Mr. Matthew Huckin

**BY FAX AND BY REGULAR MAIL**

James R. Hawkins II, Esquire
Finn, Dixon & Herling LLP
One Landmark Square
Stamford, CT

August 29, 2002

    **Re: David E. Chardavoyne**

Dear Mr. Hawkins:

    We appreciate your agreeing to meet with us earlier this week in an effort to resolve our disagreements regarding the termination of Mr. Chardavoyne's employment with Thames Water Holdings, Inc. ("Thames"). Regrettably, our efforts to bridge those disagreements have not been successful, despite the good faith efforts of both sides.

    We therefore wish to reconfirm the letter which Mr. Chardavoyne received on May 29, 2002. The effective date of Mr. Chardavoyne's notice of termination thus remains May 29, 2002. Moreover, we deem your correspondence with our counsel as evidence that you have rejected our proposed separation agreement. Accordingly, the terms of the employment agreement shall continue to apply until the termination of the notice period, including the bar against other employment. The remaining obligations, including the restrictions set forth in Section 22, shall remain in effect for an additional 12 months thereafter, or until May 29, 2004.

    Mr. Matthew Huckin, the Human Resources Director for Thames, will be writing Mr. Chardavoyne separately to address various benefit issues.

    There is one last item which merits some consideration. Since May 29, we have left Mr. Chardavoyne's office wholly intact, save for the removal of certain corporate minute books. Now that our efforts to resolve the matter have failed, we can no longer preserve that space. Accordingly, we will have those personal possessions of Mr. Chardavoyne which remain in the office professionally packed, insured and shipped to Mr. Chardavoyne at 27 Coventry

Page 2

Lane, Trumbull, CT 06611-1050, the last address which we have in our records. If there is another location to which these materials should be shipped, please so advise us by Friday, September 6, 2002.

Please direct any future correspondence to the undersigned.

Very truly yours,

Ari D. Levine
Legal Director

Enclosure
cc: Mr. Matthew Huckin
    Gerald M. Richardson, Esquire

DC - Hawkins 08 26 02.doc

BY FAX AND BY REGULAR MAIL

James R Hawkins, Esquire
Finn, Dixon & Herling LLP
One Landmark Square
Stamford, CT 06901

November 8, 2002

    **Re: David E. Chardavoyne**

Dear Mr. Hawkins:

    Thank you for your letter of September 18, 2002. This will also acknowledge our receipt of a letter, dated October 14, 2002, from your client to Mr. Huckin. Please accept my apologies for not responding to your letter sooner, but this letter will address both the points raised in your letter and in the letter from Mr. Chardavoyne.

    In large part, these letters essentially restate the positions you have asserted in prior correspondence and which you reiterated at our August meeting. We have responded to these previously, and therefore see nothing to gain in yet another point-by-point reply. It may be helpful, however, to make our position clear on a couple of key points.

    First, Thames has given your client notice of termination under Section 11.1(a) of the employment agreement, not under any of the subparts of Section 12. As you correctly note, Section 11 requires 12 months notice prior to the effective date of any termination. That is why the May 29, 2002 letter states that Mr. Chardavoyne will continue to receive his salary and benefits through the notice period, or through May 29, 2003. In fact, Thames has honored that obligation, and will continue to do so, making Conn. Gen. Stat. § 31-72 inapposite, even if it applied.[1]

Thames Water Americas
1101 Laurel Oak Road
Suite 120
Voorhees, NJ 08043
T 856.504.8910
F 856.504.8915
I www.thames-water.com

---

[1] In fact, Connecticut law does not apply here. The parties chose Pennsylvania law to govern any dispute, and the other state with the most connections to the pending dispute is New Jersey, which is the location of Thames' principal place of business as well as the location from which Thames expected Mr. Chardavoyne to perform his obligations.





Page 2

Second, Thames has exercised its rights under Section 14 of the Agreement, which allows Thames not to provide work to Mr. Chardavoyne or to require him to attend to work at Thames' Voorhees, New Jersey office, the address listed on the business cards Mr. Chardavoyne was kind enough to give us in New York. Our exercise of this contractual right was made clear to Mr. Chardavoyne in the May 29 letter, and at a meeting that day between Mr. Chardavoyne and Messrs. McGivern and Huckin. (We note that Mr. Chardavoyne has not reported for work, whether in Voorhees or elsewhere. Nor has he conducted business on our behalf, in compliance with our instructions.)

