UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE | ) | |
| | ) | CASE NUMBER: |
| Plaintiff, | ) | 3:03CV56 (WWE) |
| | ) | |
| vs. | ) | |
| | ) | |
| THAMES WATER HOLDINGS | ) | |
| INCORPORATED, THAMES WATER | ) | |
| NORTH AMERICA INC., | ) | February 24, 2005 |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Plaintiff David E. Chardavoyne ("Chardavoyne") respectfully submits this Memorandum

in reply (the "Reply") to Defendants' Opposition (the "Opposition," "Opp.") to Plaintiff's

Motion for Leave to Amend the Complaint (the "Motion to Amend"), dated January 18, 2004,

and in further support of his motion.

PRELIMINARY STATEMENT

Chardavoyne initiated this case over two (2) years ago seeking a declaration that

Defendants did not give notice of termination as required by his Employment Agreement (the

"Agreement"). Defendants refused to join that issue at that time or to resolve it, and instead

spent nearly one and a half (1 ½) years pursuing unsuccessful motions to dismiss.

Simultaneously, Defendants continued a program of abuse and intimidation in an apparent

attempt to gain leverage and to force Chardavoyne to abandon his rights under the Agreement.

Chardavoyne's Motion to Amend should be granted because Chardavoyne has suffered

substantial damages over this two (2) year period as a result of Defendants' abuse, intimidation

and bad faith. Leave to amend is "freely given" in this Court and under the Federal Rules of

Civil Procedure because "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although this Court may, in its discretion, deny a motion to amend under certain circumstances, Defendants here will suffer no prejudice, undue delay or burden from the requested amendment because:

    i.     paper discovery is far from complete and depositions have not begun;

    ii.    Defendants have advised Chardavoyne's counsel that they are replacing their counsel, and new counsel will need an opportunity to familiarize himself with the case; and

    iii.   Chardavoyne's original and Amended Complaints gave Defendants effective notice of the claims in the Second Amended Complaint, which are cumulative of Defendants' breach and bad faith, and are the logical extension of Chardavoyne's earlier claims and Defendants' continuing conduct.

Given the lack of any prejudice to Defendants, it is only fair that Chardavoyne be allowed to amend the complaint to state claims for the continuing damages he has suffered.

## I.    THE REQUESTED AMENDMENTS WILL NOT PREJUDICE DEFENDANTS OR CAUSE ANY UNDUE DELAY

### A.    <u>Discovery Remains in Its Early Stages</u>

Although Defendants claim that "paper discovery is nearly complete" (Opp. at 1), Defendants' response to Chardavoyne's First Request for Production is deficient in a number of important respects, including, without limitation:

    1.    Defendants' "production" was made less than thirty (30) days ago, nearly three and one half (3 ½) months after the First Request was served;

    2.    Defendants have represented repeatedly that they are continuing to search for responsive documents they believe to exist;

    3.    Defendants lodged voluminous objections to the First Request, refusing to produce documents at all for at least fifteen (15) specific requests;

    4.    Defendants failed to produce documents in response to 40 of 49 requests;

- 2 -

5.    Defendants' production, on behalf of two (2) Defendants and a large corporate family, totals 159 documents, barely one quarter (1/4) box of documents;

6.    Defendants' production is padded with numerous duplicate copies of documents; and

7.    Defendants have redacted ordinary and publicly filed corporate documents without any explanation as to why the information in these documents is privileged from disclosure. *See, e.g.*, Certificate of Merger between Thames Water Holdings Incorporated and Thames Water Merger Corporation, attached hereto as Exhibit A.

Moreover, certain documents produced are incomplete, and other documents suggest that still more relevant materials have been withheld. For example, one document makes reference to a "Termination Checklist", dated September 4, 2002, months after Defendants claim to have terminated Chardavoyne. *See* Memo from Lisa Yurkovich to Dana Schafer, attached hereto as Exhibit B. Although the Termination Checklist may have great importance to the termination issues in this case, Defendants have not produced it.

No depositions have been taken in this case. Defendants noticed Chardavoyne's deposition for December 3, 2004, but it was not postponed at Chardavoyne's request, as Defendants have suggested. In fact, Defendants' counsel represented that the December 3rd date was no more than placeholder or statement of intent to take Chardavoyne's deposition first, and that he preferred to depose Chardavoyne on a date later than December 3rd. Chardavoyne also made himself available for deposition between December 18-31, 2004 and on February 21-22, 2005, but Defendants declined to take Chardavoyne's deposition on both occasions.

**B.    It is Not Too Late to Amend in this Case**

Defendants also contend that Chardavoyne should have amended his complaint sooner, if not while Defendants' motions to dismiss were pending, then right after those motions were denied. First, an amendment while Defendants' motions to dismiss were pending would have

- 3 -

been wasteful and confusing. Defendants' motions addressed personal jurisdiction, venue, and transfer. If such motions had been successful, this case would have been dismissed or transferred, and the amendment would have been a waste. An earlier amendment would have also caused further briefing and procedural delay. In fact, when Chardavoyne first amended his complaint as of right in July 2003, Defendants withdrew their first motion to dismiss as moot. Defendants then moved again to dismiss the Amended Complaint, precipitating another full round of briefing. If Chardavoyne had amended again before the pending motions were decided, Defendants likely would have withdrawn their second motion to dismiss in an attempt to correct its obvious deficiencies, and then moved to dismiss a third time. Another wasteful round of briefing and procedural delay would have ensued.

