UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE, | ) | |
| | ) | CASE NUMBER: |
| Plaintiff, | ) | 3:03CV56 (WWE) |
| | ) | |
| vs. | ) | |
| | ) | |
| THAMES WATER HOLDINGS | ) | |
| INCORPORATED, THAMES WATER | ) | |
| NORTH AMERICA INC., | ) | |
| | ) | |
| Defendants. | ) | March 9, 2005 |

## SECOND AMENDED COMPLAINT

Plaintiff David E. Chardavoyne, by his attorneys, Finn Dixon & Herling LLP, for his Second Amended Complaint, states as follows:

1.      This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      David E. Chardavoyne ("Chardavoyne") was at all relevant times a citizen and resident of the State of Connecticut.

3.      Thames Water Holdings Incorporated ("Thames Water Holdings") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Pennsylvania at the time this action was commenced.

4.      Thames Water North America Inc. ("Thames Water North America") is an operating subsidiary of Thames Water Holdings and a Delaware corporation with its principal place of business in New Jersey.  Thames Water North America was, at all relevant times, registered to do business in Connecticut.  At certain times, Thames Water North America served

{00101268; 7; 1103-2}

as the agent of Thames Water Holdings with respect to the payment of Chardavoyne's salary and other matters. (Thames Water Holdings and Thames Water North America are referred herein collectively as "Thames Water").

5.    Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391. Thames Water Holdings and Thames North America have maintained an office at 281 Tresser Boulevard, Stamford, Connecticut and therefore each is a resident of Connecticut for purposes of 28 U.S.C. § 1391(a) and (c).

6.    This is an action for, among other things, double damages for unpaid wages, payment of all other compensation and benefits due under a written agreement, payment of stock wrongfully withheld, and punitive damages and attorneys' fees.

7.    Defendants are subsidiaries of Thames Water Plc, which was, until November 2000, a publicly held company engaged primarily in the water products and services businesses in the United Kingdom with operations and other businesses in 44 countries worldwide. Thames Water Plc is now a subsidiary of RWE AG ("RWE"). RWE AG is a publicly held company organized and existing under the laws of the Federal Republic of Germany, with corporate headquarters in Essen, Germany. RWE has many lines of business in various industries including water, gas, electric, environmental services, industrial services, petroleum and chemicals, and construction businesses in Germany, the United Kingdom, Canada, the United States and elsewhere, worldwide. During the year 2002, RWE had revenues in excess of $50 billion dollars (US).

8.    On or about January 15, 1999, defendant Thames Water Holdings and Chardavoyne entered into a written employment agreement (the "Employment Agreement").

{00101268; 7; 1103-2}

The Employment Agreement provides, *inter alia,* that effective February 15, 1999, Thames Water Holdings shall employ Chardavoyne and he shall serve as its President with all attendant responsibilities, duties and authorities until, in accordance with Section 12.3 of the Employment Agreement, "[t]he employment of the Executive shall terminate automatically on his reaching 65 years of age." A true copy of that Agreement is attached as Exhibit A to this Second Amended Complaint.

9.    Chardavoyne was elected and served continuously as President and a member of the Board of Directors of Thames Water Holdings from February 15, 1999 until December 10, 2004.

10.    Section 2.5 of the Employment Agreement further provides that Chardavoyne shall "so long as the Chief Executive requires, carry out such duties on behalf of any other Group company and shall carry out such duties as if they were to be performed by him on behalf of the Parent Company." Accordingly, Chardavoyne also was elected President and a director of Thames Water North America. Salary payments under the Employment Agreement were made, at certain times, to Chardavoyne by and through Thames Water North America.

11.    Section 11.1 of the Employment Agreement states: "[s]ave as provided for in Clauses 12.1, 12.2 and 12.3 below, the Executive's [i.e., Chardavoyne's] employment hereunder shall continue subject to the terms of this Agreement until terminated: (a) by the Company [Thames Water Holdings] giving to the Executive <u>not less than twelve months' written notice</u> expiring at any time; or (b) by the Executive giving not less than six months' written notice expiring at any time." [Emphasis added].

