FILED
2005 APR 15 P 12: 06
U.S. DISTRICT COURT
BRIDGEPORT, CONN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID E. CHARDAVOYNE,

          Plaintiff,

V.

THAMES WATER HOLDINGS
INCORPORATED and THAMES WATER
NORTH AMERICA, INC.,

          Defendant.

No. 03-CV-56 (WWE)

APRIL 14, 2005

## ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS
## TO THE PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Thames Water Holdings Incorporated ("TWHI") and Thames Water North America, Inc. ("TWNA") (collectively "Thames Water"), for their answer to plaintiff's Second Amended Complaint dated March 9, 2005, state as follows:

1.    Thames Water admits the allegations of Paragraph 1.

2.    Thames Water lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2, and leaves plaintiff to his proof.

3.    Thames Water admits that TWHI is a corporation organized and existing under the laws of the State of Delaware, but denies that its principal place of business is in Pennsylvania.

4.    Thames Water admits that Thames Water North America, Inc. is a Delaware corporation with its principal place of business in New Jersey and that it was registered to do business in Connecticut. The remaining allegation of agency is denied.

5.  Thames Water admits that TWHI permitted Mr. Chardavoyne to maintain an office at 281 Tresser Boulevard, Stamford, Connecticut. Thames Water denies the remaining allegations in Paragraph 5. By way of further answer, Thames Water closed the Stamford office in or about in December 2001 and moved it to Voorhees, New Jersey.

6.  Paragraph 6 states conclusions of law to which no response is required. To the extent that a response is required to the allegations of paragraph 6, Thames Water denies the allegations.

7.  Thames Water denies the allegations of Paragraph 7 as stated. Thames Water admits that Thames Water Plc was a publicly held company until at least November 2000; that Thames Water Plc was engaged in the water and wastewater business in the United Kingdom; that TWNA and THWI and Thames Water Plc are subsidiaries of RWE AG; that RWE AG is a publicly held company organized under the laws of the Federal Republic of Germany with corporate headquarters in Essen, Germany; that RWE's lines of business include electricity, water and wastewater, waste and recycling, natural gas and other services; and, upon information and belief, that Thames Water Plc had operations and other businesses in 44 countries worldwide at the time of filing of the Amended Complaint. Thames Water denies the remaining allegations of Paragraph 7.

8.  Thames Water admits that a true copy of the Employment Agreement is attached to the Amended Complaint, and respectfully submits that the writing speaks for itself. By way of further answer, Thames Water properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Agreement.

9.  Thames Water admits that Mr. Chardavoyne was a member of the Board of Directors of TWHI until May 29, 2002 and that he served as President of TWHI from

2

February 15, 1999 until May 29, 2002. Thames Water denies the remaining allegations of Paragraph 9.

10. The Employment Agreement is attached to the Amended Complaint, and Thames Water respectfully submits that the writing speaks for itself. Thames Water admits that Mr. Chardavoyne was President and a Director of TWNA until May 29, 2002, and that TWNA paid his salary under the Employment Agreement. By way of further answer, Thames Water properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Employment Agreement.

11. The Employment Agreement is attached to the Amended Complaint, and Thames Water respectfully submits that the writing speaks for itself. By way of further answer, Thames Water properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Agreement.

12. The Employment Agreement is attached to the Amended Complaint, and Thames Water respectfully submits that the writing speaks for itself. By way of further answer, Thames Water continued to provide to Mr. Chardavoyne all benefits to which he was entitled under the Employment Agreement up to and including May 29, 2003, the date of termination of his employment – one year after Thames Water provided proper notice of his termination pursuant to the Employment Agreement.

13. The Employment Agreement is attached to the Amended Complaint, and Thames Water respectfully submits that the writing speaks for itself. By way of further answer, Thames Water permitted Mr. Chardavoyne to use the Company car up to and including May 29, 2003, despite the fact that he had no business use for the car between May 30, 2002 and May 29, 2003.

