Johnston & Harder, Inc., 35 A.2d 721 (Pa. 1944) and Fife v. Great Atlantic & Pacific Tea Co., 70 A.2d 369 (Pa. Super. 1950). A review of these cases demonstrates that the entry of summary judgment in favor of TWH and TWNA is appropriate because it is undisputed that Chardavoyne received the salary and benefits that he would have been entitled to during twelve months notice period ending May 29, 2003. [3]

In Massachusetts Bonding, the counterclaim-defendant, an insurance company, appealed a judgment finding that its summary cancellation of a contract with the counterclaim-plaintiff, an insurance agency, was a breach of the agreement and that the agency had been damaged in the amount of $27,500. With regard to the issue of whether the agency sufficiently established the damages that the trial court awarded it, the Pennsylvania Supreme Court significantly modified the trial court's judgment.

At the outset of its analysis, the court recognized that it was "well settled that the measure of damages for breach of contract is the value of the contract at the date of cancellation." Massachusetts Bonding, 35 A.2d at 724. It further noted that it was "equally well settled that in fixing that valuation one must consider the length of time that the contract is assured of legal existence." Id. As the contract in Massachusetts Bonding was an agency contract, the court noted that "[n]o matter how high the earnings may be under an agency contract, the earnings will end when the contract ends." Id. Under the contract, the agency was entitled to 30 days' notice prior to cancellation. Id. Thus, the Massachusetts Bonding court held that the loss suffered by

---

[3]/     Moreover, the doctrine of substantial performance "is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right…may not be forfeited by a reason of more technical, inadvertent, or unimportant admissions or defects." First Mortgage Co. of Pa. v. Carter, 452 A.2d 835, 837 (Pa. Super. 1982).

the agency as a result of the failure to receive 30 days' notice of the cancellation was the loss of 30 days' profits. Id. at 724-25. More specifically, it concluded that:

> If this plaintiff had given this defendant the thirty days' notice provided for in the agency contract the defendant would have no cause of action whatsoever. Its cause of action arises solely from the failure to give this notice. Any damages awarded it must be based solely on that failure.

Id. at 724.

Consequently, the court concluded that the agency was entitled to recover the profits which it would have received from the insurer's performance of its promise to give 30 days' notice of the cancellation of the agency contract. Id. at 725. See id. at 726 ("The most that defendant is entitled to under this record is the loss of 30 days' net profits by reason of the failure of the plaintiff to give it due notice of the cancellation."). As part of its conclusion, the court noted that "[t]he measure of compensatory damages is such sum as will compensate the person injured for the loss sustained, with the least burden to the wrongdoer consistent with the idea of fair compensation." Id.

Similarly, Fife supports the entry of summary judgment in the instant case. In Fife, plaintiff entered into a contract by which it was to haul the defendant's merchandise from warehouses to designated retail stores. 70 A.2d at 369-70. The contract contained a 10-day cancellation clause that stated: "this contract, and any renewal thereof, may be cancelled by either party by giving the other party 10 days' notice in writing." Id. at 369. In relevant part, the trial judge instructed the jury that if it found for the plaintiff, the damages had to be limited to

10 days' net profits which the plaintiff could have made under the contract, together with interest. Id. at 370.[4]

On appeal, the plaintiff argued that the trial judge erred in limiting his damages to the 10-day period. The Pennsylvania intermediate appellate court rejected his argument. Id. at 370 ("we…are in full agreement with the trial judge in his ruling on the question of law."). As part of its analysis, the court rejected the plaintiff's attempts to distinguish Massachusetts Bonding. Specifically, the plaintiff argued that Massachusetts Bonding was distinguishable because in that case a written notice of termination of the contract was received. Fife, 70 A.2d at 370-71. The Fife court noted that regardless of the form of the notice in Massachusetts Bonding, the notice given was not in accordance with the provisions of the contract. Fife, 70 A.2d at 370-71. Nevertheless, the holding in Massachusetts Bonding was that damages were limited to the net profits which could have been earned during the period provided for in the cancellation clause of the contract. Id. at 371. That principle governed the situation in Fife. Id.[5]

---

[4]    At trial, the plaintiff's evidence demonstrated that the defendant refused to permit the plaintiff to haul any merchandise on and after October 13, 1937 and that on October 15, 1937, informed the plaintiff that he was through and that the hauling thereafter would be done by others. Id. at 369

[5]    The Fife court noted that the principle underlying the Massachusetts Bonding case was set forth in 25 C.J.S., Damages, § 74:

> Where a contract is terminable at any time on notice and it is terminated without notice, the damages which the aggrieved party may recover are limited to the notice period.

