UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE, | ) | |
| | ) | CASE NUMBER: |
| Plaintiff, | ) | 3:03CV56 (WWE) |
| | ) | |
| vs. | ) | |
| | ) | |
| THAMES WATER HOLDINGS | ) | |
| INCORPORATED, THAMES WATER | ) | |
| NORTH AMERICA INC., | ) | |
| | ) | |
| Defendants. | ) | April 28, 2006 |

**PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to D. CONN. L. CIV. R. 56(a)(2), Plaintiff David E. Chardavoyne ("Chardavoyne" or "Plaintiff") submits this statement in opposition to the motion for summary judgment of defendants Thames Water Holdings Incorporated ("Thames Holdings") and Thames Water North America, Inc. ("Thames North America" and collectively "Defendants"), dated December 16, 2005. This statement, in accordance with the requirements of D. CONN. L. CIV. R. 56(a)(3), admits or denies each of Defendants' allegations in their Local Rule 56(a)(1) Statement in Support of their Motion for Summary Judgement ("Defendants' 56(a)(1) Statement"). In addition, this Statement separately includes a list of each issue of material fact as to which it is contended there is a genuine issue to be tried. A separate Appendix of Exhibits (1 through 42) (the "App.") is submitted herewith containing the exhibits cited below and in the Plaintiff's memorandum of law in opposition to the motion for summary judgment, along with a separate sworn affidavit of David E. Chardavoyne dated April 27, 2006 (the "Chardavoyne Aff.").

Specifically, Plaintiff responds to the facts asserted by Defendants as follows:

{00203532; 4; 1103-2}



1.  Denies the allegations of Paragraph 1 of Defendants' 56(a)(1) Statement, except admits that:

    a.  Plaintiff entered into an Employment Agreement on or about January 15, 1999 (the "Employment Agreement") (Chardavoyne Aff. ¶ 5);

    b.  The Employment Agreement was signed by William Alexander ("Alexander"), chief executive of Thames Water Plc, parent company to Thames Water Holdings, Inc. ("Thames Holdings") on behalf of Thames Holdings (App., Ex. 2, Employment Agreement at 11);

    c.  Under the Employment Agreement, the "Parent Company" means Thames Water Plc (Id. at 1, ¶ 1.1);

    d.  "The Group" means the Parent Company, *all Subsidiaries of the Company*, and all other companies whose equity share capital is owned as to 20 per cent or more by the Parent Company or any of its subsidiaries (Id.) (emphasis added);

    e.  "Group Company" means any company within The Group (Id.);

    f.  Plaintiff was obligated to serve any "other appointment" with all attendant responsibilities, duties and authority "as the Chief Executive may from time to time direct," who was defined as Alexander under the Employment Agreement (Id. at 2, ¶ 2.1);

    g.  Plaintiff was mandated to "undertake[] well and faithfully to serve . . . *the Group* and use his best endeavours to promote, develop and extend the business and interests of . . . *the Group*." (Id. at 2, ¶ 2.3) (emphasis added);

    h.  Plaintiff was mandated to, "(without further remuneration) if and for so long as the Chief Executive requires, carry out duties *on behalf of any other Group Company* . . . ." (Id. at 2, ¶ 2.5) (emphasis added);

    i.  Thames North America was a subsidiary of Thames Plc (Chardavoyne Aff. ¶ 4);

    j.  Plaintiff was elected president and a director of Thames North America (Id. at ¶ 7);

    k.  Plaintiff was paid wages and salary by Thames North America (Id. at ¶ 10); and

    l.  Plaintiff was awarded bonus and stock options from Thames Plc (Id. at 15; see also App., Ex. 4, Letter from William Alexander to David Chardavoyne, dated March 28, 2002; App., Ex. 9, Summary Chart of

2

        Chardavoyne's Salary Increases, Bonuses and Other Incentive Compensation.

2. Denies the allegations of Paragraph 2 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Employment Agreement and the testimony referred to therein, and respectfully refers the Court thereto for their true and complete terms. App., Ex. 2, Employment Agreement at 1, ¶ 1.1; 2, ¶ 2.4; Ex. 15, Deposition Transcript of David Chardavoyne, dated September 2, 2005 (Chardavoyne Dep. Tr.) at 94-95.

3. Denies the allegations of Paragraph 3 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Employment Agreement, and respectfully refers the Court thereto for its true and complete terms. App., Ex. 2, Employment Agreement at 1, ¶ 1.1; 2, ¶ 2.5.

