UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DAVID E. CHARDAVOYNE,                    )
                                         )      CASE NUMBER:
                    Plaintiff,           )      3:03CV56 (WWE)
                                         )
        vs.                              )
                                         )
THAMES WATER HOLDINGS                    )
INCORPORATED, and THAMES WATER           )
NORTH AMERICA, INC.,                     )
                                         )
                    Defendants.          )      September 6, 2006

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

Plaintiff David E. Chardavoyne ("Chardavoyne" or "Plaintiff") submits this memorandum of law in opposition to defendants Thames Water Holdings Incorporated's ("Thames Holdings") and Thames Water North America, Inc.'s ("Thames North America," collectively "Defendants") motion for reconsideration dated August 18, 2006.

### PRELIMINARY STATEMENT

This Court got it exactly right in its order of July 13, 2006 (the "July 13 Order") denying summary judgment for the reasons set forth therein.

The record of sworn deposition testimony in this case is massive (more than 500 pages). From that vast testimonial, relevant excerpts have been submitted to the Court that undeniably demonstrate material issues of disputed fact. Witness credibility is at issue as to each count of the Second Amended Complaint (the "Complaint"). Summary judgment was correctly denied.

Defendants' motion for reconsideration itself is procedurally deficient. In their supporting memorandum ("Recon. Mem.") Defendants concede the narrow bases permitting reconsideration, see Recon. Mem. at 4, and here no basis applies: (i) there is no intervening change in the well-settled law of contracts, wage claims or conversion; (ii) there is no new evidence; and (iii) there is no clear

{00250649; 3; 1103-2}

error of law or manifest injustice by the Court's *denial* of summary judgment.  Conversely, the grant

of summary judgment as to any count would work manifest injustice upon plaintiff, depriving him of

his rightful day in court as to each or any count of the Complaint.

Accordingly, Defendants' motion for reconsideration should be denied or, alternatively, upon

reconsideration the Court should let stand the July 13 Order without change or modification.

### PROCEDURAL HISTORY AND BACKGROUND

Plaintiff respectfully refers to its memorandum in opposition to summary judgment dated

April 28, 2006, the supporting Chardavoyne Affidavit dated April 27, 2006, Plaintiff's Appendix and

Counterstatement of Disputed Facts, all for procedural history and relevant background.  Capitalized

terms refer to those previously defined.

### STANDARD OF REVIEW

The standard for granting a motion for reconsideration is appropriately stringent, and the

Court does not indulge a losing movant to reargue arguments already rejected:

> The standard for granting a motion for reconsideration is strict.  A "motion
> for reconsideration may not be used to plug gaps in an original argument or
> to argue in the alternative once a decision has been made."  It is also not
> appropriate to use a motion to reconsider solely to re-litigate an issue
> already decided.  A motion to reconsider should be denied, "unless the
> moving party can point to controlling decisions or data that the court
> overlooked -- matters in other words, that might reasonably be expected to
> alter the conclusion reached by the court."

SPGGC, Inc. v. Blumenthal, 408 F. Supp. 2d 87, 91 (D. Conn. 2006) (Underhill, J) (denying motion

for reconsideration, quoting Lopez v. Smiley, 375 F. Supp. 2d 19, 21-22 (D. Conn. 2005) (Kravitz,

J.)); see Shrader v. CSX Transp., Inc. 70 F.3d 255, 257 (2d Cir. 1995).  Only three grounds justify

reconsideration: "(1)  an intervening change of controlling law; (2) the availability of new evidence;

or (3) the need to correct an error or prevent manifest injustice."  SPGGC, Inc., 408 F. Supp. 2d at 9

(citing Virgin Atl. Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992));

-2-

see <u>Ryan v. Sullivan</u>, 2005 WL 367836 (D. CONN. Jan. 25, 2005) (Squatrito, J.) (denying reconsideration, noting "[t]he application of these standards is intended to prevent wasteful repetition of arguments already briefed, considered and decided").

It is undisputed that Defendants do not rely on the first two grounds to support reconsideration -- there is neither an intervening change of controlling law nor new evidence. The only possible basis upon which Defendants may even seek reconsideration would be a *specifically identified* clear error or instance of manifest injustice by the Court. In that regard, Defendants do not, as they are required, "set forth concisely, as required by the Local Rule of Civil Procedure 7(c), the 'matters . . . which counsel believes the court overlooked in the initial decision . . ..'" <u>Santiago v. Owens-Illinois, Inc.</u>, 2006 WL 1601182 (D. Conn. June 7, 2006) (Margolis, M.J.) (reconsideration denied). <u>See Ryan</u>, 2005 WL 367836, *2. Defendants' invitation that they be held to some lower standard due to the absence of reply briefing, <u>see</u> Recon. Mem. at 4, is without merit or support. Local Rule 7 is clear and unequivocal: "[R]eply briefs are not required and the absence of a reply brief will not prejudice the moving party." D. Conn. L. Civ. R. 7(d). Accordingly, neither clear error nor any injustice can be inferred.

