IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE<br>Plaintiff, | : | CIVIL ACTION NO.<br>3:03-CV-56 (WWE) |
| VS. | : | |
| THAMES WATER HOLDINGS<br>INCORPORATED, THAMES WATER<br>NORTH AMERICA, INC.<br>Defendants. | : | OCTOBER 6, 2006 |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR RECONSIDERATION**

Stephen P. Fogerty, Esq.
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tele: (203) 227-2855
Fax: (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson, III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel. No.: (860) 522-6103
Fax No.: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

*Counsel for the Defendants,*
*Thames Water Holdings, Incorporated and*
*Thames Water North America, Inc.*

# TABLE OF CONTENTS

PAGE

ARGUMENT .................................................................................................. 1

    I.    RECONSIDERATION IS APPROPRIATE UNDER THE STANDARD OF REVIEW ................................................. 1

    II.    TWNA IS NOT A PARTY TO THE EMPLOYMENT AGREEMENT ................................................................................ 1

    III.    THE PLAINTIFF'S LACK OF NOTICE CLAIM FAILS AS A MATTER OF LAW ............................................................... 4

    IV.    THE PLAINTIFF'S CLAIM BASED ON THE 872 SHARES OF RWE AG STOCK FAILS AS A MATTER OF LAW ................................................................................................ 5

    V.    THE PLAINTIFF'S MISCELLANEOUS CONTRACT CLAIMS FAIL AS A MATTER OF LAW ........................................ 6

    VI.    THE PLAINTIFF'S CLAIMS ARE PREEMPTED BY ERISA ............................................................................................. 6

    VII.    THE PLAINTIFF'S CLAIM OF BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW ................................. 7

    VIII.    THE PLAINTIFF'S WAGE ACT CLAIMS FAIL AS A MATTER OF LAW ................................................................... 8

    IX.    THE PLAINTIFF'S CONVERSION CLAIM FAILS AS A MATTER OF LAW ............................................................... 9

    X.    THE PLAINTIFF'S LACK OF AUTHORITY CLAIM IS WITHOUT MERIT ...................................................................... 10

## ARGUMENT

### I. RECONSIDERATION IS APPROPRIATE UNDER THE STANDARD OF REVIEW

Chardavoyne's claim that the motion for reconsideration is somehow deficient under the standard of review is without merit. (Pl.'s Mem. at 1-4) It is nothing more than an effort to lull the Court into foregoing the requisite analysis. As the defendants demonstrated in their opening memorandum, reconsideration is proper when a court overlooks an issue. For example, in Doe II v. City of Hartford, 2005 WL 2009051, at *1-4 (D.Conn. Aug. 22, 2005), the court reconsidered its denial of summary judgment as a result of its failing to address the issue of qualified immunity. Indeed, the case law that Chardavoyne quotes recognizes that reconsideration is appropriate where a court has "overlooked" an issue. (Pl.'s Mem. at 2)

In the instant case, even the most cursory comparison of the defendants' briefs in support of their summary judgment and reconsideration motions and the July 13, 2006 Ruling reveals that the Court's conclusion regarding authority did not resolve any of the issues raised by the motion for reconsideration. The addressing of these issues at this point in time is critical to an orderly trial of this case.

### II. TWNA IS NOT A PARTY TO THE EMPLOYMENT AGREEMENT

Chardavoyne's claim that Thames Water North America ("TWNA") is a party to the Employment Agreement fails to address the express language in the document which identifies Thames Water Holdings, Inc. ("TWH") and Chardavoyne, as the only two parties to the agreement. (Pl.'s Mem. at 4-6) Instead, Chardavoyne quotes language in the agreement which obligates him to provide services to entities related to TWH. After quoting that language, he urges this Court to hold that TWNA promised to comply with all of the terms of the Employment Agreement, despite the lack of any language reflecting any such commitments or obligations on

1

the part of TWNA.[1]  Chardavoyne also quotes the language of a proposed separation agreement drafted three years after the execution of the Employment Agreement, supposedly as evidence that TWNA was a party to the agreement.  He provides no legal authority explaining how this language is relevant to interpreting the Employment Agreement or how it can even be considered in light of the express language of the agreement.

