UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DAVID CHARDAVOYNE,** : | 3:03cv56(WWE) |
| : | |
| **Plaintiff,** : | |
| **v.** : | |
| : | |
| **THAMES WATER HOLDINGS** : | |
| **INCORPORATED, THAMES WATER** : | |
| **NORTH AMERICA, INC.,** : | |
| : | |
| **Defendants.** : | |

## RULING ON DEFENDANTS' MOTION FOR RECONSIDERATION

      The plaintiff, David Chardavoyne, filed this action against the defendants, Thames Water Holdings and Thames Water North America, alleging breach of his employment contract (count one), breach of implied covenant of good faith and fair dealing (count two), and violations of the Connecticut Wage Act, Connecticut General Statutes §§ 31-72 and 31-76k (counts three and four).

      In a ruling dated July 13, 2006, this Court held that disputed issues of fact precluded summary judgment. Defendants moved for reconsideration of that summary judgment denial. Upon review, the Court adheres to its previous holding that disputed issues of fact preclude summary judgment on plaintiff's core claims of breach of contract and implied covenant of good faith and fair dealing. However, the Court finds that it denied summary judgment with inadequate analysis of some issues, which require further consideration. Accordingly, the Court hereby VACATES its prior

decision, and herewith considers together the arguments presented in the motions for summary judgment and reconsideration.

## BACKGROUND

On summary judgment, the parties submitted statements of fact in compliance with Local Rule of Procedure 56, affidavits and evidentiary submissions. The following factual background is reflected in these materials and the pleadings.

At the times relevant to this action, plaintiff David Chardavoyne was a Connecticut resident.

Defendant Thames Water Holdings ("TWH" or "The Company") is a corporation organized and existing under Delaware law with its principal place of business in New Jersey. Thames Water North America ("TWNA"), a Delaware corporation with its principal place of business in New Jersey, is an operating subsidiary of TWH. These defendants were subsidiaries of Thames Water Plc ("The Parent Company"), which was until November 2000, a publicly held company engaged primarily in the water products and services business in the United Kingdom.

At the time relevant to this action, William Alexander was the Chief Executive of Thames Water Plc; Mathew Huckin was the Director for Human Resources for the Americas Region of Thames Water Plc; and James McGivern was the Chairman of TWNA's board of directors.

According to the bylaws of TWH, a director could be removed at any time by the majority vote of the directors. Similarly, the bylaws of TWNA provided that a director could be removed upon a majority vote of shareholders entitled to vote for the election of such director.

In January 1999, plaintiff signed a written employment contract providing for the terms of his employment as President of TWH, and Alexander executed the Agreement on behalf of Thames Water Plc.  The agreement identifies the contracting parties as TWH and plaintiff.

Under the section heading, "Appointment and Duties," the agreement set forth, <u>inter</u> <u>alia</u>, that plaintiff "shall serve the Company as President, US within Thames Water Holdings Plc with all attendant responsibilities, duties and authority, or in such other appointment as the Chief Executive may from time to time direct . . ."; and "shall exercise such powers and perform such duties in relation to the business of the Parent Company as may from time to time be vested in or assigned to him by his Line Manager [McGivern] and shall in all respects comply with reasonable directions given by or under the authority of his Line Manager."

The contract also contained paragraph 14 Non-Attendance, which provided that the Chief Executive Alexander:

> may at any time during the term of the Executive's employment hereunder elect not to provide work for the Executive to do and/or require the Executive not to attend at the premises of any Group Company and no such event shall constitute a repudiation of this Agreement or dismissal of the Executive whether constructive or otherwise.

The Agreement set the terms of plaintiff's salary, provision of benefits, use of the company car, and vacation.  Significant to this dispute, the contract contained paragraph 11, which reads in part as follows:

> Save as provided for in Clauses 12.1, 12.2 and 12.3 below, the Executive's employment hereunder shall continue subject to the terms of this Agreement until terminated

3

> (a) by the Company giving to the Executive not less than twelve months' written notice expiring at any time; or
>
> (b) by the Executive giving not less than six months' written notice expiring at any time."[1]

The Agreement also contained a choice of law provision favoring Pennsylvania law.

From 1999 through December 2001, defendants maintained offices in Stamford, Connecticut.

In May 2002, McGivern and Huckin requested to meet with plaintiff at the defendants' New Jersey office. At that meeting, Huckin gave plaintiff an envelope containing a letter, notifying plaintiff that "with immediate effect," his services were no longer required by the company. A draft of a written separation agreement accompanied the letter.

