AGREEMENT BETWEEN

THAMES WATER HOLDINGS INC

AND

DAVID E CHARDAVOYNE

## TABLE OF CONTENTS

|  |  | Page No |
|---|---|---|
| 1 | INTERPRETATION | 1 |
| 2 | APPOINTMENT AND DUTIES | 2 |
| 3 | PLACE OF WORK | 2 |
| 4 | HOURS OF WORK | 2 |
| 5 | REMUNERATION AND BENEFITS | 2 |
| 6 | HOLIDAY | 3 |
| 7 | COMPANY CAR | 3 |
| 8 | EXPENSES | 3 |
| 9 | INCAPACITY FOR WORK AND SICK PAY | 3 |
| 10 | MEDICAL EXAMINATION AND REPORT | 4 |
| 11 | NOTICE PERIOD | 4 |
| 12 | TERMINATION OF EMPLOYMENT | 4 |
| 13 | DUTIES ON TERMINATION | 5 |
| 14 | NON-ATTENDANCE | 6 |
| 15 | DISCIPLINE AND GRIEVANCE | 6 |
| 16 | EXCLUSIVE SERVICES AND INTEREST IN SECURITIES | 6 |
| 17 | CONFIDENTIALITY | 7 |
| 18 | MISREPRESENTATION | 7 |
| 19 | RE-ORGANISATION | 7 |
| 20 | OTHER AGREEMENTS | 8 |
| 21 | NOTICES | 8 |
| 22 | RESTRICTIONS | 8 |

| | | |
|---|---|---|
| 23 | SEVERABILITY | 9 |
| 24 | LAW APPLICABLE | 10 |

THIS AGREEMENT is made the 15th day of January 1999 between Thames Water Holdings Inc ("the Company") a Delaware corporation with a business address at 118 South Division Street, Zelienople, PA 16063-1312 USA and David E Chardavoyne (the "Executive"), an individual residing at 27 Coventry Lane, Trumbull, CT 06611, USA.

WHEREBY IT IS AGREED that the Executive shall serve the Company upon the following terms and conditions.

1. INTERPRETATION

    1.1    In this Agreement unless the context otherwise requires the following expressions shall have the following meanings:

           "Parent Company" means Thames Water Plc.

           "The Group" means the Parent Company, all Subsidiaries of the Company, and all other companies whose equity share capital is owned as to 20 per cent or more cent by the Parent Company or any of its Subsidiaries

           "Group Company" means any company within the Group.

           "The Board" means the Board of Directors for the time being of the Parent Company.

           "The Chairman" means Sir Robert Clarke or any other person or persons jointly holding such office of the Parent Company from time to time and includes any person or persons exercising substantially the functions of the Chairman of the Parent Company.

           "Chief Executive" means Mr W J Alexander or any other person or persons jointly holding such office of the Parent Company from time to time and includes any person or persons exercising substantially the functions of a Chief Executive of the Parent Company.

           "Company Secretary" means Mr D Badcock or any other person whom the Board may from time to time appoint to act as Company Secretary.

           "Personnel Director" means Mr A Cooper or any other person whom the Parent Company may from time to time appoint to act as Personnel Director.

           "Line Manager" means Mr J McGivern or any other person or persons whom the Parent Company may from time to time appoint to act as the Executive's Line Manager.

    1.2    Unless the context otherwise requires words in the singular include the plural and vice versa, and a reference to a person includes a reference to a body corporate and to an unincorporated body or person and vice versa.

1



1.3 The headings in this Agreement are for convenience only and shall have no legal effect.

2. APPOINTMENT AND DUTIES

2.1 The appointment shall be effective from 15 February and the Company shall employ the Executive and the Executive shall serve the Company as President, US within Thames Water Plc with all attendant responsibilities, duties and authority, or in such other appointment as the Chief Executive may from time to time direct.

2.2 The Executive warrants that by virtue of entering into this Agreement he will not be in breach of any express or implied terms of any contract with or of any other obligation to any third party binding upon him.

2.3 The Executive undertakes well and faithfully to serve the Parent Company and the Group and use his best endeavours to promote, develop and extend the business and interests of the Parent Company and the Group.

2.4 During his employment hereunder the Executive shall exercise such powers and perform such duties in relation to the business of the Parent Company as may from time to time be vested in or assigned to him by his Line Manager and shall in all respects comply with reasonable directions given by or under the authority of his Line Manager.

2.5 The Executive shall (without further remuneration) if and for so long as the Chief Executive requires, carry out duties on behalf of any other Group Company and shall carry out such duties as if they were duties to be performed by him on behalf of the Parent Company.

