requiring the Releasor's disclosure of Confidential Information, then the Releasor shall cooperate with and assist the Company in that challenge.

    3.16    In the period of twelve months immediately following the termination of his employment with the Company, the Releasor shall avoid any one or more of soliciting, recruiting, or encouraging any of the Company's employees either to terminate his or her employment or to seek employment with an employer other than the Company. This restriction shall only prohibit the Releasor from any one or more of such soliciting, recruiting, or encouraging those of the Company's employees who began their employment before the Releasor's employment with the Company ended.

    3.17    The Releasor recognizes that the limitations imposed upon the Releasor in this agreement's §3.07, §3.08, and §3.10 through §3.16 involve reasonable restrictions. The Releasor further acknowledges that none of them either alone or together will prevent the Releasor from earning a livelihood during the twelve months immediately after the end of the Releasor's employment with the Company.

    3.18    The Parties, moreover, intend to restrict The Releasor's conduct consistently with the provisions of §3.07, §3.08, and §3.10 through §3.16. If, however, a court construes any one or more of such provisions to state unreasonable restrictions, then they request the court to revise such restrictions to make them reasonable and enforceable to the maximum extent permissible.

    3.19    If the Releasor has not already done so, then the Releasor shall return all of the Company's business property either in the Releasor's possession or under his control to the Company by May 31, 2002. Such property includes, without limitation, any one or more of the Company's corporate credit cards, keys to any one or more of the Company's facilities, offices, office furniture, or filing cabinets, the Company's equipment that it provided to the Releasor (such as and without limitation, any one or more of telephones, pagers, facsimile machines, or computers), documents that the Releasor prepared in the course of his performance of his job duties with the Company, and any either documents or other media capable of storing information, or both, that contain Confidential Information.

    3.20    The Company provided a vehicle to the Releasor for business-related his use during his employment. That vehicle has the following vehicle identification number: 1LNHM87A62Y672200. The Releasor may continue his use of that vehicle until July 31, 2002. He shall then return that vehicle to the Company in clean and good operating condition. Through the remainder of the time that the Releasor uses the vehicle provided to him by the Company, the Releasor shall pay the costs of all fuel, oil, liability insurance, maintenance, and repairs. The Releasor shall submit any expenses he incurred related to his business use of this vehicle before May 30, 2002 to the Company for reimbursement by May 31, 2002. The Company shall reimburse the Releasor for those expenses consistent with its policies regarding the reimbursement of business-related expenses by June 15, 2002.

    3.21    The Parties' rights and duties established by this agreement shall take effect on the eighth day after the Releasor's full execution of this agreement without having previously

### 4. Remedies for Breach of the Agreement.

4.01   If the Releasor breaches or threatens to breach his obligations under this agreement, then the Company shall experience irreparable harm for which money damages alone will not provide an adequate remedy. Accordingly, the Company shall have the right to equitable relief in addition to legal relief to remedy any such breach or threatened breach. By seeking a restraining order or injunction first, however, the Company shall not make an election of remedies and may pursue an action at law, either simultaneously or later.

4.02   Because of the difficulty in determining the amount of any damages that the breach of any one or more of this agreement's §3.06, §3.07, §3.08, §3.10, §3.11, §3.12, §3.13, §3.14, §3.15, or §3.16 would cause, the Parties establish a sum equal to the $50,000 as liquidated damages for any such breach of the agreement. The Parties have fixed the liquidated damages as a good faith estimate of the minimum actual damages that any such breach would produce and not as a penalty. Such liquidated damages shall be due and payable without demand beginning on the date of any such breach.

4.03   In any enforcement action, the losing Party shall pay the prevailing Party's attorneys' fees and costs incurred to enforce this agreement. The court shall specifically determine the prevailing Party in any such enforcement action. The court shall declare any Party that either obtains all of the relief that it or he sought or that defeats the other Party's enforcement action entirely to be the prevailing Party. In any case where the court awards some relief to both Parties, then it shall declare the Party that obtained more relief than the other Party, the prevailing Party. If both Parties obtained either substantially the same amount of or no relief in the enforcement action, then the court shall find no prevailing Party.

