UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID E. CHARDAVOYNE, ) | |
| ) | CASE NUMBER: |
| Plaintiff, ) | 3:03CV56 (WWE) |
| ) | |
| vs. ) | |
| ) | |
| THAMES WATER HOLDINGS ) | |
| INCORPORATED, ) | |
| ) | |
| Defendants. ) | May 29, 2007 |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION TO STRIKE**

Plaintiff David E. Chardavoyne ("Chardavoyne" or "plaintiff") respectfully submits this memorandum of law in opposition to defendant Thames Water Holdings Incorporated's ("Thames Holdings" or "defendant") motion to strike plaintiff's third amended complaint dated April 24, 2007 (the "motion to strike").

**STATEMENT IN OPPOSITION**

Acting in accordance with this Court's March 5, 2007 Ruling on Defendants' Motion for Reconsideration (the "Ruling"), plaintiff filed a third amended complaint on March 20, 2007. Because each of plaintiff's amended allegations are consistent with the Ruling, defendant's motion to strike should be denied.

Defendant's attack on the third amended complaint falls subject to three categories of allegations, each of which was expressly permitted by the Ruling: (i) allegations concerning the notice provision (the "Notice Provision Allegations"); (ii) allegations concerning bad faith conduct (the "Bad Faith Conduct Allegations"); and (iii) allegations concerning plaintiff's statutory claim for wages under the Connecticut General Statutes (the "Wage Act Allegations").

{00349909; 1; 1103-2}

*The Notice Provision Allegations.* In the Ruling, the Court granted summary judgment on "plaintiff's breach of contract claims *with the exception* of the allegations concerning termination without authority claim and failure to provide stock shares." Ruling at 14 (emphasis added). The Court interpreted broadly plaintiff's breach of contract claims to extend beyond an alleged lack of proper written notice. It found that such allegations, coupled with evidence of a lack of authority and noncompliance with governing corporate documents, raised genuine issues of material fact. Ruling at 9. As a result, the Notice Provision Allegations contained in paragraphs 11, 16, 16(a), 16(h), 19, 20, 22, 25(b), 32(a) and 38 are proper and consistent with the Ruling.[1]

---

[1] Paragraph 11 of the Third Amended Complaint states: "Section 11.1 of the Employment Agreement states: '[s]ave as provided for in Clauses 12.1, 12.2 and 12.3 below, the Executive's [i.e., Chardavoyne's] employment hereunder shall continue subject to the terms of this Agreement until terminated: (a) by the Company [Thames Water Holdings] giving to the Executive *not less than twelve months' written notice* expiring at any time; or (b) by the Executive giving not less than six months' written notice expiring at any time.'" [Emphasis added]. Third Amended Complaint at ¶ 11.

Paragraph 16 of the Third Amended Complaint states: "The Letter is not a notice of termination, however, as required under Section 11.1 of the Employment Agreement, for the following reasons, among others:

    a.    The Letter purported to "confirm" that Chardavoyne's services were no longer required "with immediate effect". This language violates the Employment Agreement's requirement that any termination must include "not less than twelve months written notice." *See* Employment Agreement, Ex. A, at ¶ 11.1. *Id.* at ¶ 16(a).

    h.    Further, the Letter and the Draft Separation Agreement are not notice of termination pursuant to Section 12.3 of the Employment Agreement, which provides that Chardavoyne's employment could only be automatically terminated 'with immediate effect' by his having reached age 65. Chardavoyne's date of birth is March 12, 1948." *Id.* at ¶ 16(h).

Paragraph 19 of the Third Amended Complaint states: "Chardavoyne has consistently and repeatedly advised Thames Water Holdings that the Letter is not a notice of termination, as required by Section 11.1 of the Employment Agreement, and of the reasons therefor." *Id.* at ¶ 19.

Paragraph 20 of the Third Amended Complaint states: "Chardavoyne also advised Thames Water Holdings and Thames Water North America, by letter dated July 12, 2002, that the Letter and Draft Separation Agreement were ineffective as notice of termination because these documents did not comply with the requirements of the Employment Agreement and had not been authorized." *Id.* at ¶ 20.

Paragraph 22 of the Third Amended Complaint states: "Defendant has taken the position that the Letter and Draft Separation Agreement were notice of termination under Section 11.1 of the Employment Agreement. Defendant has continued to maintain that position without ever providing any satisfactory explanation for how the Letter and Draft

Notwithstanding such clear direction that the allegations regarding notice under the employment agreement properly remain at issue in this case, defendant contests the Notice Provision Allegations set forth at paragraphs 11, 16, 16(a), 16(h), 19, 20, 22, 25(b), 32(a) and 38 of the third amended complaint. The problem with defendant's position is that all such allegations reference the notice provision as expressly permitted by the Ruling.

*The Bad Faith Conduct Allegations.* All bad faith allegations concerning breach of the implied covenant of good faith and fair dealing, *i.e.*, lack of proper notice, lack of authority and noncompliance with governing corporate documents, are allowed by the Ruling. Ruling at 13. The Ruling further permits plaintiff to present evidence concerning defendant's bad faith conduct prohibiting plaintiff from seeking competitive employment. As a result, the Bad Faith Conduct

---

Separation Agreement could fairly be read as a notice of termination under Section 11.1 of the Employment Agreement." *Id.* at ¶ 22.

Paragraph 25(b) of the Third Amended Complaint states: "Since Chardavoyne's May 29, 2002 meeting with James McGivern and Matthew Huckin, Thames Water Holdings has repeatedly deprived and has attempted to deprive Chardavoyne of his rights under the Employment Agreement, including, among other things:

    b.    failing and continuing to refuse to provide 'written notice' of termination as required by the Employment Agreement and Section 11.1. therein." *Id.* at ¶ 25(b).

Paragraph 32(a) of the Third Amended Complaint states: "Instead, as set forth above Defendant breached the Employment Agreement, which has included, without limitation, the following:

    a.    Defendant and certain employees within the Thames Water Enterprise sought to compel or pressure Chardavoyne's resignation with "immediate effect," in violation of the Employment Agreement's requirement that any termination must include "not less than twelve months written notice." *Id.* at ¶ 32(a).

Paragraph 38 of the Third Amended Complaint states: "Instead, Defendant turned against Chardavoyne in bad faith, not only to avoid the Employment Agreement but to injure him. As set forth above and in particular in Paragraph 25, Defendant purposely set out to harm and disadvantage Chardavoyne by seeking to compel or pressure his resignation with "immediate effect" in violation of the Employment Agreement . . . ." *Id.* at ¶ 38.

{00349909; 1; 1103-2}

Allegations contained in the paragraphs above, and paragraphs 25(c) and 38 are proper and consistent with the Ruling.[2]

*The Wage Act Allegations.* The Court denied summary judgment to defendant on plaintiff's claims under the Connecticut Wage Act and specifically stated that plaintiff advances claims "for unpaid wages after June 6, 2003 and for unpaid benefits after June 30, 2003." Ruling at 13. As a result, the allegations concerning (i) payments due for company car-related expenses under Section 7 of the Employment Agreement and (ii) defendant's bad faith conduct relating to the payment of wages and other compensation plaintiff is entitled to under the Employment Agreement, all as alleged in paragraphs 12, 32(d) and 38, are proper and consistent with the Ruling.[3]

---

[2] Paragraph 25(c) of the Third Amended Complaint states: "Since Chardavoyne's May 29, 2002 meeting with James McGivern and Matthew Huckin, Thames Water Holdings has repeatedly deprived and has attempted to deprive Chardavoyne of his rights under the Employment Agreement, including, among other things:

  c.  contending that Defendant has given Chardavoyne notice of termination while simultaneously threatening to cut off his rights under the Employment Agreement if he sought employment elsewhere." *Id.* at ¶ 25(c).

Paragraph 38 of the Third Amended Complaint states: "Instead, Defendant turned against Chardavoyne in bad faith, not only to avoid the Employment Agreement but to injure him. As set forth above and in particular in Paragraph 25, Defendant purposely set out to harm and disadvantage Chardavoyne by . . . refusing to allow him to seek employment." *Id.* at ¶ 38.

[3] Paragraph 12 of the Third Amended Complaint states: "Section 5.3 of the Employment Agreement provides: 'The Company shall during the continuance of the Executive's employment hereunder contribute on the Executive's behalf to its health, dental, life and long term disability insurance schemes from time to time in force. The Executive will also be entitled to participate in the Company's retirement benefits plan.'" *Id.* at ¶ 12.

Paragraph 32(d) of the Third Amended Complaint states: "Instead, as set forth above Defendant breached the Employment Agreement, which has included, without limitation, the following:

  d.  Defendant owes and has not paid Chardavoyne all payments due for company car-related expenses pursuant to Section 7 of the Employment Agreement. Defendant also demanded in violation of the Employment Agreement that Chardavoyne deliver the company car to New Jersey. The company car has now been retrieved by Defendant and returned to it." *Id.* at ¶ 32(d).

Paragraph 38 of the Third Amended Complaint states: "Instead, Defendant turned against Chardavoyne in bad faith, not only to avoid the Employment Agreement but to injure him. As set forth above and in particular in Paragraph 25, Defendant purposely set out to harm and disadvantage Chardavoyne by . . . refusing to pay him compensation,

Chardavoyne's pleading of the Notice Provision Allegations, the Bad Faith Conduct Allegations and the Wage Act Allegations are proper and consistent with the Ruling and, therefore, the motion to strike should be denied.

### ARGUMENT

The motion to strike should be denied because Chardavoyne's third amended complaint pleads allegations entirely consistent with and in conformity to the Ruling. "The decision to strike a pleading rests in the court's discretion." *Pavent v. Rand-Whitney*, No. 3:96CV01977, 1997 WL 527367, at *2 (D. Conn. July 16, 1997). "However, because federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike on any of these grounds are not favored, often being considered *purely cosmetic or 'time wasters,'* there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they should be denied *unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy* and may cause some form of significant prejudice to one or more of the parties to the action." *Id.* (emphasis added). Federal Rule of Civil Procedure 12(f) states, in pertinent part, that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). A judge should err on the side of denying a FED. R. CIV. P. 12(f) motion if there is any doubt concerning the relevancy of the allegations. *Schramm v. Krischell*, 84 F.R.D. 294, 299 (D. Conn. 1979). "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be

---

and RWE AG stock which he has earned and to which he is entitled [and] threatening to withhold and cut off compensation, to which he has a right . . . ." *Id.* at ¶ 38.

admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976); *see also Saye v. Old Hill Partners, Inc.*, No. 3:03CV01071(DJS), 2007 WL 749678, at *24 (D. Conn. Mar. 12, 2007) ("Motions to strike are a severe remedy, and as such are generally disfavored."); *Etienne v. Wal-Mart Stores, Inc.*, 197 F.R.D. 217, 219 (D. Conn. 2000) ("Motions to strike ... are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation."). "[T]he courts should not tamper with the pleadings unless there is a *strong reason* for so doing." 5C CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1382 (3d ed. 2004 & Supp. 2007) (emphasis added). Neither the third amended complaint nor any of the challenged allegations should be stricken because the allegations are relevant, material and pertinent to the subject matter of the controversy, and, further, the court denied summary judgment on those claims.

I.  **THE NOTICE PROVISION ALLEGATIONS CONFORM EXPLICITLY WITH THE TERMS AND INSTRUCTIONS OF THE RULING**

Defendant wrongly states that the Notice Provision Allegations do not comply with the Ruling. The Court granted summary judgment on "plaintiff's breach of contract claims *with the exception* of the allegations concerning termination without authority claim and failure to provide stock shares." Ruling at 14 (emphasis added). In the Ruling, the court stated:

> Defendant argues that summary judgment should enter on plaintiff's breach of contract claim relevant to the efforts to terminate his employment. *Defendant's characterization of plaintiff's allegations is restricted to an alleged lack of proper written notice. However, review of the complaint, particularly paragraphs 16 and 29, reveals that plaintiff's claim is susceptible to a broader interpretation*: namely, that plaintiff suffered a termination of his position that lacked proper authority and that did not comply with the governing corporate documents.

Ruling at 9 (emphasis added). The Court already rejected defendant's previous argument that plaintiff's claims are narrowly restricted "to an alleged lack of proper written notice." *Id.* In

- 6 -

fact, the Court coupled the Notice Provision Allegations with the evidence of a lack of authority and noncompliance with governing corporate documents to find genuine issues of material fact necessitating denial of summary judgment. Therefore, the Notice Provision Allegations are relevant, material and pertinent, and, therefore, are properly included in the third amended complaint.

II.     **THE BAD FAITH CONDUCT ALLEGATIONS CONFORM EXPLICITLY WITH THE TERMS AND INSTRUCTIONS OF THE RULING**

Defendant wrongly states that the Bad Faith Allegations do not comply with the Ruling. The Court granted summary judgment "on plaintiff's breach of the covenant of good faith and fair dealing claim *with the exception* of allegations concerning termination without authority and the failure to provide the stock shares." Ruling at 14 (emphasis added). As a result, all bad faith concerning the termination without authority and the failure to provide stock shares to plaintiff are relevant, material and pertinent to the subject matter of this controversy. *See Miller v. Guimares*, 78 Conn. App. 760, 772-73 (2003). The Court further allowed plaintiff to present evidence concerning defendant's conduct in refusing to allow plaintiff to seek other employment in support of the improper termination without authority claim. Ruling at 11. The Ruling is clear and unambiguous: all bad faith conduct allegations relative to the Notice Provision Allegations, the alleged failure to provide him with the requisite stock shares and defendant's refusal to allow plaintiff to seek other employment are allowed by the black letter of the Ruling. Therefore, the Bad Faith Conduct Allegations are relevant, material and pertinent, and, therefore, are properly included in the third amended complaint.

### III. THE WAGE ACT ALLEGATIONS CONFORM EXPLICITLY WITH THE TERMS AND INSTRUCTIONS OF THE RULING

Defendant wrongly states that the Wage Act Allegations do not comply with the Ruling. The Court denied summary judgment on plaintiff's Wage Act Allegations and stated that:

> Plaintiff advances claims pursuant to the Connecticut Wage Act *for unpaid wages after June 6, 2003 and for unpaid benefits after June 30, 2003* . . . In light of this Court's denial of summary judgment on plaintiff's contract claim relevant to his termination, the Court finds that disputed issues of fact also preclude summary judgment on plaintiff's entitlement to recovery under the Wage Act.

Ruling at 13 (emphasis added). Plaintiff's allegations concerning his entitlement to compensation under the Connecticut Wage Act and any bad faith in withholding such compensation and benefits are relevant, material and pertinent to the subject matter of the controversy. *See Sansone v. Clifford*, 219 Conn. 217, 229, 592 A.2d 931 (1991) ("[I]n an action for wages brought pursuant to General Statutes § 31-72, awards for double damages and attorneys fees are inappropriate in the absence of the trial court's finding of 'bad faith, arbitrariness or unreasonableness.'"). Plaintiff has a contract and statutory right to wages and other compensation, all as set forth in the Wage Act Allegations. Similarly, the Connecticut Wage Act imposes penalties upon employers who fail to pay those wages and benefits in bad faith. CONN. GEN. STAT. § 31-70 *et seq.*; *see id.* In addition to the duties imposed upon defendant under the employment agreement and § 31-72, allegations of bad faith concerning the Wage Act Allegations are most assuredly relevant, material and pertinent (such allegations are a necessary prerequisite for the requested relief of double damages), and, therefore, are properly included in the third amended complaint.

- 9 -

## CONCLUSION

Plaintiff David E. Chardavoyne respectfully requests that the Court deny Defendant's motion to strike the third amended complaint and grant such other and further relief as the Court deems just and proper.

                     PLAINTIFF
                     DAVID E. CHARDAVOYNE

By: _____
     Patrick J. McHugh (ct14072)
     Finn Dixon & Herling LLP
     177 Broad Street, 15th Floor
     Stamford, CT 06901-2048
     Telephone: (203) 325-5000
     Facsimile: (203) 325-5001
     E-mail:  pmchugh@fdh.com

## **CERTIFICATION**

This is to certify that a true and correct copy of the foregoing was delivered by United States Mail, first class, postage-prepaid to the following this 29th day May, 2007:

Stephen B. Fogerty, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, Connecticut  06880

Ralph W. Johnson, III, Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, Connecticut  06103

_____
Patrick J. McHugh