IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03-CV-56 (WWE) |
| | : | |
| | : | |
| VS. | : | |
| | : | |
| THAMES WATER HOLDINGS | : | |
| INCORPORATED, THAMES WATER | : | |
| NORTH AMERICA, INC. | : | |
| Defendants. | : | SEPTEMBER 24, 2007 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS AND TO THE EXTENT NECESSARY MOTION FOR SUMMARY JUDGMENT

Stephen P. Fogerty, Esq.
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tele: (203) 227-2855
Fax: (203) 227-6992
E-mail: Fogerty@halloran-sage.com


and


Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel. No.: (860) 522-6103
Fax No.: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Thames Water Holdings, Incorporated*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.      PROCEDURAL HISTORY ............................................................................ 2

    II.     THE PLAINTIFF'S CLAIMS IN THE THIRD
           AMENDED COMPLAINT ............................................................................ 3

    III.    THE TERMS OF THE EMPLOYMENT AGREEMENT ..................................... 3

STANDARD OF REVIEW ................................................................................................ 5

    I.      MOTION TO DISMISS STANDARD ............................................................. 5

    II.     MOTION FOR SUMMARY JUDGMENT STANDARD ..................................... 6

ARGUMENT .................................................................................................................. 7

    I.      THE PLAINTIFF'S CLAIM FOR BREACH OF
           CONTRACT BASED ON THE ALLEGED
           DEMANDS/REQUESTS THAT A COMPANY CAR
           BE RETURNED IN NEW JERSEY FAILS AS A
           MATTER OF LAW ..................................................................................... 7

    II.     THE PLAINTIFF'S CLAIM FOR BREACH OF THE
           IMPLIED COVENANT OF GOOD FAITH AND FAIR
           DEALING FAILS AS A MATTER OF LAW ..................................................... 9

    III.    THE PLAINTIFF'S ALTERNATIVE "AT-WILL"
           EMPLOYMENT THEORY FAILS AS A MATTER OF
           LAW ........................................................................................................ 11

    IV.    TO THE EXTENT THE PLAINTIFF BASES HIS WAGE
           ACT CLAIM ON THE SHARES OF STOCK ALLEGEDLY
           AWARDED UNDER THE LTIP/BONUS PROGRAM,
           THAT CLAIM FAILS AS A MATTER OF LAW ............................................. 14

    V.     THE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES
           FAILS AS A MATTER OF LAW ................................................................... 15

CONCLUSION .............................................................................................................. 17

## **PRELIMINARY STATEMENT**

The defendant, Thames Water Holdings Incorporated ("TWH"), submits this memorandum of law in support of its motion to dismiss and to the extent necessary, motion for summary judgment on the plaintiff's Third Amended Complaint.

Specifically, Count I of the Third Amended Complaint includes a claim for breach of contract based on alleged acts in connection with a company car, allegedly provided as part of an Employment Agreement between the plaintiff and TWH. (Third Am. Compl., Count I, ¶ 32d) Those claims were, however, dismissed as part of the Court's March 5, 2007 Ruling and should be stricken from the operative complaint. To the extent necessary, as demonstrated below, those claims fail as a matter of law and must be dismissed.

Next, Count II of the Third Amended Complaint asserts a claim for breach of an implied covenant of good faith and fair dealing in the Employment Agreement between the plaintiff and TWH. (Third Am. Compl., Count II, pp. 9-10) As demonstrated below, that claim fails as a matter of law and must be dismissed. Also, the plaintiff's alternative theory of an "at-will" employment relationship in Count II was dismissed as part of the Court's March 5 Ruling. Thus, it should not have been included in the Third Amended Complaint and should be stricken. To the extent necessary, as demonstrated below, that claim fails as a matter of law.

Moreover, to the extent that the plaintiff bases his claim under the Connecticut Wage Act (Count III) on shares of stock allegedly due him under a Long Term Incentive Program ("LTIP")/bonus program, that claim fails as a matter of law.

Finally, the prayer for relief in the Third Amended Complaint requests an award of "punitive damages." (Third Am. Compl., Prayer for Relief, p. 12) As demonstrated below, the

plaintiff's request for an award of punitive damages fails as a matter of law and must be dismissed.

Accordingly, for the reasons set forth below, the Court should grant TWH's motion.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On March 5, 2007, the Court entered a ruling granting the defendants' motion for reconsideration in part and denying it in part.  As part of its analysis, based on the choice of law provision in the Employment Agreement, the Court held that Pennsylvania law had to be applied to the plaintiff's contract claims.  (3/5/07 Ruling, at 6)  With regard to the plaintiff's claim for breach of an implied covenant of good faith and fair dealing, the Court held that Connecticut law should apply because the claim sounded in tort.  (3/5/07 Ruling, at 7; Id. at 7 n.2)

Also as part of its analysis, the Court held that the plaintiff's claim for breach of contract based on the withholding of 872 shares of RWE AG stock raised a question of fact because section 5.2 of the Employment Agreement stated that the plaintiff would be "'eligible' to receive 'bonus payments and conditional rights to shares under any incentive scheme approved' by the Board."  (3/5/07 Ruling, at 10)

The March 5 Ruling concluded as follows:

> For the foregoing reasons, the Motion for Reconsideration [doc. #107] is GRANTED.  Upon review, the Court VACATES its prior Ruling on Summary Judgment [doc. #102].  The Motion for Summary Judgment [doc. #85] is GRANTED in part and DENIED in part.  The Court grants summary judgment on (1) all claims against TWNA; (2) plaintiff's breach of contract claims with the exception of the allegations concerning termination without authority claim and failure to provide stock shares; (3) on plaintiff's breach of the covenant of good faith and fair dealing claim with the exception of allegations concerning termination without authority and the failure to provide the stock shares; and (4) on the conversion claim.  Plaintiff is instructed to amend his

2

> complaint consistent with this ruling within 15 days of this ruling's
> filing date.

(3/5/07 Ruling, at 14)

On March 22, 2007, the plaintiff filed a Third Amended Complaint. Subsequently, TWH filed a motion to strike that complaint, as it continued to assert claims and allegations upon which summary judgment had been granted.

On September 4, 2007, the Court denied TWH's motion to strike the Third Amended Complaint. This motion followed.

## II.    THE PLAINTIFF'S CLAIMS IN THE THIRD AMENDED COMPLAINT

The plaintiff's Third Amended Complaint contains three counts. By the first count, the plaintiff alleges the breach of an Employment Agreement that he entered into with TWH.

By the second count, the plaintiff asserts a claim for breach of an implied covenant of good faith and fair dealing. As part of that count, the plaintiff alleges in the alternative, that "if" his employment was terminable at-will, TWH's conduct violated important public policies. (Third Am. Compl. ¶ 41)

In the third count, the plaintiff alleges a violation of Conn. Gen. Stat. § 31-72, the Connecticut Wage Act. By that count, he maintains that he is entitled to twice his wages for the period between June 6, 2003 and December, 2004. (Third Am. Compl., Count III, ¶ 43-44)

In his prayer for relief, the plaintiff seeks *inter alia* "punitive damages." (Third Am. Compl., Prayer for Relief, p. 12)

## III.    THE TERMS OF THE EMPLOYMENT AGREEMENT

TWH and the plaintiff, David Chardavoyne entered into an Employment Agreement on or about January 15, 1999. (Third Am. Compl., Ex. A, Employment Agreement, at 1) During his employment with TWH, Chardavoyne was to perform such duties "in relation to the business

3

of the Parent Company as may from time to time be vested in or assigned to him by his Line

Manager" and he was required to "in all respects comply with the reasonable directions given by

or under the authority of his Line Manager." (Id. at 2, ¶ 2.4)  James McGivern was identified in

the Employment Agreement as Chardavoyne's "Line Manager" and he held that role throughout

Chardavoyne's employment with TWH. (Id. at 1, ¶ 1.1)  Under the agreement, Chardavoyne

was required to, "without further remuneration," carry out duties on behalf of any other Group

Company for as long as required by the Chief Executive. (Id. at 2, ¶ 2.5)  William Alexander

was identified as the Chief Executive under the Employment Agreement. (Id. at 1, ¶ 1.1)

As part of the Employment Agreement, TWH reserved the right "to change, modify or

cancel at its sole discretion from time to time any or all of [the] benefits [promised to

Chardavoyne]." (Id. at 3, ¶ 5.4)  TWH promised to provide Chardavoyne "with a car for his use

in the business of the Company or any Group Company…." (Id. at 3, ¶ 7)

The Employment Agreement also identified Chardavoyne's duties upon his termination.

(Id. at 5-6, ¶ 13)  Upon his termination for any reason, Chardavoyne was required to "forthwith

resign from any offices held by him in the Company or any other Group Company…."

(Employment Agreement, at 5, ¶ 13.1)  Chardavoyne was further required to deliver to the

Company "all correspondence, documents, specifications, papers, magnetic disks, tapes or other

software storage media, credit cards, petrol cards, and other property belonging to the Company

or any other Group Company," which may have been in his possession or control. (Id. at 6, ¶

13.2)  Upon his termination, Chardavoyne was also required to "immediately return to the

Company in good condition any car provided to him pursuant to Clause 8 … and any other

communication or computing equipment and peripheral devices belonging to the Company."

(Id. at 6, ¶ 13.3)

4

Paragraph 14 of the agreement provided that "[t]he Chief Executive may at any time during the term of … [Chardavoyne's] employment hereunder elect not to provide work for [Chardavoyne] to do and/or require … [Chardavoyne] not to attend at the premises of any Group Company and no such event shall constitute a repudiation of this Agreement or dismissal of … [Chardavoyne] whether constructive or otherwise." (Id. at 6, ¶ 14)

The Employment Agreement also contained a choice of law provision. It provided that the agreement "shall be governed by and constructed in accordance with the laws of the Commonwealth of Pennsylvania." (Id. at 10, ¶ 24)

### STANDARD OF REVIEW

**I.    MOTION TO DISMISS STANDARD**

On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff. See Bernardo v. George Weston Bakeries Distribution, Inc., 2007 WL 1576261, at *1 (D.Conn. May 30, 2007) (Eginton, J.). "Generally 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" Hanig v. Yorktown Cent. Sch. Dist., 384 F.Supp.2d 710, 721 (S.D.N.Y. 2005). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. Id.

In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference, and documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. Id. (citing cases). See id. ("the Court can consider documents referenced in the

Complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in bringing their suit.").

Recently, the Supreme Court revised the standard for a Rule 12(b)(6) motion in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). Twombly held that the "famous" no-set-of-facts formulation "has earned its retirement," and instead dismissed the plaintiff's antitrust-conspiracy complaint because it did not contain facts sufficient to "state a claim to relief that is plausible on its face." Id.

The Second Circuit in Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) closely analyzed the text of Twombly and determined that it:

> is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.

Id. at 157-58 (emphasis added).

## II.    MOTION FOR SUMMARY JUDGMENT STANDARD

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court examined the standard for summary judgment under Rule 56. It recognized that the "plain language of Rule 56(c) *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23 (emphasis added). The moving party only bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions

6

of the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material

fact. Id. at 323.[1] There is, however, no express or implied requirement in Rule 56 that the

moving party support its motion with affidavits or other similar materials negating the

opponent's claim. Celotex, 477 U.S. at 323.

Recently, in Scott v. Harris, 127 S.Ct. 1769 (2007), the Supreme Court again addressed

the standard for analyzing a motion for summary judgment. In particular, it recognized that

"[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the

record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment." Id. at 1776. Accordingly, the

moving party is entitled to summary judgment when the non-moving party has failed to make a

sufficient showing on an essential element of his case with respect to which he has the burden of

proof. Celotex, 477 U.S. at 323.

## ARGUMENT

### I.    THE PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT BASED ON THE ALLEGED DEMANDS/REQUESTS THAT A COMPANY CAR BE RETURNED IN NEW JERSEY FAILS AS A MATTER OF LAW

In paragraph 32d of the Third Amended Complaint, Chardavoyne alleges that TWH

breached the Employment Agreement because:

> Defendant owes and has not paid Chardavoyne all payments due
> for company car-related expenses pursuant to Section 7 of the
> Employment Agreement. Defendant also demanded in violation of
> the Employment Agreement that Chardavoyne deliver the company
> car to New Jersey. The company car has now been retrieved by
> defendant and returned to it.

---

[1]    Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736-742 (2d Cir. 1998).

(Third Am. Compl. ¶ 32d)

As noted above, the March 5 Ruling expressly granted summary judgment as to all of the plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing "with the exception of the allegations concerning termination without authority claim and failure to provide stock shares." (3/5/07 Ruling, at 14)  Consequently, Chardavoyne's claim for breach of contract and claim for breach of an implied covenant of good faith and fair dealing based on the company car (which claims were also contained in the Second Amended Complaint) have been dismissed by the March 5 Ruling.

To the extent necessary, as demonstrated below, the claim that the Employment Agreement was breached by alleged demands that a company car be delivered to New Jersey fail as a matter of law.

Under Pennsylvania law, in order to establish a claim for breach of contract, a party must demonstrate:  (1) the existence of a contract, including its essential term; (2) a breach of a duty imposed by the contract; and (3) resultant damages.  Corestates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999); Kalina v. Donato, 1998 WL 1107336, at *3 (Pa. Com. Pl. Apr. 3, 1998), aff'd 734 A.2d 444 (Pa. Super. 1998).  See In re K-Dur Antitrust Litig., 338 F.Supp.2d 517, 548-49 (D.N.J. 2004) (applying Pennsylvania law).  As the March 5 Ruling recognized, a claim for breach of contract fails as a matter of law if a plaintiff cannot identify the term in the contract which has allegedly been breached. (3/5/07 Ruling, at 10-11)  Moreover, as the March 5 Ruling acknowledged, claim for breach of contract fails as a matter of law when a plaintiff cannot identify how he has been damaged by the alleged breach. (Id.)

In the instant case, Chardavoyne has not identified any language in the Employment Agreement which prohibited TWH from either requesting or even demanding that the company

8

car be returned to it in New Jersey. Moreover, even assuming that TWH had promised not to make such a request or demand, Chardavoyne has not alleged that he complied with that request or demand. Nor has he alleged that he suffered any damages as a result of having had that request or demand made to him. Simply stated, Chardavoyne's claim for breach of contract in connection with the company car fails as a matter of law and must be dismissed.

## II.    THE PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW

As noted above, in the March 5 Ruling, the Court held that Pennsylvania law governed the plaintiff's breach of contract claims. (3/5/07 Ruling, at 6) However, with regard to Chardavoyne's claim for breach of an implied covenant of good faith and fair dealing, the March 5 Ruling concluded that Connecticut law should govern because under it, such a claim sounds in tort. (Id. at 7) In support of its conclusion that a claim for breach of an implied covenant of good faith and fair dealing sounds in tort under Connecticut law, the March 5 Ruling cited Buckman v. People Express, Inc., 205 Conn. 166, 170 (1987). (3/5/07 Ruling, at 7 n.7)

As demonstrated below, the Court's holding regarding Connecticut law on this issue is in error. In 2005, the Connecticut Supreme Court expressly recognized that under Connecticut law, a claim for breach of an implied covenant of good faith and fair dealing sounds in contract. Collins v. Anthem Health Plans, Inc., 275 Conn. 309, 333 (2005). The Connecticut Appellate Court confirmed this point of Connecticut law in 2006. Bellemare v. Wachovia Mortgage Corp., 94 Conn. App. 593, 610 (2006). Consequently, Pennsylvania law should govern the analysis of Count II. Under Pennsylvania law, there is no separate cause of action for breach of an implied covenant of good faith and fair dealing. Accordingly, in the instant case, Chardavoyne's claim for breach of the implied covenant of good faith and fair dealing (Count II) should be dismissed as a matter of law.

The March 5 Ruling's reliance on the language in <u>Buckman</u> is misplaced. Contrary to the March 5 Ruling, under Connecticut law, a claim for breach of the implied covenant of good faith and fair dealing "sounds in breach of contract." <u>Collins</u>, 275 Conn. at 333. <u>See</u> <u>Bellemare</u>, 94 Conn. App. at 610 ("a claim brought pursuant to a contract, alleging a breach of the implied covenant of good faith and fair dealing, sounds in contract"). <u>See</u> <u>also</u> <u>Independence Ins. Serv. Corp. v. Hartford Life Ins. Co.</u>, 472 F.Supp.2d 183, 189 (D.Conn. 2007) (recognizing that the Connecticut Supreme Court has pronounced that a claim for breach of the covenant of good faith and fair dealing sounds in breach of contract and is subject to the breach of contract six year statute of limitations); <u>Capital Property Associates v. Capital City Economic Development Auth.</u>, 2006 WL 301655, at *2 (Conn. Super. Jan. 17, 2006) ("A breach of th[e] implied covenant [of good faith and fair dealing] is a species of breach of contract.").

Consequently, under the Court's holding in the March 5 Ruling, Chardavoyne's claim for breach of an implied covenant of good faith and fair dealing sounds in contract and must be analyzed under Pennsylvania law. "Pennsylvania law does not recognize a separate claim for breach of the implied covenant of good faith and fair dealing." <u>Strategic Learning, Inc. v. Wentz</u>, 2006 WL 3437531, at *5 (M.D.Pa. Nov. 29, 2006). <u>See</u> <u>Balmat v. CertainTeed Corp.</u>, 2004 WL 2861873, at *2-3 (E.D.Pa. Dec. 9, 2004); <u>Blue Mountain Mushroom Co., Inc. v. Monterey Mushroom, Inc.</u>, 246 F.Supp.2d 394, 400-01 (E.D.Pa. 2002); <u>Raie v. City of Philadelphia</u>, 2001 WL 884707, at *7 (E.D.Pa. July 31, 2001). Rather, a claim arising from a breach of the covenant of good faith and fair dealing must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself. <u>Pym v. Einstein Practice Plan, Inc.</u>, 2004 WL 2439241, at *1 (Pa. Com. Pl. July 21, 2004). Thus, absent proof of a breach of an underlying contract, there can be no claim for breach of the

implied covenant of good faith and fair dealing. See Middletown Carpentry, Inc. v. C. Arena & Co., Inc., 2001 WL 1807379, at *6 (Pa. Com. Pl. Nov. 27, 2001); Sylk v. Bernsten, 2003 WL 1848565, at **9-10 (Pa. Com. Pl. Feb. 4, 2003).

Accordingly, in the instant case, Chardavoyne's claim for breach of the implied covenant of good faith and fair dealing should be dismissed as a matter of law.

## III.    THE PLAINTIFF'S ALTERNATIVE "AT-WILL" EMPLOYMENT THEORY FAILS AS A MATTER OF LAW

By the second count, Chardavoyne asserts a claim for the breach of the implied covenant of good faith and fair dealing contained in the Employment Agreement. Paragraphs 34 and 35 of the second count incorporate the allegations from the first count and make them the bases for the claim of breach of the implied covenant of good faith and fair dealing. Paragraph 41 of the second count alleges in the alternative that "if" Chardavoyne's employment was terminable at-will, the defendants' bad faith conduct violated "important public policies, that include, without limitation, to protect employees from abusive employment practices; from unreasonable refusals to pay properly earned wages, and other compensation; from interference with subsequent employment; and from violations of contractual rights."

As noted above, the March 5 Ruling expressly granted summary judgment as to all of the plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing "with the exception of the allegations concerning termination without authority claim and failure to provide stock shares." (3/5/07 Ruling, at 14) Consequently, Chardavoyne's "at-will" theory has been dismissed by the March 5 Ruling. The Court should expressly confirm its ruling.

To the extent necessary, as demonstrated below, Chardavoyne's "at-will" theory fails as a matter of law and should be expressly dismissed in the Court's ruling on the instant motion.

11

First, with the dismissal of Count II under Pennsylvania law, see above § II, the "at-will" alternative theory should also be dismissed. Moreover, it is undisputed that Chardavoyne entered into an Employment Agreement with TWH. Thus, he cannot assert an at-will employment claim against TWH. Specifically, under Pennsylvania law, there is no common law cause of action against an employer for termination of an at-will employment relationship. McLaughlin v. Gastrointestinal Specialists, Inc., 750 A.2d 283, 287 (Pa. 2000); Donahue v. Federal Express Corp., 753 A.2d 238, 243 n.6 (Pa. Super. 2000).[2] "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." McLaughlin, 750 A.2d at 287. Accordingly, the Pennsylvania Supreme Court in McLaughlin recognized that:

> in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest. The Plaintiff in some way must allege that some *public* policy of *this* Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth.

750 A.2d at 289 (emphasis original). In particular, the court concluded that "it is a mistake to baldly point to a federal statute or administrative regulation and, without more, proclaim this as the public policy of the Commonwealth, such that every violation of any federal code or statute becomes the basis for seeking a common law remedy against an employer." Id. at 290. It held that if it were to be the law that an employee could bring a wrongful discharge claim pursuant to the public policy exception to the at-will employment doctrine, by merely restating a private

---

[2]    See Lynady v. Community Medical Ctr., 49 Pa. D. & C. 4th 391, 403 (Pa. Com. Pl. 2000) (available at 2000 WL 33333935); Marlin v. Borg-Warner Corp., 1991 WL 346305, at *6 (Pa. Com. Pl. Aug. 14, 1991) (granting summary judgment).

cause of action for the violation of some federal regulation, "the exception would soon swallow the rule." Id.[3]

In McLaughlin, the court recognized that a court determines the public policy of the state by "examining the precedent within Pennsylvania, looking to our own Constitution, court decisions and statutes promulgated by our legislature." 750 A.2d at 288. Thus, the court refused to recognize a claim for wrongful discharge in violation of public policy where there was "no statute, constitutional premise, or decision from th[e Pennsylvania Supreme] Court to support the proposition that federal administrative regulations, standing alone, can comprise the public policy of th[e] Commonwealth." Id. Moreover, it concluded that "in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest." Id. at 289. See Gannon v. National R.R. Passenger Corp., 2004 WL 1175817, at *3 (E.D.Pa. May 27, 2004).

Here, Chardavoyne's allegations in support of his alternative, at-will theory amount to no more than the conclusory allegations rejected by Pennsylvania courts. Moreover, the at-will claim fails at a fundamental level. Chardavoyne has failed to establish the existence of an at-will relationship, let alone that it was breached. He also fails to acknowledge that the terms of any alleged, at-will relationship would not mirror the terms of the Employment Agreement. For example, he fails to acknowledge that under section 2.5 of the Employment Agreement, he was not entitled to any "further remuneration" for any work he did for a related company. Thus, the entry of judgment in favor of TWH is appropriate.

---

[3]/    The court in McLaughlin concluded that "a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of this Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation." 750 A.2d at 290. Furthermore, "a court's power to announce public policy is limited: '[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.'" Donahue, 753 A.2d at 244.

**IV.    TO THE EXTENT THE PLAINTIFF BASES HIS WAGE ACT CLAIM ON THE SHARES OF STOCK ALLEGEDLY AWARDED UNDER THE LTIP/BONUS PROGRAM, THAT CLAIM FAILS AS A MATTER OF LAW**

As noted above, the third count of the operative complaint asserts a claim under the Connecticut Wage Act. More specifically, paragraph 42 of the third count incorporates by reference the allegations from paragraphs 1 through 41 of the Complaint. In paragraph 32c, the plaintiff alleges that TWH "owes and has wrongfully failed to pay shares of RWA AG stock to Chardavoyne which he earned and to which he is entitled, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan." Thus, it is unclear whether Chardavoyne bases his Wage Act claim in Count III on the alleged shares of stock due him under the LTIP.

To the extent Chardavoyne bases his claim on the shares of stock, that claim fails as a matter of law. Conn. Gen. Stat. § 31-71e states, in pertinent part, "[n]o employer may withhold or divert any portion of an employee's wages...." "Wages" is defined in Conn. Gen. Stat. § 31-71a(3) as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."

A bonus may qualify as a "wage" only if it is determined solely according to an employee's individual performance. See Garry v. Bertucci's Restaurant Corp., 2001 WL 1795539, at *4 (D.Conn. Sept. 25, 2001). See also Saye v. Howe, 2004 WL 2664130, at *7 (Conn. Super. Oct. 25, 2004) (bonus cannot be basis for wage act claim where it does not accrue "as a result of the plaintiff's personal efforts alone"). Consequently, where the formula for the calculation of bonus is not exclusively limited to the employee's performance, it is not "compensation for labor or services rendered" by a plaintiff and does not provide a basis for

14

recovery under Conn. Gen. Stat. § 31-72, the Connecticut Wage Act. Garry, 2001 WL 1795539,

at *5. Under such circumstances, a claim under the Wage Act fails as a matter of law. Id.

Here, as part of his opposition to the defendants' first motion for summary judgment,

Chardavoyne submitted an appendix of exhibits dated April 28, 2006. As part of Exhibit 9

within that appendix, Chardavoyne submitted a letter dated March 28, 2002 from Bill Alexander

to him with an attached Award Notice dated March 27, 2002.[4] The Award Notice was in

connection with a conditional award of 872 shares of RWE AG stock under a Long Term

Incentive Plan ("LTIP"). On page one of the March 28 letter it states, in relevant part, as

follows:

> The Long Term Incentive Plan aims to reward and recognize
> key people in the Company. The conditional award of shares
> has been made to you based on the performance of Thames
> Water against Return on Capital Employed (ROCE).
>
> $$ROCE = \frac{\text{Operating Result}}{\text{Average Net Operating Assets}}$$

Thus, any award under the LTIP was based on the "ROCE" formula. Under that formula,

Chardavoyne's efforts were not the sole basis for calculating an award. Consequently, any

alleged award of stock under the LTIP program did not constitute "wages" for purposes of the

Connecticut Wage Act. Accordingly, to the extent Chardavoyne bases his Wage Act claim on

the shares of stock, the claim fails as a matter of law and must be dismissed.

## V.    THE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW

As noted above, as part of his prayer for relief, Chardavoyne seeks an award of "punitive

damages." However, both Pennsylvania and Connecticut law prohibit an award of punitive

---

[4]    Copies of the March 28 letter and the Award Notice are attached as Exhibit A to TWH's
Local Rule 56 Statement.

damages based on a claim of breach of contract. Moreover, the Connecticut Wage Act does not provide for an award of punitive damages. Accordingly, Chardavoyne's request for an award of "punitive damages" fails as a matter of law and must be dismissed.

"Pennsylvania prohibits the recovery of punitive damages for breach of contract." Balmat v. CertainTeed Corp., 2004 WL 2861873, at *4 (E.D.Pa. Dec. 9, 2004). See id. ("'the law is clear that punitive damages are not recoverable in an action for breach of contract.'"); Galdieri v. Monsanto Co., 245 F.Supp.2d 636, 652 (E.D.Pa. 2002) (punitive damages unavailable for breach of contract claim). See also Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 402 (3d Cir. 2004); Baney v. Trans Union, LLC, 2007 WL 1098523, at *1 n.1 (M.D.Pa. Apr. 10, 2007) (punitive damages are not available as a remedy in breach of contract claims); Baker v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 536 A.2d 1357, 1361 (Pa. Super. 1987) ("[Pennsylvania] law is clear that punitive damages cannot be recovered merely for breach of contract."); Rambo v. Greene, 2005 WL 579943, at *3 (Pa. Com. Pl. Feb. 28, 2005) ("under Pennsylvania law, punitive damages are not awardable for breach of contract.").

Indeed, as a general rule, punitive damages "are generally not available for breach of contract." Barnes v. Gorman, 536 U.S. 181, 188 (2002). This is the rule in Connecticut as well. See Lydall, Inc. v. Ruschmeyer, 282 Conn. 209, 244 n.24 (2007); Lawrence v. Harrington, 2005 WL 1758619, at *2 (Conn. Super. June 15, 2005). In particular, punitive damages are not available for a breach of contract claim based upon an employment agreement. Barry v. Posi-Seal Int'l, Inc., 40 Conn. App. 577, 584-88 (1996). See id. at 588 (punitive damages cannot be recovered on a claim that termination of employment constituted a breach of the implied covenant of good faith and fair dealing contained in an employment contract).

16

Accordingly, Chardavoyne's request for an award of "punitive damages" fails as a matter of law and must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant TWH's motion in the manner set forth above.

Respectfully submitted,

**THE DEFENDANT
THAMES WATER HOLDINGS,
INCORPORATED**

By: _____
Stephen P. Fogerty
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West,
Westport, CT 06880
Tele: (203) 227-2855
Fax: (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson III
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tele: (860) 522-6103
Fax: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

Its Attorneys

## **CERTIFICATION**

This is to certify that on this 24th day of September, 2007, a copy of the foregoing was caused to be served via U.S. mail, postpaid to:

Patrick McHugh, Esq.
William M. Tong, Esq.
Finn Dixon & Herling LLP
177 Broad Street, 15th Floor
Stamford, CT 06901-2048

                               _____
                               Ralph W. Johnson III

1022590_1 DOC