IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03-CV-56 (WWE) |
| | : | |
| | : | |
| VS. | : | |
| | : | |
| THAMES WATER HOLDINGS | : | |
| INCORPORATED, THAMES WATER | : | |
| NORTH AMERICA, INC. | : | |
| Defendants. | : | JANUARY 7, 2008 |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

Stephen P. Fogerty, Esq.
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel. No.: (203) 227-2855
Fax No.: (203) 227-6992
E-mail:   Fogerty@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel. No.: (860) 522-6103
Fax No.: (860) 548-0006
E-mail:   Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Thames Water Holdings, Incorporated*

## **TABLE OF CONTENTS**

PAGE

PRELIMINARY STATEMENT .................................................................. 1

SUMMARY OF THE ARGUMENT ........................................................... 1

BACKGROUND ....................................................................................... 4

I.     PROCEDURAL HISTORY ............................................................. 4

     A.    The July 13 Ruling .............................................................. 4

     B.    The March 5 Ruling ............................................................ 4

     C.    The Plaintiff's Third Amended Complaint
           And His Violation Of The March 5 Ruling ......................... 5

           1.    Summary of the Plaintiff's Legal
                 Theories .................................................................. 5

           2.    The Plaintiff's Continued Assertion
                 of Claims and Allegations Dismissed
                 by the March 5 Ruling ........................................... 6

     D.    The September 4 Ruling ...................................................... 8

II.    TWH'S MOTION TO DISMISS AND TO THE
       EXTENT NECESSARY MOTION FOR SUMMARY
       JUDGMENT ................................................................................ 9

III.   THE PLAINTIFF'S OCTOBER 10 AND 29, 2007
       LETTERS .................................................................................... 10

IV.   THE PLAINTIFF'S RULE 11 MOTION ...................................... 11

STANDARD OF REVIEW ...................................................................... 12

ARGUMENT ........................................................................................... 15

I.     THE PLAINTIFF'S RULE 11 MOTION MUST BE
       DENIED BECAUSE IT DID NOT COMPLY WITH
       THE MANDATORY "SAFE HARBOR" PROVISION ................... 15

II.    THE PLAINTIFF'S MOTION MUST BE
       DENIED BECAUSE TWH'S ARGUMENTS IN
       ITS MOTION TO DISMISS/MOTION FOR
       SUMMARY JUDGMENT ARE MERITORIOUS ............................................. 19

       A.    The Plaintiff's Claim For Breach Of
             Contract Based On The Alleged Demand/
             Requests That A Company Car Be Returned
             To New Jersey Fails As A Matter Of Law ................................................ 23

       B.    The Plaintiff's Claim For Breach Of The
             Implied Covenant Of Good Faith And Fair
             Dealing Fails As A Matter Of Law ............................................................ 24

       C.    The Plaintiff's Alternative "At-Will"
             Employment Theory Fails As A Matter Of Law ....................................... 28

       D.    To The Extent The Plaintiff Bases His Wage
             Act Claim On The Shares Of Stock Allegedly
             Awarded Him Under The LTIP/Bonus Program,
             That Claim Fails As A Matter Of Law ...................................................... 29

       E.    The Plaintiff's Claim For Punitive Damages
             Fails As A Matter Of Law .......................................................................... 30

III.   THE PLAINTIFF'S RULE 11 MOTION MUST
       BE DENIED BECAUSE TWH'S MOTION TO
       DISMISS/MOTION FOR SUMMARY JUDGMENT
       WAS FILED FOR PROPER PURPOSES .............................................................. 31

IV.    THE PLAINTIFF'S RULE 11 MOTION WAS FILED
       FOR IMPROPER PURPOSES ................................................................................ 35

V.     THE CASE LAW CITED BY THE PLAINTIFF
       SUPPORTS THE DENIAL OF HIS MOTION ..................................................... 36

VI.    THE COURT SHOULD AWARD TWH THE
       ATTORNEY'S FEES IT HAS INCURED IN
       DEFENDING AGAINST THE RULE 11 MOTION ............................................ 37

VII.   THE COURT SHOULD CONSIDER ISSUING A
       SHOW CAUSE ORDER DIRECTING THE PLAINTIFF
       TO DEMONSTRATE WHY SANCTIONS SHOULD
       NOT BE ENTERED AGAINST HIM ................................................................... 37

CONCLUSION ................................................................................................................... 39

## PRELIMINARY STATEMENT

The defendant, Thames Water Holdings, Incorporated ("TWH"), submits this memorandum of law in opposition to the plaintiff's motion for attorney's fees and costs filed on November 16, 2007.[1] For the reasons set forth below, the Court should deny the plaintiff's motion.

The Court's analysis of the plaintiff's Rule 11 motion and TWH's opposition will reveal that the plaintiff's motion is frivolous. The Court's analysis will further confirm that the plaintiff's motion was filed for improper purposes, (an attempt to intimidate TWH and an attempt to interfere with TWH's defense), has caused unnecessary delay in this litigation and required TWH to incur unnecessary legal fees in connection with its opposing the motion.

Accordingly, after denying the plaintiff's motion, the Court should award TWH the legal fees it incurred in defending against the motion, pursuant to Rule 11(c)(2) of the Federal Rules of Civil Procedure. Also, after denying the plaintiff's motion, the Court should, pursuant to Rule 11(c)(3), consider whether to *sua sponte* issue a show cause order directing the plaintiff to explain why sanctions should not be imposed on him.

## SUMMARY OF THE ARGUMENT

At the outset, the plaintiff's motion must be denied because it did not comply with Rule 11's mandatory "safe harbor" provision. The plaintiff, David Chardavoyne, filed his Rule 11 motion on November 16, 2007. That motion was served on TWH's counsel that same day for the first time. Thus, Chardavoyne's motion does not satisfy the mandatory "safe harbor"

---

[1]    In further support of its opposition to the plaintiff's Rule 11 motion, TWH incorporates by reference its September 24, 2007 memorandum of law submitted in support of its motion to dismiss, and to the extent necessary, motion for summary judgment and its reply memorandum of law submitted in support of that motion. The reply memorandum has been filed contemporaneously with this memorandum.

provision under Rule 11(c)(2) (formerly Rule 11(c)(1)(A)), as it was not served on TWH's counsel twenty-one (21) days prior to its filing with the district court. When a non-compliant motion is filed, the Court lacks the authority to impose the requested sanctions. Accordingly, Chardavoyne's Rule 11 motion must be denied.

Perhaps more importantly, the substantive allegations in Chardavoyne's Rule 11 motion are frivolous. In sum, Chardavoyne's motion is based on a claim that the five arguments advanced in TWH's motion to dismiss/motion for summary judgment were previously considered and rejected by this Court in favor of Chardavoyne. Even the most cursory review of the pleadings reveals that Chardavoyne's claim is wholly without merit. A review of the pleadings confirms that TWH's arguments are well founded in the case law, this Court's March 5, 2007 Ruling and an analysis of the allegations in the Third Amended Complaint and the text of the written Employment Agreement.

In particular, TWH's motion seeks dismissal of two categories of claims. The first is claims which were previously dismissed by the March 5 Ruling and thus should not have re-appeared in Chardavoyne's Third Amended Complaint. The second category of claims is those which fail as a matter of law under either (a) analysis presented for the first time in TWH's September 24, 2007 motion, (b) analysis not previously addressed by the Court and/or (c) analysis supported by *binding* precedent cited for the first time in TWH's motion.

Under the procedural posture of this case, a Rule 11 sanction could only be possible if a litigant's argument had "absolutely no chance of success." That is clearly not the situation before the Court in this case. Indeed, TWH's briefing and analysis in support of its September 24 motion are detailed and well founded. Accordingly, Chardavoyne's Rule 11 motion must be denied.

In addition to being supported by the case law, this Court's prior rulings and sound analysis, TWH's motion to dismiss/motion for summary judgment was also filed for proper purposes. Specifically, in addition to asserting its right to defend itself in this litigation, TWH's motion properly brings before this Court legal issues which should be resolved, not only prior to the selection of the jury, but before the preparation of the trial memorandum. In particular, TWH should not have to identify witnesses, identify exhibits, object to exhibits or present jury instructions or legal arguments on Chardavoyne's claims which fail as a matter of law. This is particularly true for claims previously dismissed by the March 5 Ruling. As demonstrated below, and in TWH's memoranda filed in support of its motion to dismiss/motion for summary judgment, some of Chardavoyne's claims were previously dismissed by the March 5 Ruling and several of his other claims fail as a matter of law. Consequently, neither the parties nor the Court should have to spend any time on those claims as part of the trial preparation process.

After denying Chardavoyne's Rule 11 motion, the Court should, pursuant to Rule 11(c)(2), award TWH the attorney's fees it has incurred by defending against the motion.

Finally, given the complete lack of merit in Chardavoyne's Rule 11 motion, the only possible purpose for the filing of the motion is an improper purpose. In particular, given that Chardavoyne's opposition to TWH's motion to dismiss/motion for summary judgments consists of conclusory statements and a distortion of the Court's prior rulings, it appears that Chardavoyne filed his Rule 11 motion in an attempt to intimidate TWH into forgoing its defenses in this lawsuit. Accordingly, given Chardavoyne's questionable approach to his Rule 11 motion, the Court should, after denying Chardavoyne's motion, consider issuing a show cause order under Rule 11(c)(3), by which it directs Chardavoyne to demonstrate why sanctions should not be imposed against him based on his frivolous motion.

## BACKGROUND

### I.    PROCEDURAL HISTORY

#### A.    The July 13 Ruling

On July 13, 2006, prior to the defendants' filing their reply memorandum, the Court entered a 3-page ruling denying the defendants' motion for summary judgment. The ruling concluded as follows:

> The court will deny defendants' motion for summary judgment, since the resolution of all of plaintiff's claims hinges on the fact finder's determination of the meaning of the relevant terms of the Agreement.

(7/13/06 Ruling, at 3) Subsequently, the defendants filed a motion for reconsideration.

#### B.    The March 5 Ruling

On March 5, 2007, the Court entered a ruling granting the defendants' motion for reconsideration in part and denying it in part. At the outset of the March 5 Ruling, the Court acknowledged that its July 13 Ruling had "denied summary judgment with inadequate analysis of some of the issues, which require[d] further consideration." (3/5/07 Ruling, at 1) Accordingly, the Court "vacate[d]" the July 13 Ruling. (Id. at 1-2)

As part of the March 5 Ruling, based on the choice of law provision in the Employment Agreement, the Court held that Pennsylvania law had to be applied to the plaintiff's contract claims. (3/5/07 Ruling, at 6) With regard to the plaintiff's claim for breach of an implied covenant of good faith and fair dealing, the Court held that Connecticut law should apply because the claim sounded in tort. (3/5/07 Ruling, at 7; id. at 7 n.2) It reached this conclusion based on its interpretation of the language in a 1987 Connecticut Supreme Court decision. (Id.)

Next, the Court held that the plaintiff's claim for breach of contract based on the withholding of 872 shares of RWE AG stock raised a question of fact because section 5.2 of the

Employment Agreement stated that the plaintiff would be "'eligible' to receive 'bonus payments and conditional rights to shares under any incentive scheme approved' by the Board." (3/5/07 Ruling, at 10)

The plaintiff's claim under the Connecticut Wage Act survived summary judgment because the Court believed that there was a question of fact as to whether the plaintiff was working in Connecticut. (3/5/07 Ruling, at 13)

The March 5 Ruling concluded as follows:

> For the foregoing reasons, the Motion for Reconsideration [doc. #107] is GRANTED. Upon review, the Court VACATES its prior Ruling on Summary Judgment [doc. #102]. The Motion for Summary Judgment [doc. #85] is GRANTED in part and DENIED in part. The Court *grants summary judgment* on (1) all claims against TWNA; (2) plaintiff's breach of contract claims *with the exception of* the allegations concerning termination without authority claim and failure to provide stock shares; (3) on plaintiff's breach of the covenant of good faith and fair dealing claim *with the exception of* allegations concerning termination without authority and the failure to provide the stock shares; and (4) on the conversion claim. Plaintiff is instructed to amend his complaint *consistent with this ruling* within 15 days of this ruling's filing date.

(3/5/07 Ruling, at 14 (emphasis added))

### C. The Plaintiff's Third Amended Complaint And His Violation Of The March 5 Ruling

#### 1. Summary of the Plaintiff's Legal Theories

Subsequently, the plaintiff filed a Third Amended Complaint dated March 20, 2007. It contained three counts. By the first count, the plaintiff alleged a breach of a written Employment Agreement that he entered into with TWH.

5

By the second count, the plaintiff asserted a claim for breach of an implied covenant of good faith and fair dealing. As part of that count, the plaintiff asserted an alternative "at-will" employment theory.

In the third count, the plaintiff alleged a violation of Conn. Gen. Stat. § 31-72, the Connecticut Wage Act. By that count, he maintained that he was entitled to twice his wages for the period between June 6, 2003 and December, 2004.

In his prayer for relief, the plaintiff sought *inter alia* "punitive damages." (Third Am. Compl., Prayer for Relief, p. 12)

### 2. The Plaintiff's Continued Assertion of Claims and Allegations Dismissed by the March 5 Ruling

Despite the Court's express order that the plaintiff file an amended complaint "consistent with" the March 5 Ruling, the plaintiff's Third Amended Complaint continued to assert allegations and claims which had been dismissed.[2]

For example, paragraph 11 of the Third Amended Complaint quoted and emphasized the 12 month written notice provision of the Employment Agreement. Paragraph 12 of the complaint quoted section 5.3 of the Employment Agreement, which related to insurance and retirement benefits.

Paragraphs 16 and 16(a) continued to allege that a letter provided to the plaintiff in May of 2002 was "not a notice of termination" under section 11.1 of the Employment Agreement. Paragraph 16(h) continued to maintain that the letter was not notice of termination under section 12.3 of the Employment Agreement.

---

[2]    In the face of the March 5 Ruling, the plaintiff's continued assertion of previously dismissed allegations and claims in the Third Amended Complaint violated Fed.R.Civ.P. 11(b). In particular, "[a] court may order sanctions against a party who files pleadings in contravention of a court order." Malley v. Corporation Counsel of City of N.Y., 9 Fed. Appx. 58, 60 (2d Cir. 2001).

Paragraph 19 of the complaint alleged that the plaintiff advised TWH and Thames Water North America ("TWNA") that the letter was not notice of termination as required by section 11.1 of the Employment Agreement. Paragraph 20 alleged, in part, that the plaintiff advised TWH and TWNA that the letter and the Draft Separation Agreement were not notice of termination because they did not comply with the requirements of the Employment Agreement. Paragraph 22 similarly referred to the issue of whether the letter constituted notice under the Employment Agreement.

Paragraph 25 of the Third Amended Complaint alleged that TWH had deprived or attempted to deprive the plaintiff of his rights under the Employment Agreement by (a) "falsely representing to Chardavoyne that the benefits of the Draft Separation Agreement were more favorable to Chardavoyne than the benefits secured by the Employment Agreement when in fact they were not"; (b) "failing and continuing to refuse to provide 'written notice' of termination as required by the Employment Agreement and Section 11.1 therein"; and (c) "contending that Defendant has given Chardavoyne notice of termination while simultaneously threatening to cut off his rights under the Employment Agreement if he sought employment elsewhere."

Paragraph 32 of the first count alleged that TWH breached the Employment Agreement "as set forth above" and "without limitation," by the following:

> a.  Defendant and certain employees within the Thames Water enterprise sought to compel or pressure Chardavoyne's resignation with 'immediate effect' in violation of the Employment Agreement's requirement that any termination must include 'not less than 12 months written notice.'
>
> . . .
>
> d.  Defendant owes and has not paid Chardavoyne all payments due for company car-related expenses pursuant to Section 7 of the Employment Agreement. Defendant also demanded in violation of the Employment Agreement that Chardavoyne

> deliver the company car to New Jersey. The company car has
> now been retrieved by Defendant and returned to it.

(Third Am. Compl. ¶ 32(a), (d))

In paragraph 38 of Count Two, the plaintiff alleged, in relevant part, as follows:

> Instead, Defendant turned against Chardavoyne in bad faith, not
> only to avoid the Employment Agreement but to injure him. As set
> forth above and in particular in Paragraph 25, Defendant purposely
> set out to harm and disadvantage Chardavoyne by seeking to
> compel or pressure his resignation with "immediate effect" in
> violation of the Employment Agreement;…threatening to withhold
> and cut off compensation, to which he has a right; and refusing to
> allow him to seek employment.

(Third Am. Compl., ¶ 38) Count Two also continued to assert an "at-will" employment theory in

the alternative.

### D.    The September 4 Ruling

In response to the Third Amended Complaint, instead of filing a Rule 11 motion, TWH

filed a motion to strike the portions of it which continued to assert allegations and claims

dismissed by the March 5 Ruling.

On September 4, 2007, the Court entered a ruling denying TWH's motion to strike. At

the outset of the ruling, the Court summarized its March 5 Ruling as follows:

> The Court *granted defendants' summary judgment* on: (1) all
> claims against TWNA; (2) the breach of contract claims *with the*
> *exception of* the allegations concerning termination without
> authority claim and failure to provide stock shares; (3) the breach
> of the covenant of good faith and fair dealing claim *with the*
> *exception of* allegations concerning termination without authority
> and the failure to provide the stock shares; and (4) the conversion
> claim.

(9/4/07 Ruling, at 1 (emphasis added))

In denying TWH's motion to strike, the Court concluded as follows:

> The gravamen of defendant's motion is that [certain] allegations [contained in the third amended complaint] could cause jury confusion if the jury obtained a copy of the operative complaint. Defendant's concern has little force since this Court does not provide the jury with a copy of the operative complaint. *The Court has defined the contours of plaintiff's claims in its ruling on summary judgment.*

(Id. at 2 (emphasis added))  The Court ended its September 4 Ruling by "instruct[ing] TWH "to

*respond to the complaint* within 20 days of th[e] ruling's filing date."  (Id. at 3 (emphasis

added))

## II.    TWH'S MOTION TO DISMISS AND TO THE EXTENT NECESSARY MOTION FOR SUMMARY JUDGMENT

On September 24, 2007, in compliance with the Court's instruction in the September 4

Ruling, TWH responded to the Third Amended Complaint by filing a motion to dismiss and to

the extent necessary, motion for summary judgment.

First, TWH's motion noted that Count I of the Third Amended Complaint included a

claim for breach of contract based on a company car provided as part of an Employment

Agreement between Chardavoyne and TWH.  TWH's memorandum of law demonstrated that

under the plain language of the March 5 Ruling that claim had, however, been dismissed and

thus should not have appeared in the operative complaint.  Accordingly, TWH's motion asked

the Court to dismiss the claim (yet again).  To the extent necessary, TWH's memorandum of law

also demonstrated that the company car-based claim failed as a matter of law and should be

dismissed.

Second, based on *controlling* case law from the Connecticut Supreme and Appellate

Courts, TWH's motion sought the dismissal of Count II, which asserted a claim for breach of an

implied covenant of good faith and fair dealing in the Employment Agreement.  TWH's motion

also sought the dismissal of Chardavoyne's alternative theory of an "at-will" employment

9

relationship in Count II because that theory had been dismissed as part of the Court's March 5 Ruling.

Third, to the extent necessary, TWH's memorandum of law in support of its motion demonstrated that the alternative "at-will" employment theory failed as a matter of law under the case law.

Fourth, TWH's motion demonstrated that, to the extent that Chardavoyne based his claim under the Connecticut Wage Act in Count III on 872 shares of stock he was allegedly due under a Long-Term Incentive Program ("LTIP")/bonus program, that claim failed as a matter of law.

Finally, TWH's motion demonstrated that Chardavoyne's request for an award of "punitive damages" in the prayer for relief failed as a matter of law.

## III.    THE PLAINTIFF'S OCTOBER 10 AND 29, 2007 LETTERS

On October 10, 2007, Chardavoyne's counsel faxed TWH's counsel a letter which stated as follows:

> I write to express serious concern about defendant's motion to dismiss, alternatively, for summary judgment dated September 24, 2007 (the "Motion").
>
> The claims of the complaint have narrowed, not expanded, and have withstood your motions to dismiss (originally filed on March 28, 2003 and thereafter denied by the Court), for summary judgment (originally filed on December 16, 2005 and denied in large measure by order of the Court dated July 13, 2006), for reconsideration (denied in large measure by order of the Court dated March 5, 2007) and to strike (denied by order of the Court dated September 4, 2007). Such procedural history leaves plaintiff with no alternative but to conclude that the current filings are needlessly burdensome and without sound basis. Absent withdrawal of the current motion, plaintiff will seek direction from the Court and otherwise reserve all rights to recover costs and attorneys' fees incurred henceforth on the issue.
>
> In the event that the current motion is not formally withdrawn by October 11, plaintiff will move for a 30-day extension of October

> 12, 2007. Should it remain necessary to file for the extension,
> please advise whether defendant consents pursuant to D. Conn. L.
> Civ. Rule 7.
>
> Please feel free to call me if you wish to discuss the matter further.

(Ex. A, 10/10/07 Letter from Pl.'s counsel to TWH's counsel)[3]

As indicated in the third paragraph of the letter, Chardavoyne's counsel demanded that

TWH's motion to dismiss, in the alternative, motion for summary judgment be withdrawn by

October 11. On October 11, TWH's counsel faxed Chardavoyne's counsel a letter indicating

that they would not withdraw TWH's motion and did not object to Chardavoyne's motion for

extension of time.

By a letter dated October 29, 2007, Chardavoyne's counsel referenced the October 10

letter and indicated that they intended to seek "direction from the Court regarding" TWH's

motion. (Ex. B, 10/29/07 Letter from Pl.'s counsel to TWH's counsel)[4] In particular, they

indicated that they intended to contact the Court "to schedule a telephone conference."

## IV.    THE PLAINTIFF'S RULE 11 MOTION

On November 16, 2007, Chardavoyne filed and served a motion for an award of

attorney's fees and costs, pursuant to Rule 11. By his motion, Chardavoyne maintained that

TWH's motion to dismiss, and in the alternative, motion for summary judgment, was "being

presented for an improper purpose, such as to harass or to cause unnecessary delay or needless

increase in the cost of litigation because defendant advances arguments that have been

substantially briefed and previously decided on at least three (3) separate occasions, all of which

have been ruled in favor of plaintiff." (Pl.'s Motion, at ¶ 3)

---

[3]/    A copy of the October 10, 2000 letter is attached hereto as Exhibit A.

[4]/    A copy of the October 29, 2007 letter is attached hereto as Exhibit B.

Chardavoyne's statements regarding Rule 11's "safe harbor" provision were confusing and contradictory. Specifically, as part of his motion pleading, Chardavoyne stated that "plaintiff's counsel requested defendant's counsel to (sic) withdraw the motion within twenty-one (21) days of the motion being filed." (Pl.'s Motion, at ¶ 1)[5] However, at footnote one of his memorandum of law, Chardavoyne expressly concedes that he has not complied with Rule 11's "safe harbor" provision. Nevertheless, he does not cite any authority that excuses him from having to comply with the provision. Rather, he maintains that TWH's counsel "was notified more than twenty-one (21) days ago as to the relief sought in responding to the motion." (Pl.'s 11/15/07 Mem., at 2 n.1)[6]

## STANDARD OF REVIEW

"[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir. 2003). Consequently, all Rule 11 decisions should be "'made with restraint.'" Id.

In order for a legal claim or argument to be nonfrivolous, it need not ultimately prevail. Storey, 347 F.3d at 391. Rather, in order for a legal position to be frivolous for purposes of Rule 11 sanctions, "'it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc., 186 F.3d 157, 167 (2d Cir. 1999). See Storey, 347

---

[5]    Contrary to Chardavoyne's representation, his counsel *never* asked TWH's counsel to withdraw TWH's motion within 21 days of the filing of the Rule 11 motion. Rather, as noted above, Chardavoyne's counsel's October 10 letter demanded that TWH's motion be withdrawn by October 11. The October 10 letter was Chardavoyne's counsel's *one and only* request that TWH's motion be withdrawn.

[6]    Contrary to Chardavoyne's statement, his counsel *never* advised TWH's counsel that they intended to file a Rule 11 motion. Rather, as noted above, the October 10 letter indicated that Chardavoyne would seek direction from the Court and reserve his rights to recover fees. (Ex. A)

F.3d at 391 (a claim or argument must be "patently contrary to existing law, … [or] so lacking in merit as to amount to a frivolous argument for the extension of existing law.").

For example, in <u>W.K. Webster & Co. v. American President Lines, Ltd.</u>, 32 F.3d 665, 670 (2d Cir. 1994), the Second Circuit vacated an award of attorneys' fees under Rule 11 because the arguments at issue were not "patently void of any legal or factual basis." Rather, they "presented colorable claims with regard to the issues it" raised and "plausible arguments" were made in support of the sanctioned party's positions. <u>Id.</u>

Similarly, in <u>New Shows S.A. v. Don King Productions, Inc.</u>, 50 Fed. Appx. 49, 51 (2d Cir. 2002), the Second Circuit recognized that not all unsuccessful arguments are frivolous or warrant sanctions. In particular, the <u>New Shows</u> court noted that the fact of the plaintiff's renewed motion for the award of attorney's fees under a contract contained insufficient detail to enable the district court to determine whether the fees requested were reasonable was not necessarily grounds for concluding the renewed motion was frivolous. <u>Id.</u> Rather, counsel was simply attempting to collect the fee. <u>Id.</u> Nor could the Second Circuit conclude that the fee claim was not warranted by existing law or that it was based on a frivolous argument. Accordingly, the Second Circuit reversed the granting of the defendant's Rule 11 motion. <u>Id.</u> at 51-52.

Thus, under the objective standard, in order to warrant an award of Rule 11 sanctions on the basis that a pleading is not well grounded in fact or law, "'it must be 'patently clear' that a claim has absolutely no chance of success.'" <u>Sussman v. Bank of Israel</u>, 56 F.3d 450, 457 (2d Cir. 1995). Moreover, "'[i]f a reasonably clear justification can be shown for a filing of the paper in question, no improper purpose can be found and sanctions are inappropriate.'" <u>Sussman</u>, 56 F.3d at 458 (citation omitted). More specifically, in <u>Sussman</u>, the Second Circuit

recognized that with regard to the issue of whether an improper purpose can warrant the imposition of sanctions for a nonfrivolous filing, "[a] party should not be penalized or deterred from seeking and obtaining warranted judicial relief merely because one of his multiple purposes in seeking that relief may have been improper." 56 F.3d at 459. Indeed, <u>Sussman</u> concluded that a threat of suit in order to force a settlement was not a basis for Rule 11 sanctions where the threatened claims were not found to be meritless. <u>Id.</u>

In <u>Securities Industry Assoc. v. Clarke</u>, 898 F.2d 318 (2d Cir. 1990), <u>abrogated on other grounds by, Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384 (1990), the Second Circuit concluded that in analyzing a Rule 11 motion, "[a] distinction must be drawn between a position which is 'merely losing' and one which is both 'losing and sanctionable.'" 898 F.2d at 321. Specifically, it recognized that it is "self-evident that when a particular point of law is unsettled, parties and (or) their attorneys need not accurately prognosticate the correct law in order to avoid sanctions." <u>Id.</u> at 321-22. Rather, it is enough for a party to craft "a reasonable position based on existing precedents" and where relevant, "good faith reliance" on district court's prior order. <u>Id.</u> at 322. In such circumstances, "[e]ven if it is ultimately a losing one, such a position does not merit a Rule 11 sanction." <u>Id.</u>

"In framing Rule 11, Congress intended to provide a prophylactic against abuse of the adversary system by attorneys .... It did not, however, aim to design a disincentive to honest and effective representation of one's client." <u>Id.</u> at 322. "On more than one occasion, [the Second Circuit] ha[s] 'remind[ed] judges to refrain from imposing sanctions where such action would 'stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'" <u>Clarke</u>, 898 F.2d at 322. Accordingly, in ruling on a Rule 11 motion, courts should "decline to stymie the necessary creativity, diligence and zeal involved in effective advocacy." <u>Id.</u> <u>See Business</u>

14

Guides, Inc. Chromatic Communications Enter., Inc., 498 U.S. 533, 570 (1991) (Kennedy, J.,

dissenting) (recognizing that courts must not adopt interpretation of Rule 11 that makes "honest

claimants fear to petition the courts"); Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393

(1990) ("central purpose of Rule 11 is to deter baseless filings in district court ….").

## ARGUMENT

### I.    THE PLAINTIFF'S RULE 11 MOTION MUST BE DENIED BECAUSE IT DID NOT COMPLY WITH THE MANDATORY "SAFE HARBOR" PROVISION

Chardavoyne's motion must be denied because it did not comply with Rule 11's

mandatory "safe harbor" provision.[7]  Indeed, Chardavoyne concedes in footnote 1 of his

memorandum of law that he has not complied with that provision.  He does not cite any authority

excusing him from full and proper compliance with the "safe harbor" provision.  Instead, after

making the concession, Chardavoyne maintains that TWH's counsel "was notified more than

twenty-one (21) days ago as to the relief sought in responding to the motion."  (Pl.'s Mem., at 2

n.1)

In fact, contrary to Chardavoyne's representation, his counsel *never* advised TWH's

counsel that it intended to file a Rule 11 motion.  As a review of the October 10 letter reveals,

Rule 11 is never mentioned.  The October 10 letter was Chardavoyne's counsel's *one and only*

*request* that TWH's motion be withdrawn.

---

[7]    This is not the first time that Chardavoyne has ignored the rules.  Specifically, after a 30 day extension of time, Chardavoyne's opposition to TWH's motion to dismiss/motion for summary judgment was due to be filed on November 14, 2007.  A paralegal from his counsel's office contacted TWH's counsel on November 15 and sought TWH's position on a second motion for extension of time for one day, *nunc pro tunc*.  TWH's counsel had no objection. According to the paralegal, Chardavoyne's opposition was going to be filed that day.  It was not. Instead, Chardavoyne filed his opposition and Rule 11 motion on November 16.  He did not, however, file a motion asking the Court to accept his opposition out of time.  Rather, he just filed the opposition without seeking leave from the Court.

Rule 11(c)(2), (formerly Rule 11(c)(1)(A)), is commonly referred to as the "safe harbor"

provision. It provides as follows:

> A motion for sanctions must be made separately from any other
> motion and must describe the specific conduct that allegedly
> violates Rule 11(b). The motion *must be served* under Rule 5, *but
> it must not be filed or be presented to the Court* if the challenged
> paper, claim, defense, contention, or denial is withdrawn or
> appropriately corrected within 21 days after service or within
> another time the Court sets. If warranted, the Court may award to
> the prevailing party the reasonable expenses, including attorney's
> fees incurred for the motion.

(emphasis added).

The "plain language" of Rule 11 requires a copy of the actual motion for sanctions to be

served on the person(s) accused of sanctual behavior at least 21 days prior to the filing of that

motion. <u>Roth v. Green</u>, 466 F.3d 1179, 1192 (10th Cir. 2006). This reading of the rule is

bolstered by the Advisory Committee's Notes to the 1993 amendment to Rule 11 which provide

that the "'motion for sanctions is not, however, to be filed until at least 21 days (or such other

period as the court may set) after being served.'" <u>Id.</u>[8] In fact, the 1993 Advisory Committee

Notes expressly recognize that "a motion *may be filed only if* the offending paper is not

withdrawn or corrected within 21 days of service of the motion…." (emphasis added). The

1993 Notes explain that "[t]hese provisions are intended to provide a type of 'safe harbor'

against motions under Rule 11 in that a party *will not be subject to sanctions* on the basis of

another party's motion *unless*, after receiving the motion, it refuses to withdraw that position or

to acknowledge candidly that it does not currently have evidence to support a specified

allegation." (emphasis added). The 1993 Advisory Committee Notes further recognize that "[t]o

---

[8]/     The Advisory Committee Notes to the 1993 amendments to Rule 11 make it clear that
"[i]f, during this [21 day] period, the alleged violation is corrected, as by withdrawing (whether
formally or informally) some allegation or contention, the motion should not be filed with the
court."

stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the [1993] revision provides that the 'safe harbor' period begins to run only upon service of the motion."

"It is clear from the language of [Rule 11] that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions." Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 389 (4th Cir. 2004) (en banc). "In addition, the rule serves to limit the power of the district court to impose sanctions under the rule, by expressly conditioning the court's authority to impose sanctions upon compliance with the safe-harbor provisions." Id. Thus, under Rule 11, where a movant does not comply with the procedural prerequisite, the district court cannot award Rule 11 sanctions. See id.

Simply stated, "[t]he requirements of [Rule 11] are straightforward: The party seeking sanctions must serve the Rule 11 motion on the opposing party at least twenty-one days before the filing of the motion with the district court, and sanctions may be sought only if the challenge pleading is not withdrawn or corrected within twenty-one days after service of the motion." Brickwood Contractors, 369 F.3d at 389. In other words, Rule 11(c)(2) (formerly Rule 11(c)(1)(A)) establishes "conditions precedent to the imposition of sanctions under the rule. If those conditions are not satisfied, the Rule 11 motion for sanctions may not be filed with the district court. If a non-compliant motion nonetheless is filed with the court, the district court lacks authority to impose the requested sanctions." Id.

In the instant case, Chardavoyne's opposition to TWH's motion to dismiss/motion for summary judgment was originally due to be filed with the Court on October 15, 2007. As noted above, on October 10, 2007, Chardavoyne's counsel faxed TWH's counsel a letter demanding

that TWH's motion be withdrawn by October 11 and indicating that if the motion was not

withdrawn within 24 hours, Chardavoyne would seek "direction" from the Court and "reserve"

his rights to recover attorney's fees and file a motion for extension of time.  (Ex. A)[9]

Contrary to Chardavoyne's suggestion in footnote 1 of his memorandum, "nothing" in

subsection (c)(2) of Rule 11 "suggests that a letter addressed to the alleged offending party will

suffice to satisfy the safe harbor requirements.  Rather, the plain language of subsection (c)[(2)

(formerly subsection (c)(1)(A))] requires a copy of the actual motion for sanctions to be served

on the person(s) accused of sanctionable behavior at least twenty-one days prior to the filing of

that motion."  Roth, 466 F.3d at 1192.[10]  The reason for requiring a copy of the motion itself,

rather than simply a warning letter, to be served on the allegedly offending party is clear.  Id.

The safe harbor provisions were intended to "'protect litigants from sanctions whenever possible

in order to mitigate Rule 11's chilling effects, formaliz[e] procedural due process considerations

such as notice for the protection of the party accused of sanctual behavior, and encourage[e] the

withdrawal of papers that violate the rule without involving the district court.'"  Id.  Thus, a

failure to comply with them must result in the rejection of the motion for sanctions.  See

Brickwood Contractors, 369 F.3d at 389; Roth, 466 F.3d at 1192.

_____

[9]      Contrary to Chardavoyne's suggestion, a statement in a letter that a party will seek
"direction from the court" and is "reser[ving]" his right to recover his attorney's fees does not
satisfy the "safe harbor" provision.  The Advisory Committee Notes to the 1993 amendments to
Rule 11 indicate that "[i]n most cases, ..., counsel should be expected to give informal notice to
the other party, whether in person or by a telephone call or letter, of a potential violation before
proceeding to prepare and serve a Rule 11 motion."  A statement in a letter that a party is
"reserv[ing]" his right to recover his attorney's fees does not even constitute an informal warning
or notice that a Rule 11 motion will be filed.  Moreover, sanctions under Rule 11 are determined
by the Court and they are not necessarily monetary.  Even when monetary, they are not
necessarily paid to the opposing party.  In the instant case, Chardavoyne was already seeking an
award of fees in connection with his Wage Act claim.

[10]      Chardavoyne cannot raise new justifications for his violating or ignoring the "safe
harbor" provision for the first time in a reply brief.  See Cooseman's Specialties, Inc. v.
Gargiulo, 485 F.3d 701, 709 (2d Cir. 2007); In re Harris, 464 F.3d 263, 268 n.3 (2d Cir. 2006).

Chardavoyne filed a motion under Rule 11 on November 16, 2007. That motion was served on TWH's counsel that same day for the first time. Thus, Chardavoyne's motion does not satisfy the mandatory "safe harbor" requirement under Rule 11(c)(2), as it was not served on TWH twenty-one (21) days prior to its filing with the district court. Accordingly, the Court does not have the authority to consider Chardavoyne's Rule 11 motion and it must deny that motion. Brickwood Contractors, 369 F.3d at 389.

## II.    THE PLAINTIFF'S MOTION MUST BE DENIED BECAUSE TWH'S ARGUMENTS IN ITS MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT ARE MERITORIOUS

More importantly, in addition to Chardavoyne's failure to comply with the mandatory prerequisite for filing a Rule 11 motion, as demonstrated below, a review of the arguments advanced in TWH's motion to dismiss/motion for summary judgment confirms that the accusations in Chardavoyne's motion are false.

In particular, TWH's motion seeks dismissal of two categories of claims. The first is claims which were previously dismissed by the March 5 Ruling and thus should not have re-appeared in Chardavoyne's Third Amended Complaint. The second category of claims is those which fail as a matter of law under either (a) analysis presented for the first time in TWH's September 24, 2007 motion, (b) analysis not previously addressed by the Court and/or (c) analysis supported by *binding* precedent cited for the first time in TWH's motion.

Under the procedural posture of this case, a Rule 11 sanction could only be possible if a litigant's argument had "absolutely no chance of success." That is clearly not the situation before the Court in this case. Indeed, TWH's briefing and analysis in support of its September 24 motion are detailed and well founded. Accordingly, Chardavoyne's Rule 11 motion must be denied.

A district court may impose Rule 11 sanctions if a paper is filed with the court for an improper purpose, or if it is frivolous. Fed. R. Civ. P. 11(b)(1)-(2). The standard governing both the "improper purpose" and the "frivolous" inquiries is objective. G.C. and K.B. Investments, Inc. v. Wilson, 326 F.3d 1096, 1109 (9th Cir. 2003). "The standard is reasonableness. The 'reasonable man' against which conduct is tested is a competent attorney admitted to practice before district court.'" Id.

Under Rule 11, an attorney "need not be correct in his view of the law." Zaldivar v. City of Los Angeles, 780 F.2d 823, 830 (9th Cir. 1986), abrogated on other grounds by, Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990). Thus, the granting or denial of a motion is not dispositive of the issue of sanctions. Id. The pleader must have a good faith argument for his or her view of what the law is, or should be. Id. at 831. A good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains after a reasonable inquiry. Id. Such inquiry is that amount of examination into the facts and legal research which is reasonable under the circumstances of the case. Id.

As the Second Circuit has admonished, "[c]ourts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed, and any and all doubts must be resolved in favor of the signer." Eastway Construction Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985). For example, in Pinsky v. Duncan, 79 F.3d 306, 314 (2d Cir. 1996), the Second Circuit affirmed this Court's denial of the plaintiff's Rule 11 motion for fees and costs because the governing case law did not mandate the entry of a judgment of damages against the defendant and the motions that the plaintiff objected to "primarily sought dismissal of the claim for damages" and thus "were reasonable under the circumstances."

In <u>Townsend v. Holman Consulting Corp.</u>, 929 F.2d 1358, 1362 (9th Cir. 1991) (en banc), the Ninth Circuit recognized that the "improper purpose" and "frivolousness" inquiries will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose.[11] The standard governing both inquiries is objective. <u>Id.</u> For example, with regard to complaints which initiate actions, courts have held that such complaints are not filed for an improper purpose if they are non-frivolous. <u>Id.</u> Since objective evidence of the signer's purpose is to be disregarded, the "improper purpose" inquiry subsumes the "frivolousness" inquiry in this class of cases. <u>Id.</u> The reason for the rule regarding complaints is that the complaint is, of course, the document which embodies the plaintiff's cause of action and it is the vehicle through which he enforces his substantive legal rights. <u>Id.</u> (footnote omitted). Enforcement of those rights benefits not only individual plaintiffs but may benefit the public, since the bringing of meritorious lawsuits by private individuals is one way that public policies are advanced. <u>Id.</u> Thus, "it would be counter productive to use Rule 11 to penalize the assertion of non-frivolous substantive claims, even when the motives for asserting those claims are not entirely pure." <u>Id.</u>

The conduct forming the basis of the charge of harassment "must do more than in fact bother, annoy or vex the complaining party." <u>Zaldivar</u>, 780 F.2d at 831-32. "Harassment under Rule 11 focuses upon the improper purpose of the signer, objectively tested, rather than the consequence of the signer's act, subjectively viewed by the signer's opponent." <u>Id.</u> at 832. In order for a claim of harassment to be sustained on the basis of successive filings, "there must be 'a clear indication that the proposition urged in the repeat claim was resolved in the earlier one.'"

---

[11]/     In <u>Sussman</u>, the Second Circuit expressly stated its agreement with the Ninth Circuit's analysis in <u>Townsend</u>. <u>Sussman</u>, 56 F.3d at 458-59.

Zaldivar, 780 F.2d at 834. There cannot be any harassment under Rule 11 where the pleading filed is well grounded in fact and warranted by existing law. See id. at 832.

For example, in Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte, 141 F.3d 1434, 1448 (11th Cir. 1988), the Eleventh Circuit analyzed the "improper purpose" prong of Rule 11 in the context of repeated arguments, the same accusation that Chardavoyne levies against TWH. The Eleventh Circuit recognized as follows:

> 'Improper purpose may be shown by excessive persistence in pursuing a claim or defense in the face of repeated adverse rulings….Rule 11 is intended to reduce frivolous claims and to deter costly meritless maneuvers, thereby eliminating delay, and reducing the cost of litigation.…In order for sanctions to be appropriate, however, the filing for which sanctions are imposed must be frivolous, that is, it must enjoy no factual and legal support in the record.…(Rule 11 is intended to deter claims with *no* factual or legal basis at all; creative claims, coupled even with ambiguous or inconsequential facts, may merit dismissal, but not punishment.)'… ***In order for sanctions to be imposed for excessive relitigation of an issue already decided by the court, the disputed issue must have been clearly decided by the court's earlier orders, and counsel's relitigation of the issue must clearly offer no meritorious new arguments.***

Id. (citations omitted, emphasis in omitted citation)(emphasis added).[12]

Similarly, in Fromal v. Lake Monticello Owners' Assoc., Inc., 2006 WL 1195778, at *3 (W.D.Va. May 3, 2006) appeal dismissed, 223 Fed. Appx. 203 (4th Cir. 2007), the court granted a Rule 11 motion "because the Court's previous Order and Opinion made it clear that the [plaintiffs'] claims … had no legal support and had no possibility of success, yet Plaintiffs continued to pursue these claims." This is clearly not the situation in the case at bar.

---

[12] In Industrial Risk Insurers, the district court imposed sanctions against a third-party defendant which had moved for a preliminary injunction. 143 F.3d at 1449. The opposing party argued, and the district court agreed, that the motion for a preliminary injunction was an improper attempt to relitigate an issue - the venue of the arbitrable proceeding - already decided by the district court. Id. On appeal, the Eleventh Circuit reversed, concluding that the motion for a preliminary injunction "clearly enjoyed support in the record." Id. at 1450.

A.    **The Plaintiff's Claim For Breach Of Contract Based On The Alleged Demand/Requests That A Company Car Be Returned To New Jersey Fails As A Matter Of Law**

As demonstrated in TWH's initial and reply memoranda submitted in support of its motion to dismiss/motion for summary judgment, the plain language of the March 5 Ruling identified exactly which breach of contract theories the Court was allowing Chardavoyne to proceed on.  The March 5 Ruling does not refer to any company car-based theories. Accordingly, TWH properly sought dismissal/summary judgment on the company car-based theories which continue to appear in the Third Amended Complaint.

Moreover, TWH's motion further argued that to the extent that the company car-based theories were being allowed to proceed (a development which would constitute a reversal, modification or clarification of the March 5 Ruling), TWH sought dismissal of Chardavoyne's claim that the Employment Agreement was breached based upon an alleged request/demand that the car be returned in New Jersey.[13]  TWH's argument was well grounded in the case law, the reasoning from the March 5 Ruling and an analysis of both the Third Amended Complaint and the terms of the Employment Agreement.  In sum, neither Chardavoyne's opposition memorandum nor his Third Amended Complaint identifies any term in the Employment Agreement which prohibited TWH from either requesting or demanding that the car be returned in New Jersey.  The identification of the term of a contract which has allegedly been breached is an essential element of a breach of contract claim.  Absent this requisite allegation, Chardavoyne's request/demand theory fails as a matter of law.  Moreover, an allegation of damages resulting from an alleged breach of a contract is also a prerequisite to that claim.

---

[13]/    TWH's reply memorandum in support of its motion to dismiss/motion for summary judgment demonstrates that its arguments in connection with Chardavoyne's company car-based claims were simple and direct.  Chardavoyne ignores TWH's arguments and maintains that they consist of something they do not.

Neither the Third Amended Complaint nor Chardavoyne's opposition memorandum identifies any damages he suffered as a result of having a request/demand made to him. Thus, no reasonable jury could find that Chardavoyne suffered any damages from having received either a request or a demand that the car be returned in New Jersey. This is particularly so since Chardavoyne does not maintain that he complied with that request/demand.

Consequently, it was not "clear" under existing precedent or the March 5 Ruling that TWH's arguments had "absolutely no chance of success." See Sussman, 56 F.3d at 457. See also Simon DeBartolo, 186 F.3d at 167; Industrial Risk, 141 F.3d at 1448; Zaldivar, 780 F.2d at 834. To the contrary, even if not successful, at a minimum, the arguments were well grounded in law and fact. Indeed, they were reasonable in light of the March 5 Ruling and it would violate Rule 11's fundamental purpose to punish TWH for advancing proper and reasonable legal arguments. Accordingly, as demonstrated in TWH's memoranda in support of its motion to dismiss/motion for summary judgment and in this opposition memorandum, TWH's argument is meritorious and there is no basis for the granting of Chardavoyne's Rule 11 motion.

**B.      The Plaintiff's Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Fails As A Matter Of Law**

Chardavoyne's arguments in connection with the claim for breach of an implied covenant of good faith and fair dealing (Count II) are the most disturbing. Indeed, they clearly highlight the fact that his Rule 11 motion is frivolous.

As demonstrated in TWH's initial and reply memoranda in support of its motion to dismiss/motion for summary judgment, under the ***controlling*** case law from the Connecticut Supreme and Appellate Courts and this Court's reasoning from the March 5 Ruling, Chardavoyne's claim of a breach of an implied covenant of good faith and fair dealing fails as a matter of law. In sum, the March 5 Ruling interpreted the language from a 1987 Connecticut

24

Supreme Court case to conclude that an implied covenant claim sounds in tort under Connecticut law. As demonstrated in TWH's memoranda, the Connecticut Supreme Court in 2005 expressly recognized that a breach of an implied covenant claim "sounds in contract." Collins v. Anthem Health Care Plans, Inc., 275 Conn. 309, 333-34 (2005). The Connecticut Appellate Court confirmed this holding in 2006. Bellemare v. Wachovia Mortgage Corp., 94 Conn. App. 593, 610 (2006), aff'd 284 Conn. 193 (2007). Judge Hall further confirmed the holdings of the Connecticut Supreme and Appellate Courts in a 2007 decision. Independence Ins. Serv. Corp. v. Hartford Life Ins. Co., 472 F.Supp.2d 183, 189 (D.Conn. 2007). Her decision also expressly recognized that the decisions from the Connecticut Supreme and Appellate Courts were binding on the federal district court, despite prior Second Circuit case law discussing Connecticut law. Id.

It is the most basic and fundamental proposition of federal jurisdiction that under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), a federal court sitting in diversity is "***bound***" by the rulings of a state's highest court on a point of that state's law. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 939 (9th Cir. 2001) (emphasis added). See Kurczi v. Eli Lilly and Co., 113 F.3d 1426, 1429 (6th Cir. 1997). Despite the well recognized mandate of the Erie doctrine and the clear impact of Collins and Bellemare, Chardavoyne, without acknowledging, let alone distinguishing Collins and Bellemare, maintains that a claim for a breach of an implied covenant of good faith and fair dealing sounds in tort under Connecticut law. In support of his argument, Chardavoyne not only cites this Court's prior ruling but cites a 1994 decision by this Court. Thus, Chardavoyne makes an affirmative representation to this Court regarding the status of Connecticut law. The most cursory review of Collins, Bellemare and Independence Ins. confirms that Chardavoyne's representation is wholly without merit.

Indeed, by Chardavoyne's affirmative representation, he is misleading the Court into committing legal error. Thus, Chardavoyne's affirmative representation regarding Connecticut law violates Rule 3.3(a) of the Professional Rules of Conduct. Rule 3.3(a) provides in relative part as follows:

> (a) A lawyer shall not knowingly:
>
> > (1) Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> >
> > (2) Fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; …

The Commentary to Rule 3.3 of the Rules of Professional Conduct recognizes that "although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be mislead by false statements of law or fact or evidence that the lawyer knows to be false." In particular, the Commentary to Rule 3.3 emphasizes that:

> [l]egal argument based on a knowingly false representation of law constitutes dishonesty towards the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in subsection (a)(2), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing party. The underlining concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

Here, Chardavoyne's argument violates Rule 3.3(a). Specifically, his memorandum in opposition to TWH's motion to dismiss/motion for summary judgment ignores the Erie doctrine, one of the most basic and fundamental concepts of federal diversity jurisdiction, and argues that under Connecticut law, a claim for breach of an implied covenant of good faith and fair dealing

26

sounds in tort. As authority for his argument, Chardavoyne cites this Court's prior ruling and a 1994 decision by this Court. Chardavoyne makes his argument without acknowledging, let alone attempting to distinguish Collins and Bellemare. Under Collins and Bellemare, which are **binding** on this Court, it is clear that a claim for breach of an implied covenant of good faith and fair dealing sounds in contract. There is no room for debate on this point of Connecticut law and Chardavoyne's express representation to the contrary constitutes an effort to mislead this Court into committing legal error.

Distorting the analysis even further, Chardavoyne falsely accuses TWH of violating Rule 11 by daring to bring **controlling** Connecticut case law to the Court's attention. Chardavoyne's argument and accusations are frivolous. In fact, they contradict the fundamental principles underlying Rule 11 and the Rules of Professional Conduct. Specifically, the Advisory Committee Notes to the 1993 amendments recognize that a Rule 11 motion should not be filed "to intimidate an adversary into withdrawing contentions that are fairly debatable." Similarly, the Commentary to Rule 3.3 of the Rules of Professional Conduct recognizes that "[a] lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force." Moreover, the Commentary to Rule 3.3 provides that a "lawyer must not allow the tribunal to be misled by false statements of law or fact...."

In sum, TWH's argument is meritorious and there is no basis for granting Chardavoyne's Rule 11 motion. More specifically, it was not "clear" under existing precedent that TWH's argument had "absolutely no chance of success." See Sussman, 56 F.3d at 457. See also Simon DeBartolo, 186 F.3d at 167; Industrial Risk, 141 F.3d at 1448; Zaldivar, 780 F.2d at 834. To the contrary, TWH's argument is based on precedent which is **binding** on this Court. TWH's

bringing that precedent to the Court's attention was proper under both Rule 11 and the Rules of Professional Conduct.

**C.    The Plaintiff's Alternative "At-Will" Employment Theory Fails As A Matter Of Law**

As demonstrated in TWH's initial and reply memoranda in support of its motion to dismiss/motion for summary judgment, the plain language of the March 5 Ruling expressly identifies the theories behind the breach of implied covenant of good faith and fair dealing claim that the Court was allowing to proceed. That plain language does not include Chardavoyne's alternative "at-will" theory. Indeed, neither Chardavoyne's April 28, 2006 memorandum in opposition to the defendant's motion for summary judgment nor his September 6, 2006 memorandum of law in opposition to the defendants' motion for reconsideration advanced arguments in defense of the "at-will" theory. Rather, at footnote 37 of the April 28 memorandum, Chardavoyne merely maintained in conclusory fashion that the defendants had conceded that he was not an at-will employee.

Thus, by its motion to dismiss/motion for summary judgment, TWH properly sought a ruling from the Court that it had dismissed Chardavoyne's "at-will" employment alternative theory (yet again). The clear language of the March 5 Ruling supports this conclusion. It was proper for TWH to seek an express ruling in the face of Chardavoyne's continuing to include the "at-will" alternative theory in his Third Amended Complaint. Moreover, it was proper for TWH to argue that if the Court changed its opinion and now held that the plain language of the March 5 Ruling did not dismiss the "at-will" alternative theory (a holding which would constitute a reversal, clarification or modification of the plain language of the March 5 Ruling), that the Court address TWH's substantive arguments that the "at-will" theory fails as a matter of law under the Pennsylvania law case law.

28

Chardavoyne's opposition to TWH's motion to dismiss/motion for summary judgment confirms that TWH's arguments are well founded. In particular, his opposition merely consists of a conclusory statement that it is possible to assert a breach of an "at-will" employment relationship under Pennsylvania law.

Consequently, it was not "clear" under existing precedent or the March 5 Ruling that TWH's arguments had "absolutely no chance of success." See Sussman, 56 F.3d at 457. See also Simon DeBartolo, 186 F.3d at 167; Industrial Risk, 141 F.3d at 1448; Zaldivar, 780 F.2d at 834. Even if not successful, at a minimum, TWH's arguments for the dismissal of the "at-will" alternative theory are well grounded in the case law. Moreover, they were reasonable in light of the language of the March 5 Ruling. Indeed, it would violate the fundamental purposes of Rule 11 to punish TWH for advancing proper legal arguments. Accordingly, Chardavoyne's Rule 11 motion is without merit and must be denied.

### D.    To The Extent The Plaintiff Bases His Wage Act Claim On The Shares Of Stock Allegedly Awarded Him Under The LTIP/Bonus Program, That Claim Fails As A Matter Of Law

Chardavoyne's argument that Rule 11 sanctions are appropriate in connection with TWH's challenge to a specific portion of his Wage Act claim is wholly without merit. TWH's argument that a Wage Act claim could not be based on the 872 shares of stock allegedly due Chardavoyne under the LTIP/bonus program is well grounded in the case law. Indeed, Chardavoyne's opposition consists of nothing more than conclusory statement and a grossly inaccurate paraphrasing of TWH's September 24, 2007 memorandum of law. It does not include any substantive analysis of the case law cited by TWH.[14]

---

[14]/    TWH's September 24 memorandum noted that it was unclear whether Chardavoyne based his Wage Act claim in Count III on the shares of stock allegedly due him under the Long-Term Incentive Plan. (TWH's 9/24/07 Mem., at 14) Chardavoyne's opposition memorandum

Consequently, it was not "clear" under existing precedent or the March 5 Ruling that TWH's arguments had "absolutely no chance of success." See Sussman, 56 F.3d at 457. See also Simon DeBartolo, 186 F.3d at 167; Industrial Risk, 141 F.3d at 1448; Zaldivar, 780 F.2d at 834. To the contrary, at a minimum, TWH's arguments are well grounded in law and fact. Thus, it would violate the fundamental purpose of Rule 11 to punish TWH for presenting a well founded legal argument, which its adversary has not challenged on a substantive level, but has only opposed with a conclusory statement and a mischaracterization of TWH's September 24 brief. Accordingly, the Court must deny Chardavoyne's Rule 11 motion.

### E.    The Plaintiff's Claim For Punitive Damages Fails As A Matter Of Law

Chardavoyne has not presented any argument that TWH's challenge to his claim for common law punitive damages was frivolous. Rather, he has only made passing response statements to TWH's legal arguments. An opposition to a legal argument does establish that that argument was frivolous under Rule 11.

Despite the impression that Chardavoyne attempts to create, the issue of whether common law punitive damages were properly claimed was presented to the Court for the first time in TWH's motion to dismiss/motion for summary judgment filed on September 24, 2007. As demonstrated in TWH's initial and reply memoranda in support of its motion, Chardavoyne's breach of contract claim does not provide a basis for considering an award of common law punitive damages. Chardavoyne does not deny this. Moreover, his conclusory statements in the implied covenant count do not provide a basis for the consideration of punitive damages. This is particularly so in the employment context. Indeed, in light of Collins and Bellemare, a claim for breach of an implied covenant of good faith and fair dealing sounds in contract and thus, as

---

confirms that he is seeking recovery under the Wage Act for the stock. Thus, it was proper for TWH to bring the issue to the Court's attention and to seek resolution of it.

Judge Hall recognized in <u>Independence Ins.</u>, cannot support a claim for common law punitive

damages. 472 F.Supp.2d at 191-92

Consequently, it was not "clear" under existing precedent or the March 5 Ruling that

TWH's argument had "absolutely no chance of success." <u>See</u> <u>Sussman</u>, 56 F.3d at 457. <u>See also</u>

<u>Simon DeBartolo</u>, 186 F.3d at 167; <u>Industrial Risk</u>, 141 F.3d at 1448; <u>Zaldivar</u>, 780 F.2d at 834.

To the contrary, TWH's argument is well supported by the case law and represents TWH's

proper defense of itself in this litigation. At a minimum, even if not successful, TWH's

challenge to the punitive damages claim is not frivolous. Thus, it would violate the fundamental

purpose of Rule 11 to punish TWH for presenting a well founded legal argument. Accordingly,

Chardavoyne's Rule 11 motion is without merit and must be denied.

## III.    THE PLAINTIFF'S RULE 11 MOTION MUST BE DENIED BECAUSE TWH'S MOTION TO DISMISS/MOTION FOR SUMMARY JUDGMENT WAS FILED FOR PROPER PURPOSES

Chardavoyne's Rule 11 motion is based on a claim that TWH's motion to dismiss/motion

for summary judgment consists of arguments that the Court previously considered and rejected

in favor of Chardavoyne. (Pl.'s Motion, at ¶ 3) As demonstrated above, even the most cursory

review of the pleadings reveals Chardavoyne's claim to be frivolous. In addition to being

supported by the case law, this Court's prior rulings and sound analysis, TWH's motion was

filed for proper purposes.

TWH was instructed by the Court to file a response to the Third Amended Complaint

within 20 days of the September 4 Ruling. (9/4/07 Ruling, at 3) Rule 12(b)(6) of the Federal

Rules of Civil Procedure gives all litigants, including TWH, a right to move for the dismissal of

claims which fail as a matter of law. Similarly, Rule 56 gives all litigants, including TWH, a

right to the entry of summary judgment on claims which fail as a matter of law. <u>Celotex v.</u>

Catrett, 477 U.S. 317, 322-23 (1986) ("plain language of Rule 56(c) mandates the entry of summary judgment. ...).

TWH's motion is a proper assertion of its rights under the Federal Rules of Civil Procedure, which allow it to defend itself in this lawsuit. Conversely, Chardavoyne has no right to demand that TWH waive its rights or compromise its defense. The fact that Chardavoyne believes that he is entitled to a positive outcome in this litigation does not require TWH to forego its well founded defenses. See Zaldivar, 780 F.2d at 832. Nor does it require TWH to adopt Chardavoyne's completely inaccurate reading of the Court's March 5 Ruling.

As demonstrated above, TWH's arguments in support of its motion to dismiss/motion for summary judgment were supported by case law, this Court's March 5 Ruling and sound legal analysis. By contrast, Chardavoyne's opposition was based upon conclusory statements, inaccurate paraphrasing and false accusations.

In addition to asserting its right to defend itself in this litigation, TWH's motion properly brought before this Court legal issues which needed to be resolved before the preparation of the mandatory trial memorandum. Contrary to what appears to be Chardavoyne's belief, there is no right to trial by ambush. The trial memorandum (formerly known as the pretrial order) has been part of trial practice in the District of Connecticut for nearly 20 years. In that pleading, the parties are required to identify witnesses and exhibits. They also provide objections to exhibits, proposed jury instructions and arguments on legal issues.

TWH's motion to dismiss/motion for summary judgment properly brings before this Court legal issues which should be resolved, not only prior to the selection of the jury, but before the preparation of the trial memorandum. In particular, TWH should not have to identify witnesses, identify exhibits, object to exhibits or present jury instructions or legal arguments on

Chardavoyne's claims which fail as a matter of law. This is particularly true for claims dismissed by the March 5 Ruling. As demonstrated above, and in TWH's memoranda filed in support of its motion to dismiss/motion for summary judgment, several of Chardavoyne's claims fail as a matter of law and some of those claims were previously dismissed by the March 5 Ruling. Consequently, neither the parties nor the Court should have to spend any time on those claims as part of the trial preparation process.

For example, under governing case law from the Connecticut Supreme Court and the reasoning from this Court's March 5 Ruling, Chardavoyne's claim for breach of an implied covenant of good faith and fair dealing (Count II) fails as a matter of law. By its motion to dismiss/motion for summary judgment, TWH properly seeks to have this Court eliminate that claim (Count II) from the case. With the elimination of that claim/count, there will be no need for testimony, exhibits, jury instructions or legal arguments related to it.

Indeed, if TWH did not file its motion to dismiss/motion for summary judgment, the first opportunity the Court would have to rule (or re-rule) on some of these legal issues might be in the midst of a trial as part of a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a). A Rule 50(a) motion could only be made after testimony, the introduction of exhibits and objections to testimony and exhibits. The Court would then have to analyze TWH's arguments within the time limitations that naturally arise during a jury trial. It might, as is typically the practice, reserve its decision until after the jury verdict. TWH's motion to dismiss/motion for summary judgment provides the Court with a vehicle by which to analyze these issues in an orderly fashion and eliminates the need for trial preparation time and trial time being spent on legally deficient claims. In fact, if TWH waited until the time of trial, Chardavoyne would most

likely criticize TWH for not raising the issues prior to a Rule 50(a) motion.  The Court itself also might not appreciate TWH not raising the issues sooner.

Simply stated, by its motion to dismiss/motion for summary judgment, TWH properly seeks to defend itself in this lawsuit and to streamline both the trial preparation process and the trial itself.  These are well-established rights and proper procedural moves.

Although the September 4 Ruling excused Chardavoyne's continued assertion of previously dismissed allegations and claims because the Court believed that it had "defined the contours of plaintiff's claims in its ruling" and would not be submitting the Third Amended Complaint to the jury, the Court overlooked the adverse impact on the preparation of the mandatory trial memorandum and the conduct of the trial itself.  As Chardavoyne's opposition to TWH's motion to dismiss/motion for summary judgment reveals, Chardavoyne intends to vehemently assert allegations and claims that this Court has previously dismissed.

In particular, it appears that Chardavoyne is taking the approach that, despite the clear language of the March 5 Ruling and the confirmation of that ruling in the September 4 Ruling, unless the Court explicitly referred to an allegation or claim as being dismissed, that allegation or claim remains in the case.  Consequently, Chardavoyne's tactics could very likely turn the preparation of the trial memorandum into an unnecessarily extended process.  For example, if Chardavoyne refuses to acknowledge that certain allegations and claims have been previously dismissed, TWH may be required to identify witnesses and exhibits, prepare jury instructions, and legal arguments in response to those previously dismissed claims.  The Court should not allow this.

Apparently, under Chardavoyne's theory, he has a right to have a trial which is confusing and which forces the Court to engage in legal analysis under strained and rushed conditions.  He

clearly has no such right. By contrast, TWH's motion to dismiss/motion for summary judgment, has identified important legal issues for the Court and allowed the parties an opportunity to fully brief those issues. It also allows the Court to analyze those issues in a reasonable and orderly manner. A litigant's defense of itself and orderly presentation of issues to the Court do not provide a basis for sanctions. Accordingly, Chardavoyne's Rule 11 motion must be denied.

## IV.    THE PLAINTIFF'S RULE 11 MOTION WAS FILED FOR IMPROPER PURPOSES

Chardavoyne's claim that TWH's motion to dismiss/motion for summary judgment was filed to create delay is a false accusation. (Pl.'s Motion, at ¶ 3) Indeed, a review of the Court's electronic docket reveals that Chardavoyne has repeatedly moved for extensions of time during the course of this litigation. Specifically, he has filed no less than 14 motions for extension of time in this case, including 2 or 3 joint motions which his counsel initiated and drafted.

For example, Chardavoyne filed 4 motions for extensions of time to file his opposition to the defendants' first motion for summary judgment. (Elec. Docket Entry Nos. 86, 89, 91 and 93) The defendants' first motion for summary judgment was filed on December 16, 2005. Chardavoyne did not file his opposition until April 28, 2006. Thus, as a result of Chardavoyne's 4 motions for extensions of time, 133 days passed between the filing of the defendants' first motion for summary judgment and the filing of an opposition by Chardavoyne.

Chardavoyne also filed a motion for extension of time and effectively granted himself a second extension to file his opposition to TWH's motion to dismiss/motion for summary judgment. (See supra note 7) Thus, it took Chardavoyne 53 days to file a 10 page cursory opposition, a significant portion of which is devoted to supporting his Rule 11 motion. Accordingly, to the extent Chardavoyne accuses TWH of delays, that accusation is false and fails to acknowledge the substantial delays created by Chardavoyne himself.

As demonstrated in TWH's memoranda in support of its motion to dismiss/motion for summary judgment and in this opposition to Chardavoyne's Rule 11 motion, Chardavoyne's motion is frivolous. Given the complete lack of merit in Chardavoyne's Rule 11 motion, the only possible purpose for the filing of the motion is an improper purpose. In particular, given that Chardavoyne's opposition to TWH's motion consists of conclusory statements and a distortion of the Court's prior ruling, it appears that Chardavoyne filed the Rule 11 motion in an attempt to intimidate TWH into foregoing its defenses. The Court should not condone such tactics.

## V.    THE CASE LAW CITED BY THE PLAINTIFF SUPPORTS THE DENIAL OF HIS MOTION

The case law cited by Chardavoyne does not support the award of Rule 11 sanctions in this case. (Pl.'s 11/15/07 Mem., at 4-5 (citing <u>Salovaara v. Eckert</u>, 222 F.3d 19 (2d Cir. 2000); <u>Securities Industry Assoc. v. Clarke</u>, 898 F.2d 318 (2d Cir. 1990); <u>Eastway Construction Corp. v. City of N.Y.</u>, 762 F.2d 243 (2d Cir. 1985))) To the contrary, it supports denying Chardavoyne's motion.

For example, in <u>Eckert</u>, the Second Circuit recognized that although counsel's interpretations of two cases were ultimately held to be wrong, they were not objectively unreasonable and did not therefore necessitate sanctions. 222 F.3d at 34.

Similarly, in <u>Eastway Construction</u>, the Second Circuit recognized that in ruling on a Rule 11 motion, "[c]ourts must strive to avoid the wisdom of hindsight in determining whether a pleading was valid when signed and any and all doubts must be resolved in favor of the signer." 762 F.2d at 254. Thus, Rule 11 is only violated when it is "patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands." <u>Id.</u> Properly

construed, under such circumstances, the purpose of Rule 11 is to punish "only those who would manipulate the federal court system for ends inimicable to those for which it was created." Id. Accordingly, a court must not "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." Id.

Finally, as demonstrated above in the discussion of the standard of review, Clarke supports the denial of Chardavoyne's motion.

## VI.    THE COURT SHOULD AWARD TWH THE ATTORNEY'S FEES IT HAS INCURRED IN DEFENDING AGAINST THE RULE 11 MOTION

After denying Chardavoyne's Rule 11 motion, the Court should, pursuant to Rule 11(c)(2), award TWH the attorney's fees it has incurred by defending against the motion. After the Court indicates that it will award fees to TWH, it could direct TWH's counsel to submit a request for a specific amount.

## VII.    THE COURT SHOULD CONSIDER ISSUING A SHOW CAUSE ORDER DIRECTING THE PLAINTIFF TO DEMONSTRATE WHY SANCTIONS SHOULD NOT BE ENTERED AGAINST HIM

The Advisory Committee Notes to the 1993 amendments to Rule 11 recognize that "the filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." Moreover, Rule 11(c)(3) provides as follows:

> On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

In determining what its opposition to Chardavoyne's Rule 11 motion would be, TWH could have filed a cross-motion for sanctions under Rule 11. In order to avoid putting the Court through a series of spiraling Rule 11 motions, TWH determined that the appropriate course would be to leave the matter to the Court. Thus, after reviewing TWH's memoranda in support of its motion to dismiss/motion for summary judgment and TWH's opposition memorandum to

Chardavoyne's Rule 11 motion, the Court should consider issuing an order to show cause directing Chardavoyne to demonstrate why he should not be subjected to sanctions based on his Rule 11 motion.

It is well-established that a Rule 11 motion is an extremely serious matter. The filing of such a motion should never be taken lightly. Nevertheless, Chardavoyne filed a Rule 11 motion which did not comply with the basic "safe harbor" provision and which is based on nothing more than conclusory statements and false accusations. Accordingly, given Chardavoyne's questionable approach to his Rule 11 motion, the Court should consider issuing a show cause order under Rule 11(c)(3).

## CONCLUSION

As demonstrated above, Chardavoyne's Rule 11 motion is frivolous. Accordingly, for the reasons set forth above, the Court must deny that motion.

After denying Chardavoyne's motion, the Court should, pursuant to Rule 11(c)(2), award TWH the attorney's fees it incurred by having to defend against the motion. It should also consider whether to *sua sponte* issue a show cause order, directing Chardavoyne to demonstrate why sanctions should not be imposed against him under Rule 11(c)(3).

Respectfully submitted,

**THE DEFENDANT**
**THAMES WATER HOLDINGS,**
**INCORPORATED**

By: _____
Stephen P. Fogerty
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tele: (203) 227-2855
Fax: (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson III
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tele: (860) 522-6103
Fax: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

Its Attorneys

# EXHIBIT A



FINN
DIXON &
HERLING          ATTORNEYS AT LAW

Patrick J. McHugh
(203) 325-5036
pmchugh@fdh.com

October 10, 2007

<u>BY ELECTRONIC AND REGULAR MAIL</u>

Stephen P. Fogerty, Esq.
Halloran & Sage LLP
315 Post Road West
Westport, Connecticut  06880

Ralph W. Johnson, Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103

Re:     *Chardavoyne v. Thames Water Holdings Inc.,*
        <u>*Case No. 3:03-CV-56 (WWE)*</u>

Dear Stephen and Ralph:

I write to express serious concern about defendant's motion to dismiss, alternatively, for summary judgment dated September 24, 2007 (the "Motion").

The claims of the complaint have narrowed, not expanded, and have withstood your motions to dismiss (originally filed on March 28, 2003 and thereafter denied by the Court), for summary judgment (originally filed on December 16, 2005 and denied in large measure by order of the Court dated July 13, 2006), for reconsideration (denied in large measure by order of the Court dated March 5, 2007) and to strike (denied by order of the Court dated September 4, 2007).  Such procedural history leaves plaintiff with no alternative but to conclude that the current filings are needlessly burdensome and without sound basis.  Absent withdrawal of the current motion, plaintiff will seek direction from the Court and otherwise reserve all rights to recover costs and attorneys' fees incurred henceforth on the issue.

In the event that the current motion is not formally withdrawn by October 11, plaintiff will move for a 30-day extension on October 12, 2007.  Should it remain necessary to file for the extension, please advise whether defendant consents pursuant to D. Conn. L. Civ. Rule 7.

FINN DIXON & HERLING LLP • 177 BROAD STREET, 15TH FLOOR, STAMFORD, CT 06901-2048 • T 203 325 5000 • F 203 325 5001 • WWW.FDH.COM

{00432776; 1; 1103-2}                    STAMFORD • NEW HAVEN

Stephen P. Fogarty, Esq.
Ralph W. Johnson, Esq.
October 10, 2007
Page 2


Please feel free to call me if you wish to discuss the matter further.

Very truly yours,

Patrick J. McHugh


cc:    Mr. David E. Chardavoyne

# EXHIBIT B

 ATTORNEYS AT LAW

William M. Tong
(203) 325-5089
wtong@fdh.com

October 29, 2007

BY ELECTRONIC AND REGULAR MAIL

Ralph W. Johnson, Esq.
Halloran & Sage LLP
One Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103

Re: *Chardavoyne v. Thames Water Holdings Inc.,*
*Case No. 3.03-CV-56 (WWE)*

Dear Ralph:

Further to Patrick McHugh's letter of October 10, 2007, please be advised that we intend to seek direction from the Court regarding defendant's motion to dismiss, or alternatively, for summary judgment dated September 24, 2007. We will contact the Court shortly to schedule a telephone conference with Judge Eginton.

Please let me know if you would like to be on the call or if you would like to discuss this further. Thank you.

Very truly yours,

William M. Tong

cc:    Stephen P. Fogerty, Esq.

FINN DIXON & HERLING LLP • 177 BROAD STREET, 15TH FLOOR, STAMFORD, CT 06901-2048 • T 203.325.5000 • F 203.325.5001 • WWW.FDH.COM

{00441431; 1; 1103-2}                    STAMFORD • NEW HAVEN

## **CERTIFICATION**

This is to certify that on this 7th day of January, 2008, a copy of the foregoing was caused to be served via U.S. mail, postpaid to:

Patrick McHugh, Esq.
William M. Tong, Esq.
Richard Gora, Esq.
Finn Dixon & Herling LLP
177 Broad Street, 15th Floor
Stamford, CT 06901-2048


                                        _____
                                        Ralph W. Johnson III

1092120_1 DOC