IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE<br>Plaintiff, | :<br>: | CIVIL ACTION NO.<br>3:03-CV-56 (WWE) |
| VS. | :<br>:<br>:<br>: | |
| THAMES WATER HOLDINGS INCORPORATED, THAMES WATER NORTH AMERICA, INC.<br>Defendants. | :<br>:<br>:<br>: | JANUARY 7, 2008 |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS, AND TO THE EXTENT NECESSARY, MOTION FOR SUMMARY JUDGMENT**

Stephen P. Fogerty, Esq.
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tel. No.: (203) 227-2855
Fax No.: (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel. No.: (860) 522-6103
Fax No.: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Thames Water Holdings, Incorporated*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 1

I. THE MARCH 5 RULING .......... 1

II. THE SEPTEMBER 4 RULING .......... 1

ARGUMENT .......... 2

I. THE PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT BASED ON THE ALLEGED DEMAND/REQUESTS THAT A COMPANY CAR BE RETURNED TO NEW JERSEY FAILS AS A MATTER OF LAW .......... 2

II. THE PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW .......... 4

III. THE PLAINTIFF'S ALTERNATIVE "AT-WILL" EMPLOYMENT THEORY FAILS AS A MATTER OF LAW .......... 6

IV. TO THE EXTENT THE PLAINTIFF BASES HIS WAGE ACT CLAIM ON THE SHARES OF STOCK ALLEGEDLY AWARDED HIM UNDER THE LTIP/ BONUS PROGRAM, THAT CLAIM FAILS AS A MATTER OF LAW .......... 8

V. THE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW .......... 9

CONCLUSION .......... 10

## PRELIMINARY STATEMENT

The defendant, Thames Water Holdings Incorporated ("TWH"), submits this reply memorandum of law in further support of its motion to dismiss, and to the extent necessary, motion for summary judgment. For the reasons set forth below and in TWH's initial memorandum, the Court should grant TWH's motion.

## BACKGROUND

### I. THE MARCH 5 RULING

On March 5, 2007, the Court entered a ruling granting the defendants' motion for reconsideration in part and denying it in part. More specifically, the March 5 Ruling concluded as follows:

> For the foregoing reasons, the Motion for Reconsideration [doc. #107] is GRANTED. Upon review, the Court VACATES its prior Ruling on Summary Judgment [doc. #102]. The Motion for Summary Judgment [doc. #85] is GRANTED in part and DENIED in part. The Court ***grants summary judgment*** on (1) all claims against TWNA; (2) plaintiff's breach of contract claims ***with the exception of*** the allegations concerning termination without authority claim and failure to provide stock shares; (3) on plaintiff's breach of the covenant of good faith and fair dealing claim ***with the exception of*** allegations concerning termination without authority and the failure to provide the stock shares; and (4) on the conversion claim. ***Plaintiff is instructed to amend his complaint consistent with this ruling*** within 15 days of this ruling's filing date.

(3/5/07 Ruling, at 14 (emphasis added))

### II. THE SEPTEMBER 4 RULING

On September 4, 2007, the Court entered a ruling denying TWH's motion to strike portions of the plaintiff's Third Amended Complaint, which TWH had demonstrated contained allegations and claims previously dismissed by the March 5 Ruling. As part of the September 4 Ruling, the Court summarized its March 5 Ruling as follows:

> The Court ***granted defendants' summary judgment*** on: (1) all claims against TWNA; (2) the breach of contract claims ***with the exception of*** the allegations concerning termination without authority claim and failure to provide stock shares; (3) the breach of the covenant of good faith and fair dealing claim ***with the exception of*** allegations concerning termination without authority and the failure to provide the stock shares; and (4) the conversion claim.

(9/4/07 Ruling, at 1 (emphasis added))

## ARGUMENT

### I. THE PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT BASED ON THE ALLEGED DEMAND/REQUESTS THAT A COMPANY CAR BE RETURNED TO NEW JERSEY FAILS AS A MATTER OF LAW

Chardavoyne's opposition to TWH's motion to dismiss his claim for breach of contract based on the alleged demand/request that a company car be returned in New Jersey is without merit. It is based on a mischaracterization of TWH's argument.

First, Chardavoyne states that the Employment Agreement provided him with a car, and thus, "defendant's demand to retrieve the car and defendant's failure to pay car-related expenses as provided for in the written employment contract all constitute part of plaintiff's claim of wrongful termination without authority of board approval." (Pl.'s 11/15/07 Mem., at 2-3) Next, at page 6 of his memorandum, Chardavoyne declares that he had a "contractual right to a company car [and h]is termination from employment without authority or board approval, including termination of plaintiff's right to continued use of the company car, was expressly recognized by the Court as a proper cause of action to proceed to litigation." Finally, at page 7, Chardavoyne maintains, in conclusory fashion, that his allegation that "defendant demanded Chardavoyne to deliver the company car to New Jersey ... violat[ed] ... the Employment Agreement."

Thus, Chardavoyne's opposition mischaracterizes or ignores TWH's argument set forth at pages 7-9 of its September 24, 2007 memorandum in support of its motion. Specifically, TWH raised two simple and direct arguments. First, TWH argued that based on the March 5 Ruling, which granted summary judgment as to ***all*** of Chardavoyne's claims for breach of contract and breach of an implied covenant of good faith and fair dealing, "with the exception of the allegations concerning termination without authority claim and failure to provide stock shares," Chardavoyne's claims for breach of contract and claim for breach of the implied covenant based on the company car (which had also been contained in the Second Amended Complaint), had already been dismissed. Second, TWH argued that "[t]o the extent necessary, ..., the claim that the Employment Agreement was breached by alleged demands that a company car be delivered to New Jersey fail[s] as a matter of law."

With regard to TWH's first argument, Chardavoyne's mischaracterizations notwithstanding, the holding in the March 5 Ruling is clear. The Court expressly identified which theories it was allowing to proceed. They did not include theories based on the company car. Consequently, summary judgment was previously entered on the car-related theories.

With regard to TWH's second argument, as the March 5 Ruling recognized, a claim for breach of contract fails as a matter of law when it cannot identify the term of the contract which has allegedly been breached. (3/5/07 Ruling, at 10-11) Moreover, as the March 5 Ruling acknowledged, a claim for breach of contract fails as a matter of law when a plaintiff cannot identify how he has been damaged by the alleged breach. (Id.)

Chardavoyne's opposition memorandum, like his Third Amended Complaint, does not identify any language in the Employment Agreement which prohibited TWH from requesting or even demanding that the company car be returned in New Jersey. Even assuming that TWH had

promised not to make such a request or demand, Chardavoyne has not alleged that he complied. Nor has he alleged that he suffered any damages as a result of having that request or demand made to him. Thus, as a matter of law, no reasonable jury could conclude that Chardavoyne suffered any damages. Accordingly, Chardavoyne's claim for breach of contract based on the location where the company car was to be returned fails as a matter of law and it should be dismissed or summary judgment should be entered on it (yet again).

## II. THE PLAINTIFF'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING FAILS AS A MATTER OF LAW

In defense of his claim for breach of an implied covenant of good faith and fair dealing, Chardavoyne contends that under Connecticut law, such a claim sounds in tort. (Pl.'s 11/15/07 Mem., at 8-9) As part of his argument, Chardavoyne maintains that the Court "should not revisit the issue and that TWH's arguments at this stage are offensive ... procedurally unsound and therefore frivolous." (Id. at 8)

Chardavoyne's opposition argument is wholly without merit. Remarkably, his opposition fails to acknowledge, let alone distinguish, the governing Connecticut case law cited in TWH's initial memorandum of law. Specifically, Collins v. Anthem Health Care Plans, Inc., 275 Conn. 309, 333-34 (2005) and Bellemare v. Wachovia Mortgage Corp., 94 Conn. App. 593, 610 (2006), aff'd 284 Conn. 193 (2007) confirm that the Connecticut Supreme and Appellate Courts have expressly recognized that under Connecticut law, a claim for breach of an implied covenant of good faith and fair dealing "***sounds in contract***."[1] (emphasis added). Consequently, under

---

1/ Indeed, in 2007, the Connecticut Supreme Court did not review the portion of the Appellate Court's decision in Bellemare which quoted Collins and recognized that a claim for breach of an implied covenant of good faith and fair dealing "***sounds in contract***." 94 Conn. App. at 610 (emphasis added). The Supreme Court's review of the Appellate Court's decision was limited to a different issue. Bellemare, 284 Conn. at 195 n.2 (noting that petition for certification of the implied covenant issue was denied).

this Court's reasoning in the March 5 Ruling, (3/5/07 Ruling, at 6-7), Pennsylvania law governs the analysis of Count II. Under Pennsylvania law, there is no separate cause of action for an implied covenant of good faith and fair dealing. (TWH's 9/24/07 Mem., at 10 (citing cases)) Chardavoyne does not dispute this point of Pennsylvania law, but instead, ignores it.

Chardavoyne's opposition, and in particular, his representations regarding Connecticut law are based upon a fundamental misunderstanding of federal jurisdiction and/or an attempt to mislead this Court into committing legal error. Distorting the analysis even further, Chardavoyne falsely accuses TWH of advancing a frivolous argument.

It is black letter law that under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938), a federal court presiding over a diversity jurisdiction case is ***bound*** by the decisions of the highest court of the state whose law governs. Specifically, in Erie, the Supreme Court recognized that "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case [based on diversity jurisdiction] is the law of the State." 304 U.S. at 78. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996); Cumis Ins. Society, Inc. v. Windsor Bank & Trust Co., 736 F.Supp. 1226, 1230 (D.Conn. 1990) ("A federal court sitting in diversity must be mindful that it follow the law determined by the highest court of the state whose law is applicable to resolution of the dispute.").

Thus, "'[t]he task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum.'" Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 939 (9th Cir. 2001). "In doing so, federal courts are ***bound*** by the pronouncements of the state's highest court on applicable state law." Id. (emphasis added). See Kurczi v. Eli Lilly and Co., 113 F.3d 1426, 1429 (6th Cir. 1997). Moreover, where an intermediate appellate court has

resolved an issue to which the high court has not spoken, a federal court "'will normally treat [those] decisions ... as authoritative absent a strong showing that the state's highest court would decide the issue differently.'" Kurczi, 113 F.3d at 1429.[2]

Consequently, this Court is ***bound*** by the Connecticut Supreme Court's decision in Collins and the Connecticut Appellate Court's decision in Bellemare. In light of these decisions, there is no room for debate on this point of Connecticut law. After Collins and Bellemare, even Second Circuit cases which previously held that under Connecticut law, a breach of an implied covenant of good faith and fair dealing sounds in tort are ***not controlling***. Independence Ins. Serv. Corp. v. Hartford Life Ins. Co., 472 F.Supp.2d 183, 189 (D.Conn. 2007). Chardavoyne's suggestions to the contrary, his ignoring Collins and Bellemare and his citation to pre-Collins case law are a classic example of a frivolous argument. See Rule 3.3(a)(1)-(2), Rules of Professional Conduct and Commentary thereto. Accordingly, Chardavoyne's claim for breach of an implied covenant of good faith and fair dealing (Count II) should be dismissed as a matter of law.

## III. THE PLAINTIFF'S ALTERNATIVE "AT-WILL" EMPLOYMENT THEORY FAILS AS A MATTER OF LAW

In defense of his alternative "at-will" employment theory, Chardavoyne maintains that it should proceed because none of the Court's rulings expressly granted judgment on or struck that theory. (Pl.'s 11/15/07 Mem. at 8) He further states, in conclusory fashion, that TWH's "own

---

2/ Under Erie, when a federal court evaluates the content of state law, it is "not commissioned to take a position regarding the advisability or fairness of the state rule to be applied, but [is] to determine the issue as would the highest court of the state." Kurczi, 113 F.3d at 1429. See Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) ("A federal court in a diversity case is not free to engraft onto ... state rule's exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits.").

cited authority confirms that bad conduct by an employer in connection with the termination of at-will employment remains actionable." (Id at 3, ¶ 2)[3]

Chardavoyne's opposition is based on an attempt to create the false impression that he, as opposed to TWH, was successful in the prior summary judgment proceedings.[4] As demonstrated above, the March 5 Ruling granted summary judgment as to ***all*** of Chardavoyne's claims for breach of contract and breach of an implied covenant of good faith and fair dealing "with the exception of the allegations concerning termination without authority claim and failure to provide stock shares." (3/5/07 Ruling, at 14) The September 4 Ruling confirmed this. (9/4/07 Ruling, at 1) Consequently, summary judgment was entered on Chardavoyne's "at-will" theory and it was inappropriate for him to continue to assert that theory in his Third Amended Complaint. TWH's motion properly asks the Court to confirm this. TWH's request is appropriate as Chardavoyne's opposition demonstrates that he refuses to acknowledge the Court's prior ruling. To the extent necessary, TWH's motion demonstrates that Chardavoyne's "at-will" theory fails as a matter of law under the governing Pennsylvania law and should be expressly dismissed by the Court (yet again). This is particularly true given the fact that Chardavoyne's claims are based on a written Employment Agreement.

---

3/ Chardavoyne's failure to address the governing law and his reliance on conclusory statements is understandable. Specifically, although Chardavoyne now maintains that he was successful in defending his alternative "at-will" theory, he fails to acknowledge that his April 28, 2006 memorandum did not defend that theory. To the contrary, at footnote 37, on page 32, Chardavoyne merely maintained that the defendants had conceded that he was not an at-will employee. Thus, he abandoned the "at-will" theory, as the defendants' initial motion for summary judgment on that theory was unopposed.

4/ Chardavoyne's opposition memorandum repeatedly refers to the denial of summary judgment in the Court's July 13, 2006 Ruling. However, Chardavoyne fails to acknowledge that the March 5 Ruling "vacate[d]" the July 13 Ruling. (3/5/07 Ruling, at 1-2) Instead, he characterizes the March 5 Ruling as merely a "supplemental order." (Pl.'s 11/15/07 Mem., at 2)

## IV. TO THE EXTENT THE PLAINTIFF BASES HIS WAGE ACT CLAIM ON THE SHARES OF STOCK ALLEGEDLY AWARDED HIM UNDER THE LTIP/ BONUS PROGRAM, THAT CLAIM FAILS AS A MATTER OF LAW

In defense of his claim under the Connecticut Wage Act, Chardavoyne declares that how a stock bonus is treated in the context of a Wage Act claim is a question of fact. (Pl.'s 11/15/07 Mem., at 9) Instead of citing authority in support of his claim, Chardavoyne inaccurately paraphrases TWH's argument from its September 24, 2007 memorandum, by representing that TWH had conceded "that a bonus may constitute wages under the statute." (Id.)

Chardavoyne's representation notwithstanding, TWH's September 24 memorandum actually stated that "[a] bonus may qualify as a 'wage' ***only if*** it is determined solely according to an employee's individual performance." (TWH's 9/24/07 Mem., at 14 (emphasis added)) TWH's memorandum then demonstrated that under the formula for the calculation of an award of RWE AG stock under the Thames Water/RWE Long-Term Incentive Plan, the award at issue was not exclusively limited to an employee's performance. (Id. (citing Garry v. Bertucci's Restaurant Corp., 2001 WL 1795539, at *4-5 (D.Conn. Sept. 25, 2001); Saye v. Howe, 2004 WL 2664130, at *7 (Conn. Super. Oct. 25, 2004))) Thus, it was not "compensation for labor or services rendered" by Chardavoyne and did not provide a basis for recovery under the Wage Act. Accordingly, under the case law and statute, TWH is entitled to judgment on Chardavoyne's Wage Act claim, to the extent it is based upon the alleged award of 872 shares of stock.[5]

---

5/ TWH's September 24 memorandum noted that it was unclear whether Chardavoyne based his Wage Act claim in Count III on the shares of stock allegedly due him under the Long-Term Incentive Plan. (TWH's 9/24/07 Mem., at 14) Chardavoyne's opposition memorandum confirms that he is seeking recovery under the Wage Act for the stock. Thus, it was proper for TWH to bring the issue to the Court's attention and to seek resolution of it.

## V. THE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES FAILS AS A MATTER OF LAW

Chardavoyne's defense of his claim for an award of common law punitive damages is without merit. First, Chardavoyne declares that under the Court's prior rulings, it "necessarily follows" that the Court permitted a claim for the award of common law punitive damages to proceed. (Pl.'s 11/15/07 Mem., at 3) Second, Chardavoyne maintains that punitive damages are awardable for a breach of an implied covenant of good faith in the context of an employment contract when it is alleged and proven that the termination was violative of an important public policy. (Id. at 9)[6] In support of this claim, Chardavoyne contends that he has pleaded malicious, willful and tortious conduct violative of important Connecticut public policy in connection with his termination. (Id. (citing Third Am. Compl., Count II, at ¶¶ 34-41)) Finally, Chardavoyne maintains that while it is his burden to prove such conduct at trial, "it remains [his] prerogative and right to do so on the basis of facts as pleaded." (Id. at 9-10)

Contrary to Chardavoyne's claim, the Court's prior rulings did not address the issue of whether common law punitive damages were properly requested in this case. Indeed, the issue was not raised until TWH filed its September 24, 2007 motion. Thus, Chardavoyne's statements notwithstanding, it does not "necessarily follow" that the Court previously ruled that common law punitive damages should be considered. Rather, under the governing law, which is now before the Court, the Court should analyze the issue and dismiss the claim.

Moreover, contrary to Chardavoyne's claims, his allegations in paragraphs 34-41 of the Third Amended Complaint do not assert a violation of Connecticut public policy. Rather, those paragraphs contain nothing more than allegations of an ordinary employment dispute.

---

6/ Chardavoyne does not (and cannot) argue that his breach of contract claim provides a basis for an award of punitive damages.

Conclusory statements in Chardavoyne's memorandum cannot change that. Accord Battista v. United Illuminating Co., 10 Conn. App. 486, 497 (1987).

Next, Chardavoyne's reliance on Barry v. Posi-Seal Int'l, Inc., 40 Conn. App. 577 (1996) is misplaced. Indeed, Barry supports the dismissal of Chardavoyne's claim for punitive damages. Barry recognized that a "punitive damages award cannot stand in the absence of a verdict in the plaintiff's favor on a cause of action sounding in tort." Id. at 584. Thus, even if Chardavoyne's implied covenant claim (Count II) somehow remained, after Collins and Bellemare, it "sounds in contract" and thus cannot provide a basis for a claim of punitive damages. See Independence Ins., 472 F. Supp. 2d at 191-92 (dismissing claim for punitive damages).

Chardavoyne also ignores the fact that TWH has to the extent necessary, moved for summary judgment. Thus, in opposition to TWH's motion, Chardavoyne had to do more than rely on mere allegations. A party opposing summary judgment cannot rely on allegations, but rather, must identify evidence in the record which supports the facts alleged. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In the instant case, Chardavoyne has not identified any evidence in the record which establishes malicious or willful conduct.

Accordingly, the Court should either dismiss the request for common law punitive damages or enter summary judgment on it.

## CONCLUSION

For the foregoing reasons and those set forth in TWH's initial memorandum, the Court should grant TWH's motion.

Respectfully submitted,

**THE DEFENDANT
THAMES WATER HOLDINGS,
INCORPORATED**

By: ______________________________

Stephen P. Fogerty
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tele: (203) 227-2855
Fax: (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson III
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tele: (860) 522-6103
Fax: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

Its Attorneys

**CERTIFICATION**

This is to certify that on this 7th day of January, 2008, a copy of the foregoing was caused to be served via U.S. mail, postpaid to:

Patrick McHugh, Esq.
William M. Tong, Esq.
Richard Gora, Esq.
Finn Dixon & Herling LLP
177 Broad Street, 15th Floor
Stamford, CT 06901-2048

Ralph W. Johnson III

1092042_1 DOC