UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE, | ) | |
| | ) | CASE NUMBER: |
| Plaintiff, | ) | 3:03CV56 (WWE) |
| | ) | |
| vs. | ) | |
| | ) | |
| THAMES WATER HOLDINGS | ) | |
| INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | June 4, 2008 |

**FOURTH AMENDED COMPLAINT**

Plaintiff David E. Chardavoyne, by his attorneys, Finn Dixon & Herling LLP, for his Fourth Amended Complaint, states as follows:

1.    This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.    David E. Chardavoyne ("Chardavoyne") was at all relevant times a citizen and resident of the State of Connecticut.

3.    Thames Water Holdings Incorporated ("Defendant" or "Thames Water Holdings") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Pennsylvania at the time this action was commenced.

4.    Thames Water North America Inc. ("Thames Water North America") is an operating subsidiary of Thames Water Holdings and a Delaware corporation with its principal place of business in New Jersey. Thames Water North America was, at all relevant times, registered to do business in Connecticut. At certain times, Thames Water North America served

{00325741; 3; 1103-2}

as the agent of Thames Water Holdings with respect to the payment of Chardavoyne's salary and other matters.

5.      Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391.  At all relevant times, Thames Water Holdings maintained an office at 281 Tresser Boulevard, Stamford, Connecticut and was a resident of Connecticut for purposes of 28 U.S.C. § 1391(a) and (c).

6.      This is an action for, among other things, double damages for unpaid wages, payment of all other compensation due under a written agreement, payment of stock wrongfully withheld, and attorneys' fees and costs.

7.      Defendant and Thames Water North America are subsidiaries of Thames Water Plc, which was, until November 2000, a publicly held company engaged primarily in the water products and services businesses in the United Kingdom with operations and other businesses in 44 countries worldwide.  Thames Water Plc was a subsidiary of RWE AG ("RWE").  RWE AG is a publicly held company organized and existing under the laws of the Federal Republic of Germany, with corporate headquarters in Essen, Germany.  RWE has many lines of business in various industries including water, gas, electric, environmental services, industrial services, petroleum and chemicals, and construction businesses in Germany, the United Kingdom, Canada, the United States and elsewhere, worldwide.  During the year 2002, RWE had revenues in excess of $50 billion dollars (US).  Upon information and belief, Thames Water Plc was sold to MacQuarie Bank Ltd. of Australia in 2006.

8.      On or about January 15, 1999, defendant Thames Water Holdings and Chardavoyne entered into a written employment agreement (the "Employment Agreement").

{00325741; 3; 1103-2}

The Employment Agreement provides, *inter alia,* that effective February 15, 1999, Thames Water Holdings shall employ Chardavoyne and he shall serve as its President with all attendant responsibilities, duties and authorities until, in accordance with Section 12.3 of the Employment Agreement, "[t]he employment of the Executive shall terminate automatically on his reaching 65 years of age." A true copy of that Agreement is attached as Exhibit A to this Fourth Amended Complaint.

9.      Chardavoyne was elected and served continuously as President and a member of the Board of Directors of Thames Water Holdings from February 15, 1999 until December 10, 2004.

10.     Section 2.5 of the Employment Agreement further provides that Chardavoyne shall "so long as the Chief Executive requires, carry out such duties on behalf of any other Group company and shall carry out such duties as if they were to be performed by him on behalf of the Parent Company." Accordingly, Chardavoyne also was elected President and a director of Thames Water North America. Salary payments under the Employment Agreement were made, at certain times, to Chardavoyne by and through Thames Water North America. Certain bonuses, retention payments and stock awards were made to Chardavoyne by Thames Water Plc.

11.     Section 11.1 of the Employment Agreement states: "[s]ave as provided for in Clauses 12.1, 12.2 and 12.3 below, the Executive's [i.e., Chardavoyne's] employment hereunder shall continue subject to the terms of this Agreement until terminated: (a) by the Company [Thames Water Holdings] giving to the Executive <u>not less than twelve months' written notice</u> expiring at any time; or (b) by the Executive giving not less than six months' written notice expiring at any time." [Emphasis added].

{00325741; 3; 1103-2}

12.    Section 7 of the Employment Agreement provides: "The Company shall, during the term of this Agreement, provide the Executive with a car . . . and shall bear all standing costs relating thereto including the cost of insuring, testing, taxing, repairing and maintaining the same and shall reimburse the Executive's running expenses of the car . . . . The cost of all fuel will be met by the Company, including reasonable private mileage in the USA."

13.    On or about May 29, 2002, James McGivern and Matthew Huckin, who represented themselves as the Managing Director, Thames Water Americas, and the Human Resources Director of Thames Water Americas, respectively, unexpectedly requested to meet with Chardavoyne. At that meeting, Matthew Huckin gave Chardavoyne an envelope containing a letter (the "Letter") and a draft agreement (the "Draft Separation Agreement"). A true copy of the Letter is attached as Exhibit B to this Fourth Amended Complaint. A true copy of the Draft Separation Agreement is attached as Exhibit C to this Fourth Amended Complaint.

14.    The Letter states, in pertinent part: "It is with regret that I must confirm that with immediate effect your services are no longer required by the company."

15.    The Letter is not a notice of termination, however, as required under Section 11.1 of the Employment Agreement, for the following reasons, among others:

a.    The Letter purported to "confirm" that Chardavoyne's services were no longer required "with immediate effect". This language violates the Employment Agreement's requirement that any termination must include "not less than twelve months written notice." *See* Employment Agreement, Ex. A, at ¶ 11.1.

b.    The Letter is not from Thames Water Holdings, which is the party to the Employment Agreement. The Letter is from Thames Water Americas, which was not even incorporated in any state of the United States.

c.    Huckin was not an officer or director of Defendants nor was he even an employee thereof.

- 4 -

d.  The employment of the President of Thames Water Holdings may only be terminated in accordance with the Employment Agreement and the bylaws of Thames Water Holdings.

e.  Prior to May 29, 2002, the directors of Thames Water Holdings had not delegated or appointed Thames Water Americas as its agent for purposes of giving notice under the Employment Agreement.

f.  The Board of Directors of Thames Water Holdings did not vote, adopt a unanimous written consent, or take any other action on or prior to May 29, 2002, to give Chardavoyne not less than twelve months' written notice of termination of his employment as required by the Employment Agreement.

g.  A successor to Chardavoyne as President of Thames Water Holdings was not elected or qualified on or prior to May 29, 2002.

h.  Further, the Letter and the Draft Separation Agreement are not notice of termination pursuant to Section 12.3 of the Employment Agreement, which provides that Chardavoyne's employment could only be automatically terminated "with immediate effect" by his having reached age 65. Chardavoyne's date of birth is March 12, 1948.

16.  The Letter also states that Chardavoyne had the right to "consider" the accompanying Draft Separation Agreement and to accept or "revoke it." The Draft Separation Agreement proposed to "restructure the parties obligations" in derogation of Chardavoyne's rights under the Employment Agreement, and, if accepted, to "abandon" the Employment Agreement's notice provisions. *See* Draft Separation Agreement, Ex. C, at ¶ 2.03.

17.  After receipt of the Letter and Draft Separation Agreement, Chardavoyne notified Thames Water Holdings that the Draft Separation Agreement was not acceptable in the form handed to him.

18.  Chardavoyne has consistently and repeatedly advised Thames Water Holdings that the Letter is not a notice of termination, as required by Section 11.1 of the Employment Agreement, and of the reasons therefor.

- 5 -

{00325741; 3; 1103-2}

19.    Chardavoyne also advised Thames Water Holdings and Thames Water North America, by letter dated July 12, 2002, that the Letter and Draft Separation Agreement were ineffective as notice of termination because these documents did not comply with the requirements of the Employment Agreement and had not been authorized.

20.    Defendant and Thames Water North America did not directly respond to the issues articulated in Chardavoyne's July 12, 2004 letter.

21.    Defendant has taken the position that the Letter and Draft Separation Agreement were notice of termination under Section 11.1 of the Employment Agreement.  Defendant has continued to maintain that position without ever providing any satisfactory explanation for how the Letter and Draft Separation Agreement could fairly be read as a notice of termination under Section 11.1 of the Employment Agreement.

22.    Neither Defendant nor Thames Water North America has paid Chardavoyne his wages for services after June 6, 2003.

23.    Since Chardavoyne's May 29, 2002 meeting with James McGivern and Matthew Huckin, Thames Water Holdings has repeatedly deprived and has attempted to deprive Chardavoyne of his rights under the Employment Agreement, including, among other things:

    a.    falsely representing to Chardavoyne that the benefits of the Draft Separation Agreement were more favorable to Chardavoyne than the benefits secured by the Employment Agreement when in fact they were not;

    b.    failing and continuing to refuse to provide "written notice" of termination as required by the Employment Agreement and Section 11.1. therein;

    c.    contending that Defendant has given Chardavoyne notice of termination while simultaneously threatening to cut off his rights under the Employment Agreement if he sought employment elsewhere;

d.      withholding payment of RWE AG Stock which Chardavoyne earned and to which he is entitled, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan.

24.      Simply stated, rather than follow the well-established rules of corporate governance, and honor the contractual terms of the existing Agreement, certain employees within the Thames Water enterprise wrongfully sought to compel or pressure Chardavoyne's resignation with immediate effect in an effort to deny Chardavoyne his rights and to avoid Defendant's contractual and legal obligations. Although these employees of the Thames Water enterprise have been advised of Thames Water Holdings' legal obligations, Thames Water Holdings has refused to comply with those obligations, absent the filing of the original Complaint, the Amended Complaint, the Second Amended Complaint, the Third Amended Complaint and this Fourth Amended Complaint.

## COUNT I
### (BREACH OF CONTRACT)

25.      Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 24 above as if fully restated herein.

26.      Chardavoyne and Thames Water Holdings are parties to a contract—the Employment Agreement—under which Chardavoyne was entitled to receive, among other things, compensation as provided by the Employment Agreement.

27.      Further, Defendant is bound by the Employment Agreement to follow specific procedures in the event Chardavoyne's employment was to be terminated. Chardavoyne was not terminable at-will.

{00325741; 3; 1103-2}

28.    Chardavoyne fully performed under the Employment Agreement and served Defendant and Thames Water North America with hard work and distinction in the critical roles of President and Country Director-US, among others, with the expectation that his efforts would be recognized and that the terms of the Employment Agreement would be honored.

29.    Instead, as set forth above Defendant breached the Employment Agreement, which has included, without limitation, the following:

a.    Defendant and certain employees within the Thames Water Enterprise sought to compel or pressure Chardavoyne's resignation with "immediate effect," in violation of the Employment Agreement's requirement that any termination must include "not less than twelve months written notice."

b.    Defendant owes and has not paid Chardavoyne wages for his continuing service as President of Thames Water Holdings and Thames Water North America after June 6, 2003.

c.    Defendant owes and has wrongfully failed to pay shares of RWE AG stock to Chardavoyne which he earned and to which he is entitled, including without limitation 872 shares of RWE AG stock granted pursuant to an Award Notice, dated March 27, 2002, under the Thames Water/RWE Long Term Incentive Plan.

d.    Defendant owes and has not paid Chardavoyne all payments due for company car-related expenses pursuant to Section 7 of the Employment Agreement. Defendant also demanded in violation of the Employment Agreement that Chardavoyne deliver the company car to New Jersey. The company car has now been retrieved by Defendant and returned to it.

30.    Chardavoyne has suffered substantial damages as a result of Defendant's breach of the Employment Agreement.

## COUNT II
### (FAILURE TO PAY WAGES PURSUANT TO CONN. GEN. STAT. § 31-72)

31.    Plaintiff hereby repeats and re-alleges the allegations contained in Paragraphs 1 through 30 above as if fully restated herein.

{00325741; 3; 1103-2}

32.    Defendant owes and has not paid Chardavoyne wages for his service as President of Thames Water Holdings and Thames Water North America after June 6, 2003.

33.    Defendant acted arbitrarily, unreasonably and in bad faith by failing to pay Chardavoyne his wages.

34.    Pursuant to CONN. GEN. STAT. § 31-72, Chardavoyne is entitled to twice the full amount of wages unpaid and owed to him under the Employment Agreement, as well as all costs and attorneys' fees associated with this litigation.

WHEREFORE, Plaintiff demands judgment for the following relief: (1) twice the full amount of wages unpaid and wrongfully withheld; (2) the value of all other compensation wrongfully withheld, including bonus and incentive compensation; (3) all shares of RWE Stock belonging to Chardavoyne; (4) all interest, costs, taxes (if any), and attorneys' fees related to this action; and (5) such other and further relief as the Court may deem just and proper.

PLAINTIFF DAVID E. CHARDAVOYNE

By
Patrick J. McHugh (ct14072)
William M. Tong (ct25304)
Richard S. Gora (ct27479)
Finn Dixon & Herling LLP
177 Broad Street, 15th Floor
Stamford, CT 06901-2048
Telephone: (203) 325-5000
Facsimile: (203) 325-5001
E-mail: pmchugh@fdh.com

{00325741; 3; 1103-2}