Third, Thames never suggested that the draft separation agreement enclosed with the May 29, 2002 letter was identical to the terms of Mr. Chardavoyne's employment agreement. To the contrary, Thames believed (and believes) that the draft separation agreement would have improved the respective position of both parties in various respects. (Among other things, your client would be free to pursue other employment now, rather than wait until next summer.) That is why your client was free to reject the draft, which he has now done. Accordingly, both parties will remain obliged by the terms of the Agreement including of course your client's obligations not to seek other employment without Thames' consent.

With regard to the specific benefits matters mentioned in Mr. Chardavoyne's recent letter, we note the following. The headings and numbers are taken from that letter, for ease of reference.

<u>Compensation</u>

1. See above comments. No further reply necessary.

2. We have previously committed that Mr. Chardavoyne will be considered in due course for a performance-related bonus through the end of the notice period, in accordance with the plan documents previously provided to him.

<u>Vacation Pay</u>

Mr. Chardavoyne has acknowledged the proper application of the vacation/holiday pay policy. This leaves solely the arguments about the proper termination date. On this, we have made our position clear.

DC - Hawkins 11 05 02





Page 3

### Benefits

1. We will continue to make a $10/month deduction from Mr. Chardavoyne's salary for dental cover until the termination date (May 29, 2003). On the termination date, he may elect to continue family-dental benefits for up to 18 months at the then-applicable rate, in accordance with COBRA. The current rate is $58.73 per month.

2. This appears to be a quibble over the wording of Mr. Huckin's letter, not a disagreement over the current estimate of the cost which Mr. Chardavoyne will have to bear if he wishes to elect to continue coverage under COBRA, or that the benefit will be continuous if he chooses to make payments. Should he wish to make those payments, he must do so to Thames, so that he can remain covered under COBRA. We trust you will correct us if we have missed the point.

3. Long-term disability insurance will continue until the termination date (May 29, 2003).

4. Mr. Chardavoyne's 401(k) and the NQDCP will be fully vested on the termination date (May 29, 2003).

5. It seems that Mr. Chardavoyne does not object to the outcome described regarding the RWE LTIP payout, and we will respect his wish to receive shares not cash.

### Attorneys Fees

Thames agreed to cover $2,500 in legal fees and it has done so. If Mr. Chardavoyne has elected to use his attorney to provide services in excess of that amount, he cannot expect Thames to pay the difference.

With that in mind, we must take issue with Mr. Chardavoyne's description of our New York meeting. First, we are a bit surprised that Mr. Chardavoyne would claim that you and he were kept in the dark regarding the purpose of that meeting. As you well know, there were several discussions between our outside counsel and you, in which we expressed a desire to see if a mutually acceptable resolution could be achieved. That was is what we both intended, and it was what each side explored at that meeting. The result may have been a surprise (it was certainly a disappointment), but the purpose of the meeting was hardly hidden.

Second, we do not know on what basis Mr. Chardavoyne concludes that the Thames representatives present at that meeting were unwilling to review new

DC - Hawkins 11 05 02





Page 4

information regarding the maters at issue. To the contrary, I specifically invited you to provide us with any information which might suggest that our position is legally or factually unsound. We have yet to receive anything in response to that request, other than a citation to Connecticut statutes which are addressed above.

<u>Outplacement Services</u>

As noted above, Mr. Chardavoyne is not free to seek employment without Thames' consent during the notice period. If Mr. Chardavoyne wishes to pursue any potential job opportunities, then we will be pleased to review the impact of such employment in relation to the restrictions stated in the employment agreement. We will, however, continue to honor our agreement to pay for outplacement services at the time that he believes such services would be useful. If Goodrich & Sherwood will write to us confirming that Mr. Chardavoyne has commissioned their services, then we will gladly make payment to them on receipt of an invoice, provided that such charges do not exceed $15,000.

<u>Letter of Recommendation</u>

If Thames and your client are able to reach agreement on the outstanding issues, we will work with you on a mutually acceptable recommendation letter. Until that time, we will continue to apply our company practice, which is to confirm only the hire date, termination date and title of a former employee.

\* \* \* \* \* \* \*

I hope this clarifies matters going forward. Please be assured that we remain open and willing to engage in further dialogue if it would be helpful. That said, I would hope you will not view this as an invitation to rehash the same points we have now discussed at length. On those points, I am afraid we must simply agree to disagree, at least until one of us is able to point to some new fact or legal point that the other has disregarded.

Very truly yours,

Ari D. Levine
Legal Director

cc: Mr. Matthew Huckin
Gerald Richardson, Esquire

DC - Hawkins 11 05 02



**ZELDES, NEEDLE & COOPER**
A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
1000 LAFAYETTE BLVD.
POST OFFICE BOX 1740
BRIDGEPORT, CONNECTICUT 06601-1740

TELEPHONE (203) 333-9441
FAX (203) 333-1489

Jonathan B. Orleans
Direct Dial: (203) 332-5778
email: jorleans@znclaw.com

January 11, 2005

**VIA FACSIMILE & U.S. MAIL**

James R. Hawkins II, Esq.
Finn, Dixon & Herling LLP
One Landmark Sq., Suite 1400
Stamford, CT 06901-2689

Re:   <u>David E. Chardavoyne v. Thames Water Holdings, Inc.</u>

Dear Jim:

  This responds to your letter of December 31, 2004, which in turn responded to James McGivern's letter dated December 21, 2004.

  Mr. McGivern's letter is not inconsistent with the factual record in this matter. I specifically dispute your assertion that Mr. McGivern's letter "attempts to disregard the agreement between us, on behalf of our clients, that [I] acknowledged within the last month that any 'COBRA' payments made by Mr. Chardavoyne were without prejudice." We agreed that any COBRA payments made by Mr. Chardavoyne were without prejudice to his position that his employment with Thames Water Holdings had not been properly terminated. Mr. McGivern's statements that Mr. Chardavoyne was "paid all compensation and benefits through May 2003 consistent with the terms of [his] employment agreement, and [he has] been receiving COBRA continuation coverage" is in no way inconsistent with our agreement.

  Similarly, the fact—if it is a fact—that "Mr. McGivern's last written communication with Mr. Chardavoyne was in April 2002"—has no bearing on the accuracy of the statements in Mr. McGivern's letter.

  In response to the final sentence of your letter, I assure you that Thames Water and American Water have no desire to interfere with Mr. Chardavoyne's new employment. We are entitled, however, to discover statements and representations Mr.

ZELDES, NEEDLE & COOPER
A PROFESSIONAL CORPORATION

Page 2
January 11, 2005

Chardavoyne has made to third parties concerning his employment with Thames Water and the termination of that employment, and we intend to take appropriate steps to discover that information.

Very truly yours,

Jonathan B. Orleans

JBO/raf

4



# ZELDES, NEEDLE & COOPER

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW
1000 LAFAYETTE BLVD.
POST OFFICE BOX 1740
BRIDGEPORT, CONNECTICUT 06601-1740

TELEPHONE (203) 333-9441
FAX (203) 333-1489

Felice M. Duffy
Direct Dial: (203) 332-5736
email: fduffy@znclaw.com

December 1, 2004

**VIA FACSIMILE & U.S. MAIL**

James R. Hawkins II, Esq.
Finn, Dixon & Herling LLP
One Landmark Sq., Suite 1400
Stamford, Connecticut 06901-2689

Re: <u>David E. Chardavoyne v. Thames Water Holdings, Inc.</u>

Dear Jim:

We have received David Chardavoyne's letter to Joanne Volk dated November 16, 2004. Thames Water Holdings, Inc. will continue Mr. Chardavoyne's COBRA medical coverage up to and including December 31, 2004. I would appreciate it if you would immediately notify Mr. Chardavoyne of the continuation of this coverage through December.

Please call me or Jonathan Orleans if you have any questions.

Very truly yours,

Felice M. Duffy

FMD/spg
cc: John Romeo, Esq.
    Joanne Volk, HR Director