Second, Chardavoyne did move to amend the complaint, for all practical purposes, right after the Court denied Defendants' motions to dismiss. Counsel for Chardavoyne advised Defendants' counsel of Chardavoyne's desire to amend, and requested Defendants' consent to that amendment, within approximately one month of the Court's October 26, 2004 decision denying the motions to dismiss. It was not until on or about January 4, 2005, that Defendants' counsel finally refused to consent to the requested amendment, precipitating this extended briefing. Chardavoyne moved to amend shortly thereafter on January 18, 2005.

Third, Counsel for Chardavoyne has now been advised by Defendants' counsel that they are being replaced by new counsel who have yet to appear in this action. The requested amendment is particularly appropriate at this time because there will be absolutely no duplication of effort for new counsel.

II.    **THE ORIGINAL AND AMENDED COMPLAINTS GAVE DEFENDANTS EFFECTIVE NOTICE OF THE CLAIMS IN THE SECOND AMENDED COMPLAINT**

The Second Amended Complaint is the logical extension of Chardavoyne's earlier pleadings and the foreseeable result of Defendants' continuing course of bad faith conduct. Defendants have been well aware that this case is about Defendants' willful breach of their contractual and employment relationship with Chardavoyne; they even admit that Chardavoyne's original and Amended Complaints include "breach of contract and wage claims to collect damages." Opp. at 2. There can be no prejudice or undue burden to Defendants if they must respond to claims of which they are aware.

A.    <u>The Proposed Second Amended Complaint Arises from the Same Core of Operative Facts as Chardavoyne's Original and Amended Complaints</u>

Defendants could have anticipated the claims of the proposed Second Amended Complaint because the requested amendments arise from that same core of operative facts as Chardavoyne's earlier pleadings. Defendants concede in their Opposition that "A defendant is not prejudiced by an amendment adding allegations of further wrongful conduct by the defendant against a background of many similar allegations." *Wells v. Harris,* 185 F.R.D. 128, 131 (D. Conn 1999) (Eginton, J.), *cited* at Opp. at 6-7. This Court has also held that "[i]t is not unreasonable to require [a defendant] to anticipate all theories of recovery and prepare its defense accordingly," particularly when such recovery derives from the "same core of operative facts." *Id.* at 132 (discussing the relation back of amended claims under FED. R. CIV. P. 15(c)).

The Second Amended Complaint restates some of the claims of the original and Amended Complaints, amplifies others, and states alternative theories of recovery based on the same operative facts as well as facts accruing after the action started:

a.    Counts I and II, for breach of contract and failure to pay wages, respectively, are amplifications and restatements of the causes of action asserted in the original and Amended Complaints. Defendants admit that they do "not object to the Plaintiff's changes in wording of the original three counts." Opp. at 6, n.1.

b.    Count III for conversion amplifies Chardavoyne's original claim for breach of contract. Chardavoyne previously earned shares of stock in Defendants' parent company, RWE AG, which Defendants had promised to pay him. Chardavoyne's right to that stock vested immediately upon his resignation on December 10, 2004, but Defendants continue to refuse to pay that stock.

c.    Finally, Count IV for breach of the implied covenant of good faith and fair dealing (the "bad faith claim") is, by definition, derivative of Chardavoyne's breach of contract claim. "It is axiomatic that the implied duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Hoskins v. Titan Value Equities Group, Inc.,* 252 Conn. 789, 793 (2000). "Every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement," and that "what is in dispute is a party's discretionary application or interpretation of a contract term." *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.,* 269 Conn. 424, 432-433 (2004). Defendants' repeated wrongful application and interpretation of the terms of the Agreement is precisely what is in dispute here. Indeed, the breach of contract claim asserted in the Amended Complaint is the *sine qua non* of the bad faith claim.

**B.    Chardavoyne's Bad Faith Claim is Based on Defendants' Cumulative and Continuing Bad Faith Conduct**

Chardavoyne's bad faith claim is the direct result of Defendants' cumulative and continuing course of bad faith conduct that began from their breach of the Agreement and their

- 6 -

wrongful attempt to terminate Chardavoyne without the agreed-upon and required notice.  In addition to the conduct alleged in the original complaint, Defendants continuing bad faith has included, among other things, Defendants' refusal to transfer stock to Plaintiff which he has earned; threats to cut-off Chardavoyne's COBRA benefits prematurely; delays in payments due to Chardavoyne under terminated benefits plans; and Defendants' attempt to leverage Chardavoyne's acceptance of COBRA benefits, while reserving his rights, into an admission by Chardavoyne that he was terminated.  When considered in the aggregate, these bad faith acts appear to be part of a program of bad faith and intimidation.

Defendants' attempted intimidation and bad faith abuse continues, even now, after Chardavoyne has found a new job.  Defendants have advised counsel for Chardavoyne, on two separate occasions since December 10, 2004, that they intend to depose Chardavoyne's new superiors at SAWS as part of  "[Defendants'] legal right to properly defend the lawsuit."  Opp. at 10.  It is extremely unlikely that Chardavoyne's new superiors have any knowledge of the facts and circumstances of this case, or that Chardavoyne would have made any relevant admissions or statements against his interest to his new employers.  If Defendants plan to invest resources in depositions in San Antonio, Texas, to depose third parties with little or no knowledge of any facts in this case, this would appear to be yet another step in their plan to harass Chardavoyne and extort a cheap settlement in this case.

## III.   DEFENDANTS' READING OF FED. R. CIV. P. 15 IS INACCURATE AND IRRELEVANT

Both the Federal Rules and the Supreme Court expressly command that "leave [to amend] shall be freely given when justice so requires."  FED. R. CIV. P. 15(a); *Foman,* 371 U.S. at 182.  This Court has confirmed that this liberal standard—"a mandate . . . to be heeded" (*id.*)— "is well-settled law.  It is rare that leave to amend should be denied." *Wells,* 185 F.R.D. at 131.

- 7 -

Despite this well-settled authority, Defendants confuse what is an otherwise clear and liberal standard. First, Defendants claim that Chardavoyne's motion was brought under FED. R. CIV. P. 15(a) alone. Opp. at 6, n.2. In fact, Chardavoyne moved pursuant to FED. R. CIV. P. 15. Motion to Amend at 1. Second, Defendants claim that the holding of *Wells v. Harris* is limited to cases applying FED. R. CIV. P. 15(d), not 15(a). The *Wells* Court granted leave to amend and supplement under both 15(a) and 15(d). *See* Opp. at 6; *Wells,* 185 F.R.D. at 132-133 (holding that the "amended complaint" falls squarely within the strictures and policy of Rule 15(a)"). Further, there is no meaningful difference between the standards applicable to an amendment under FED. R. CIV. P. 15(a), which governs amendments, and FED. R. CIV. P. 15(d), which governs supplemental pleadings and "occurrences of events which have happened since the date of the pleading sought to be supplemented." *See Stein v. Janos,* 269 F.Supp.2d 256, 263 (S.D.N.Y. 2003) ("Motions seeking leave under Rule 15(d) are evaluated under the same liberal standard as a motion for leave to amend under Rule 15(a)"); *accord, Bemben v. Fuji Photo Film U.S.A. Inc.,* No. 01 Civ. 8616(KMW)(DF), 2003 WL 21146709, at * 1 (S.D.N.Y. May 19, 2003).

Finally, to the extent Defendants argue that Chardavoyne should of known about and asserted the proposed claims earlier, the Federal Rules would permit the requested amendment nonetheless:

> [Defendant] seeks to preclude any amendments involving [matters] that plaintiffs should have known about prior to filing suit. Such a strict standard is inconsistent with the plain intent of Rule 15(a), particularly where there is no evidence of bad faith or dilatory motive . . . . Permitting amendment would allow adjudication of all of plaintiffs' claims against [Defendant] in one suit, which is particularly appropriate here . . . . Avoiding piecemeal litigation serves the interests of judicial economy, and would allow a more efficient use of the parties resources.

*Victor G. Reiling Assocs. v. Fisher-Price, Inc.,* No. 3:03CV222 (JBA), 2004 WL 2381719, at * 5 (D. Conn. Sept. 30, 2004).

## IV.    DEFENDANTS' REQUEST FOR COSTS IS MERITLESS

Finally, Defendants request that this Court award Defendants the cost of responding to the proposed Second Amended Complaint. Defendants make no claim, however, that their response to the requested amendments will be unduly burdensome or that any additional discovery will be needed at all. *See Reiling,* 2004 WL 2381719, at * 5 (denying a similar request for costs where "the additional discovery can reasonably be accommodated . . . , is not a significant departure from the current course of discovery, and would not radically change the scope of the litigation.") Defendants plea for costs should be summarily denied.

WHEREFORE, Plaintiff David E. Chardavoyne respectfully requests that the Court grant Plaintiff's Motion for Leave to File a Second Amended Complaint, deny Defendants' request for costs, and such other and further relief as the Court may deem just and proper.

PLAINTIFF DAVID E. CHARDAVOYNE

By: _____
James R. Hawkins II (ct00128)
William M. Tong (ct25304)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689
Telephone: (203) 325-5000
Facsimile: (203) 348-5777
E-mail: jhawkins@fdh.com

{00116355; 4; 1103-2}

## **CERTIFICATION**

This is to certify that a true and correct copy of the foregoing was delivered by United

States Mail, first class, postage-prepaid to the following this 24th day of February, 2005:

Jonathan B. Orleans, Esq.
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Suite 500
Bridgeport, Connecticut 06604

Stephen B. Fogerty, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, Connecticut 06880

James R. Hawkins II

- 10 -

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
2003 WL 21146709 (S.D.N.Y.)
**(Cite as: 2003 WL 21146709 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Steven BEMBEN, Plaintiff,
v.
FUJI PHOTO FILM U.S.A., INC., William Homer,
Larry Leon, Meryl Leon, Sol
Bemben, Ida Bemben, Sandi Cooper, Martin Beilis,
and Jeffrey Goldfarb,
Defendants.
**No. 01Civ.8616(KMW)(DF).**

May 19, 2003.

Pro se litigant who sued photo company and related officials moved to supplement his pleadings. The District Court, Freeman, United States Magistrate Judge, held that litigant was entitled to supplement his pleadings, after he filed three separate applications for leave to file supplemental proceedings and cooperated with court request that he consolidate applications into new single motion to supplement.

Motion granted.

West Headnotes

**Federal Civil Procedure** ☞864.1
170Ak864.1 Most Cited Cases
Pro se litigant was entitled to supplement his pleadings, after he filed three separate applications for leave to file supplemental proceedings and cooperated with court request that he consolidate applications into new single motion to supplement; litigant's proposed supplemental allegations served both to add information about events that occurred after date of original complaint and to clarify his prior allegations, and there were no apparent or declared reasons to deny motion. Fed.Rules Civ.Proc. Rule 15(d), 28 U.S.C.A.

Mr. Steven Bemben, Freehold, NJ, pro se.

MEMORANDUM AND ORDER

FREEMAN, Magistrate J.

*INTRODUCTION*

**\*1** Plaintiff Steven Bemben ("Plaintiff") has moved pursuant to Rule 15(d) of the Federal Rules of Civil Procedure to supplement his pleadings. During the pendency of this action, Plaintiff made three separate applications for leave to file supplemental pleadings, pursuant to Fed.R.Civ.P. 15(d). Those applications were filed on May 17, 2002 (Dkt. No. 17), May 20, 2002 (Dkt. No. 22), and June 11, 2002 (Dkt. No. 24). Pursuant to this Court's request, Plaintiff consolidated those applications into a new, single motion to supplement, filed August 9, 2002. (Dkt. No 31; *see also* Dkt. No. 34 (Order dated September 23, 2002, denying prior applications as moot and deeming them replaced by subsequent, consolidated motion).) For the reasons stated below, and on the record during a telephone conference call with the parties on January 16, 2003, Plaintiff's August 9, 2002 motion to supplement his pleadings is granted.

*DISCUSSION*

A motion to supplement pleadings under Rule 15(d) is properly made "when a party seeks to plead events which have happened since the date of the pleading sought to be supplemented." *Marcucci v. N.Y. District Council of Carpenters Welfare Fund,* No. 97 Civ. 7406(LBS), 2001 WL 1622213, at \*2 n. 3 (S.D.N.Y. Dec.17, 2001) (internal quotations omitted) (citing *Flaherty v. Lang,* 199 F.3d 607, 614 n. 3 (2d Cir.1999)). Rule 15(d) motions are evaluated by the Court under the same standards used to evaluate motions to amend pleadings under paragraph (a) of the same rule. *Milligan v. Citibank, N.A.,* No. 00 Civ. 2793(AGS), 2001 WL 1135943, at \*9 (S.D.N.Y. Sept.26, 2001); *New York State Nat'l Org. for Women v. Cuomo,* 182 F.R.D. 30, 36 (S.D.N.Y.1998).

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *accord Milligan v. Citibank, N.A.,* 2001 WL 1135943, at \*9. A "motion to amend should be denied if there is an 'apparent or declared reason--such as undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment." ' *Dluhos v. Floating and Abandoned Vessel Known as "New*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 21146709 (S.D.N.Y.)
**(Cite as: 2003 WL 21146709 (S.D.N.Y.))**

_York,"_ 162 F.3d 63, 69 (2d Cir.1998) (quoting _Foman v. Davis,_ 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); _accord Milligan v. Citibank, N.A.,_ 2001 WL 1135943, at * 9.

Applying the liberal standards of Rule 15(a) to Plaintiff's motion under Rule 15(d), the requested supplementation should be permitted. Plaintiff's proposed supplemental allegations serve both to add information about events that have occurred subsequent to the date of the original complaint, and to clarify Plaintiff's prior allegations. Further, there exist no "apparent or declared reason[s]" to deny such a motion. Although Plaintiff's claims may not survive a motion to dismiss, and the supplementation may ultimately prove futile (_see_ the Court's Report and Recommendation of this date), Plaintiff is proceeding in this matter _pro se,_ and should, in the first instance, be afforded every reasonable opportunity to clarify his claims. In the interest of justice, leave to supplement is therefore appropriate.

_CONCLUSION_

**\*2** For the foregoing reasons, Plaintiff's August 9, 2002 motion to supplement his complaint pursuant to Fed. R. Civ. 15(d) is granted.

2003 WL 21146709 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

.      1:01CV08616        (Docket) (Sep. 18, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy
2004 WL 2381719 (D.Conn.), 60 Fed.R.Serv.3d 4
**(Cite as: 2004 WL 2381719 (D.Conn.))**

**H**

**Motions, Pleadings and Filings**

United States District Court,
D. Connecticut.
VICTOR G. REILING ASSOCIATES AND
DESIGN INNOVATION, INC.
v.
FISHER-PRICE, INC.
**No. 3:03CV222 (JBA).**

Sept. 30, 2004.

Edmund J. Ferdinand, III, Russell D. Dize, Jessica Lee Elliott, Grimes & Battersby, Norwalk, CT, for Plaintiffs.

Bradford S. Babbitt, Michael J. Kolosky, Robinson & Cole, Hartford, CT, Russell D. Dize, Grimes & Battersby, Jodyann Galvin, Norwalk, CT, Attorney, Hodgson, Russ, Andrews, Woods & Goodyear, Robert J. Lane, Jr., Attorney, Hodgson Russ, One M & T Plaza, Buffalo, NY, for Defendant.

*Rulings on Plaintiffs' Motion for Leave to File a Second Amended Complaint Under Rule 15 of the Federal Rules of Civil Procedure [Doc. # 36]; Defendant's Motion to Strike [Doc. # 40]*

ARTERTON, J.

*\*1 Plaintiffs seek leave to file a Second Amended Complaint incorporating new factual allegations. Defendant opposes, and, in the alternative, moves to strike portions of the Second Amended Complaint. For the reasons discussed below, plaintiffs' motion to amend is granted. Defendant's motion to strike is denied.

I. Background

Plaintiffs, Victor G. Reiling Associates ("Reiling") and Design Innovation, Inc. ("DI") are independent toy inventors. Defendant Fisher-Price, Inc., a division of Mattel, designs, manufactures, and markets toys. Plaintiff commenced this action in January 2003, alleging breach of implied contract, misappropriation, and unfair competition, on grounds that Fisher-Price copied their idea and design for enhancements to an action figure toy line. Plaintiffs claim that in 1998, they submitted to Fisher-Price a novel concept, called "Reel Action/Real Heroes," which would incorporate a battery-operated animation reel into backpacks carried by action figures in Fisher-Price's existing "Rescue Heroes" toy line, allowing children to view animated images through a viewer. Fisher-Price expressed interest in the concept and entered into an Option Agreement with plaintiffs on February 16, 1999, which provided Fisher-Price with the exclusive option for a fixed period of time to acquire the rights to make licensed products from Plaintiffs' concept. In March 1999, Fisher-Price informed plaintiffs that their concept would be too expensive to manufacture and sell, and the Option Agreement thereafter expired. Plaintiffs subsequently sent Fisher-Price two additional submissions modifying the original concept, but both were rejected by Fisher-Price. Plaintiffs' original and First Amended Complaint alleged that the "Voice Tech Video Mission Rescue Heroes" action figures released in Fisher-Price's "Rescue Heroes" line in March 2002 employed a "backpack feature with an animated image component," which plaintiffs claim is the same idea and design as their "Reel Action/Real Heroes" concept.

Plaintiffs now move for leave pursuant to Fed.R.Civ.P. 15(a) and 15(d) to again amend their complaint. Their proposed Second Amended Complaint alleges that in late 2003, after the May 1, 2003 filing of their first amended complaint, they learned of several additional products released by Fisher-Price as part of the "Rescue Heroes" line, which plaintiffs allege also incorporated their concept. In particular, the "Mission Select" Rescue Heroes released in 2003 feature a "re-designed backpack depicting still images on a rotating dial visible through a viewer," which plaintiffs assert is "strikingly similar to Plaintiffs' third submission that Fisher-Price had considered and ultimately rejected in January 2001. *See* Proposed Second Amended Complaint [Doc. # 36] at ¶ 35. Further, plaintiffs claim that accessories to the Voice Tech Video Mission Rescue Heroes, including a "Voice Tech Rescue Firetruck, Voice Tech Rescue Jet, Voice Tech Police Cruiser, and Aquatic Rescue Command Center"; Fisher-Price's line of "Optic Force" Rescue Heroes; and the line of "Voice Tech Mission Command" action figures, all employ the concept that they submitted to Fisher-Price. Finally, plaintiffs

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page 2
2004 WL 2381719 (D.Conn.), 60 Fed.R.Serv.3d 4
**(Cite as: 2004 WL 2381719 (D.Conn.))**

allege that videos, DVDs, and computer games involving the "Rescue Heroes" toy line also incorporate their novel concept submissions.

## II. Standard

**\*2** Fed.R.Civ.P. 15(a) provides that leave of court to amend the party's pleading "shall be freely given when justice so requires." "If the underlying facts or circumstances relied on by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.- the leave sought should, as the rules require, be 'freely given.' " Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). It is the "rare" case in which such leave should be denied. See Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir.1991).

Where the legal sufficiency of the amended complaint is challenged, the amendment should be evaluated under a Fed.R.Civ.P. 12(b)(6) standard. "The adequacy of the proposed amended complaint, however, is to be judged by the same standards as those governing the adequacy of a filed pleading.... Thus, the court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met. Ricciuti, 941 F.2d at 123 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Fed.R.Civ.P. 15(d) provides that "[u]pon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor." "An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party." Bornholdt v. Brady, 869 F.2d 57, 68 (2d Cir.1989).

## III. Discussion

Fisher-Price argues that leave to amend is not appropriate because the amendments would be futile, and because plaintiffs have unduly delayed seeking amendment, to the prejudice of Fisher-Price. As to futility, Fisher-Price contends that the products plaintiffs seek to add did not make use of plaintiffs' concept; that plaintiffs' concept, as defined in the second amended complaint, was not novel; and that certain of the new claims are time barred.

### A. Futility

**\*3** Whether plaintiffs' concept was novel or was used by Fisher-Price are matters of significant factual dispute, and entirely inappropriate for disposition at this stage of the proceedings. Under Rule 15(a), the adequacy of a proposed amended complaint is to be assessed under the same liberal pleading standards as are all complaints. Federal Rule of Civil Procedure 8(a)(2) provides "that a complaint must include 'only a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " Swierkiecz v. Sorema N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. (citations omitted). It bears repeating, therefore, that at this stage of the proceedings, plaintiffs need not establish that they will likely prevail in their claim, but merely that they are entitled to present evidence in support of their claim. Given the notice pleading standard, "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiecz, 534 U.S. at 513-14 (citations and internal quotation marks omitted). Plaintiffs' proposed amendments allege that their concept was novel and was used by Fisher-Price. As defendant has challenged only the factual assertions of plaintiffs' complaint, not the legal sufficiency of the claims, their claim of futility under Rule 15(a) must fail. Defendant's arguments are best left for the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                   Page 3
2004 WL 2381719 (D.Conn.), 60 Fed.R.Serv.3d 4
**(Cite as: 2004 WL 2381719 (D.Conn.))**

summary judgment stage, where the protections and procedures of Fed.R.Civ.P. 56 and D. Conn. L. Civ. R. 56 would allow a fairer evaluation on a fully developed record. [FN1]

> FN1. Defendant's argument that plaintiff waived certain claims also fails. Defendant points to deposition testimony by one of plaintiffs' witnesses stating that he believed plaintiffs had no claim to certain Voice Tech vehicles, and that plaintiffs had no claim to the DVDs, computer games, and videos using the Rescue Heroes images. In light of the standard of review for amendments to a complaint, it is inappropriate to look beyond the four corners of the complaint to the deposition testimony of a witness.

Fisher-Price also argues that plaintiffs' claims relating to the Voice Tech Jet and Voice Tech Fire Truck, which were released in February 2000, are time-barred under the three year statute of limitations period governing Counts Two through Five of plaintiffs' proposed second amended complaint. These claims, however, are not futile, because they also bear upon plaintiffs' allegation of breach of implied-in-fact contract in Count One, which is governed by a six year statute of limitations. *See* N.Y. C.P.L.R. § 213(2). [FN2] The Court agrees, however, that these claims cannot be used as grounds for the misappropriation count (Count Two) of plaintiffs' Second Amended Complaint, because the February 6, 2004 filing of the proposed Second Amended Complaint came four years after plaintiffs' alleged injury occurred from Fisher-Price's release of the Voice Tech Jet and Voice Tech Fire Truck, exceeding the three year statute of limitations for claims of injury to property. *See* N.Y. C.P.L.R. § 214(4); *see also* M & T Chemicals, Inc. v. Int'l Business Machines Corp., 403 F.Supp. 1145, 1148 (S.D.N.Y.1975) (finding misappropriation claims covered by N.Y. C.P.L.R. § 214(4) and recognizing that majority of courts have found that "the injury to a plaintiff's interest occurs, and the statute begins to run, either at the time of misappropriation or when disclosure of the [protected intellectual property] is made, such as when a patent issues or when an invention is put into public use."). To the extent the Voice Tech Jet and Fire Truck allegations are claimed as a basis for liability on plaintiffs' CUPTA claim in Count Three, they are similarly barred by the applicable limitations period. *See* Conn. Gen.Stat. § 42-110g(f) (statute of limitations for a CUTPA claim is three years). Nor can these claims support Count Four, which alleges common law unfair competition,

as the core of this count is tortious interference, which carries a three year statute of limitations. *See* Ediciones Quiroga, S.L. v. Fall River Music, Inc., 1995 WL 103842, *8 (S.D.N.Y. March 7, 1995) (noting that while "the period for claims of unfair competition has been treated disparately in New York," courts generally "analogize the facts underlying the unfair competition claim to an appropriate cause of action and to use the corresponding statute of limitations"); Norris v. Grosvenor Marketing Ltd., 803 F.2d 1281, 1287 (2d Cir.1986); Niagara Mohawk Power Corp. v. Freed, 288 A.D.2d 818, 733 N.Y.S.2d 828, 829 (App.Div.2001) (3 year statute of limitations for tortious interference claims).

> FN2. The parties agree that New York law governs the breach of contract and misappropriation claims. Defendant has argued, and plaintiffs have not disputed, that New York law also governs plaintiffs' common law unfair competition claims.

**\*4** As the Voice Tech Jet and Fire Truck are entirely different products than those claimed in the original complaint, these claims do not relate back to the filing of the original complaint. Under Fed.R.Civ.P. 15(c)(2), "[a]n amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." As the Second Circuit has recognized, "[t]he pertinent inquiry ... is whether the original complaint gave the defendant fair notice of the newly alleged claims." Wilson v. Fairchild Republic Co., 143 F.3d 733, 738 (2d Cir.1998). Here, plaintiffs have not argued that their claims involving the Voice Tech Jet and Fire Truck relate back, and the Court sees no basis for so concluding, as these products are distinct from those claimed in the original complaint.

**B. Delay and Prejudice**

Fisher-Price also argues that plaintiff's motion is untimely, and plaintiffs have failed to explain their failure to include in their original complaint products about which they knew or should have known. Because the proposed Second Amended Complaint adds claims regarding at least fifteen additional products, "expanding the scope of this action so radically that it is essentially an entirely different lawsuit," Fisher-Price argues it is prejudiced by the delay. *See* Fisher-Price's Memorandum in Opposition to Plaintiffs' Motion to Amend and In Support of its

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 2381719 (D.Conn.), 60 Fed.R.Serv.3d 4
**(Cite as: 2004 WL 2381719 (D.Conn.))**

Motion to Strike [Doc. # 43] at 1.

While Rule 15(a) provides that leave to amend should "be freely given," it is within the Court's discretion "to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant. The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir.1990) (citations omitted).

Here, plaintiffs moved for leave to amend in February 2004, prior to the close of discovery and well before motions for summary judgment were due. See May 16, 2003 Scheduling Order [Doc. # 21] (providing for completion of discovery by March 3, 2004 and filing of dispositive motions by April 5, 2004). Compare Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 101 (2d Cir.2002) (finding no abuse of discretion to deny motion to amend where the motion was filed "long after the close of discovery and almost four months after [the ruling] on the summary judgment motion."). While the motion to amend came one year after filing suit, plaintiffs have offered satisfactory explanations for their delay. One toy line--the "Mission Select" Rescue Heroes--was introduced by Fisher-Price in February 2003, the same month that plaintiffs filed this suit, and plaintiffs claim that they did not discover this line until after the suit had been filed. See Proposed Second Amended Complaint [Doc. # 36] at ¶ 35; Declaration in Opposition to Plaintiffs' Motion to Amend [Doc. # 45] at ¶ 18. The "Optic Force" Rescue Heroes figures were released in October 2003, well after the filing of plaintiffs' original complaint. See Declaration in Opposition to Plaintiffs' Motion to Amend [Doc. # 45] at ¶ 20. Plaintiffs have submitted affidavits that they did not discover these and the other products claimed in the proposed Second Amended Complaint until late 2003. Reiling, for example, states in an affidavit that he did not learn about these products earlier because "[i]n 1999 or thereabouts ... Fisher-Price changed its policy and stopped inviting outside investors to its Toy Fair showroom and stopped giving its product catalogues to outside inventors." Reply Declaration of Victor G. Reiling [Doc. # 57] at ¶ 10. Reiling acknowledges that he might have learned of the products released prior to 2003 if he had more carefully "polic [ed] the marketplace for any possible unauthorized use of my concepts," but states that he did not have the "time and energy" to do so because his "efforts are concentrated on the development of new concepts and ideas." Id.

*5 Fisher-Price seeks to preclude any amendments involving products that plaintiffs should have known about prior to filing suit. Such a strict standard is inconsistent with the plain intent of Rule 15(a), particularly where, as here, there is no evidence of bad faith or dilatory motive. Plaintiffs moved to amend their complaint within two to three months after they claim they first discovered the products. Permitting amendment would allow adjudication of all of plaintiffs' claims against Fisher-Price in one suit, which is particularly appropriate here, where the new products all relate to the same legal claims in plaintiffs' original complaint, and all are claimed to incorporate the same "novel concept" that is the subject of the original action. Avoiding piecemeal litigation serves the interests of judicial economy, and would allow a more efficient use of the parties' resources.

Given the procedural posture of this case, the additional time that will be needed to allow the parties to complete discovery on the new allegations in the Second Amended Complaint will not unduly prejudice Fisher-Price. Fisher-Price argues that it will need to re-depose five of plaintiffs' witnesses about the additional products claimed in plaintiffs' amended complaint, will need to produce and request additional documents, and will need to do a further search of prior art that is relevant to the issue of novelty with respect to the additional products. See Declaration by Robert J. Lane, Jr. in Opposition to Motion to Amend [Doc. # 42] at ¶¶ 11-16. Fisher-Price also asserts that it will need additional discovery on plaintiffs' concept because plaintiffs amended their definition of their concept from a "battery operated animated image player" to a "battery operated image player." There is undoubtedly additional discovery needed to supplement the discovery that has already taken place on plaintiffs' concept, any prior art related to such a concept, and whether Fisher-Price's action figures make use of plaintiffs' concept. The additional discovery, however, can reasonably be accommodated with modification to the scheduling order, is not a significant departure from the current course of discovery, and would not radically change the scope of the litigation. The anticipated discovery is closely related to plaintiffs' underlying claims, and, given plaintiffs' estimate that they will need no more than two months to complete any additional discovery, and Fisher-Price's estimate of five supplemental depositions and document requests on prior art, among other matters, would not be unduly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 5
2004 WL 2381719 (D.Conn.), 60 Fed.R.Serv.3d 4
**(Cite as: 2004 WL 2381719 (D.Conn.))**

burdensome. In light of these considerations, and in recognition that plaintiffs would be entitled to bring a new lawsuit instead of incorporating the new allegations into its Second Amended Complaint, defendant's request that plaintiffs assume the costs for the additional discovery is denied.

C. References to Statements Made During Settlement Discussions

Defendant also moves pursuant to Fed.R.Civ.P. 12(f) to strike Paragraphs 40 and 57 of plaintiffs' proposed Second Amended Complaint because the allegations in these paragraphs refer to statements made in the context of settlement discussions, and are therefore inadmissible under Fed.R.Evid. 408. Rule 12(f) provides that a court "may order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter." "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir.1976).

*6 Paragraph 40 of the proposed Second Amended Complaint provides:

After the First Amended Complaint was filed, defendant threatened to terminate its business relationship with Plaintiff DI unless DI withdrew from the lawsuit. Because the business relationship between defendant and DI results in significant business to DI, DI considered this request. However, DI was then informed that not only would DI have to withdraw the lawsuit in order to maintain a business relationship, but Reiling would have to withdraw as well. When Reiling refused to withdraw, Defendant terminated its business relationship with DI. The foregoing acts by Defendant constitute tortious interference with the business relationship between Reiling and DI in that DI has attempted and continues to attempt to force DI to use its influence with Reiling to persuade Reiling to withdraw from the lawsuit.

Id.; see also ¶ 57 (alleging that "Defendant's termination of its relationship with Plaintiff DI, its attempt to force DI to withdraw from the lawsuit, and its attempt to tortiously interfere with the business relationship between Reiling and DI by seeking to force DI to use its influence with Reiling to persuade Reiling to withdraw from the lawsuit," constitute unfair competition). Fisher-Price has submitted a declaration from its Senior Vice-president for Inventor Relations, Stan Clutton, who states that the "only discussion that ever occurred relating to the possibility that Fisher-Price would cease doing business with Design Innovation were related to settling this case." Declaration in Support of Motion to Strike [Doc. # 41] at ¶ 3.

Fed.R.Evid. 408 generally bars evidence related to settlement or compromise negotiations. It prohibits evidence of "(1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed," if offered to prove liability for or invalidity of the claim, and bars all "evidence of conduct or statements made in compromise negotiations." Fed.R.Evid. 408. Fisher-Price thus argues that because the allegations in Paragraphs 40 and 47 are based on settlement negotiations, no evidence is support of them will be admissible and they must be stricken. Plaintiffs argue, however, that their allegations do not implicate Rule 408 because they involve threats, not offers to compromise. Further, plaintiffs argue that even if subject to Rule 408, the statements alleged are admissible for purposes other than to demonstrate liability, such as to show Fisher-Price's motive.

At this stage of the proceedings, it cannot be said to be beyond all doubt that no evidence in support of the allegations in Paragraph 40 and 57 will be admissible. At least some of the allegations in these paragraphs do not involve statements made in compromise negotiations at all, but rather affirmative acts taken by Fisher-Price in terminating its business relationship with DI. Moreover, plaintiffs would be entitled to present evidence of Fisher-Price's motivation in terminating its relationship, or of its threats of retaliation, to the extent they constitute an additional wrong, without implicating the strictures of Rule 408. See Fed.R.Civ.P. 408 (rule "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."). In Carney v. American University, 151 F.3d 1090, 1095-96 (D.C.Cir.1998), for example, the D.C. Circuit held that "although settlement letters are inadmissible to prove liability or amount," "such correspondence can be used to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence (race discrimination)." See also 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5314, at 282 (1980) ("Rule 408 is [ ] inapplicable when the claim

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*STATE OF DELAWARE*
*SECRETARY OF STATE* ☑002
*DIVISION OF CORPORATIONS*
*FILED 11:00 AM 03/29/2001*
*010155982 – 3267051*

CERTIFICATE OF MERGER

of

THAMES WATER HOLDINGS INCORPORATED

into

THAMES WATER MERGER CORPORATION

The undersigned corporation organized and existing under the General Corporation Law of the State of Delaware does hereby certify pursuant to the provisions of Section 251 of the Delaware General Corporation Law:

FIRST: That the name and state of incorporation of each of the constituent corporations of the merger is as follows:

| Name | State of Incorporation |
|------|------------------------|
| Thames Water Holdings Incorporated | Delaware |
| Thames Water Merger Corporation | Delaware |

SECOND: That the Agreement and Plan of Merger, dated as of March 29, 2001 (the "Agreement and Plan of Merger"), between Thames Water Holdings Incorporated and Thames Water Merger Corporation has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with the requirements of Section 251 of the Delaware General Corporation Law.

THIRD: That the name of the surviving corporation of the merger is Thames Water Merger Corporation, which shall herewith be changed to Thames Water Holdings Incorporated (the "Surviving Corporation").

FOURTH: That the amendments or changes in the certificate of incorporation of the Surviving Corporation, as are to be effected by the merger, are as follows:

Article FIRST shall be deleted in its entirety and a new Article FIRST shall be inserted to read as follows:

"The name of the Corporation is Thames Water Holdings Incorporated."

Article FOURTH shall be deleted in its entirety and a new Article FOURTH shall be inserted to read as follows:

IN WITNESS WHEREOF, THAMES WATER MERGER CORPORATION has caused this Certificate of Merger to be executed this 29th day of March 2001.

THAMES WATER MERGER CORPORATION

By: *Ronald G. Walsh*

Name: RONALD WALSH

Title: VICE-PRESIDENT AND SECRETARY.

3

21062095-4

REDACTED

TW 00553

# *INTEROFFICE MEMORANDUM*
# *F.B. LEOPOLD COMPANY, INC.*



**DATE:**      September 4, 2002

**FROM:**      Lisa Yurkovich

**TO:**        Dana Schafer

**SUBJECT:**   Termination Forms

---

Attached are termination forms as requested.  Please note the following:

- Termination Checklist – check all that is completed and have him sign.
- COBRA Election of Temporary Continuation of Dental Coverage – this is for information purposes.  When his coverage ends, a form will be mailed to his home address as per COBRA regulations.  Rates are subject to change.
- Guardian Election of Continued Coverage – will be sent with above COBRA information.
- 401(k) Participant Distribution Request – must be completed for termination.  We vest participants 100% for permanent layoff purposes.  Otherwise, 4 years of service is 60%.
- 401(k) Tax Notice – distribute with Distribution Request.
- CNA Conversion Notice – complete if interested in continuing life insurance through CNA.
- NQDC Retirement Advantage Distribution Request – needs to be completed for termination.  I have attached a copy of his enrollment form indicating he elected a lump sum cash payment the calendar year following the year he terminates employment.
- Change of Address form – in case his address changes within the next year.

If you have any questions feel free to call me at 724-453-2125.

Dana -
LTD + AD+D do not offer conversion. They term on his last day.

*Bill*

TW 00212

Slip Copy                                                                            Page 6
2004 WL 2381719 (D.Conn.), 60 Fed.R.Serv.3d 4
**(Cite as: 2004 WL 2381719 (D.Conn.))**

is based upon some wrong that was committed in the course of settlement discussions; e.g., libel, assault, breach of contract, unfair labor practice, and the like."); *Uforma/Shelby Business Forms, Inc. v. NLRB,* 111 F.3d 1284, 1294 (6th Cir.1997) ("[W]e hold that Rule 408 does not exclude evidence of alleged threats to retaliate for protected activity when the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats."). As in *Carney* and *Uforma,* here the claimed statements made in settlement negotiations relate not to Fisher-Price's liability to plaintiffs for their underlying claim that Fisher-Price used plaintiffs' novel concept in its action figure toy line, but rather go to the motivations for the additional claimed wrong that occurred when Fisher-Price terminated its business relationship with DI, which forms a basis of plaintiffs' amended unfair competition claim. As there may be admissible evidence to support the allegations in Paragraphs 40 and 57, there is no basis for striking them at this stage.

*7 Fisher-Price also argues, however, that the allegations regarding the settlement discussions would be futile to the extent they make a claim of tortious interference, because plaintiffs have not pleaded that they suffered "actual, ascertainable loss," as is required to state a tortious interference claim. *See In re Conn. Mobilecom, Inc., v. Cellco Partnership,* 2003 WL 23021959, *8 (S.D.N.Y. Dec.23, 2003).* Plaintiffs have not responded to this argument in their opposition to defendant's motion to strike. Plaintiffs, moreover, have not pleaded a separate cause of action for tortious interference, and instead appear to include such allegations as part of their claim of unfair competition. As such, the Court at this stage does not construe plaintiffs' complaint to contain a tortious interference cause of action. Defendants' motion to strike the tortious interference claim as futile is therefore denied, without prejudice to renew if plaintiffs pursue such a legal claim.

IV. Conclusion

For the foregoing reasons, plaintiffs' Motion for Leave to File a Second Amended Complaint Under Rule 15 of the Federal Rules of Civil Procedure [Doc. # 36] is GRANTED. Defendant's Motion to Strike [Doc. # 40] is DENIED.

The parties are requested to submit by 10/15/04 a Supplemental 26(f) Planning Report reflecting proposed amendments to the original scheduling

order.

IT IS SO ORDERED.

2004 WL 2381719 (D.Conn.), 60 Fed.R.Serv.3d 4

**Motions, Pleadings and Filings (Back to top)**

.                3:03CV00222                (Docket)
(Feb. 03, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.