{00101268; 7; 1103-2}

12.    Section 5.3 of the Employment Agreement provides: "The Company shall during the continuance of the Executive's employment hereunder contribute on the Executive's behalf to its health, dental, life and long term disability insurance schemes from time to time in force. The Executive will also be entitled to participate in the Company's retirement benefits plan."

13.    Section 7 of the Employment Agreement provides: "The Company shall, during the term of this Agreement, provide the Executive with a car . . . and shall bear all standing costs relating thereto including the cost of insuring, testing, taxing, repairing and maintaining the same and shall reimburse the Executive's running expenses of the car . . . . The cost of all fuel will be met by the Company, including reasonable private mileage in the USA."

14.    On or about May 29, 2002, James McGivern and Matthew Huckin, who represented themselves as the Managing Director, Thames Water Americas, and the Human Resources Director of Thames Water Americas, respectively, unexpectedly requested to meet with Chardavoyne. At that meeting, Matthew Huckin gave Chardavoyne an envelope containing a letter (the "Letter") and a draft agreement (the "Draft Separation Agreement"). A true copy of the Letter is attached as Exhibit B to this Second Amended Complaint. A true copy of the Draft Separation Agreement is attached as Exhibit C to this Second Amended Complaint.

15.    The Letter states, in pertinent part: "It is with regret that I must confirm that with immediate effect your services are no longer required by the company."

16.    The Letter is not a notice of termination, however, as required under Section 11.1 of the Employment Agreement, for the following reasons, among others:

      a.    The Letter purported to "confirm" that Chardavoyne's services were no longer required "with immediate effect". This language violates the Employment Agreement's requirement that any termination must include

- 4 -

        "not less than twelve months written notice." *See* Employment Agreement, Ex. A, at ¶ 11.1.

b.      The Letter is <u>not</u> from Thames Water Holdings, which is the party to the Employment Agreement. The Letter is from Thames Water Americas, which was not even incorporated in any state of the United States.

c.      Huckin was not an officer or director of Defendants nor was he even an employee thereof.

d.      The employment of the President of Thames Water Holdings may only be terminated in accordance with the Employment Agreement and the bylaws of Thames Water Holdings.

e.      Prior to May 29, 2002, the directors of Thames Water Holdings had not delegated or appointed Thames Water Americas as its agent for purposes of giving notice under the Employment Agreement.

f.      The Board of Directors of Thames Water Holdings did not vote, adopt a unanimous written consent, or take any other action on or prior to May 29, 2002, to give Chardavoyne not less than twelve months' written notice of termination of his employment as required by the Employment Agreement.

g.      A successor to Chardavoyne as President of Thames Water Holdings was not elected or qualified on or prior to May 29, 2002.

h.      Further, the Letter and the Draft Separation Agreement are not notice of termination pursuant to Section 12.3 of the Employment Agreement, which provides that Chardavoyne's employment could only be automatically terminated "with immediate effect" by his having reached age 65. Chardavoyne's date of birth is March 12, 1948.

17.    The Letter also states that Chardavoyne had the right to "consider" the accompanying Draft Separation Agreement and to accept or "revoke it." The Draft Separation Agreement proposed to "restructure the parties obligations" in derogation of Chardavoyne's rights under the Employment Agreement, and, if accepted, to "abandon" the Employment Agreement's notice provisions. *See* Draft Separation Agreement, Ex. C, at ¶ 2.03.

{00101268; 7; 1103-2}

18.     After receipt of the Letter and Draft Separation Agreement, Chardavoyne notified Thames Water Holdings that the Draft Separation Agreement was not acceptable in the form handed to him.

19.     Chardavoyne has consistently and repeatedly advised Thames Water Holdings that the Letter is not a notice of termination, as required by Section 11.1 of the Employment Agreement, and of the reasons therefor.

20.     Chardavoyne also advised Defendants, by letter dated July 12, 2002, that the Letter and Draft Separation Agreement were ineffective as notice of termination because these documents did not comply with the requirements of the Employment Agreement and had not been authorized.

21.     Defendants did not directly respond to the issues articulated in Chardavoyne's July 12, 2004 letter.

22.     Defendants have taken the position that the Letter and Draft Separation Agreement were notice of termination under Section 11.1 of the Employment Agreement. Defendants have continued to maintain that position without ever providing any satisfactory explanation for how the Letter and Draft Separation Agreement could fairly be read as a notice of termination under Section 11.1 of the Employment Agreement.

23.     Defendants have not paid Chardavoyne his wages for services after June 6, 2003.

24.     Defendants have not paid Chardavoyne employee benefits to which he is entitled, including without limitation dental and medial insurance (other than through the Consolidated Omnibus Budget Reconciliation Act (COBRA)), after June 30, 2003.

- 6 -

{00101268; 7; 1103-2}

25.    On June 30, 2003, Chardavoyne's medical insurance benefits expired without renewal by Defendants.

26.    Since Chardavoyne's May 29, 2002 meeting with James McGivern and Matthew Huckin, Defendants have repeatedly deprived and have attempted to deprive Chardavoyne of his rights and benefits under the Employment Agreement, including, among other things:

a.    falsely representing to Chardavoyne that the benefits of the Draft Separation Agreement were more favorable to Chardavoyne than the benefits secured by the Employment Agreement when in fact they were not;

b.    repeatedly threatening to withhold, or to prematurely terminate, continuing medical insurance benefits to which Chardavoyne had a right by federal statute, including such rights and benefits under COBRA, to coerce him to abandon his rights under his Employment Agreement;

c.    failing and continuing to refuse to provide "written notice" of termination as required by the Employment Agreement and Section 11.1. therein;

d.    contending that Defendants have given Chardavoyne notice of termination while simultaneously threatening to cut off his employee benefits if he sought employment elsewhere;

e.    falsely accusing Chardavoyne of harassing Defendants' employees and refusing to provide details of such alleged harassment;

f.    unreasonably delaying payment of Chardavoyne's compensation under Defendants' Non-Qualified Deferred Compensation Plan;

g.    withholding payment of RWE AG Stock which Chardavoyne earned and to which he is entitled, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan; and

h.    refusing to provide Chardavoyne with an accurate federal income tax W-2 form for 2003, despite Chardavoyne's repeated requests.

27.    Further, Chardavoyne secured new employment as President and Chief Executive Officer of the San Antonio Water System ("SAWS"), which was announced publicly on

- 7 -

{00101268; 7; 1103-2}

November 21, 2004. Defendants have attempted to harm Chardavoyne and prejudice his new employment by:

a.  Defendants made a baseless counterclaim for statutory theft, including "embezzlement" of the company car, after Chardavoyne had already resigned his position with Thames Holdings on December 10, 2004 and returned his company car to Defendants on December 14, 2004; and

b.  After Chardavoyne was elected to this new position, Defendants' counsel advised counsel for Chardavoyne on at least 2 occasions that they intended to take the deposition of Chardavoyne's new superiors, allegedly for the purpose of determining whether Chardavoyne made any misrepresentations or admissions during his interview, however unlikely, in an attempt to drag Chardavoyne's new employer into this litigation.

28.  Defendants' conduct violates important public policies, that include, without limitation, to protect employees from abusive employment practices; from threats and attempts to abrogate medical insurance rights granted by federal statute; from unreasonable refusals to pay properly earned wages, benefits and other compensation; from interference with compliance with the federal income tax laws; from interference with subsequent employment; and from violations of contractual rights.

29.  Simply stated, rather than to follow the well-established rules of corporate governance, and to honor the contractual terms of the existing Agreement, certain employees within the Thames Water enterprise wrongfully sought to compel or pressure Chardavoyne's resignation with immediate effect in an effort to deny Chardavoyne his rights and to avoid Defendants' contractual and legal obligations. Although these employees of the Thames Water enterprise have been advised of the Company's legal obligations, they have refused to permit the Company to comply with those obligations, absent the filing of the original Complaint, the Amended Complaint and this Second Amended Complaint.

- 8 -

{00101268; 7; 1103-2}

## COUNT I
### (BREACH OF CONTRACT)

30.    Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 29 above as if fully restated herein.

31.    Chardavoyne and Defendants were parties to a contract—the Employment Agreement—under which Chardavoyne was entitled to receive, among other things, compensation and benefits as provided by the Employment Agreement and the good faith and fair treatment demanded by law.

32.    Further, Defendants were bound by the Employment Agreement to follow specific procedures in the event Chardavoyne's employment was to be terminated.  Chardavoyne was not terminable at-will.

33.    Chardavoyne fully performed under the Employment Agreement and served Defendants with hard work and distinction in the critical roles of President and Country Director-US, among others, with the expectation that his efforts would be recognized and that the terms of the Employment Agreement would be honored.

34.    Instead, as set forth above and in particular in Paragraph 24, Defendants breached the Employment Agreement, which has included, without limitation, the following:

      a.    Defendants sought to compel or pressure Chardavoyne's resignation with "immediate effect," in violation of the Employment Agreement's requirement that any termination must include "not less than twelve months written notice."

      b.    Defendants owe and have not paid Chardavoyne wages for his continuing service as President of Thames Water Holdings and Thames Water North America after June 6, 2003.

- 9 -

{00101268; 7; 1103-2}

c.    Defendants have wrongfully withheld employee benefits due to Chardavoyne under the Employment Agreement, including without limitation retirement benefits, medical insurance, dental insurance, life and long term disability insurance, company car, and bonuses. Chardavoyne's medical insurance benefits expired without renewal on June 30, 2003.

d.    Defendants owe and have wrongfully failed to pay shares of RWE AG stock to Chardavoyne which he earned and to which he is entitled, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan.

e.    Defendants owe and have not paid Chardavoyne all payments due for company car-related expenses pursuant to Section 7 of the Employment Agreement. Defendants also demanded in violation of the Employment Agreement that Chardavoyne deliver the company car to New Jersey. The company car has now been retrieved by Defendants and returned to them.

35.    Defendants have also breached the Employment Agreement by making false accusations about Chardavoyne; threatening to withhold and cut off compensation and benefits, including medical benefits, to which he has a right; and refusing to allow him to seek employment or to provide him with necessary tax forms.

36.    Chardavoyne has suffered substantial damages as a result of Defendants' breach of the Employment Agreement.

<u>**COUNT II**</u>
**(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)**

37.    Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 36 above as if fully restated herein.

38.    As described above, Chardavoyne was entitled to receive, among other things, compensation and benefits as provided by the Employment Agreement and the good faith and fair treatment demanded by law.

- 10 -

{00101268; 7; 1103-2}

39.     Chardavoyne fully performed under the Employment Agreement and served Defendants with hard work and distinction in the critical roles of President and Country Director-US, among others, with the expectation that his efforts would be recognized and that the terms of the Employment Agreement would be honored.

40.     Defendants were bound by the Employment Agreement to follow specific procedures in the event Chardavoyne's employment was to be terminated.  Chardavoyne was not terminable at-will.

41.     Instead, Defendants turned against Chardavoyne in bad faith, not only to avoid the Employment Agreement but to injure him.  As set forth above and in particular in Paragraph 26, Defendants purposely set out to harm and disadvantage Chardavoyne by seeking to compel or pressure his resignation with "immediate effect" in violation of the Employment Agreement; by making false representations to him; making false accusations about him; refusing to pay him compensation, benefits and RWE AG stock which he has earned and to which he is entitled; threatening to withhold and cut off compensation and benefits, including medical benefits, to which he has a right; and refusing to allow him to seek employment or to provide him with necessary tax forms.

42.     Defendants have also attempted to harm Chardavoyne and prejudice his new employment by asserting a baseless claim for statutory theft and threatening to take the deposition of Chardavoyne's new superiors in an attempt to drag them into this litigation.

43.     Defendants have wilfully and maliciously denied Chardavoyne's right to receive some or all of the benefits as set forth in the Employment Agreement in total disregard of his interests.

- 11 -

{00101268; 7; 1103-2}

44.     Defendants' misconduct is the product of an evil motive and dishonest purpose to serve their own self-interest.  By their bad faith conduct, Defendants breached the implied covenant of good faith and fair dealing and caused Chardavoyne substantial damages.

45.     Alternatively, if Chardavoyne was terminable at will, Defendants' bad faith conduct violates important public policies, that include, without limitation, to protect employees from abusive employment practices; from threats and attempts to abrogate medical insurance rights granted by federal statute; from unreasonable refusals to pay properly earned wages, benefits and other compensation; from interference with compliance with the federal income tax laws; from interference with subsequent employment; and from violations of contractual rights.

## COUNT III
### (FAILURE TO PAY WAGES PURSUANT TO CONN. GEN. STAT. § 31-72)

46.     Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 45 above as if fully restated herein.

47.     Defendants owe and have not paid Chardavoyne wages for his service as President of Thames Water Holdings and Thames Water North America after June 6, 2003.

48.     Pursuant to CONN. GEN. STAT. § 31-72, Chardavoyne is entitled to twice the full amount of wages unpaid and owed to him under the Employment Agreement, as well as all costs and attorney's fees associated with this litigation.

## COUNT IV
### (FAILURE TO PAY FRINGE BENEFITS PURSUANT TO CONN. GEN. STAT. §§ 31-72 AND 31-76K)

49.     Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 48 above as if fully restated herein.

- 12 -

50.     Defendants owe and have not paid Chardavoyne fringe and employee benefits for his service as President of Thames Water Holdings and Thames Water North America after June 30, 2003, including without limitation dental and medical insurance.

51.     As a result of Defendants' wrongful failure to pay such fringe and employee benefits, Chardavoyne was compelled to pay for such benefits, including without limitation medical insurance premiums pursuant to COBRA.

52.     Pursuant to CONN. GEN. STAT. §§ 31-72 and 31-76k, Chardavoyne is entitled to the value of fringe and employee benefits unpaid and owed to him under the Employment Agreement, as well as all costs and attorney's fees associated with this litigation.

## COUNT V
### (CONVERSION)

53.     Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 52 above as if fully restated herein.

54.     Chardavoyne has earned and is entitled to shares of RWE AG stock, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan (the "RWE Stock").

55.     Defendants have not, to date, paid Chardavoyne the RWE Stock to which he is entitled, and have therefore wrongfully and indefinitely deprived Chardavoyne of his property.

56.     Defendants have deprived Chardavoyne of his RWE Stock without authorization.

57.     By depriving Chardavoyne of his RWE stock wrongfully, indefinitely and without authorization, Defendants have converted Chardavoyne's property and have caused him substantial damages.

- 13 -

{00101268; 7; 1103-2}

WHEREFORE, Plaintiff demands judgment for the following relief: (1) twice the full amount of wages unpaid and wrongfully withheld; (2) the value of all fringe and employee benefits wrongfully withheld; (3) the value of all other compensation wrongfully withheld, including bonus and incentive compensation; (4) all shares of RWE Stock belonging to Chardavoyne; (5) punitive damages; (6) all interest, costs, taxes (if any), and attorneys' fees related to this action; and (7) such other and further relief as the Court may deem just and proper.

PLAINTIFF DAVID E. CHARDAVOYNE

By: _____
James R. Hawkins II (ct00128)
William M. Tong (ct25304)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689
Telephone: (203) 325-5000
Facsimile: (203) 348-5777
E-mail: jhawkins@fdh.com

- 14 -

{00101268; 7; 1103-2}

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was delivered by United

States Mail, first class, postage-prepaid to the following this 9th day of March, 2005:

> Jonathan B. Orleans, Esq.
> Zeldes, Needle & Cooper, P.C.
> 1000 Lafayette Boulevard
> Suite 500
> Bridgeport, Connecticut  06604
>
> Stephen P. Fogerty, Esq.
> Halloran & Sage LLP
> 315 Post Road West
> Westport, Connecticut  06880

William M. Tong

- 15 -