14.     Thames Water admits that on or about May 29, 2002, James McGivern, Managing Director, Thames Water Americas (specified in Mr. Chardavoyne's Employment Agreement as the Line Manager to whom Mr. Chardavoyne directly reported), and Matthew Huckin, Human Resources Director, Thames Water Americas, met with Mr. Chardavoyne. Thames Water admits that at that meeting, Mr. Huckin gave Mr. Chardavoyne an envelope containing a letter and a proposed agreement that, if accepted by Mr. Chardavoyne, would have modified the conditions of his separation from employment as established by the Employment Agreement. Thames Water admits that a true copy of the Letter is attached to the Amended Complaint as Exhibit 2, and that a true copy of the proposed agreement is attached to the Amended Complaint as Exhibit 3. Thames Water lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 14, and leaves plaintiff to his proof. By way of further answer, at that meeting, Mr. McGivern advised Mr. Chardavoyne that his employment was being terminated effective May 29, 2003, and that the decision to terminate his employment was at the direction of William Alexander, Chief Executive Officer of Thames Water Plc and Chairman of Thames Water Holdings, Inc.

15.     Paragraph 15 is denied as alleged. The defendants admit that the Agreement, Exhibit A, is a copy of the agreement between the parties. The language of the Agreement speaks for itself.

16.     Thames Water denies the allegations of Paragraph 16, including all of its subparts, and specifically denies that the Letter is not a notice of termination required under Section 11.1 of the Employment Agreement. By way of further answer, the Letter, either

4

standing alone or in combination with the proposed agreement, provided proper notice of termination to Mr. Chardavoyne pursuant to the terms of the Employment Agreement.

17. Paragraph 17 is denied as alleged. The referenced documents speak for themselves.

18. Thames Water admits that Mr. Chardavoyne notified Thames Water that the proposed agreement was not acceptable to him.

19. Thames Water admits that Chardavoyne has maintained the Letter is not a notice of termination, but Thames Water does not admit the truth of that assertion.

20. Thames Water admits that Mr. Chardavoyne has informed TWHI that he does not consider the Letter to be effective notice of the termination of his employment under Section 11.1 of the Agreement, and has stated his reasons. Thames Water does not admit the truth of that assertion. By way of further answer, on May 29, 2002, Mr. Chardavoyne was provided proper notice of the termination of his employment pursuant to the terms of the Employment Agreement.

21. Paragraph 21 is denied. Chardavoyne was informed that he was, in fact, terminated.

22. Paragraph 22 is denied. Chardavoyne has been informed that he was terminated.

23. Thames Water admits that defendants have not paid Mr. Chardavoyne compensation after June 6, 2003. By way of further answer, Thames Water had no obligation to do so because Mr. Chardavoyne's employment was properly terminated pursuant to the terms of the Employment Agreement on May 29, 2003, and Mr. Chardavoyne provided no services after May 29, 2002.

24. Paragraph 24 is denied.

25. Thames Water denies the allegations of Paragraph 25. By way of further answer, Thames Water was under no obligation to provide medical insurance benefits after May 29, 2003 because it had properly terminated Mr. Chardavoyne's employment effective May 29, 2003, and Mr. Chardavoyne elected continuation coverage after June 30, 2003.

26. Paragraph 26 is denied.

27. Paragraph 27 is denied.

28. Paragraph 28 is denied.

29. Thames Water denies the allegations of Paragraph 29. By way of further answer, William Alexander, Chief Executive Officer of Thames Water Plc and Chairman of Thames Water Holdings, Inc., James McGivern, Managing Director, Thames Water Americas (specified on the Employment Agreement as the Line Manager to whom Mr. Chardavoyne directly reported) and Matthew Huckin, Human Resources Director, Thames Water Americas, exercised Thames Water's right to terminate Mr. Chardavoyne's employment pursuant to the terms of the Employment Agreement and provided proper notice of such termination on May 29, 2002.

**COUNT I** (Breach of Contract)

30. The answers to paragraphs 1 through 29, inclusive, above are hereby incorporated and made the answer to paragraph 30 as if fully set forth herein.

31. Paragraph 31 is admitted.

32. Paragraph 32 is denied.

33. Paragraph 33 is denied.

34. Paragraph 34 is denied.

6

35. Paragraph 35 is denied.

36. Paragraph 36 is denied.

**COUNT II (Breach of the Implied Covenant of Good Faith and Fair Dealing)**

37. The answers to paragraphs 1 through 36, inclusive, above are hereby made the answer to paragraph 37 as if fully set forth herein.

38. Paragraph 38 is denied.

39. Paragraph 39 is denied.

40. Paragraph 40 is denied.

41. Paragraph 41 is denied.

42. Paragraph 42 is denied.

43. Paragraph 43 is denied.

44. Paragraph 44 is denied.

45. Paragraph 45 is denied.

**COUNT III (Failure to Pay Wages Pursuant to Conn. Gen. Stat. Section 31-72)**

46. The answers to paragraphs 1 through 45, inclusive, above are hereby incorporated and made the answer to paragraph 46 as if fully set forth herein.

47. Paragraph 47 is denied.

48. Paragraph 48 is denied.

**COUNT IV (Failure to Pay Fringe Benefits Pursuant to Conn. Gen. Stat. Sections 31-72 and 76K)**

49. The answers to paragraphs 1 through 48, inclusive, above are hereby incorporated and made the answers to paragraph 49 as if fully set forth herein.

50. Paragraph 50 is denied.

51. Paragraph 51 is denied.

52.     Paragraph 52 is denied.

<u>**COUNT V**</u> **(Conversion)**

53.     The answers to paragraphs 1 through 52, inclusive, above are hereby incorporated and made the answer to paragraph 53 as if fully set forth herein.

54.     As to paragraph 54, the undersigned defendants have no knowledge or information sufficient to form a belief and, therefore, leave the plaintiff to his proof.

## **AFFIRMATIVE DEFENSES**

<u>FIRST AFFIRMATIVE DEFENSE</u>

Plaintiff has been paid all compensation and benefits to which he is entitled under the terms of his Employment Agreement.

<u>SECOND AFFIRMATIVE DEFENSE</u>

This Court lacks personal jurisdiction over defendant Thames Water Holdings, Inc.

<u>THIRD AFFIRMATIVE DEFENSE</u>

Venue of this action is not properly laid in this District.

<u>FOURTH AFFIRMATIVE DEFENSE</u>

Plaintiff is not entitled to some or all of the relief he seeks, pursuant to the doctrine of "unclean hands."

WHEREFORE, defendants TWHI and TWNA pray that this Court enter judgment in their favor on all claims for relief asserted in plaintiff's Second Amended Complaint and that the Court award TWHI and TWNA their costs pursuant to Fed.R.Civ.P. 54(d)(1).

## COUNTERCLAIMS

Defendant/counterclaim-plaintiff, Thames Water Holdings Incorporated ("TWHI"), for its Counterclaim against plaintiff/counterclaim-defendant, David E. Chardavoyne, state as follows:

### JURISDICTION

1. This Court's jurisdiction over these counterclaims is based on 28 U.S.C. §1367 because the counterclaims arise out of the same transaction or occurrence that is the subject matter of the plaintiff's claims as set forth in the Amended Complaint dated July 16, 2003.

### PARTIES

2. TWHI is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New Jersey.

3. David E. Chardavoyne ("Mr. Chardavoyne") is the plaintiff/counterclaim-defendant herein.

### FACTS

*The Agreement*

4. On or about January 15, 1999, TWHI entered into an employment agreement ("Agreement") with plaintiff ("Executive").

5. Paragraph 2.1 of the Agreement provides: "The appointment shall be effective from 15 February and the Company shall employ the Executive and the Executive shall serve the Company as President, US within Thames Water PLC with all attendant responsibilities, duties and authority, or in such other appointment as the Chief Executive may from time to time direct."

6.    Paragraph 11.1 of the Agreement provides: "Save as provided for in clauses 12.1, 12.2. and 12.3 below, the Executive's employment hereunder shall continue subject to the terms of this Agreement until terminated (a) by the Company giving to the Executive not less than twelve months' written notice expiring at any time; or (b) by the Executive giving not less than six months' written notice expiring at any time."

7.    Paragraph 7 of the Agreement provides: "The Company shall, during the term of this Agreement, provide the Executive with a car for his use in the business of the Company or any Group Company and shall bear all standing costs relating thereto including the costs of insuring, testing, taxing, repairing and maintaining the same and shall reimburse the Executive's running expense of the car in accordance with the Company's rules and procedures for the time being in force. The cost of all fuel will be met by the Company, including reasonable private mileage in the USA."

8.    Paragraph 14 of the Agreement provides: "The Chief Executive may at any time during the term of the Executive's employment hereunder elect not to provide work for the Executive to do and/or require the Executive not to attend at the premises of any Group Company and no such event shall constitute a repudiation of this Agreement or a dismissal of the Executive whether constructive or otherwise."

9.    Paragraphs 13 and 13.3 of the Agreement provide: "Upon termination of his employment with the Company for whatsoever reason the Executive shall without prejudice to any claim for damages or other remedy which either party might have against the other: ... immediately return to the Company in good condition any car provided him to pursuant to Clause 8 above and any other communication or computing equipment and peripheral devices belonging to the Company."

*Notice of Termination and Termination of Employment*

10. On May 29, 2002, TWHI and Thames Water North America, Inc. (collectively "Thames Water") gave Mr. Chardavoyne notice of the termination of his employment pursuant to Paragraph 11.1(a) of the Agreement.

11. From and after May 29, 2002, as permitted by the Agreement, Thames Water assigned Mr. Chardavoyne no duties or responsibilities, and he performed no work for Thames Water.

12. After May 29, 2002, Mr. Chardavoyne had no legitimate business use for the Company car provided to him by TWHI.

13. Effective May 29, 2003, Mr. Chardavoyne's employment was properly terminated pursuant to the terms of the Agreement.

*The Car*

14. On or about May 7, 2002, TWHI leased a 2002 Lincoln sedan, vehicle identification number 1LNHM87A62Y672200 ("the Car"), from Miller Auto Leasing Company.

15. The lease, which expires in May 2005, requires TWHI to make lease payments of $804.54 a month, and to pay 12¢ per mile above 45,000 miles for the term of the lease.

16. TWHI, as the lessee, is responsible for operating expenses, such as: washing, parking, garage, highway and road service, towing charges or tolls and all fines incurred in connection with the Car; registration and inspection costs; taxes; and certain maintenance and repairs. Under the terms of the lease, TWHI "shall indemnify and hold harmless Miller and Miller's agents and employees from and against (i) any damage, loss,

theft or destruction of any Vehicle and its contents during the lease term, and (ii) any loss, damage, injury, claim, demand, cost and expense (including attorney's fees) arising out of or connected with the use, operation or condition (including all defects whether or not discoverable by either party) of any Vehicle during the Lease Term, except any portion of any such loss, etc. that is within the coverage of any insurance to be provided by Miller as specified in the applicable Schedule A."

17. TWHI provided the Car to Mr. Chardavoyne under the terms of the Agreement for his business use during his employment.

18. TWHI also permitted Mr. Chardavoyne to use the Car between May 29, 2002, the date he was notified pursuant to the Agreement that his employment would be terminated, and May 29, 2003, the effective date of termination of his employment, despite the fact that he had no business use for it during that period.

19. Mr. Chardavoyne was contractually obligated under Paragraph 13.3 of the Agreement to return the Car on May 29, 2003.

20. On May 28, 2003, and on several occasions since, TWHI has demanded that Mr. Chardavoyne return the Car.

21. On December 14, 2004, Mr. Chardavoyne returned the Car.

22. Knowing that his duties and responsibilities had been eliminated on May 29, 2002, that after May 29, 2002 he had no authority to conduct any business, and to the best of TWHI's knowledge did not conduct any business, on behalf of Thames Water, and that Thames Water had terminated his employment on May 29, 2003, Mr. Chardavoyne's wrongful retention of the car constituted wanton and wilful malicious misconduct.

23.    TWHI incurred expenses – including but not limited to lease payments, insurance, and taxes – associated with the Car while the Car was in the wrongful possession of Mr. Chardavoyne.

FIRST COUNTERCLAIM – CONVERSION

24.    TWHI repeats and realleges Paragraphs 1 through 23 above, as if fully set forth herein.

25.    Mr. Chardavoyne used the Company car leased by TWHI and provided to Mr. Chardavoyne pursuant to the Agreement during the time of his employment.

26.    After his termination, Mr. Chardavoyne wrongfully converted such car to his own use, depriving TWHI of the use and enjoyment of such car, and interfered with Thames Water's lawful rights and interests in the car.

27.    TWHI sustained damages as a result of Mr. Chardavoyne's unauthorized conduct in assuming and exercising control over TWHI's car, for which TWHI is entitled to both compensatory and punitive damages.

28.    The Company sustained damages as a result of Mr. Chardavoyne's unauthorized conduct in assuming and exercising control over Thames Water's car, for which Thames Water is entitled to both compensatory and punitive damages.

SECOND COUNTERCLAIM – STATUTORY THEFT (C.G.S. §52-564)

29.    Thames Water repeats and realleges Paragraphs 1 through 23 and 25 and 26 above as if fully set forth herein.

30. C.G.S. § 53a-119 provides in relevant part:

A person commits larceny when, with intent to deprive another person of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:

1. Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or another property of another in his care or custody.

31. Mr. Chardavoyne obtained the Company car by means of larcenous conduct in violation of C.G.S. § 53a-119.

32. Mr. Chardavoyne's conduct as described above constitutes a theft of property within the meaning of C.G.S. § 52-564.

33. Thames Water has sustained damages as a result of Mr. Chardavoyne's theft of property, for which Thames Water is entitled to recover from Mr. Chardavoyne treble damages pursuant to C.G.S. § 52-564.

THIRD COUNTERCLAIM – BREACH OF CONTRACT

34. Thames Water repeats and realleges Paragraphs 1 through 33 above as if fully set forth herein.

35. Mr. Chardavoyne refused to return the car after May 29, 2003 as he was contractually obligated to do so pursuant to Paragraph 13.3 of the Agreement.

36. Because of Mr. Chardavoyne's breach of his contract, Thames Water has suffered damage.

WHEREFORE, defendant/counterclaim-plaintiff TWHI prays for the following relief on its Counterclaims:

1. Compensatory damages;

2. Punitive damages pursuant to common law;

3. Treble damages pursuant to C.G.S. § 52-564;

4. Costs of this action; and

5. Said other and further relief as the Court deems fair, just and equitable.

Stephen P. Fogerty (ct 01398)
Halloran & Sage, LLP
315 Post Road West
Westport, Connecticut 06880
Telephone: 203-227-2855
Fax: 203-227-6992
e-mail: fogerty@halloran-sage.com

Attorney for Defendants Thames Water Holdings Incorporated and Thames Water North America, Inc. and Counter-Plaintiff Thames Water Holding Incorporated

## CERTIFICATION

This is to certify that a copy of the foregoing has been sent via U.S. First Class Mail, postage prepaid, on this date to:

>James R. Hawkins II, Esq.
>William Tong, Esq.
>Finn, Dixon & Herling LLP
>One Landmark Sq., Suite 1400
>Stamford, CT 06901-2689

Dated at Bridgeport, Connecticut on this 14th day of April, 2005.

_____
Stephen P. Fogerty