Id. at 371. The Fife court further noted that a number of decisions from other jurisdictions supported this rule of law. Id. (citing cases from New York, Kentucky, Wisconsin, Mississippi, Georgia and Texas). As part of its analysis, the court also recognized that the plaintiff's case rested upon the claim that the defendant breached the contract on October 15, 1937. Id. at 371-72. Thus, "[i]t was on that date, therefore, that the rights and liabilities of the parties became fixed and determined so far as the plaintiff's case was concerned." Id. at 371. Accordingly, the court affirmed the judgment.

2.    **Other Jurisdictions Have Applied the Reasoning from the Pennsylvania Decisions in Employment Cases**

The principles articulated in <u>Massachusetts Bonding</u> and <u>Fife</u> have been applied by numerous courts in employment cases. The analysis applied by those courts supports the entry of summary judgment in the case at bar. The case law reviewed below demonstrates that even assuming for the sake of argument that Chardavoyne is correct in his claim that the written notice he received did not fully satisfy the terms of the Employment Agreement, he is not entitled to any damages and that summary judgment should be entered in favor of TWH and TWNA. In sum, the case law recognizes that were an employee does not receive the requisite notice, he is entitled to no more than the wages and benefits he would have been entitled to during the notice period. It also recognizes that where an employee has been paid the wages and benefits due him during the notice period, an employer is entitled to summary judgment. In the instant case, the notice period under the Employment Agreement was twelve months. It ended on May 29, 2003. It is undisputed that Chardavoyne received the wages and benefits he was due during the notice period. In fact, by this lawsuit, Chardavoyne only seeks damages for the wages after June 6, 2003 and benefits after June 30, 2003. (Second Am. Compl., Count III, ¶ 47, Count IV, ¶ 50)

a.    **Alabama Case Law Supports the Entry of Summary Judgment**

A review of the case law from Alabama and the other states reveals that the approach adopted by the Pennsylvania courts in <u>Massachusetts Bonding</u> and <u>Fife</u> regarding claims of breach of notice/cancellation provisions is the "majority rule." <u>Smalley Transp. Co. Inc. v. Bay Dray, Inc.</u>, 612 So.2d 1182, 1188 (Ala. 1992). <u>See id.</u> at 1188 ("the rule limiting damage to the notice period has been adopted and followed in cases involving a wide variety of commercial transactions outside the employment context,....")(citing <u>Fife</u>).

In <u>Burch v. Lake Forrest Prop. Owners' Assoc. Inc.</u>, 565 So.2d 611 (Ala. 1990), the plaintiff alleged that he was terminated as the defendant's general manager and golf professional, without the 45-day notice required by his contract. Specifically, the contract provided for employment for a period of two years. However, it contained a termination clause that read as follows:

> Notwithstanding any other provisions of the agreement, the association reserves the right to terminate [the plaintiff] at any time for any reason, with forty-five days' written notice.

<u>Id.</u> at 612 (emphasis omitted). Despite the notice clause, which was added pursuant to the plaintiff's wishes, the plaintiff was terminated without notice. <u>Id.</u> The defendant did, however, pay the plaintiff for the forty-five days and gave him all the benefits to which he would have been entitled to during the forty-five day period. <u>Id.</u> The trial court entered summary judgment in favor of the defendant-employer.

On appeal, the Alabama Supreme Court affirmed the entry of summary judgment. It rejected the plaintiff's argument that he was entitled to payment for the entire contract period of two years. The court recognized that if the defendant had fully performed the provisions of the contract, the plaintiff would have received compensation for forty-five days as well as all of the privileges afforded the general manager and golf pro of the defendant. <u>Burch</u>, 565 So.2d at 612 (citing <u>Curacare, Inc. v. Pollack</u>, 501 So.2d 470 (Ala. Civ. App.), <u>writ quashed</u> 501 So.2d 472 (Ala. 1986)). "All of these things were given to him, despite the fact that he was not allowed to 'remain on the job' for those forty-five days." <u>Burch</u>, 565 So.2d at 612. The Alabama Supreme Court further recognized that:

> The summary discharge of an employee entitled under the employment contract to a specified period of notice ordinarily permits him to recover his compensation for the notice period only and not for the entire balance of the contract period.

Id. (citation and internal quotation marks omitted). Thus, the Burch court concluded that the plaintiff was not entitled to compensation for the entire contract period. Id. See id. ("Because the [defendant] had already compensated him for the notice period provided in the contract, summary judgment was proper.").[6]

      **b.**    **Second Circuit/New York Case Law Supports the Entry of Summary Judgment**

The Second Circuit has also applied the principles recognized in Massachusetts Bonding and Fife. In Holt v. Seversky Electronatom Corp., 452 F.2d 31 (2d Cir. 1971), an employee brought an action against his former employer for an alleged breach of an employment agreement. The district court granted summary judgment in favor of the employee on the claim for lost salary limited to an amount equal to the salary due for one month, $1,833.33, as opposed to the $81,666.667 sought by the plaintiff. Id. at 33 & n.1. The plaintiff appealed and the Second Circuit affirmed.

The agreement in Holt included a trial period of employment and a related notice provision. It stated, in relevant part, as follows:

> It is understood that the corporation may terminate this agreement as of February 1, 1968, by giving [Holt] at least 30 days' written notice prior thereto of its intention of such termination.

Id. at 33. The plaintiff received written notice of his termination on January 24, 1968.

The Second Circuit agreed with the district court's conclusion that under the trial period provision, the employer's notice of termination was untimely. Id. Written notice was first given to the plaintiff on January 24, rather than on January 2, 30 days prior to February 1. Id. As part

---

[6]/    See also Nobles v. Rural Community Ins. Servs., 303 F.Supp.2d 1292, 1301-02 (M.D. Ala.), aff'd 116 Fed. Appx. 253 (11th Cir. 2004) (granting summary judgment and applying principles set forth in Burch).

of its analysis, the Second Circuit recognized that New York courts had adopted the rule

articulated in Professor Williston's Treatise on contracts. Id. at 34 n.4 (citing cases). That rule

stated as follows:

> In general, where a contract of ordinary employment stipulates
> for...a certain period of notice, the employment may be cancelled
> on shorter notice or with none at all upon payment of wages or
> salary for the period of notice.

Id. at 34 (citation omitted).

The Second Circuit believed that the issue in Holt was whether the general rule should be

extended to an employment contract where the option to terminate was limited to one date -

February 1, 1968. It agreed with the district court's conclusion that New York law would extend

the general rule to the circumstances in Holt. In summarizing New York law, the Second Circuit

stated as follows:

> Whatever functions notice requirements may serve in other areas
> of contract and option law, in employment relationships such
> requirements are principally viewed as protecting employees
> against suddenly being left without either a job or a salary.
> Accordingly, when an employee's protection has been diminished
> by a late notice of termination or no notice at all, New York courts
> have required the employer to pay the employee's salary for the
> full notice period. The New York courts have refused, however, to
> hold that failure to comply strictly with these notice requirements
> will result in a 'wrongful discharge' in the traditional sense.

Id. at 34-35 (footnote omitted). Thus, as 30-days wages had been awarded, the Second Circuit

affirmed the entry of summary judgment on the claim for lost salary. See id. at 33 n.1. See also

Denniston v. Taylor, 2004 WL 226147, at **7-8 (S.D.N.Y. Feb. 4, 2004) (granting summary

judgment).

    c.    **Case Law From New Mexico, Texas and Connecticut Supports the Entry of Summary Judgment**

Case law from New Mexico, Texas and Connecticut also supports the entry of summary judgment in favor of TWH and TWNA. Stock v. Grantham, 964 P.2d 125, 132-33 (N.M. Ct. App. 1998); Hussong v. Schwan's Sales Enterp., Inc., 896 S.W.2d 320, 322-26 (Tex. Ct. App. 1995); B. Finder Assocs. v. Coldform, Inc., 2005 WL 1331811, at **2-3 (Conn. Super. May 5, 2005); Gent Uniform Rental Corp. v. Joran, 2000 WL 1268841, at **3-4 (Conn. Super. Aug. 18, 2000).[7] The analysis of the New Mexico Court of Appeals in Stock is of particular insight. It stated as follows:

> requirement that the employer give notice protects the at-will employee from being suddenly put on the street. The employee is assured of the benefits of the contract for at least the prescribed period after notice is given. As a result, the measure of damages for failure to give notice is ordinarily the value of the benefits that the employee would have received during the period from the time of firing to the end of the notice period. For example, if the employer failed to give a required 30-day notice, the employee's damages are limited to the value of 30 days of benefits. The employee should not be placed in a better position than if the employer had complied with the contract by giving proper written notice.

Stock, 964 P.2d at 132-33.

The application of the foregoing legal principles to the case at bar demonstrate that the entry of summary judgment is appropriate. The notice period under the Employment Agreement was twelve months. (Employment Agreement, at 4, ¶ 11.1(a)) Even assuming for the sake of

---

[7]    See Odell v. Humbell Oil & Refining Co., 201 F.2d 123, 128 (10th Cir. 1953) (affirming summary judgment and recognizing that "[w]here a contract of employment expressly empowers an employer to terminate the contract upon giving notice, recovery for wrongful breach is limited to the notice period."); Lewin v. Long, 70 F.Supp.2d 534, 548-49 (D.N.J. 1999) (granting summary judgment under Texas law and Hussong); Stolz v. Wells, 43 S.W.2d 163, 165 (Tex. Ct. Civ. App. 1931) (termination is the "equivalent to notice and entitled [the plaintiff] to recover for only one month's pay").

argument that Chardavoyne was terminated without proper written notice at the May 29, 2002 meeting, under the Employment Agreement, he was only entitled to wages and benefits for the one year notice period. That period ended on May 29, 2003, one year after the meeting. It is undisputed that Chardavoyne received the wages and benefits he was due under the Employment Agreement during the notice period. In fact, by this lawsuit, Chardavoyne only seeks damages for wages after June 6, 2003 and benefits after June 30, 2003. (Second Am. Compl., Count III, ¶ 47, Count IV, ¶ 50) Thus, under the governing legal principles, the Court should enter summary judgment in favor of TWH and TWNA.

Moreover, as demonstrated in § I.B above, a review of the May 29 letter, the proposed separation agreement, the June 10 and July 3 letters, Chardavoyne's deposition testimony and his actions after the May 29 meeting confirms that the entry of summary judgment on the notice claim and the related claims for wages and benefits is appropriate. (See supra Statement of Facts, §§ I.B.1-5, I.C.1-2) In addition to the written materials provided to Chardavoyne, during his deposition, he conceded numerous points that demonstrate that he received notice of the elimination of his employment with TWH at the May 29 meeting. For example, he testified that he was asked not to come into the office after May 29, 2002 and that he respected that request. (Pl.'s Depo. Tr. at 30) He further testified that during the May 29 meeting, he inquired about obtaining a letter of recommendation from Alexander and about outplacement assistance. (Id. at 98-100, 103-04) He needed that letter in order to be able to get another job. (Id. at 103-04) Accordingly, the defendants' summary judgment motion should be granted.

### D. A Claim Regarding The 872 Shares Of RWE AG Stock Cannot Be Asserted Against Either TWH Or TWNA As A Matter of Law

Chardavoyne's claim that TWH and TWNA are liable to him for withholding 872 shares of RWE AG stock is without merit. A review of the Award Notice reveals that it was executed

by and was from Thames Water Plc. (Ex. 15, 3/27/02 Award Notice) Thus, there is no basis for Chardavoyne to assert a claim under it against either TWH or TWNA. See Electron Energy, 597 A.2d at 177 ("It is fundamental contract law that one cannot be liable for breach of contract unless one is a party to that contract."); Surya Sys., 2005 WL 1514225, at *2 (same). Consequently, summary judgment should be entered in their favor.

### E.    The Plaintiff's Miscellaneous Claims Are Without Merit

As demonstrated below, the remaining, miscellaneous aspects of Chardavoyne's breach of contract claim are without merit. They break down into two categories. The first is best described as a number of general complaints, based on alleged conduct by the defendants. The second relates to an internal statement and two emails dated June 2, 2005. In sum, the entry of summary judgment on the miscellaneous claims is appropriate because Chardavoyne has failed to identify what provisions of the Employment Agreement the alleged acts violated, that there was a material breach of those provisions and that he was damaged as a result of any breach. Corestates Bank, 723 A.2d at 1058. He has also failed to produce admissible evidence in support of his allegations. Conclusory allegations that the Employment Agreement was breached are insufficient to withstand summary judgment. Celotex, 477 U.S. at 322-23. Furthermore, the dismissal of the claim for breach of the written notice provision eliminates the underlying basis for many, if not all, of the miscellaneous claims. Consequently, the Court should entry summary judgment in favor of TWH and TWNA.

### 1.    Summary Judgment Should be Entered on the Plaintiff's General Complaints Claims

Chardavoyne's general complaint claims are somewhat confusing. In his deposition testimony, Chardavoyne summarized the claims as follows:

> One is the threatening to discontinue medical coverage, not in accordance with the contract; there's a letter from Mr. Richardson to that effect. The letter from a person in American Water that threatened to stop my medical coverage on November 30th, 2004; the inability or refusal to provide me a correct W-2 form; the threatening of not paying the non qualified deferred compensation pay-out when all the other participants had gotten theirs, and I did not get mine.
>
> ...

(Pl.'s Depo. Tr. at 150-51) He also alleges that the defendants breached the Employment Agreement by misrepresenting that the terms of the proposed separation agreement were superior to the terms of the Employment Agreement. (Second Am. Compl. ¶ 26a)

Chardavoyne further alleges that since his employment in San Antonio, Texas was publicly announced on November 21, 2004, the defendants have attempted to harm him and prejudice his new employment. (Second Am. Compl. ¶¶ 27a-b) He concedes that the entire basis for his claim is a hearsay statement by his attorney allegedly restating something said in connection with a settlement offer. (Pl.'s Depo. Tr. at 151-53)[8]

With regard to Chardavoyne's claim that there was a baseless allegation that after May 29, 2002, he was abusive towards a Thames Water employee, Mr. Matz, Second Am. Compl. ¶ 26e, Chardavoyne testified at his deposition that he believed that that statement was made by an attorney for the "company." (Pl.'s Depo. Tr. at 153-54)

Chardavoyne further maintains that during the course of a settlement conference, there was a threat to not pay his deferred compensation plan. (Id. at 154-55) He did receive that

---

[8]     In particular, Chardavoyne alleges that the defendants' counsel advised his counsel that the defendants intended to take the deposition of Chardavoyne's new superiors regarding potential misrepresentations or admissions by Chardavoyne during his interview. (Second Am. Compl. ¶ 27b) Chardavoyne concedes, however, that if his new employer or a newspaper were told the truth, it would not harm his position in San Antonio. (Pl.'s Depo. Tr. at 152) He further concedes that the alleged statement of which he complains was made in connection with a settlement offer. (Id. at 153)

payment shortly after the conference. (Id.) Finally, with regard to his claim related to his W-2 federal tax form, at his deposition, Chardavoyne indicated that there was a problem with an incorrect accounting for the non-qualified deferred compensation plan. (Pl.'s Depo. Tr. at 139) He is no longer making a claim that he was not timely paid monies related to that plan. (Id.)

Chardavoyne's general complaint claims are without merit. The defendants have done nothing improper. Moreover, Chardavoyne has not identified the provisions in the Employment Agreement that were allegedly breached and he has not established a material breach of any provision. For example, the right to assert a counterclaim or to reserve the right to depose non-party witnesses does not constitute a breach of any section of the Employment Agreement. Chardavoyne has also failed to establish any damages as a result of the alleged conduct. He has also failed to produce admissible evidence establishing the acts he bases his claims on. In particular, alleged statements within the context of the settlement discussions in this litigation cannot support Chardavoyne's claims. See Fed. R. Evid. 408. Similarly, hearsay evidence cannot defeat a summary judgment motion. See Schwimmer v. SONY Corp., 637 F.2d 41, 45 n.9 (2d Cir. 1980).

Chardavoyne's claim that the defendants breached the Employment Agreement by misrepresenting that the terms of the proposed separation agreement were superior to the terms of the Employment Agreement is without merit. (Second Am. Compl. ¶ 26a) As with the other general complaint claims, Chardavoyne has not identified the provisions in the Employment Agreement that were allegedly breached and he has not established a material breach of any provision. Nor has he established that he suffered any damages. In fact, he testified that he knew that the proposed agreement was not superior before the May 29 meeting concluded. (Pl.'s

Depo. Tr. at 98)  Accordingly, the Court should enter summary judgment in favor of TWH and

TWNA.

### 2.    The Claims Based on an Alleged Abusive Internal Statement and Two Emails Fail As A Matter of Law

Chardavoyne bases his claim that he has been subjected to abusive e-mails or statements

by the defendants on an internal statement prepared by or for McGivern in 2002 and two e-mails

sent on June 2, 2005 by John Quarendon and William Malarkey. (Pl.'s Depo. Tr. at 162-66; Ex.

16 (Internal Statement); Ex. 17, 6/2/05 E-mails)  Specifically, Chardavoyne requested that Larry

D'Addio provide him with a copy of the statement. (Pl.'s Depo. Tr. at 143-44)  D'Addio, who

had worked for Chardavoyne, had received the document as an internal e-mail. (<u>Id.</u> at 144)  The

document states as follows:

> **INTERNAL**
>
> **[For reactive press use only]**
>
> Thames Water has grown significantly over the past few years and our announced acquisition of American Water Works has given us the opportunity to review our structure in the Americas Region.
>
> From today, the North American business development function will be centralized into the regional center in Voorhees.  We remain committed to develop the non-regulated market in North America and this work undertaken will continue to be delivered from the regional center in Voorhees.
>
> As we consider how best to structure and organize our team to meet the challenges ahead, David Chardavoyne has taken the decision to pursue career interests outside the company.  David has played a key role in the growth of Thames Water in North America and we would like to thank him for his contribution over the past three years.  We wish him every future success.

(Ex. 16, Internal Statement)

32

Chardavoyne has not identified how this internal document, only a small portion of which referred to him, breached the Employment Agreement, let alone how it caused him any damages. (Pl.'s Depo. Tr. at 163 (identifying document as "incorrect")) Accordingly, the Court should enter summary judgment in favor of TWH and TWNA.

Summary judgment is also appropriate on Chardavoyne's claims based on the June 2, 2005 emails. The Quarendon e-mail refers to Chardavoyne as being "Ex. TW" and that there "were issues upon his departure from TW/AW." (Ex. 17, 6/2/05 Emails, at 1-2) The Malarkey e-mail notes that "David left on pretty bad terms." (Id.) The two e-mails were inadvertently sent to five individuals at American Water and to two individuals at the San Antonio Water Systems, Chardavoyne's current employer, in connection with a potential business transaction involving the companies. (Id.) According to Chardavoyne, the emails were sent on behalf of TWH. (Pl.'s Depo. Tr. at 156)

Chardavoyne has failed to identify how these emails breached any provision in the Employment Agreement, let alone that they caused him any damage. Moreover, even under Chardavoyne's version of the events, he resigned on December 10, 2004. (Ex.11, Pl.'s 12/10/04 Letter) With that resignation, much of the contractual relationship ended. The remaining obligations are owed by Chardavoyne to TWH. (See, e.g., Employment Agreement, at 5, ¶ 13) Thus, there is no basis for Chardavoyne to claim a breach of the Employment Agreement as the result of emails sent in June, 2005. Accordingly, the Court should enter summary judgment in favor of TWH and TWNA.

F.    **The Plaintiff's Claims For Medical and Retirement Benefits Are Preempted By ERISA**

As part of his claims, Chardavoyne alleges that he has been denied medical and dental insurance benefits and retirement benefits. (Second Am. Compl. ¶¶ 24, 34c) [9]  In addition to the arguments set forth above, the entry of summary judgment on these claims is appropriate because they are preempted by the Employee Retirement Income Security Act of 1974 (ERISA).

Section 514(a) of ERISA provides that the ERISA provisions "shall supercede any and all state laws insofar as they may now or hereafter relate to an employee benefit plan" governed by ERISA.  29 U.S.C. § 1144(a).  The United States Supreme Court has held that this clause is "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'"  Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987).  A state law "relates to" an employee benefit plan "'if it has a connection with or reference to such a plan.'"  Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985).  Thus, a state law that "'only indirectly affects a plan may nevertheless 'relate to' that plan for preemption purposes.'"  Nelson v. Nielsen Media Research Inc., 207 F.Supp.2d 300, 303 (S.D.N.Y. 2002).  Under § 514(a), state common law tort and contract actions involving claims for benefits due under an employee benefit plan are also pre-empted.  See Pilot Life, 481 U.S. at 47-48.  See Yoran v. Bronx-Lebanon Hosp. Center, 1999 WL 378350, at *5 (S.D.N.Y. June 10, 1999)("great

---

[9]    With regard to any claim related to his rights under the Consolidated Budget Reform Act of 1985 ("COBRA"), the plaintiff testified that there was no time between May 29, 2002 and December 2004 in which he was denied any such benefits. (Pl.'s Depo. Tr. at 148-49)  Rather, his claim is based upon a belief that he should not have had to make payments between June 30, 2003 and December 31, 2004.  (Id. at 149)

weight of authority indicates that ERISA pre-empts a breach of contract claim arising from a failure to pay employee benefits.").[10]

Here, any claim for employee benefits, and in particular medical and dental benefits, and for retirement benefits is preempted by ERISA. Consequently, the Court should enter summary judgment in favor of TWH and TWNA.

## II.    THE COURT SHOULD ENTER SUMMARY JUDGMENT ON THE BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM

Pennsylvania law does not recognize a separate claim for breach of the implied covenant of good faith and fair dealing. Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc., 246 F.Supp.2d 394, 400-01 (E.D.Pa. 2002); Raie v. City of Philadelphia, 2001 WL 884707, at *7 (E.D.Pa. July 31, 2001). The implied covenant of good faith and fair dealing does not allow for a claim separate and distinct from a breach of contract claim. Pym v. Einstein Practice Plan, Inc., 2004 WL 2439241, at *1 (Pa. Com. Pl. July 21, 2004). Rather, a claim arising from a breach of the covenant of good faith and fair dealing must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself. Id. Consequently, absent proof of a breach of an underlying contract, there can be no claim for breach of the implied covenant of good faith and fair dealing. See Middletown Carpentry, Inc. v.

---

[10]     An ERISA plan means either an "employee welfare benefit plan" or an "employee pension benefit plan." 29 U.S.C. § 1002(3). See Adair v. Johnston, 2003 WL 23469844, at *4 (M.D.Ala. Oct. 24, 2003). An "employee welfare benefit plan" includes any plan, fund or program that was established for the purpose of providing medical benefits to an employee. 29 U.S.C. § 1002(1). An "employee pension benefit plan" under ERISA is defined as "any plan, fund, or program which has heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan." 29 U.S.C. § 1002(2)(a). See Adair, supra, at *4.

C. Arena & Co., Inc., 2001 WL 1807379, at *6 (Pa. Com. Pl. Nov. 27, 2001); Sylk v. Bernsten, 2003 WL 1848565, at **9-10 (Pa. Com. Pl. Feb. 4, 2003).

By the second count, Chardavoyne asserts a claim for the breach of the implied covenant of good faith and fair dealing contained in the Employment Agreement. Paragraphs 37-38 and 41-42 of the second count incorporate the allegations from the first count and make them the bases for the claim of breach of the implied covenant of good faith and fair dealing. Paragraph 45 of the second count alleges in the alternative that "if" Chardavoyne's employment was terminable at-will, the defendants' bad faith conduct violated important public policies, that include, protecting employees from abusive employment practices; from threats and attempts to abrogate medical insurance rights granted by federal statute; from unreasonable refusals to pay properly earned wages, benefits and other compensation; from interference with the compliance with the Federal Income Tax laws; from interference with subsequent employment; and from violation of contractual rights.

Based on the governing law, with the entry of summary judgment on the breach of contract claim, the Court should enter summary judgment in favor of TWH and TWNA on the second count. Moreover, Chardavoyne's alternative reference to an at-will employment relationship does not save the second count. (Second Am. Compl. ¶ 45) At the outset, it is undisputed that Chardavoyne entered into an Employment Agreement with TWH. Thus, he cannot assert an at-will employment claim against TWH. Moreover, under Pennsylvania law, there is no common law cause of action against an employer for termination of an at-will employment relationship. McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287

(Pa. 2000); <u>Donahue v. Federal Express Corp.</u>, 753 A.2d 238, 243 n.6 (Pa. Super. 2000).[11]

"Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." <u>McLaughlin</u>, 750 A.2d at 287. Accordingly, the Pennsylvania Supreme Court in <u>McLaughlin</u> recognized that:

> in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest. The Plaintiff in some way must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth.

750 A.2d at 289 (emphasis original). In particular, the court concluded that "it is a mistake to baldly point to a federal statute or administrative regulation and, without more, proclaim this as the public policy of the Commonwealth, such that every violation of any federal code or statute becomes the basis for seeking a common law remedy against an employer." <u>Id.</u> at 319-20. It held that if it were to be the law that an employee could bring a wrongful discharge claim pursuant to the public policy exception to the at-will employment doctrine, by merely restating a private cause of action for the violation of some federal regulation, "the exception would soon swallow the rule." <u>Id.</u> at 320.[12]

In <u>McLaughlin</u>, the court recognized that a court determines the public policy of the state by "examining the precedent within Pennsylvania, looking to our own Constitution, court

---

[11]/    See <u>Lynady v. Community Medical Ctr.</u>, 49 Pa. D. & C. 4th 391, 403 (Pa. Com. Pl. 2000) (available at 2000 WL 33333935); <u>Marlin v. Borg-Warner Corp.</u>, 1991 WL 346305, at *6 (Pa. Com. Pl. Aug. 14, 1991) (granting summary judgment).

[12]/    The court in <u>McLaughlin</u> concluded that "a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation." 750 A.2d at 320. Furthermore, "a court's power to announce public policy is limited: '[p]ublic policy is to be ascertained by reference to the law and legal precedents and not from general considerations of supposed public interests.'" <u>Donahue</u>, 753 A.2d at 244.

decisions and statutes promulgated by our legislature." 750 A.2d at 288. Thus, the court refused to recognize a claim for wrongful discharge in violation of public policy where there was "no statute, constitutional premise, or decision from th[e Pennsylvania Supreme] Court to support the proposition that federal administrative regulations, standing alone, can comprise the public policy of th[e] Commonwealth." Id. Moreover, it concluded that "in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her personal interest." Id. at 289. See Gannon v. National R.R. Passenger Corp., 2004 WL 1175817, at *3 (E.D.Pa. May 27, 2004).

Here, Chardavoyne's allegations in support of his alternative, at-will theory amount to no more than the conclusory allegations rejected by Pennsylvania courts. Moreover, the at-will claim fails at a fundamental level. Chardavoyne has failed to establish the existence of an at-will relationship, let alone that it was breached. He also fails to acknowledge that the terms of any alleged, at-will relationship would not mirror the terms of the Employment Agreement. For example, he would not have been entitled to any notice. Also, he fails to acknowledge that under the paragraph 2.5 of the Employment Agreement he was not entitled to any "further remuneration" for any work he did for a related company. Thus, the entry of summary judgment in favor of TWH and TWNA is appropriate.

## III.    THE COURT SHOULD ENTER SUMMARY JUDGMENT ON THE CLAIMS UNDER THE CONNECTICUT WAGE ACT

With the entry of summary judgment on the breach of contract claims and in particular, the claim that the notice provision was breached, there is no basis for the claims in the Third and Fourth counts. Accordingly, summary judgment should be entered on those counts. Moreover, summary judgment can also be entered on all claims under the Connecticut Wage Act because there is no basis for relying on that statute under the circumstances at issue.

"[F]or a state's substantive law to be selected in a constitutionally permissive manner, that State must have a significant contact or significant aggregation of contacts, creating state interest, such that choice of its law is neither arbitrary nor fundamentally unfair." <u>Allstate Ins. Co. v. Hague</u>, 449 U.S. 302, 312-13 (1981). In the instant case, Chardavoyne testified at his deposition that his office was located in Voorhees, New Jersey. (Pl.'s Depo. Tr. at 56-57, 90) In particular, he testified that as of January 4, 2002, his office had relocated from Connecticut to New Jersey. (<u>Id.</u>; <u>see</u> Ex. 18, Pl.'s Business Card) Thus, Chardavoyne's claims under the Connecticut Wage Act in Counts Three and Four, must be dismissed. There is no authority for applying those statutes to an out-of-state employer who employs a Connecticut resident in an office outside of Connecticut. Accordingly, the Court should enter summary judgment on the Third and Fourth counts.

## IV. THE COURT SHOULD ENTER SUMMARY JUDGMENT ON THE CONVERSION CLAIM

Chardavoyne's conversion claim in Count Five is without merit. Conversion is the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." <u>Cenna v. United States</u>, 402 F.2d 168, 170 (3d Cir. 1968). <u>See</u> <u>Macomber v. Travelers Prop. and Cas. Corp.</u>, 261 Conn. 620, 649 (2002)("unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights...."). Consequently, in order for a plaintiff to state a claim for conversion, he must establish that monies retained were in fact his property. <u>Baram v. Farugia</u>, 606 F.2d 42, 46 (3d Cir. 1979)(right to possession). <u>See</u> <u>Discover Leasing, Inc. v. Murphy</u>, 33 Conn. App. 303, 309 (1993).

In the instant case, Chardavoyne's conversion claim is based on his alleged entitlement to the 872 shares of RWE AG stock under a March 27, 2002 Award Notice. (Second Am. Compl.,

Count V)  As discussed above, a review of the Award Notice reveals that it was issued by Thames Water Plc. (Ex. 15, 3/27/02 Award Notice)  There is no evidence that either TWH or TWNA has control over the stock.  Thus, neither TWH nor TWNA can be liable for not awarding the stock.  Consequently, Chardavoyne cannot establish that the stock was his property or that the withholding of the stock was unauthorized.  As such, the conversion claim fails as a matter of law.

Summary judgment on the conversion claim is also appropriate because it is duplicative of Chardavoyne's breach of contract claim.  Under the "gist of the action" doctrine, a conversion claim cannot be asserted based on what is essentially a breach of contract claim.  See Green v. Altman, 2004 WL 2106552, at *5, n.7 (E.D. Pa. Sept. 21, 2004); Pinette v. McLaughlin, 2004 WL 1326098, at **3-4 (Conn. Super. June 1, 2004).  See also Duane Morris, LLP v. Todi, 2002 WL 31053839, at *5 (Pa. Com. Pl. Sept. 3, 2002) (no claim for conversion where rights are governed by contract).  Here, Chardavoyne's conversion claim is based on an alleged private relationship, set out in the Award Notice.  Thus, his conversion claim fails as a matter of law and the Court should enter summary judgment in favor of TWH and TWNA.

## CONCLUSION

For the foregoing reasons, the Court should grant the defendants' motion for summary judgment.

Dated:  December 16, 2005

Respectfully submitted,

**THE DEFENDANTS
THAMES WATER HOLDINGS,
INCORPORATED and THAMES
WATER NORTH AMERICA, INC.**

By: _____

Stephen P. Fogerty, Esq.
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel. No.:  (203) 227-2855
Fax No.:  (203) 227-6992
E-mail :  Fogerty@halloran-sage.com

and

Ralph W. Johnson, III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT  06103
Tel. No.:  (860) 522-6103
Fax No.:  (860) 548-0006
E-mail :  Johnsonr@halloran-sage.com

Their Attorneys

## CERTIFICATION

This is to certify that on this 16th day of December, 2005, the foregoing was caused to be mailed, postpaid to:

James R. Hawkins II, Esq.
William M. Tong, Esq.
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689


_____
Ralph W. Johnson, III

769575_1 DOC

42