4. Denies the allegations of Paragraph 4 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Employment Agreement, and respectfully refers the Court thereto for its true and complete terms. Id. at 3, ¶ 5.4.

5. Denies the allegations of Paragraph 5 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the documents and testimony referred to therein, and respectfully refers the Court thereto for their true and complete terms. Id. at 3, ¶ 7.

6. Denies the allegations of Paragraph 6 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Employment Agreement, and respectfully refers the Court thereto for its true and complete terms. Id. at 4, ¶ 11.

7. Denies the allegations of Paragraph 7 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Employment Agreement, and respectfully refers the Court thereto for its true and complete terms. Id. at 5-6, ¶ 13.

8. Denies the allegations of Paragraph 8 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Employment Agreement, and respectfully refers the Court thereto for its true and complete terms. Id. at 6, ¶ 14.

9. Denies the allegations of Paragraph 9 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Employment Agreement, and respectfully refers the Court thereto for its true and complete terms. Id. at 10, ¶ 24.

10. Denies the allegations of Paragraph 10 of Defendants' 56(a)(1) Statement, except admits that Alexander was Chief Executive and James McGivern ("McGivern") was Line Manager as defined in the Employment Agreement, and further admits in part that Defendants have accurately quoted selective excerpts of the Employment Agreement and testimony referred to therein, and respectfully refers the Court thereto for their true and complete terms. Id. at 1, ¶ 1.1; Chardavoyne Aff. at 4, ¶ 11.

11. Denies the allegations of Paragraph 11 of Defendants' 56(a)(1) Statement. See App., Ex. 21, Deposition Transcript of William Alexander, dated August 24, 2005 (Alexander Dep. Tr.) at 16:10-12; 26:7-13; 21:11-14; 16:13-18; 39:11-20; 42:8-11; 24:13-23; Ex. 8, Deposition Transcript of Matthew Huckin ("Huckin"), dated July 26, 2005 (Huckin Dep. Tr.) at 65:4-19.

4

{00203532; 4; 1103-2}

12. Denies the allegations of Paragraph 12 of Defendants' 56(a)(1) Statement. Id.

13. Denies the allegations of Paragraph 13 of Defendants' 56(a)(1) Statement, except admits in part that Chardavoyne met with McGivern and Huckin in Voorhees, New Jersey, on May 29, 2002. App., Ex. 15, Chardavoyne Dep. Tr. at 88:12-16.

14. Denies the allegations of Paragraph 14 of Defendants' 56(a)(1) Statement, including any notice of termination, except admits in part that Huckin gave Chardavoyne a letter (the "May 29 Letter") and an envelope containing a draft agreement (the "Draft Separation Agreement"). See Chardavoyne Aff. at ¶ 12; App., Ex. 10, Letter from Matthew Huckin to David Chardavoyne, dated May 29, 2002; Ex. 11, Draft Separation Agreement (undated); Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2.

15. Denies the allegations of Paragraph 15 of Defendants' 56(a)(1) Statement, including that there was no immediate effect or authorized notice, except admits in part that Defendants have accurately quoted selective excerpts of the Letter from Huckin to Chardavoyne dated May 29, 2002, and respectfully refers the Court thereto for its true and complete terms. App., Ex. 10, May 29 Letter; Ex. 11, Draft Separation Agreement; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2.

16. Denies the allegations of Paragraph 16 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Draft Separation Agreement, and respectfully refers the Court thereto for its true and complete terms. App., Ex. 11, Draft Separation Agreement at 1, ¶ 1.1.

17. Denies the allegations of Paragraph 17 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Draft Separation Agreement, which was a draft proposed by Defendants and was never signed, executed or

5

effective in any way, and respectfully refers the Court thereto for its true and complete terms. Id. at 2, ¶ 2.01. See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

18. Denies the allegations of Paragraph 18 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Draft Separation Agreement, which was a draft proposed by Defendants and was never signed, executed or effective in any way, and respectfully refers the Court thereto for its true and complete terms. App., Ex. 11, Draft Separation Agreement at 2, ¶ 2.03. See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

19. Denies the allegations of Paragraph 19 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately cited selective excerpts of the Draft Separation Agreement, which was a draft proposed by Defendants and was never signed, executed or effective in any way, and respectfully refers the Court thereto for its true and complete terms. App., Ex. 11, Draft Separation Agreement at 3, ¶ 3.03. See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

20. Denies the allegations of Paragraph 20 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Draft Separation

Agreement, which was a draft proposed by Defendants and was never signed, executed or effective in any way, and respectfully refers the Court thereto for its true and complete terms. App., Ex. 11, Draft Separation Agreement at 3-4, ¶ 3.06. See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

21.   Denies the allegations of Paragraph 21 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Draft Separation Agreement, which was a draft proposed by Defendants and was never signed, executed or effective in any way, and respectfully refers the Court thereto for its true and complete terms. App., Ex. 11, Draft Separation Agreement at 6, ¶¶ 3.19, 3.20. See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

22.   Denies the allegations of Paragraph 22 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts of the Draft Separation Agreement, which was a draft proposed by Defendants and was never signed, executed or effective in any way, and respectfully refers the Court thereto for its true and complete terms. App., Ex. 11, Draft Separation Agreement at 7, ¶ 5.01. See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

7

{00203532; 4; 1103-2}

23. Denies the allegations of Paragraph 23 of Defendants' 56(a)(1) Statement, except admits in part that McGivern was the "Line Manager," with limited responsibility, as that term is defined in the Employment Agreement, and respectfully refers the Court thereto for its true and complete terms. See App., Ex. 2, Employment Agreement, at 1 ¶ 1.1; 2, ¶ 2.4.

24. Denies the allegations of Paragraph 24 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts from Plaintiff's deposition transcript, and respectfully refers the Court thereto for its true and complete terms. See App., Ex. 15, Chardavoyne Dep. Tr. at 96 (testifying that "I knew I was president of Thames Water Holdings Incorporated so I was confused as to what this discussion was about"). See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

25. Denies the allegations of Paragraph 25 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts from Plaintiff's deposition transcript, and respectfully refers the Court thereto for its true and complete terms. Id.

26. Denies the allegations of Paragraph 26 of Defendants' 56(a)(1) Statement, and respectfully refers the Court to Plaintiff's deposition transcript for its true and complete terms. See App., Ex. 15, Chardavoyne Dep. Tr. at 92-94.

27. Denies the allegations of Paragraph 27 of Defendants' 56(a)(1) Statement, and respectfully refers the Court to Plaintiff's deposition transcript for its true and complete terms. See Id. at 99-100, 107.

{00203532; 4; 1103-2}

28.     Denies the allegations of Paragraph 28 of Defendants' 56(a)(1) Statement, and respectfully refers the Court to Plaintiff's deposition transcript for its true and complete terms. See Id. at 106-109; Ex. 2, Employment Agreement at § 14 ("The Chief Executive may at any time during the term of the Executive's employment hereunder elect not to provide work for the Executive to do and/or require the Executive not to attend at the premises of any Group Company and *no such event shall constitute a repudiation of this Agreement or dismissal of the Executive whether constructive or otherwise."*) (emphasis added).

29.     Denies the allegations of Paragraph 29 of Defendants' 56(a)(1) Statement, and respectfully refers the Court to Plaintiff's deposition transcript for its true and complete terms. See App., Ex. 15, Chardavoyne Dep. Tr. at 115-116.

30.     Denies the allegations of Paragraph 30 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts from Plaintiff's deposition transcript, and respectfully refers the Court to thereto for its true and complete terms. See Id. at 116-118.

31.     Denies the allegations of Paragraph 31 of Defendants' 56(a)(1) Statement, and respectfully refers the Court to Plaintiff's deposition transcript for its true and complete terms. Id. at 118; 138. See also App., Ex. 17, Letter from Gerald Richardson to James Hawkins, dated June 10, 2002; Ex. 2, Employment Agreement at § 14 ("The Chief Executive may at any time during the term of the Executive's employment hereunder elect not to provide work for the Executive to do and/or require the Executive not to attend at the premises of any Group Company and *no such event shall constitute a repudiation of this Agreement or dismissal of the Executive whether constructive or otherwise."*) (emphasis added).

9

{00203532; 4; 1103-2}

32. Denies the allegations of Paragraph 32 of Defendants' 56(a)(1) Statement, and respectfully refers the Court to the Letter from Richardson to Hawkins, dated June 10, 2002 for its true and complete terms. See App., Ex. 17, Letter from Gerald Richardson to James Hawkins, dated June 10, 2002. See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

33. Denies the allegations of Paragraph 33 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts from the June 10 Richardson Letter, and respectfully refers the Court thereto for its true and complete terms. Id.

34. Denies the allegations of Paragraph 34 of Defendants' 56(a)(1) Statement, except admits in part that Defendants have accurately quoted selective excerpts from the June 10 Richardson Letter, and respectfully refers the Court thereto for its true and complete terms. Id.

35. Denies the allegations of Paragraph 35 of Defendants' 56(a)(1) Statement, and respectfully refers the Court to the Letter from Richardson to Hawkins, dated July 3, 2002, for its true and complete terms. See App., Ex. 41, Letter from Richardson to Hawkins, dated July 3, 2002. See also Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

36. Denies the allegations of Paragraph 36 of Defendants' 56(a)(1) Statement, as Plaintiff did in fact resign by letter dated December 10, 2004. Chardavoyne Aff. at ¶ 8.

37. Denies knowledge or information sufficient to form a belief as to the allegations set forth in Paragraph 37 of Defendants' 56(a)(1) Statement, in that Plaintiff first received said

resolutions referencing action by shareholders and boards of directors on December 8, 2005 only in connection with Defendants' filing their postponed motion for summary judgment on December 16, 2005. As a consequence Plaintiff has not had the opportunity to take any discovery with respect to said resolutions and information as it is material first produced long after the close of discovery.

38. Denies the allegations of Paragraph 38 of Defendants' 56(a)(1) Statement, and respectfully refers the Court to the Letter from William Alexander to David Chardavoyne, dated March 28, 2002. App., Ex. 4, Letter from William Alexander to David Chardavoyne, dated March 28, 2002; Ex. 2, Employment Agreement at ¶¶ 1.1, 5.2; Chardavoyne Aff. ¶ 15.

39. Denies the allegations of Paragraph 38 of Defendants' 56(a)(1) Statement, except admits that:

    a. From on or about June 1, 1976 to December 31, 2004, Chardavoyne was a resident of the state of Connecticut. Chardavoyne Aff. ¶ 2.

    b. Chardavoyne was employed by Thames North America, which was, at all relevant times, a Delaware Corporation authorized to do business in Connecticut with its principal place of business in Stamford, Connecticut. App., Ex. 7, Defendants' Amended Answer, Affirmative Defenses and Counterclaims, dated April 15, 2005);

    c. Defendants admit that Thames Holdings was a Delaware corporation with an office in Stamford, Connecticut where Chardavoyne was employed. Id. at ¶ 3.

    d. From February 15, 1999 and thereafter, Chardavoyne was assigned to work in the offices of Thames Holdings and Thames North America at 281 Tresser Boulevard, Stamford, Connecticut 06901, pursuant to the Employment Agreement. Chardavoyne Aff. at ¶ 6.

    e. Chardavoyne was recruited by William Alexander ("Alexander"), Chief Executive of Defendants' parent company, Thames Water Plc ("Thames Plc"), to run Defendants' water and wastewater businesses in North America. Id. ¶ 4. Pursuant to the Employment Agreement, Chardavoyne served as "President, US," executed his duties from his home office in Trumbull, Connecticut, but also in other locations including, without

11

        limitation, New Jersey and Puerto Rico. App., Ex. 2, Employment Agreement, at 2, ¶ 2.1.

    f.    The Employment Agreement defines Chardavoyne's place of work to be Stamford, Connecticut. App., Ex. 2, Employment Agreement at 2, ¶ 3.

    g.    The Draft Separation Agreement given to Chardavoyne on May 29, 2002 recites that the offices of Thames Holdings are at 281 Tresser Boulevard, Stamford Connecticut. Ex. 11, Draft Separation Agreement, at 1, ¶ 1.01.

    h.    In connection with Defendants' motion to dismiss for lack of personal jurisdiction and improper venue (denied by order of the Court dated October 26, 2004, see App., Ex. 40), Chardavoyne submitted an affidavit detailing Defendants' contacts and nexus with Connecticut, all of which are overwhelming. App., Ex. 28, Affidavit of David E. Chardavoyne dated April 21, 2003 at ¶¶ 2-28.

40.    Denies the allegations of Paragraph 40 of Defendants' 56(a)(1) Statement. Chardavoyne Aff. ¶ 16.

41.    Denies the allegations of Paragraph 41 of Defendants' 56(a)(1) Statement, except admits that Chardavoyne was paid certain payments from Defendants during the period May 29, 2002 to the first week of June 2003, but not all wages, benefits, incentive compensation and stock to which Chardavoyne was entitled. Chardavoyne Aff. ¶¶ 13, 14.

## DISPUTED ISSUES OF MATERIAL FACT

In addition to the allegations of Defendants' 56(a)(1) Statement that have been denied above, as to which there are genuine issues to be tried, Plaintiff sets forth below the following additional issues of material fact as to which there is a genuine issue to be tried:

1.    At no time prior to Plaintiff's resignation were McGivern or Huckin, individually or collectively, authorized by Plaintiff's Employment Agreement to terminate Plaintiff's employment or give notice of termination. App., Ex. 2, Employment Agreement, at 1, ¶ 1.1; 4, ¶ 11.1; App., Ex. 8, Huckin Dep. Tr. at 101.

2. At no time prior to Plaintiff's resignation were McGivern or Huckin, individually or collectively, authorized by Defendants' bylaws to terminate Plaintiff's employment or give notice of termination. Id., 113-114; 99-102; App., Ex. 7, McGivern Dep. Tr. at 102:103; Chardavoyne Aff. ¶ 9.

3. In fact, McGivern claimed that in May 2002, he was an officer of Thames Holdings, although there is no evidence that he was actually an officer of Thames Holdings, nor could he recall what office he held. Id., at 17:22-19:2; 18:5-11.

4. At no time were McGivern or Huckin, individually or collectively, ratified by Defendants to terminate Plaintiff's employment or give notice of termination. App., Ex. 22, Resolutions.

5. Chardavoyne served as president and director of Thames Holdings and Thames North America, both corporations organized under the State of Delaware, until he resigned on December 10, 2004, yet Defendants stopped paying Chardavoyne his wages after June 6, 2003. Chardavoyne Aff. ¶¶ 7, 8, 13.

6. At a meeting on May 29, 2002, Chardavoyne was handed two documents, a letter signed by Huckin and an unsigned Draft Separation Agreement (the "Draft Separation Agreement"). Chardavoyne Aff. ¶ 12. Huckin's letter falsely stated that with "immediate effect" Plaintiff's position had been eliminated. App., Ex. 10, Letter from Matthew Huckin to David Chardavoyne, dated May 29, 2002. The Draft Separation Agreement to the contrary said Plaintiff was entitled to one year's advance notice in writing of his termination. App., Ex. 11, Draft Separation Agreement, at 2, ¶ 2.02.

7. After the May 29, 2002 meeting, McGivern falsely reported to Alexander and others that Plaintiff resigned. App., Ex. 39, Press Release Thames Water.

13

{00203532; 4; 1103-2}

8. As a line manager, a position with duties defined in the Employment Agreement, McGivern had no authority under the Employment Agreement or the bylaws to terminate Chardavoyne, an officer and director. App., Ex. 2, Employment Agreement, at 4, ¶ 11.1.

9. Defendants have not paid Chardavoyne employee benefits to which he is entitled, including without limitation dental and medical insurance after June 30, 2003. Chardavoyne Aff. ¶ 14.

10. Defendants continue to refuse to pay stock granted to Chardavoyne pursuant to an award notice dated March 27, 2002, which remains due and owing. Chardavoyne Aff. ¶ 15.

11. The Draft Separation Agreement purported to give Chardavoyne a "settlement sum" in the amount of one-year's base pay and a proposed a payment of $50,000 after taxes in exchange for: (i) Chardavoyne's resignation; (ii) a release of claims; (iii) a commitment to non-disparagement; (iv) surrender and loss of nonvested amounts in two retirement plans; (v) a non-compete significantly broader in form than that contained in the Employment Agreement; and (vi) abbreviated statutory rights to dental and health insurance under COBRA. App., Ex. 11, Draft Separation Agreement, at 3, ¶¶ 3.02, 3.03, 3.04; 4, ¶¶ 3.08, 3.10; 5, ¶ 3.11.

12. By letter dated July 12, 2002, Mr. Chardavoyne made clear through his counsel why he rightly remained employed by Defendants. Defendants never responded to Chardavoyne's letter of July 12 or cited to any authority for the purported termination. Chardavoyne catalogued the list of reasons why no notice of termination could possibly have issued on May 29, 2002 or thereafter. Defendants chose to take no action, opting not even to respond to the July 12 letter. App., Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2.

13.  Defendants failed to follow the express, black letter terms of the Employment Agreement regarding termination prior to Chardavoyne's resignation on December 10, 2004. App., Ex. 2, Employment Agreement, at 4, ¶ 11.1.

14.  Despite the fact that the terms of the Draft Separation Agreement were demonstrably worse than the Employment Agreement, Huckin, McGivern and others falsely represented to Chardavoyne that the Draft Separation Agreement was a better deal. App., Ex. 15, Chardavoyne Dep. Tr. at 98-99.

15.  Defendants have made false and unfounded accusations that Chardavoyne was "verbally abusive" toward Defendants' employees. See App., Ex. 13, Letter from Jonathan Orleans to James Hawkins, dated May 28, 2003. When asked to provide affidavits substantiating this alleged abuse, Defendants refused. App., Ex. 42, Letter from James Hawkins to Jonathan Orleans, dated June 9, 2003, at 1.

16.  In or about March 2004, Chardavoyne requested that Defendants furnish a revised W-2 form because it incorrectly underreported income. App., Ex. 34, Letter from Jonathan Orleans to James Hawkins, dated March 4, 2003. Despite repeated requests, Defendants never provided Chardavoyne with an accurate federal income tax W-2 form for 2003 and refused to communicate directly with Chardavoyne to resolve the discrepancies. Id.; see Chardavoyne Aff. at ¶ 18.

17.  Defendants made negative statements and misrepresentations about Chardavoyne to employees of Chardavoyne's new employer, San Antonio Water System. App, Ex. 36, Email from William Malarkey to Thomas Smith and Steve Kosub, dated June 2, 2005; Chardavoyne Dep. Tr. 151-152.

15

18.  Plaintiff had a right to continued possession of a company car, expressly granted to him under Employment Agreement, until he resigned on December 10, 2004 but which Defendants allege as stolen despite Defendants' failure to report the vehicle as stolen, failure to repossess the vehicle as allowed by the Connecticut General Statutes and whose registration and insurance Defendants voluntarily renewed during such period. App., Ex. 8, Huckin Dep. Tr. at 142-144; Ex. 2, Employment Agreement, at 3, ¶ 7; Chardavoyne Aff. at ¶ 19.

19.  At all relevant times, Chardavoyne's actual wages were paid by Thames North America. Chardavoyne Aff. at ¶ 10.

20.  Under the Employment Agreement, written and advance notice of termination could only be given by the "Company," *i.e..*, Thames Holdings. App., Ex. 2, Employment Agreement, at 4, ¶ 11.1. The Company never gave written and advance notice of termination as required by the Employment Agreement. App., Ex. 8, Huckin Dep. Tr. at 95.

21.  Although Huckin provided Chardavoyne with a one-page letter, signed by him and copied to no other person, which claimed "[to] confirm that with immediate effect your services are no longer required by the Company," the May 29th Letter did not provide Chardavoyne with written notice of termination required by the Employment Agreement. App., Ex. 10, Letter from Matthew Huckin to David Chardavoyne, dated May 29, 2002. See also App., Ex. 16, Letter from James Hawkins to Matthew Huckin, dated June 3, 2002, at 1; Ex. 19, Letter from James Hawkins to Gerald Richardson, dated July 12, 2002, at 1-2; Ex. 23, Letter from David Chardavoyne to William Alexander, dated December 6, 2002, at 1.

22.  On or prior to May 29, 2002, Thames Holdings had not delegated or appointed Thames Water Americas, Huckin or McGivern as agents for purposes of giving notice of termination under the Employment Agreement. App., Ex. 8, Huckin Dep. Tr. at 113-114.

{00203532; 4; 1103-2}

23. William Alexander, the Chief Executive of Thames Water Plc, defendants' parent company, did not authorize Chardavoyne's termination or the giving of notice of termination prior to the May 29th Meeting. App., Ex. 21, Alexander Dep. Tr. at 16:10-12; 26:7-13; 21:11-14; 16:13-18; 39:11-20; 42:8-11; 24:13-23; Ex. 8, Huckin Dep. Tr. at 65:4-19.

PLAINTIFF
DAVID E. CHARDAVOYNE

By: _____
Patrick J. McHugh (ct14072)
William M. Tong (ct25304)
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689
Telephone: (203) 325-5000
Facsimile: (203) 348-5777
E-mail:  pmchugh@fdh.com
         wtong@fdh.com

## **CERTIFICATION**

This is to certify that a true and correct copy of the foregoing was delivered by United States Mail, first class, postage-prepaid to the following this 28th day April, 2006:

        Stephen B. Fogerty, Esq.
        Halloran & Sage LLP
        315 Post Road West
        Westport, Connecticut  06880

        Ralph W. Johnson, III, Esq.
        Halloran & Sage LLP
        One Goodwin Square
        225 Asylum Street
        Hartford, Connecticut  06103

        _____
        William M. Tong

{00203532; 4; 1103-2}