The result is that reconsideration should be denied or, upon reconsideration, the Court should decline modification of the July 13 Order. <u>See SPGGC, Inc.</u>, 408 F. Supp. 2d at 102 ("Having reconsidered the Ruling, the Court declines to modify that decision."); <u>see also Santiago</u>, 2006 WL 1601182 at *2 (motion for reconsideration denied); <u>Ryan</u>, 2005 WL 367836 at *2 (motion for reconsideration denied).

**ARGUMENT**

Each of the nine (9) arguments set forth by Defendants fails to justify reconsideration of, or any modification to, the July 13 Order. It bears noting that each of Defendants "nine points" recites - - *verbatim* -- the arguments already articulated in Defendants' original briefing and rejected by the

{00250649; 3; 1103-2}

Court. <u>Compare</u> Mem. in Support, Argument §§ I(A) - (F), II-IV to Recon. Mem. §§ I - IX. Evidencing only remorse, without new data or controlling decisions, Defendants' effort at reconsideration is the epitomy of "wasteful repetition of arguments already briefed, considered and decided." <u>Ryan</u>, 2005 WL 267836 at *2 (Squatrito, J. ) (denying reconsideration).

**POINT ONE:    THAMES NORTH AMERICA IS BOUND BY THE EMPLOYMENT AGREEMENT ACCORDING TO THE EXPRESS TERMS OF THE CONTRACT, SWORN TESTIMONY, THE REPRESENTATIONS AND CONDUCT OF DEFENDANTS AND APPLICABLE CASE PRECEDENT**

Defendants admittedly raise nothing new in Point One, as they concede reliance on "detail at pages 15 through 16 of defendants' moving memorandum." Recon. Mem. at 4. The one case cited by Defendants is the same authority from their moving memorandum, <u>see</u> Mem. in Support at 15, Recon. Mem. at 5, and remains inapplicable. <u>See</u>, <u>infra</u>, n.1.

The terms of the Employment Agreement evidence a contract with Thames North America. As set forth in the Employment Agreement, "Parent Company" means Thames Water Plc; "The Group" means the Parent Company and *all subsidiaries;* "Group Company" means any company within The Group. App., Ex. 2, Employment Agreement at § 1.1. The Employment Agreement expands Plaintiff's duties and entitlements beyond those concerning Thames Holdings and Thames Water Plc, and includes Thames North America (a wholly-owned subsidiary of Thames Holdings): (i) obligating Plaintiff to serve any "other appointment" as directed by William Alexander as Chief Executive, <u>id.</u> at § 2.1; (ii) mandating Plaintiff to "undertake[] well and faithfully to serve . . . *the Group,*" <u>id.</u> at § 2.3 (emphasis added); (iii) requiring Plaintiff "for so long as the Chief Executive requires, [to] carry out duties *on behalf of any other Group Company,*" <u>id.</u> at § 2.5 (emphasis added); (iv) providing Plaintiff with a company car "for his use in the business of any *Group Company,*" <u>id.</u> at § 7 (emphasis added); (v) documenting Plaintiff's "*obligations to . . . any Group Company,*" <u>id.</u> at § 12.2(b) (emphasis

-4-

added); and (vi) granting to Plaintiff the right to possess and control certain personal property of any other "*Group Company.*" Id. at § 13.2 (emphasis added).

The sworn testimony similarly evidences a contract with Thames North America. It is an uncontradicted fact that Plaintiff was paid his wages and salary, as set forth in the Employment Agreement, by Thames North America. Chardavoyne Aff. at ¶ 10. Payment of such wages and salary occurred pursuant to § 5.1 of the Employment Agreement ("Remuneration and Benefits"). Plaintiff was assigned to work at the offices of Thames North America. Chardavoyne Aff. at ¶ 6. The Employment Agreement specifically directs that Plaintiff shall serve as "President, US within Thames Water Plc." Employment Agreement § 2.1. That assignment under the Employment Agreement is consistent with the uncontested sworn testimony that Plaintiff was recruited "to run Defendants' water and wastewater businesses *in North America.*" Chardavoyne Aff. at ¶ 4 (emphasis supplied). North American operations fell under both Thames Holdings and its wholly-owned subsidiary, Thames North America, as each corporation was organized under the laws of the State of Delaware with principal place of business in the United States. See id. at ¶ 7. In accordance with the Employment Agreement, Plaintiff was elected president and a director of Thames North America. Id.

Defendants' claim that Thames North America is not bound by the Employment Agreement is specious. A draft separation agreement was submitted to Plaintiff on May 29, 2002. See *Defendants'* December 16, 2005 Appendix ("Def. App.") at Ex. 1. That document states that the "Company" (as defined therein) employed Plaintiff pursuant to the written Employment Agreement. Id. at § 2.01. The draft separation agreement further represents that "on May 29, 2002, the Company told [Plaintiff] of its elimination of his position." Id. at § 2.02. Defendants separately submitted to the Court Plaintiff's notes from the May 29, 2002 meeting. Def. App., Ex. 8. These notes are entitled "Contemporaneous notes from 5/29/02 meeting," and state "TWNA role will not exist now."

-5-

Defendants, by their own admission, *represent to have eliminated Plaintiff's employment position at TWNA, i.e., Thames Water North America, pursuant to the Employment Contract.* While Plaintiff has set forth in great detail why no one with authority ever gave proper notice of termination, Defendants cannot now escape their own admission and representation that Thames North America is subject to the Employment Agreement.[1]

Additional legal bases bind Thames North America to the Employment Agreement, including contract implied by conduct (i.e., payment of wages, etc.), Thames Holdings/Thames Plc. acting as agent (i.e., clearly authorized as the immediate and ultimate parent of Thames North America, falling within the term "Group Company" as defined in the Employment Agreement) and ratification, all concepts recognized with full force and effect under the laws of both Connecticut and Pennsylvania.[2]

**POINT TWO: NO ONE WITH ANY AUTHORITY EVER GAVE NOTICE AS REQUIRED UNDER THE EMPLOYMENT AGREEMENT AND CORPORATE BYLAWS TO TERMINATE OR REMOVE PLAINTIFF**

As succinctly stated in Plaintiff's opposition to summary judgment and clearly considered by the Court:

> The motion must be denied because there are genuine issues of material fact: *at no time prior to Plaintiff's resignation were James McGivern ("McGivern") or Matthew Huckin ("Huckin"), individually or collectively, authorized by Plaintiff's employment agreement or the Defendants' bylaws to terminate Plaintiff's employment or give notice of termination. This central issue has*

---

[1] Defendants' re-citation or the Electron Energy Corp. decision, Recon. Mem. at 5, is unavailing. In that case the plaintiff sued both the defendant corporation and its president personally, even though the president clearly signed the contract at issue solely in his capacity as corporate officer. See 408 Pa. Super. at 568. Had Plaintiff sued William Alexander personally, such precedent (assuming Pennsylvania law were to apply) could arguably be relevant, but such is not the case.

[2] Peralta v. Cendant Corp., 123 F. Supp. 2d 65 (D. CONN. 2000) (contract implied from conduct); Crawford Auto Ctr. v. Commonwealth, 655 A.2d 1064 (Pa. Commw. Ct. 1995) ) (contract implied from conduct); In re Mason, 300 B.R. 160 (D. CONN. (2003) (principal bound by acts of agent); In re Estate of Brennen, 839 A.2d 470 (Pa. Commw. Ct. 2003) (principal bound by acts of agent); Cohen v. Holloways, Inc., 158 Conn. 395 (1969) (principal bound to unauthorized contract through ratification); In re I.D. Craig Serv. Corp., 118 B.R. 335 (W.D. Pa. 1990) (principal bound to unauthorized contract through ratification).

-6-

> *been repeatedly raised by Plaintiff, before the litigation, in the original declaratory judgment complaint, in each subsequent amendment to the complaint and repeatedly throughout discovery. The settled applicable law is clear that conditions precedent to termination, including the form and content of notice, are to be strictly construed in favor of the employee.*

Mem. in Opp. at 1. The Court in its July 13 Order rendered a detailed analysis of this precise issue and rejected Defendants' argument to the contrary:

> Here, there exists a genuine issue of material fact since the parties dispute whether prior to plaintiff's alleged termination, James McGivern or Mathew Huckin, individually or collectively, were authorized by either the Agreement or the defendants' bylaws to terminate plaintiff's employment or give notice of termination.

Id. at 3. Once again the Court got it exactly right. Defendants do not (and cannot) cite to any data overlooked or otherwise not considered by the Court. This basis for reconsideration fails as a result.

Defendants position seeking summary judgment on reconsideration as to this issue can only be characterized as bizarre: despite specific contract provisions for termination (that were never followed), despite the requirements of Defendants' bylaws to effect removal (that were never followed) and despite settled case precedent requiring strict adherence to contract terms and the requirements of corporate governance, Defendants invite this Court to grant summary judgment "even if the Court concludes that there is a question of fact on the issue of authority." Recon. Mem. at 7.

The case law is clear. Lack of authority is not mere formality, but a core requirement that must be respected in order to affect in any way Plaintiff's status as an employee, officer or director of defendants. While Defendants ignore this core requirement, this Court rightly did not. July 13 Order at 3; see Wolochuk v. Vollmer Assocs., 2000 WL 1742699, at *2 n.2 (D. Conn. Nov. 1, 2000) (Underhill, J.) (summary judgment denied, noting "[a]n employee could

-7-

{00250649; 3; 1103-2}

certainly be aware that a superior desired his termination but not also know whether the supervisor had the authority to carry out the desired termination and therefore whether in fact be terminated").

The law on corporate governance requiring strict adherence in order to remove officers and directors is equally clear. A failure to follow procedures set forth in the bylaws is fatal to the proposed corporate action. The charter of a corporation and its bylaws "are the fundamental documents governing the conduct of corporate affairs." Burr v. Burr Corp., 291 A.2d 409, 497 (Del. Ch. 1972). "These documents establish norms of procedure for exercising rights and all stockholders have a right to rely on them as to notice and *other procedural requirements stated therein.*" Id. (emphasis added). "Fairness and good order require that charter and bylaw requirements be followed in selecting directors, officers and otherwise giving life to the corporate body." Id.[3]

**POINT THREE:   DEFENDANTS REARGUMENT THAT PLAINTIFF RECEIVED "SUFFICIENT" NOTICE IS AN ISSUE OF FACT THAT PREVENTS SUMMARY JUDGMENT**

It is unclear how Defendants' third point ("Plaintiff's Lack of Notice Claim Fails") differs from Defendants' second point ("The Written Notice Requirement Under the Employment Agreement was Satisfied as a Matter of Law"). The central issue to this case -- what notice was given to Plaintiff, by whom, and by what authority -- are so laden with disputed issues of fact that summary judgment would plainly be inappropriate. Once again, Defendants cite no new case authority or identify any matter or data overlooked by the Court.

If, as Plaintiff has demonstrated and is fully prepared to prove at trial, Defendants never gave notice of termination consistent with the Employment Agreement and bylaws of Defendants, the

---

[3] Pennsylvania respects, as it is constitutionally required to do, the "internal affairs doctrine" for corporate governance. See J.L. Wolgin v. State Mutual Investors, 402 A.2d 669, 672, 265 Pa. Super. 525 (1979) ("Pennsylvania courts will not take jurisdiction for purposes of regulating or interfering with internal management of a foreign corporation"). Accordingly, there can be no dispute that Delaware law applies to the requirements of the bylaws of Thames Holdings and Thames North America.

notice period obviously never commences.  As a consequence, Plaintiff is entitled to his wages and

other damages up through the period of his resignation in December 2004.  It is not disputed that

Defendants failed to pay, among other things, salary and wages after June 30, 2003.[4]

Once again, Defendants cite no new case law or point out overlooked authority, but, instead,

refer the Court to its prior briefing.  See Recon. Mem. at 8.  Defendants continue to rely heavily, and

erroneously, upon the 1944 Pennsylvania decision in Massachusetts Bonding & Ins. Co. v. Johnston

& Harder, Inc., 348 Pa. 512, 35 A.2d 721 (Pa. Supp. 1944).   That case is fundamentally

distinguishable in that the court found the contract was in fact terminated by a person authorized to

do so.  See 348 Pa. at 515, 35 A.2d at 723; see also Amico v. Radius Commc'ns, 2001 WL 1807391,

*3 n.5 (Pa. Ct. Com. Pl.  Oct. 29, 2001) (citing Massachusetts Bonding & Ins. Co., stating "[t]here,

the Pennsylvania Superior Court held that defendant's *immediate termination* of the contract entitled

the plaintiff to no more than 30 days' profits for breach of contract because the relevant contract

allowed for termination on 30  days' notice.") (emphasis supplied).  Here, Plaintiff was never

terminated.  Authority to terminate was not at issue in Massachusetts Bonding & Ins. Co., in that the

acting party was acknowledged to have authority to terminate.   In stark contrast, no one with

authority to terminate ever provided required notice to Mr. Chardavoyne.  As a consequence,

termination never occurred and obviously no notice period ever began to accrue.  At the very least,

this is an issue for the fact finder at trial and requires denial of summary judgment.[5]

---

[4] Defendants erroneously state that the notice period under the Employment Agreement was twelve months. Recon. Mem. at 9.  The Employment Agreement provides Plaintiff with "not less than twelve months' written notice." App., Ex. 2 at §11.1(a).  Because no notice ever issued prior to Plaintiff's resignation in December 2004, his employment and the right to receive all wages and benefits continued through that date, not June 2003 as Defendants suggest.

[5] In like manner, all other authority cited by Defendants collapses for the very same reason. The only other authority cited by Defendants in Point Three for reconsideration (again reprinted from their initial briefing, Mem. In Support at 28), is the Connecticut precedent of B. Finder Assoc. v. Coldform, Inc., 2005 WL 1331811 (Conn. Super. Ct. May 5, 2005). Defendants' analysis of the case is seriously flawed, and requires comment. It was undisputed in that case that the person receiving notification of termination (i) unequivocally received notice of termination, and (ii) the person who issued the

{00250649; 3; 1103-2}

**POINT FOUR: THE EMPLOYMENT AGREEMENT ENTITLES PLAINTIFF TO THE 872 SHARES OF STOCK**

In four sentences Defendants assert that this Court "overlooked" that the Award Notice for 872 shares granted (but never paid) to Plaintiff was "from Thames Water Plc." Recon. Mem. at 10. On that basis, Defendants erroneously claim no liability for non-delivery of the award.

The Employment Agreement is executed by William Alexander on behalf of Thames Holdings. See App., Ex. 2. at 11. In the Employment Agreement William Alexander is also identified (i.e., defined) as the "Chief Executive" of Thames Water Plc. Id. at 1. The Employment Agreement further authorizes Plaintiff to receive "shares under any incentive scheme approved from time to time" by the board of Thames Water Plc. Id. at § 5.2. The board of Thames Water Plc approved the award of 872 shares to Plaintiff. See App., Ex. 4. Under the terms of the Employment Agreement it was the responsibility of Defendants to deliver such award of shares to Plaintiff and the failure to do so constitutes breach. As signatory to the Employment Agreement in his separate capacity as Chairman of Thames Holdings, See App., Ex. 2 at 1, 11, William Alexander bound Defendants to deliver to Plaintiff the 872 shares under the Employment Agreement.

Aside from the language of the Employment Agreement, there can be no issue that William Alexander, acting in his capacity as an officer of both Thames Plc. and Thames Holdings, has authority to act on their behalf (as well as Thames North America, a wholly-owned subsidiary).[6] Defendants' request on reconsideration for summary judgment is, accordingly, inappropriate.

---

notice of termination had authority to do so. Id. at *3. This, most assuredly, is not the case here with Plaintiff, as it is the central issue for trial.

[6] The additional principles of implied contract, agency and ratification apply with equal force to eradicate Defendants' suggested argument to the contrary, again, regardless of choice of law. See Peralta v. Cendant Corp., 123 F. Supp. 2d 65 (D. Conn. 2000); Crawford Auto Ctr. v. Commonwealth, 655 A.2d 1064 (April 20, 1995); In re Mason, 300 B.R. 160 (D. Conn. 2003); In re Estate of Brennen, 839 A.2d 470 (Pa. Commw. Ct. 2003); Cohen v. Holloways', Inc., 158 Conn. 395 (1969); In re I.D. Craig Serv. Corp., 118 B.R. 335 (W.D. Pa. 1990).

-10-

**POINT FIVE:    DEFENDANTS CLAIMED ENTITLEMENT TO SUMMARY JUDGMENT BASED ON PREEMPTION IS MISPLACED IN THIS FEDERAL FORUM**

Defendants' arguments for reconsideration at Point Five are scattered and difficult to discern. Defendants make reference to (i) "miscellaneous breach of contract claims," Recon. Mem. at 10, and an alleged failure to identify what provisions of the Employment Agreement Defendants breached; and (ii) federal preemption under ERISA. Defendants claim somehow these arguments deprive Plaintiff of his claim for employee benefits, as plead under Count Four of the Complaint. Recon. Mem. at 11-12. Defendants' arguments are frivolous.

### 1.    CONTRACT CLAIMS

Plaintiff pleads breach of contract (i.e. breach of the Employment Agreement) in Count One and breach of the implied covenant of good faith and fair dealing in Count Two of the Complaint. Defendants' reference to "miscellaneous breach of contract claims" presumably relates to Plaintiff's allegations plead in support of his relief sought in the first two counts of the Complaint, including: (i) misrepresentations concerning the draft separation agreement, Mem. in Opp. at 32; (ii) refusal to pay stock in breach of the contract provisions of the Employment Agreement, Mem. in Opp. at 32; (iii) refusal to permit Plaintiff to seek other employment prior to his resignation, Mem. in Opp. at 33; (iv) threats regarding the withholding or premature termination of Plaintiff's medical benefits, Mem. in Opp. at 34; (v) false accusations about Plaintiff's conduct in the workplace, Mem. in Opp. at 34; (vi) unreasonable delay in payment of non-qualified deferred compensation, Mem. in Opp. at 34; (vii) failure to provide accurate W-2 reporting, Mem. in Opp. at 34; and (viii) threats to communicate baseless claims to Plaintiff's new employer as a tactic to prejudice and disparage Plaintiff, Mem. in Opp. at 36.

-11-

Plaintiff is prepared to prove all allegations, but the resolution of these fact issues is inappropriate for summary judgment. The Court's July 13 Order accommodates this well-settled principle and denied summary judgment as to both Count One and Count Two of the Complaint. As set forth by the Court, "[w]hether a party has made a good-faith effort to fulfill its obligations under a contract is a question of fact." July 13 Order at 3.

## 2.    ERISA

An employer's decision to extend benefits does not constitute, in and of itself, the establishment of an ERISA plan. Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987). Defendants set forth no facts or analysis to demonstrate that the Employment Agreement constitutes an "employee benefit plan" regulated by ERISA with respect to Plaintiff's alleged claims for benefits. See 29 U.S.C. § 1144.

Even if ERISA were to apply, it is of no consequence since (i) Plaintiff's pleading provides sufficient notice of the claim; and (ii) this Court has jurisdiction to require Defendants to defend under ERISA in any event. In Devine v. Combustion Engineering, Inc., this Court held that ERISA preempted plaintiff's state law claims, but under the applicable "liberal" notice pleading standards, plaintiff's state law-based count put defendants sufficiently on notice that they would have to defend a claim under ERISA. 760 F. Supp. 989, 993 (D. Conn. 1991). See also Russo v. City of Hartford, 2006 WL 516747 at *10 (D. Conn. Mar. 2, 2006) (finding that Defendants had notice of retaliation claim, even though it was pled as an invasion of privacy claim).[7]

Equally compelling is the fact that Defendants are now procedurally barred from seeking summary judgment on the basis of federal preemption through ERISA. The Second Circuit has

---

[7] Notably, Defendants again proffer no additional legal precedent on the substantive law, other than refer generally to arguments previously made. . . and rejected. . . by this Court. See Recon. Mem. at 11 (referencing pages in the initial briefing for arguments set forth therein).

-12-

made clear that ERISA preemption of state law claims is an affirmative defense that Defendants were required to plead specifically.  Saks v. Franklin Covey Co., 316 F.3d 337, 349-50 (2d Cir. 2003).  The failure to plead an affirmative defense waives the defense.  Doubleday & Co. v. Curtis, 763 F.2d 495, 503 (2d Cir.), appeal dismissed, 474 U.S. 912 (1985); Funk v. F & K Supply, Inc., 43 F. Supp. 2d 205, 221-22 (N.D.N.Y. 1999).  Waiver here is appropriate, as Defendants did not even raise the defense of preemption in their motion for summary judgment, but merely attempt to do so now on reconsideration to avoid the consequences of the Court's July 13 Order. This is a new argument, deficient on its face that is also procedurally barred.[8]

**POINT SIX:** **DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIM OF BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

Once again, the Court was entirely accurate and correct in its analysis of both Count One (breach of contract) and Count Two (breach of the implied covenant) of Plaintiff's Complaint.  The choice of law provision set forth in the written agreement can pertain to the Employment Agreement. As such, the Court correctly denied summary judgment as to Count One pursuant to an analysis of the elements for breach of contract under Pennsylvania law, citing disputed issues of material fact. At the same time, the Court was equally correct in denying summary judgment as to Count Two alleging breach of the implied covenant, regardless of the provisions of Pennsylvania law.

---

[8] Beyond the eleventh hour, and long past the close of discovery, it plainly would be inappropriate for the Court now to rely on any such basis at this time.  See Doubleday & Co., 763 F.2d at 495.  While Plaintiff will separately address Defendants' egregious gamesmanship in trying now to amend the pleadings around the Court's July 13 Order, it should suffice that courts within this Circuit, and the Second Circuit itself, do not suffer procedural gimmickry long after the fact.  See Cross & Cross Properties v. Everett Allied Co., 886 F.2d 497, 500, 503 (2d Cir. 1989) (no abuse of discretion in denying motion to amend answer to include affirmative defenses when motion came five months after the pretrial order).

{00250649; 3; 1103-2}

*Even if* the substantive law of Pennsylvania does not, as Defendants erroneously suggest, recognize an independent cause of action for breach of the implied covenant,[9] the issue is of no consequence as the choice of law provision in the written agreement cannot trump Plaintiff's entitlement -- as a Connecticut resident employed in Connecticut at all relevant times -- with regard to Connecticut's public policy and recognition of the implied covenant, a cause of action independent of the written agreement. The Connecticut Supreme Court set forth the standard which overrides the contractual choice of law provision relied upon by Defendants as to Plaintiff's claim for breach of the implied covenant, as "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." <u>Elgar v. Elgar</u>, 238 Conn. 839, 850 (1996) (<u>citing</u> RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971)).[10]

### POINT SEVEN: PLAINTIFF IS ENTITLED TO PURSUE THE PRIVATE RIGHTS OF ACTION AVAILABLE TO HIM UNDER THE CONNECTICUT WAGE ACT

---

[9] This Court's July 13 Order properly recognized that "[u]nder Pennsylvania law, whether a party has made a good-faith effort to fulfill its obligations under a contract is a question of fact." July 13 Order at 3 (citing <u>Huang v. BP Amoco Corp.</u>, 271 F.3d 560, 565 (3d Cir. 2001)). Pennsylvania law recognizes a cause of action for breach of the covenant of good faith and fair dealing implied in any contract. <u>See</u> <u>AAMCO Transmissions, Inc. v. Harris</u>, 759 F. Supp. 1141 (E.D. Pa. 1991) (breach of the implied covenant plead by counterclaim, court denied summary judgment to plaintiff noting that it was for the fact finder to determine whether there was a breach of implied duties); <u>Doe v. Kohn Nast & Graf P.C.</u>, 862 F. Supp. 1310 (E.D. Pa. 1994); <u>Killian v. McCulloch</u>, 850 F. Supp. 1239 (E.D. Pa. 1994); <u>EEOC v. Chestnut Hill Hosp.</u>, 874 F. Supp. 92 (E.D. Pa. 1995); <u>C.f.</u>, <u>Atlantic Richfield v. Razumic</u>, 480 Pa. 366, 390 A.2d 736 (1978).

[10] For reasons already stated, Plaintiff submits that the Court's decision to deny summary judgment as to all counts of the Complaint is correct: even if Pennsylvania law were to apply to Count One (breach of contract), Connecticut law most assuredly applies to all other counts for at least two reasons: (i) Connecticut law would apply in the absence of a choice of law provision, as it clearly is the State with the most significant contacts to the dispute, <u>see</u> Mem. in Opp. at 26-28; and (ii) Connecticut recognizes a separate cause of action for breach of the implied covenant, a public policy that must be respected and control to the extent that Pennsylvania law might be to the contrary or in an way otherwise limiting. <u>See</u> <u>Elgar</u>, 238 Conn. at 850; <u>see also</u> <u>Habetz v. Condon</u>, 224 Conn. 231, 238 (1992) ("To demand this implicit component [of good faith] but do nothing about its absence would be at best incongruous, and, more accurately, grossly unfair."); <u>Greenwoods Scholarship Found. Inc. v. Northwest Comm. Bank</u>, 1999 WL 417939 (Conn. Super. Ct. Jan. 4, 1999) (recognizing as a separate cause of action the implied covenant). The remaining counts of the Complaint are either based on Connecticut statute or arise from tortuous conduct, and, as such, the choice of law provision in the Employment Agreement can be of no consequence to those counts.

-14-

{00250649; 3; 1103-2}

In seeking to strike Count Three and Count Four of the Complaint, Defendants pose a contradiction in the record that does not exist. Plaintiff's sworn affidavit is in accord with his deposition testimony, both of which demonstrate that at all relevant times Plaintiff resided and was employed in Connecticut. Defendants' own representations in the record are in accord. As a consequence, Plaintiff is fully entitled to pursue his claim for wages under CONN. GEN. STAT. § 72 and, separately, his claim for benefits pursuant to CONN. GEN STAT. §§ 31-71a to 31-71i.

At his deposition, Plaintiff testified that for the three-year plus period commencing from the beginning of the Employment Agreement in February 1999 up to the time of the May 29, 2002 meeting at issue in this case, Plaintiff worked all but twenty-seven (27) days in the State of Connecticut. Def. App., Ex. 7 at 57. Until the time of the May 29, 2002 meeting and thereafter, Defendants had office space in Connecticut. Id. The draft separation agreement presented to Plaintiff at the May 29, 2002 meeting states that Thames Holdings' offices are located in Stamford, Connecticut. Def. App., Ex. 6 at §1.01. The same draft separation agreement acknowledges that Plaintiff resides in "Trumbell [sic], Connecticut." Id. at § 1.02.

The above facts are important because they demonstrate that as of May 29, 2002 Plaintiff both lived and worked in Connecticut. Thereafter, Plaintiff continued both to live in Connecticut and work for Defendants in Connecticut as, at the direction of Mr. McGivern, Plaintiff remained in Connecticut for purposes of his continued employment with Defendants. This established, undisputed chronology is not mere semantics but the very foundation of Plaintiff's statutory right to pursue his claims under Count Three and Count Four of the Complaint. The Employment Agreement specifically anticipated what occurred in May 2002 and expressly provides that a direction for Plaintiff not to attend Defendants' offices does not constitute dismissal:

> The Chief Executive may at any time during the term of the Executive's employment hereunder elect not to provide work for the Executive to do and/or require the Executive not to attend at

-15-

{00250649; 3; 1103-2}

> the premises of any Group Company and *no such event shall*
> *constitute a repudiation of this Agreement or dismissal of the*
> *Executive whether constructive or otherwise.*

Id. at § 14 (emphasis added).  Plaintiff obeyed the direction, which does not constitute a dismissal

or termination "constructive or otherwise."  Id.

**POINT EIGHT: DEFENDANTS ARE LIABLE TO PLAINTIFF FOR CONVERSION OF 872 SHARES OF STOCK AWARD TO PLAINTIFF**

For the reasons set forth, *supra*, at pp. 10-11 of Point Four, the Employment Agreement

establishes a contractual liability against Defendants by reason of Defendants' failure to deliver to

Plaintiff shares awarded to him by Thames Water Plc.  Independent of the Employment Agreement,

principles under the law of agency, ratification and implied contract, as already set forth, separately

permit Plaintiff to seek contractual redress against Defendants for the failure to deliver such shares

duly awarded.  However, in addition to relief based in contract, Plaintiff is entitled to pursue remedy

against Defendants in tort, specifically under the common law of conversion, by reason of

Defendants' wrongful withholding of the shares.  Among other things, Plaintiff is permitted to seek

the additional punitive damages allowed in tort, as well as seek redress for actual monetary loss on

the shares through alternative legal theories.  Finally, try as they may, Defendants cannot escape the

reality now in the record that they have procedurally admitted Plaintiff's allegations of conversion by

failing to deny them in Defendants' responsive pleadings.

Importantly, Defendants have denied the material allegations of Count One of the Complaint

(breach of contract).  Answer at ¶¶ 30 - 36.  Defendants' denial of liability under the contract, along

with (i) the additional punitive damages allowed to Plaintiff under common law conversion; (ii)

Plaintiff's established right to plead and seek redress on alternative theories of liability; and (iii)

Defendants' failure to deny the material allegations of conversion under Count Five of the

-16-

Complaint, all overwhelmingly establish Plaintiff's unfettered right to seek damages for conversion at trial.

Because the damages and relief available to Plaintiff under conversion (Count Five) are different from and additional to those available under breach of contract (Count One), Plaintiff is allowed to proceed under both counts. See Label Sys. Corp. v. Aghamohammadi, 270 Conn. 291, 336 (2004) (punitive damages for attorneys' fees upheld upon jury verdict finding conversion). In addition, Plaintiff is expressly permitted to seek relief in the alternative (i.e., to seek compensatory money damages either under a theory of breach of contract or by reason of Defendants' conversion). "Demand for relief in the alternative or for several different types of relief is permitted." 2 MOORE'S FEDERAL PRACTICE § 8.05 at 8-31 (citing FED. R. CIV. P. 8(a)). Finally, Defendants cannot escape the consequences of their failure to deny the material allegations set forth in Plaintiff's count for conversion. Federal Rule 8 is clear, failure to deny the allegations of a complaint deems the alleged facts admitted: "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damages, are admitted when not denied in the responsive pleading." FED. R. CIV. P. 8(d); see 2 MOORE'S FEDERAL PRACTICE § 8.09[1] at 8-44.1 ("failure to deny an averment in a pleading to which a responsive pleading is required, other than those as to the amount of damages, is deemed an admission.").

**POINT NINE:** **DEFENDANTS' CORPORATE ACTION TAKEN IN DECEMBER 2005 CANNOT RATIFY UNAUTHORIZED ACTIONS IN MAY 2002 AFTER PLAINTIFF RESIGNED IN DECEMBER 2004, BUT SUCH CORPORATE ACTION IS AN ADMISSION THAT DEFENDANTS FAILED TO REMOVE PLAINTIFF AS AN OFFICER AND DIRECTOR PRIOR TO HIS RESIGNATION**

By letter dated July 12, 2002 Plaintiff made clear through his counsel why he rightly remained employed by defendants, including that Defendants could not remove or terminate him absent appropriate action by Defendants respective board of directors. See App., Ex. 19. For three (3) years Defendants were aware that no termination or removal of Plaintiff could occur

-17-

without board resolution or shareholder vote. Then, on the literal eve of filing for summary judgment (after the close of discovery and a mere eight days after William Alexander retired, <u>see</u> App., Ex. 38), Defendants passed board resolutions and conducted shareholder votes, purportedly to ratify long after the fact the unauthorized conduct of Messrs. Huckin and McGivern. <u>See</u> Def. App., Ex. 12 at A-D.

Given that Plaintiff had already resigned, previously in December 2004, ratification to authorize termination or removal is ineffective as a matter of law. <u>See Cook v. Tullis</u>, 85 U.S. 332 (1873) (unauthorized contract for the sale of property cannot be ratified if property is sold between the time of original proposed sale and date of purported ratification); <u>Pape v. Home Ins. Co.</u>, 139 F.2d 231, 235 (2d Cir. 1943) (rule is "well settled rule" that "ratification does not date back to destroy intervening rights of third persons or otherwise to achieve an inequitable result."); <u>see also</u> <u>Guaranty Bank and Trust Co. v. Reyna</u>, 201 N.E.2d 144, 51 Ill. App. 2d 412 (1964) (a purported principal was estopped from later asserting its purported agent had authority after it erroneously informed the promisee that its purported agent did not have authority and waited 2 months to correct their error, meanwhile the promisee repudiated the lease); RESTATEMENT (SECOND) AGENCY § 89; <u>c.f.</u> RESTATEMENT (THIRD) AGENCY § 4.05 (Tentative Draft No. 2, 2001). Defendants state that Plaintiffs case law cited on the issue "is distinguishable," but make absolutely no attempt to do so. <u>See</u> Recon. Mem. at 15.

The irony, of course, is that while Defendants' attempt at ratification is wholly null and void, it does constitute an admission by Defendants that they failed to take action required to remove or terminate Plaintiff, meaning that summary judgment must be denied.

## CONCLUSION

Plaintiff David E. Chardavoyne respectfully requests that the Court deny Defendants' motion for reconsideration in all respects or, alternatively, upon reconsideration the Court let stand the July 13 Order without change or any modification, granting such other and further relief as the Court deems just and proper.

PLAINTIFF
DAVID E. CHARDAVOYNE

By: _____
    Patrick J. McHugh (ct14072)
    Finn Dixon & Herling LLP
    177 Broad Street, 15th Floor
    Stamford, CT 06901-2689
    Telephone: (203) 325-5000
    Facsimile: (203) 325-5001
    E-mail:  pmchugh@fdh.com

## CERTIFICATION

This is to certify that a true and correct copy of the foregoing was delivered by United States

Mail, first class, postage-prepaid to the following this 6th day September, 2006:

> Stephen B. Fogerty, Esq.
> Halloran & Sage LLP
> 315 Post Road West
> Westport, Connecticut  06880
>
> Ralph W. Johnson, III, Esq.
> Halloran & Sage LLP
> One Goodwin Square
> 225 Asylum Street
> Hartford, Connecticut  06103

Patrick J. McHugh

-20-