In contrast to Chardavoyne's arguments, the Pennsylvania Supreme Court has described contract interpretation under Pennsylvania law as follows:

> The fundamental rule in interpreting the meaning of a contract is to ascertain and give affect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself.  The whole instrument must be taken together in arriving at contractual intent.  Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. *'When a writing is clear and unequivocal, its meaning must be determined by its contents alone.'*
>
> Only where a contract's language is ambiguous may extrinsic or parole evidence be considered to determine the intent of the parties. A contract contains an ambiguity 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sentence.'  This question, however, is not resolved in a vacuum.
>
> Instead, 'contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.' *In the absence of an ambiguity, the plain meaning of an agreement will be enforced.*  The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

---

[1]   In fact, Chardavoyne misquotes the Employment Agreement.  Contrary to his brief, (Pl.'s Mem. at 4), § 7 of the agreement states that Chardavoyne was provided with a car "for his use in the business of the *Company* or any Group Company...." (Emphasis added) Chardavoyne's quote omits the word "Company," a term which is defined as meaning TWH.  Similarly, his reference to § 13.2 quotes "Group Company" without acknowledging that that section also refers to the "Company."

2

Ferrer v. Trustees of Univ. of Pa., 825 A.2d 591, 608 (Pa. 2003)(emphasis added).[2]

Moreover, "[w]here a term is defined in a contract and is, therefore, presumably unambiguous, no further interpretation is justified since if the meaning is clear from the express language of the agreement, judicial construction is unnecessary." Lohmann v. Piczon, 487 A.2d 1386, 1388 (Pa. Super. 1985).[3] "Under Pennsylvania law, when a party argues that a contract contains an ambiguity, that party must be able to point to a reasonable alternative interpretation for the ambiguity." Perry v. Sonic Graphic Sys., Inc., 94 F.Supp.2d 616, 619-20 (E.D.Pa. 2000).

In the instant case, the Employment Agreement clearly defines and distinguishes between "Company," "Parent Company" and "Group Company." The first line of the agreement states that it "is made…between Thames Water Holdings Inc. ("the Company")…and David E. Chardavoyne…." (Defs.' Ex. 1, at p. 1) The agreement is signed by William Alexander, as the "Chairman of Thames Water Holdings Inc." and Chardavoyne. (Id. at p. 11) It also indicates that Chardavoyne would be required to provide services to companies related to TWH "without any further remuneration." (Id. at 2, ¶ 2.5) Chardavoyne does not offer any alternative meanings to the express language of the agreement. Instead, he avoids that language.

---

[2]/   Similarly, the Third Circuit has recognized that Pennsylvania contract law begins with the "'firmly settled'" point that "'the intent of the parties to a written contract is contained in the writing itself.'" Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 92 (3d Cir. 2001). "Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence, instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone." Id. "[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as *manifestly expressed*, rather than as, perhaps, silently intended." Id. at 92-93 (emphasis original). Thus, "[c]lear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." Id. at 93.

[3]/   See Eannarion v. Eannarion, 439 A.2d 760, 762 (Pa. Super. 1982)("When parties define the terms used in a contract, those definitions govern the construction of the contract."). See also Mollinger v. Diversified Printing Corp., 1989 WL 115125, at *2 (E.D.Pa. Sept. 29, 1989)(parties are bound by "objective definition"), aff'd 902 F.2d 1561 (3d Cir. 1990).

3

The Court's July 13 Ruling contains no analysis of whether TWNA is a party to the Employment Agreement, let alone analysis which overcomes the express and plain language and defined terms within the agreement. The Court's reference to salary payments by TWNA is misplaced. The Second Amended Complaint does not allege any amendment to the terms of the agreement by the method of some payments. Rather, the First Count *only* alleges that TWNA was a party to the written Employment Agreement and that TWNA breached it. As demonstrated above, that theory, the *only* theory alleged, fails as a matter of law. Specifically, the application of the law governing contract interpretation to the express and plain language of the agreement reveals that TWNA was not a party to the contract, as it was only "made...between" TWH and Chardavoyne. Consequently, all of Chardavoyne's claims against TWNA fail as a matter of law.

## III. THE PLAINTIFF'S LACK OF NOTICE CLAIM FAILS AS A MATTER OF LAW

Chardavoyne's response to the notice issue is to avoid the substantive analysis. (Pl.'s Mem. at 8-9) As the notice given to Chardavoyne satisfied the terms of the Employment Agreement, he cannot base his breach of contract claim on a theory of failure to provide sufficient notice. Thus, regardless of the Court's conclusion that authority is a question of fact, Chardavoyne's claim regarding notice fails as a matter of law. (Defs.' 12/16/05 Mem. at 16-19)

In addition to a direct analysis of the notice given and Chardavoyne's conduct in response to it, the case law governing the limitations on damages for notice claims further compels the dismissal of Chardavoyne's notice claim. (Id. at 19-28) Indeed, Chardavoyne attempts to distinguish Massachusetts Bonding & Ins. Co. v. Johnston, 35 A.2d 721 (Pa. 1944) by merely maintaining that "authority" was not at issue in that case. Authority and the sufficiency of the notice are different issues. In fact, the operative complaint in this case does not identify lack of

4

authority as a basis for the breach of contract claim or any other claim. (Second Am. Compl., First Count, ¶¶ 34-25) In sum, the proper application of the case law requires the dismissal of Chardavoyne's claim for breach of contract based on an alleged violation of the notice provision in § 11.1 of the Employment Agreement. (Id. ¶ 34a)

### IV.  THE PLAINTIFF'S CLAIM BASED ON THE 872 SHARES OF RWE AG STOCK FAILS AS A MATTER OF LAW

Chardavoyne does not dispute that the Award Notice granting him 872 shares of RWE AG stock, (Defs.' Ex. 15), was issued by a Thames Water Plc, a corporation which is not a defendant in this case. (Pl.'s Mem. at 10) Instead, he argues that because § 5.2 of the Employment Agreement recognized that he would be "eligible" to receive "bonus payments and conditional rights to shares under any incentive scheme approved" by the Board of Thames Water Plc, the defendants are somehow liable to him for breach of the agreement as a result of him not receiving the stock. (Id.) As support for this argument, Chardavoyne maintains that "[u]nder the terms of the Employment Agreement it was the responsibility of Defendants to deliver such award of shares to Plaintiff and the failure to do so constitutes breach." (Id.)[4]

Notably absent from Chardavoyne's brief is a citation to or quotation of the alleged "terms" of the Employment Agreement by which the defendants promised to be responsible for the delivery of stock awarded by a different corporation. Regardless of the positions held by William Alexander, there is no promise in the Employment Agreement that either TWH or TWNA would be responsible if Chardavoyne did not receive stock awarded to him by another

---

[4]  Moreover, Chardavoyne argues that because (1) William Alexander was an officer of TWH and Thames Water Plc and (2) Alexander signed the Employment Agreement in his capacity as the chairman of TWH, TWH was bound under the Employment Agreement to deliver the 872 shares awarded by Thames Water Plc under an Award Notice issued three years later. (Pl.'s Mem. at 10) As support for this argument, Chardavoyne refers generally to the principles of implied contract, agency and ratification, despite not having pled them in his complaint. (Id. at 10 n.6) He never explains how this binds TWNA.

5

corporation. Section 5.2 merely acknowledges that Chardavoyne would be "eligible" to receive a bonus and stock from related companies. As such, Chardavoyne's claim of a breach of the Employment Agreement by the defendants based on the 872 shares of stock fails as a matter of law.

## V. THE PLAINTIFF'S MISCELLANEOUS CONTRACT CLAIMS FAIL AS A MATTER OF LAW

In defense of his miscellaneous, contract claims, Chardavoyne maintains that the July 13 Ruling was correct in finding that "[w]hether a party has made a good-faith effort to fulfill its obligations under a contract is a question of fact." (Pl.'s Mem. at 12) Again, Chardavoyne's response avoids the dispositive issue. As demonstrated in the defendants' previous briefs, Chardavoyne's miscellaneous claims are not based on a breach of any obligations owed by the defendants under the terms of the Employment Agreement. Consequently, they cannot support a breach of contract claim, as a matter of law.[5]

## VI. THE PLAINTIFF'S CLAIMS ARE PREEMPTED BY ERISA

With regard to ERISA preemption, Chardavoyne makes three claims. First, he maintains that the defendants have not identified a plan. (Pl.'s Mem. at 12) Second, he argues that the defendants are barred from seeking summary judgment based on ERISA preemption because they waived the defense as they "did not even raise [it] in their motion for summary judgment, but merely attempt to do so now on reconsideration...." (Id. at 13) Finally, he contends that

---

[5]/ If the Court does not reconsider its July 13 Ruling and dismiss the miscellaneous claims, it is creating a scenario under which a jury will be asked to find the defendants in breach of the Employment Agreement for conduct that is not covered by the terms of the agreement. Before a party can have a breach of contract claim submitted to a jury, it must establish that an act or omission constituted a material breach of a term of the contract. Here, Chardavoyne has failed to identify the terms of the Employment Agreement that were materially breached as a result of the miscellaneous conduct and to establish that he suffered any damage as a result of the breach. Accordingly, the miscellaneous claims must be dismissed, in whole or in part, as a matter of law.

6

preemption should not apply because his pleadings provide notice of the claim and this Court can require the defendants to defend a claim under ERISA. (Id. at 12)

Each of Chardavoyne's claims is without merit. His first claim ignores the Retirement Advantage Enrollment & Allocation Request Form which he submitted as an exhibit and where he elected to participate in TWH's "NQDC Plan." With regard to his second claim, the Court need only review pages 34 through 35 of the defendants' December 16, 2005 memorandum to see that they sought summary judgment based on ERISA preemption.

Chardavoyne's final claim is equally misplaced. Unlike the situation in Devine v. Combustion Eng'g, Inc., 760 F.Supp. 989, 993 (D. Conn. 1991), Chardavoyne's pleadings do not give notice of an intention to pursue a claim under ERISA. Indeed, his current brief leaves the Court and the defendants to guess about the details of any such claim. Accordingly, on reconsideration, the Court should hold that any claim by Chardavoyne for medical, dental and retirement benefits are preempted by ERISA. (Second Am. Compl., First Count, ¶ 34c)

## VII. THE PLAINTIFF'S CLAIM OF BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW

Chardavoyne advances two arguments in support of his position that summary judgment should not enter on his claim for breach of the implied covenant of good faith and fair dealing. First, he contends that Pennsylvania law recognizes a separate cause of action for breach of the implied covenant. Second, he argues that Connecticut law should govern and that it recognizes a cause of action separate from a breach of contract claim.

Chardavoyne's statements notwithstanding, the case law cited by the defendants demonstrates that Pennsylvania law does not recognize a separate cause of action for a breach of the implied covenant. (Defs.' 12/16/05 Mem. at 35-37). The decisions cited by Chardavoyne in footnote 9 of his brief do not directly address this issue. Moreover, the recent case law from

7

state and federal courts confirms that the Pennsylvania law does not recognize a cause of action independent from a claim for breach of contract. See Balmat v. CertainTeed Corp., 2004 WL 2861873, at *2-3 (E.D.Pa. Dec. 9, 2004); Toy v. Metropolitan Life Ins. Co., 863 A.2d 1, 14 (Pa. Super. 2004), appeal granted, 882 A.2d 462 (Pa. 2005).

Similarly, Chardavoyne's claim that Connecticut law governs is without merit. Elgar v. Elgar, 238 Conn. 839 (1996) does not justify the application of Connecticut law in the face of the Pennsylvania choice of law clause in the Employment Agreement. See id. at 850-51 (upholding choice of law clause). This is particularly so with regard to a claim for a breach of the implied covenant, as the existence of the covenant is dependant on the existence of a contract.[6]

Moreover, Connecticut case law, including the case law Chardavoyne cites, recognizes that a claim for breach of the implied covenant "is in essence a contract claim." Grenwoods Scholarship Found., Inc. v. Northwest Comm. Bank, 1999 WL 417939, at *4 n.5 (Conn. Super. June 4, 1999). See Celentano v. Oaks Condo Assoc., 265 Conn. 579, 617 (2003); Miller v. Guimares, 78 Conn. App. 760, 772-73 (2003). As a contractual claim, the breach of implied covenant claim is governed by Pennsylvania law under § 24 of the Employment Agreement.[7]

## VIII. THE PLAINTIFF'S WAGE ACT CLAIMS FAIL AS A MATTER OF LAW

Chardavoyne advances two arguments in support of his claim that he is entitled to rely on the Connecticut Wage Act. (Pl.'s Mem. at 15-16) First, he maintains that he was working in

---

[6]/ Chardavoyne has failed to identify the "public policy" of the State of Connecticut that allegedly requires the application of Connecticut law under the circumstances at issue. A party cannot rely on a state's public policy without articulating the details and origins of that policy. See McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287-89, 319-20 (Pa. 2000).

[7]/ Indeed, some Connecticut courts have, like Pennsylvania courts, held that there is no separate cause of action for breach of the implied covenant. See Security Ins. Co. v. Trustmark Ins. Co., 2002 WL 32500873, at *4 (D. Conn. Aug. 22, 2002)(no cause of action separable from breach of contract); Lipshie v. George M. Taylor & Son, Inc., 2002 WL 378189, at *4 (Conn. Super. Feb. 21, 2002)(same), rev'd in part on other grounds, 265 Conn. 173, 175 n.3 (2003).

Connecticut at the time of the May 29, 2002 meeting. Second, he contends that the draft separation agreement indicated that TWH had offices in Connecticut and that it acknowledged that Chardavoyne lived in Connecticut.

Both of Chardavoyne's claims are without merit. First, a review of Chardavoyne's actual deposition testimony and business card, as opposed to his counsel's characterization of the testimony, confirms that Chardavoyne stopped working in Connecticut on January 4, 2002, as the office moved from Stamford to New Jersey. (Defs.' Ex. 7, Pl.'s Depo. Tr. 56-57, 90; Defs.' Ex. 18, Pl.'s Business Card).

Second, the language in the draft separation agreement does not contradict Chardavoyne's testimony that after January 4, 2002 his office was in New Jersey. Chardavoyne has not cited any authority that allows him to assert a claim under the Connecticut Wage Act as a result of his residing in Connecticut while he was working in New Jersey. Nor has he ever demonstrated how he is entitled to rely on a Connecticut statute in the face of the Pennsylvania choice of law provision in § 24 of the Employment Agreement. Accordingly, on reconsideration, the Court should enter summary judgment on Counts Three and Four.

## IX.  THE PLAINTIFF'S CONVERSION CLAIM FAILS AS A MATTER OF LAW

At the outset, Chardavoyne's opposition ignores the defendants' pending motion to amend their Answer to deny the allegations related to the conversion claim. Beyond that, Chardavoyne relies on a party's right to plead causes of action in the alternative. (Pl.'s Mem. at 16-17)

Chardavoyne's argument is misplaced. The fact that a party may plead claims in the alternative does not immunize those claims from substantive review. As demonstrated in the defendants' previous briefs, Chardavoyne's conversion claim is based on an alleged entitlement

9

to 872 shares of RWE AG stock under a March 27, 2002 Award Notice.[8] A review of that notice, (Defs.' Ex. 15), reveals that it was issued by Thames Water Plc. Chardavoyne has not identified any evidence showing that either TWH or TWNA had control over the stock. Moreover, Chardavoyne has not established that the withholding of the stock was unauthorized. Thus, neither TWH nor TWNA can be held liable for not awarding the stock. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). As such, the conversion claim fails as a matter of law. Id.

## X.  THE PLAINTIFF'S LACK OF AUTHORITY CLAIM IS WITHOUT MERIT

As indicated in the defendants' opening memorandum, they will address the issues of authority and express and implied ratification in the trial memorandum and their Rule 50(a) motion. However, at this stage, they note that the First Count does not assert a claim for breach of the Employment Agreement based upon either: (a) an alleged lack of authority or (b) an alleged breach of the defendants' bylaws. (Second Am. Compl., First Count, ¶¶ 34-35) As such, if the Court rules in the defendants' favor on this motion for reconsideration, it can enter a full judgment in favor of the defendants.

If the Court does not enter a judgment in favor of the defendants, it should require Chardavoyne to file a motion to amend his complaint to allege the claims he intends to assert before a jury. The defendants would then submit an opposition to such a motion. At a minimum, the defendants are entitled to know the actual claims which are being asserted against them prior to the preparation of a trial memorandum and proposed jury instructions and prior to the selection of a jury.

---

[8]  A review of the Second Amended Complaint reveals that the conversion count, (Count Five), was not pled in the alternative.

Respectfully submitted,

**THE DEFENDANTS
THAMES WATER HOLDINGS,
INCORPORATED and THAMES
WATER NORTH AMERICA, INC.**

By: _____
Stephen P. Fogerty
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West,
Westport, CT 06880
Tele: (203) 227-2855
Fax: (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson, III
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tele: (860) 522-6103
Fax: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

Their Attorneys

## CERTIFICATION OF SERVICE

      This is to certify that on this 6th day of October, 2006, a copy of the foregoing was caused to be mailed, postpaid to:

Patrick McHugh, Esq.
William M. Tong, Esq.
Finn Dixon & Herling LLP
One Landmark Square, Suite 1400
Stamford, CT 06901-2689

                                                                                                   Ralph W. Johnson, III

888487_1.DOC