Plaintiff informed defendants that the draft agreement was not acceptable in the form handed to him, and that he did not consider the letter to be advance notice of termination in compliance with the contract terms.

In a letter dated June 10, 2002, defendants' counsel Gerald Richardson wrote plaintiff's counsel:

> The Agreement . . . allows the Company to provide no work to Mr. Chardavoyne and to require him to stay away from its premises in its non-attendance provisions. Assuming the absence of a separation

---

[1] The contract provided for exceptions to the notice requirement including circumstances where plaintiff declares bankruptcy, becomes incapacitated, is convicted of a criminal offense, commits an act of dishonesty, breaches his employment obligations, fails in his duties, or acts in a manner that would bring Thames Water Plc into disrepute. The employment agreement was to terminate automatically on plaintiff reaching 65 years of age.

agreement, then the Company began its exercising of its rights pursuant to the Agreement's non-attendance provisions effective May 29, 2002. On that date, the Company clearly communicated its elimination of Mr. Chardavoyne's job, which left him with no duties to perform. In addition, it told him of its expectation for him to remove his personal belongings from the Company's premises and to return all of the company's property in his possession or under his control.

Defendants ceased payment of plaintiff's wages for services after June 6, 2003. Defendants also stopped making payments for his employee benefits after June 30, 2003.

On December 10, 2004, plaintiff tendered to Alexander a letter resigning from all positions held within Thames Water Plc.

On December 8, 2005, defendants' board of directors and shareholders voted to approve the termination of plaintiff as an officer and director of TWH.

## DISCUSSION

A motion for reconsideration may be based solely upon "matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." Such a motion should be granted only where the Court has overlooked facts or precedents which might have "materially influenced" the earlier decision. Park South Tenants Corp. v. 200 Cent. Park South Assocs. L.P., 754 F. Supp. 352, 354 (S.D.N.Y.), aff'd, 941 F.2d 112 (2d Cir. 1991). The movant's burden is made weighty to avoid "wasteful repetition of arguments already briefed, considered and decided." Weissman v. Fruchtman, 124 F.R.D. 559, 560 (S.D.N.Y. 1989).

Since this is a reconsideration of a ruling on summary judgment, the Court recites the standard of review relevant to summary judgment. A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it

is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

**Choice of Law**

The Agreement provides that it "shall be governed and construed in accordance with the laws of the Commonwealth of Pennsylvania."  Despite this choice of law provision, plaintiff argues that Connecticut law should apply to this dispute.  Pursuant to Connecticut law, a contractual choice of law provision will be enforced provided it was made in good faith.  Elgar v. Elgar, 238 Conn. 839, 848 (1996).  In this instance, no evidence suggests a lack of good faith during the contracting period.  Accordingly, the Court will apply Pennsylvania law to plaintiff's contract claims.

Plaintiff argues further that this Court should apply Connecticut law to his non-contractual claims of breach of good faith and fair dealing, conversion and Wage Act violations.[2]  Plaintiff points out that courts within this jurisdiction have held that choice of law provisions providing that the contract is "governed by and construed in accordance with" the laws of a certain state are too narrow to cover non-contractual claims.  See U.S. Fidelity and Guar. Co. v. S.B. Phillips Co., 359 F.Supp.2d 189, 206 (D. Conn. 2005).  Accordingly, the Court will consider Connecticut state precedent relevant to whether Connecticut or Pennsylvania law applies to plaintiff's remaining claims for breach of the implied covenant of good faith, conversion and for breach of the Connecticut Wage Act.

The Connecticut Supreme Court has held that the "nature and extent of tort liability is governed by the place of injury."  O'Connor v. O'Connor, 201 Conn. 632, 636 (1986).  However, courts have not applied this doctrine of lex loci delicti where its application "frustrates the legitimate expectations of the parties and undermines an important policy of this state."  Id. at 637.  The evaluation of which law should apply should be guided by the factors of the "most significant relationship test" listed in the Restatement (Second) Section 145: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the residence, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered.  Svege v. Mercedes Benz Credit

---

[2]Connecticut law provides that a claim for a breach of the implied covenant of good faith and fair dealing sounds in tort.  Buckman v. People Express, Inc., 205 Conn. 166, 170 (1987).

Corp., 182 F.Supp.2d 226, 229 (D.Conn. 2002). These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Consistent with plaintiff's claims, the injury may be construed as the loss by reason of defendants' conduct of the wages and benefits that he reasonably expected to receive under the contract. In this instance, Pennsylvania has weak relationship to plaintiff's claims. At the times relevant to this action, plaintiff was a Connecticut resident and defendant was a Delaware corporation with its principal place of business in New Jersey. Plaintiff worked for defendant in Connecticut and New Jersey. Since plaintiff's claims generally concern the loss of wages and benefits that he expected to receive while residing in Connecticut, the alleged injury may be considered to have occurred in Connecticut. None of the conduct causing plaintiff's injury, including the 2002 meeting with McGivern and Huckin, took place in Pennsylvania. Thus, plaintiff is entitled to the protections afforded by Connecticut tort law rather than that of Pennsylvania.

### Claims Against TWNA

Defendant argues that plaintiff's claims against TWNA must be dismissed because it was not a party to the Agreement. Plaintiff counters that his contractual duties and responsibilities extended to TWNA.

To establish a claim for breach of contract, a party must demonstrate (1) the existence of a contract, (2) a breach of duty imposed by contract; and (3) damages. In re K-Dur Antitrust Litig., 338 F.Supp.2d 517, 548-49 (D.N.J. 2004) (applying Pennsylvania law). It is fundamental contract law that one cannot be liable for breach of contract unless one is a party to that contract. Electron Energy Corp. v. Short, 597

A.2d 175, 178 (Pa. Super. 1991), aff'd, 618 A.2d 395 (Pa. 1993).

As provided in the Agreement, the contractual relationship is between TWH and plaintiff. Accordingly, claims relevant to the breach of duties contained in that contract cannot be maintained against TWNA. The claims of contract, breach of covenant of good faith and fair dealing and Wage Act violations asserted against TWNA will be dismissed.[3]

### Breach of Contract

Plaintiff premises his breach of contract claims against TWH on (1) an alleged failure to conduct his termination in accordance with the terms of the contract and the governing corporate documents; (2) an alleged failure to pay him 872 shares of RWE AG Stock pursuant to the Thames Water/RWE Long Term Incentive Plan; and (3) defendant's conduct after the May 29, 2002 meeting.

Termination Procedure

Defendant argues that summary judgment should enter on plaintiff's breach of contract claim relevant to the efforts to terminate his employment. Defendant's characterization of plaintiff's allegations is restricted to an alleged lack of proper written notice. However, review of the complaint, particularly paragraphs 16 and 29, reveal that plaintiff's claim is susceptible to a broader interpretation: namely, that plaintiff suffered a termination of his position that lacked proper authority and that did not comply with the governing corporate documents. The Court finds that plaintiff's

---

[3] The Court will dismiss the conversion claim for alternate reasons as discussed further in this ruling.

evidence raises a genuine issue of fact relevant to his allegations.  Summary judgment will be denied on this claim.

### Shares of Stock

Plaintiff claims that defendant is liable for breach of contract based on the withholding of 872 shares of RWE AG stock.  Defendant TWH asserts that the award notice was issued by Thames Water Plc and therefore it cannot be liable for plaintiff's failure to receive these shares.

In a notice dated March 27, 2002, plaintiff was notified that he was awarded 872 shares under the Thames Water/RWE Longterm Incentive Plan.  In an October 2002 letter, Mr. Huckin informed plaintiff:

> RWE LTIP – If a manager leaves the Company during the three year deferred period the rights to the shares held in trust are forfeited. However, if the manager leaves due to redundancy (voluntary or compulsory), the Company may exercise its right to release shares to that individual, pro-rated for the number of complete months worked since the share awards were made.  For purposes of this plan only, we are treating your termination as a redundancy, provided you do not resign or otherwise breach your employment agreement on or before the Termination Date.

Section 5.2 of the Agreement states that plaintiff would be "eligible" to receive "bonus payments and conditional rights to shares under any incentive scheme approved" by the Board.  Plaintiff has adduced evidence that raises a genuine issue of fact as to whether plaintiff was entitled to receive the shares and whether TWH prevented plaintiff from receiving such shares.  Summary judgment will also be denied as to this claim.

### Misrepresentations Concerning the Draft Separation Agreement

Plaintiff alleges that false representations by Huckin and McGivern regarding the proposed separation agreement constitute a breach of contract.  However, plaintiff fails

10

to identify which provision of the Agreement was breached by this conduct, or how he sustained damages by way of this alleged breach. Accordingly, the Court will grant summary judgment on this claim.

### Refusal to Allow Chardavoyne to Seek Other Employment

Plaintiff asserts that he was prohibited from seeking competitive employment until May 29, 2004. Plaintiff argues that this "refusal to permit plaintiff to seek meaningful employment is hardly consistent with an intent to terminate him." Again, plaintiff makes no effort to identify which provision of the contract was specifically breached by this alleged conduct. The Court will not allow this allegation to proceed to the jury as a stand-alone breach of contract claim. However, the Court will allow plaintiff to present evidence concerning this conduct in support of his improper termination without authority claim.

### False Accusations and Conduct Prejudicial to Plaintiff's New Position of Employment

Plaintiff alleges that defendant has made false and unfounded accusations that plaintiff was verbally abusive toward employees. Plaintiff asserts that defendant has disparaged him to employees of his new employer and has brought baseless counterclaims of conversion and statutory theft to prejudice plaintiff's new employment. Plaintiff makes no attempt to demonstrate how such allegations can be sustained as a breach of the contract at issue. Summary judgment will be granted on these allegations.

11

<u>Medical and Retirement Benefits</u>

Plaintiff claims that defendant threatened to withhold or terminate prematurely his continuing medical benefits under the Consolidated Budget Reform Act of 1985 ("COBRA") and that he suffered unreasonable delay in his payments pursuant to defendant's Non-Qualified Deferred Compensation plan.

The Court agrees that these contract claims related to his medical and retirement benefits are preempted by ERISA.  <u>See</u> <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 48 (1987) (tortious breach of contract preempted by ERISA); <u>See</u> <u>also</u> <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133, 139-40 (1990) (ERISA preempted wrongful discharge claim where demonstration of parties' liability was dependent upon ERISA plan).  Summary judgment will be granted on these claims.

<u>Failure to Provide Accurate W-2 Reporting</u>

Plaintiff complains that defendant never provided him with an accurate federal income tax W-2 form for 2003.  Since plaintiff fails to identify what duty under the Agreement was breached by this alleged failure, summary judgment will enter on this claim.

**Breach of Implied Covenant of Good Faith and Fair Dealing**

As previously discussed, the Court finds that plaintiff may assert a claim for breach of the implied covenant of good faith and fair dealing.  To recover for breach of the duty of good faith and fair dealing, plaintiff must prove that defendant TWH engaged in bad faith conduct relative to its failure to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties.

See <u>Miller v. Guimares</u>, 78 Conn. App. 760, 772-73 (2003).  Thus, plaintiff cannot proceed with a breach of the implied covenant arising out of breach of contract allegations on which summary judgment is appropriate.  The Court will only allow plaintiff to advance his claims for breach of the implied covenant related to the lack of authority for his alleged termination and the alleged failure to provide him with the requisite stock shares.

### **Wage Act Claims**

Plaintiff advances claims pursuant to the Connecticut Wage Act for unpaid wages after June 6, 2003 and for unpaid benefits after June 30, 2003.  Defendant argues that judgment should enter on plaintiff's Wage Act claims because plaintiff did not work in Connecticut after January 2002.

Plaintiff avers that after May 29, 2002, he continued to work in Connecticut consistent with his contention that he was not properly terminated with respect to the Agreement and corporate governing papers.  In light of this Court's denial of summary judgment on plaintiff's contract claim relevant to his termination, the Court finds that disputed issues of fact also preclude summary judgment on plaintiff's entitlement to recovery under the Wage Act.

### **Conversion**

Plaintiff asserts that defendants TWH and TWNA are liable to him for conversion of the 872 RWE AG stock shares that he never received.

Conversion is the "unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. . . ." <u>Macomber v. Travelers Prop. and Cas. Corp.</u>, 261 Conn. 620, 649 (2002).  In this

instance, the evidence indicates that Thames Water Plc retained possession of the stock shares rather than TWH or TWNA.  Accordingly, the Court will enter summary judgment on plaintiff's conversion claim.

## **CONCLUSION**

For the foregoing reasons, the Motion for Reconsideration [doc. # 107] is GRANTED.  Upon review, the Court VACATES its prior Ruling on Summary Judgment [doc. # 102].  The Motion for Summary Judgment [doc. # 85] is GRANTED in part and DENIED in part.  The Court grants summary judgment on (1) all claims against TWNA; (2) plaintiff's breach of contract claims with the exception of the allegations concerning termination without authority claim and failure to provide stock shares; (3) on plaintiff's breach of the covenant of good faith and fair dealing claim with the exception of allegations concerning termination without authority and the failure to provide the stock shares; and (4) on the conversion claim.  Plaintiff is instructed to amend his complaint consistent with this ruling within 15 days of this ruling's filing date.

Dated this __5th___ day of March, 2007 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior U.S. District Judge