3. PLACE OF WORK

The Executive's place of work shall be Stamford, CT or such other place in the USA as the Chief Executive may reasonably require. The Executive may be required to travel and work both inside and outside the USA in the proper performance of his duties under this Agreement.

4. HOURS OF WORK

The Executive shall work such hours as are necessary for the proper performance of his duties hereunder. During that time he shall devote the whole of his time, attention and abilities to the affairs of the Company and shall not be entitled to receive any additional remuneration for work performed outside normal business hours.

5. REMUNERATION AND BENEFITS

5.1 For his services hereunder the Executive shall be paid a salary of $200,000 which shall accrue from day to day and be payable on a bi-weekly basis save that a pro rata payment shall be made in respect of any period of employment at the beginning or end

2


of his employment hereunder. Such salary shall be subject to periodical review at the Board's discretion.

5.2 The Executive will also be eligible for bonus payments and conditional rights to shares under any incentive scheme approved from time to time for this purpose by the Board.

5.3 The Company shall during the continuance of the Executive's employment hereunder contribute on the Executive's behalf to its health, dental, life and long term disability insurance schemes from time to time in force. The Executive will also be entitled to participate in the Company's retirement benefits plan.

5.4 The Company reserves the right to change, modify or cancel at its sole discretion from time to time any or all of said benefits.

## 6. HOLIDAY

6.1 The executive shall be entitled to 20 days holiday (in addition to 11 USA statutory holidays) in each holiday year at full salary, to be taken at such time or times as may be approved in advance by his Line Manager. The holiday year runs from 1st January to 31st December.

## 7. COMPANY CAR

The Company shall, during the term of this Agreement, provide the Executive with a car for his use in the business of the Company or any Group Company and shall bear all standing costs relating thereto including the cost of insuring, testing, taxing, repairing and maintaining the same and shall reimburse the Executive's running expenses of the car in accordance with the Company's rules and procedures for the time being in force. The cost of all fuel will be met by the Company, including reasonable private mileage in the USA.

## 8. EXPENSES

The Company shall repay to the Executive all reasonable travelling and other expenses properly incurred by him in the performance of his duties hereunder in accordance with the Company's rules and procedures for the time being in force.

## 9. INCAPACITY FOR WORK AND SICK PAY

9.1 If the Executive is absent as a result of sickness or injury he will comply with the Company's requirements for the time being in force as to notification of absence.

9.2 Providing that the Executive has completed six months' continuous service with the Company, the Executive will, subject to Clause 12.1 below, be entitled to be paid a salary of an amount which taken together with any Company long term disability, social security or other state benefits payable to him shall equal his normal salary under this Agreement during any periods of absence from work as a result of sickness



or injury up to a maximum of six months in aggregate in any twelve consecutive months, and to payment of a salary of an amount which together with such other benefits specified above shall be equal to half his normal salary under this Agreement during any further period of such absence up to a maximum of a further six months.

9.3  In the event that the Executive has completed less than six months' continuous service with the Company, the period for which full salary (adjusted for social security or other state benefits as provided in Clause 9.2 above) will be payable will be one month and thereafter the Executive will not be entitled to any further payment of salary.

## 10  MEDICAL EXAMINATION AND REPORT

The Executive shall at any time if directed to do so by his Line Manager submit to a medical examination by a qualified medical practitioner of the Company's choice and at its expense on the understanding that thereafter the said medical practitioner will prepare a written report of the results of any such examination and send the same to the Personnel Director and to the Executive.

## 11  NOTICE PERIOD

11.1  Save as provided for in Clauses 12.1, 12.2 and 12.3 below, the Executive's employment hereunder shall continue subject to the terms of this Agreement until terminated

(a)  by the Company giving to the Executive not less than twelve months' written notice expiring at any time; or

(b)  by the Executive giving not less than six months' written notice expiring at any time.

## 12.  TERMINATION OF EMPLOYMENT

12.1  If the Executive shall:

(a)  be or become bankrupt or materially compound with his creditors; or

(b)  be incapacitated from performing his duties for any continuous period of 180 calendar days or for a total period exceeding 125 working days in any period of twelve months;

then the Parent Company shall be entitled, within three months of the Parent Company becoming aware of one of the events specified at Clauses 12 above, to determine his employment under this Agreement on three months' notice whereupon the Executive shall have no claim against the Parent Company for damages or otherwise by reason of such determination. If his employment is determined under