### 5. Miscellaneous.

5.01   This agreement includes all of the Releasor's Claims against the Company concerning either the Releasor's employment with the Company or such employment's termination, or both. It covers all of such Claims, whether they are known or unknown and whether they are ascertainable at the time of its execution. This agreement reflects the Parties' entire agreement regarding the termination of the Releasor's employment with the Company, and it merges all agreements, representations, and understandings between the Parties, whether oral or written, or both.

5.02   The laws of the State of New Jersey shall govern the interpretation of this agreement, except for its laws regarding conflict of law.

5.03   If a Party pursues either legal or equitable relief, or both, to resolve a dispute between the Parties arising under or relating to this agreement, that Party shall bring such an action only in the United States District Court for the District of New Jersey, Camden Vicinage.

5.04   The Parties shall give all notices, whether voluntary or mandatory, in writing. The

Releasor shall address any notices to the Company to Matthew Huckin, or his successor at the following address:

>Mr. Matthew Huckin
>Human Resources Director
>Thames Water Americas
>1101 Laurel Oak Road
>Suite 120
>Voorhees, New Jersey 08043

Either Party may serve a notice to the other Party either personally upon a signed receipt or by certified mail with return receipt requested. A Party sending a notice by certified mail with return receipt requested shall also send a copy of that notice to the other Party by regular first class mail. The Parties may also give notices by facsimile, if available. A Party may change its address for the receipt of notices by giving the other Party a notice of a change of address for notices. One Party's notice to the other Party shall take effect upon its reception by the other Party, except for notices sent by mail. The earlier of the recipient's actual receipt of the notice or the date occurring three calendar days after the notice's postmark shall establish the notice's date of receipt.

    5.05    A photocopy of this fully executed agreement shall have the same effect and validity as an original.

    5.06    The following principles shall control the interpretation of this agreement. The singular shall also mean the plural. Similarly, the plural shall include the singular. Pronouns of either or no gender shall also mean the masculine, feminine, and neuter.

    5.07    The Parties accept each provision of this agreement. Any invalid provision shall not invalidate the remaining provisions. If, however, any court, at the Releasor's request, finds either paragraph 3.01 or paragraph 3.02, or both, to be void or otherwise invalid, then the Company shall have the right to rescind this agreement. To do so, it shall give the Releasor a notice of its rescission of the agreement. Upon any such rescission of this agreement, the Releasor shall immediately repay the entire Settlement Sum to the Company without any demand for such payment. Interest shall accrue, furthermore, at the highest legal rate from the date of any such rescission.

IN WITNESS OF THIS AGREEMENT, the Parties have executed it below.

COMPANY:

By_____
     Matthew Huckin

Dated: May __, 2002

RELEASOR:

_____
David E. Chardavoyne

Dated: May __, 2002

## ACKNOWLEDGMENTS

STATE OF NEW JERSEY            )
                               ) ss.
COUNTY OF CAMDEN               )

    On this ____ day of May 2002, Matthew Huckin appeared personally before me. I know him to be an authorized representative of the Company. After being duly sworn on his oath by me, he acknowledged that he had read the preceding separation agreement. He further declared that he executed it voluntarily and on behalf of Thames Water Holdings Incorporated, Thames Water Americas, Thames Water Plc, and RWE AG as their authorized agent for the purposes stated in the agreement.

    IN TESTIMONY OF THESE ACTS, I have signed my name and affixed my official seal to this document on the date and in the county and state written above.

_____
Notary Public

My Commission Expires:


STATE OF CONNECTICUT           )
                               ) ss.
COUNTY OF FAIRFIELD            )

    On this ____ day of May 2002, David E. Chardavoyne, who is known to me, personally appeared before me. After being duly sworn on his oath, he acknowledged that he had read the preceding separation agreement and understood it. He further declared that he executed it voluntarily for the purposes stated in the agreement.

    IN TESTIMONY OF THESE ACTS, I have signed my name and affixed my official seal to this document on the date and in the city and state written above.

_____
Notary Public

My Commission Expires: