IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE, | : | CASE NO. 3:03-CV-56 (WWE) |
| | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| THAMES WATER HOLDINGS | : | |
| INCORPORATED and THAMES WATER | : | |
| NORTH AMERICA, INC., | : | |
| | : | |
| Defendants. | : | JULY 2, 2008 |

**ANSWER, AFFIRMATIVE DEFENSES AND**
**COUNTERCLAIMS TO THE PLAINTIFF'S FOURTH AMENDED COMPLAINT**

The defendant, Thames Water Holdings Incorporated ("TWHI"), for its answer to the

plaintiff's Fourth Amended Complaint dated June 4, 2008, states as follows:

1.    Paragraph 1 states conclusions of law to which no response is required.

2.    TWHI lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in paragraph 2, and leaves the plaintiff to his proof.

3.    TWHI admits that it is a corporation organized and existing under the laws of the

State of Delaware, but denies that its principal place of business was in Pennsylvania at the time

this action was commenced.

4.    Paragraph 4 is denied, except that TWHI admits that Thames Water North

America, Inc., ("TWNA"), is a Delaware corporation with its principal place of business in New

Jersey and that it was registered to do business in Connecticut.

5.     TWHI denies the allegations in paragraph 5. By way of further answer, TWHI closed the Stamford, Connecticut office in or about December 2001 and moved it to Voorhees, New Jersey.

6.     Paragraph 6 states conclusions of law to which no response is required. To the extent that a response is required to the allegations in paragraph 6, TWHI denies the allegations.

7.     TWHI denies the allegations in paragraph 7 as alleged. TWHI admits that Thames Water Plc was a publicly held company until at least November 2000; that Thames Water Plc was engaged in the water and wastewater business in the United Kingdom; that TWNA and TWHI and Thames Water Plc are subsidiaries of RWE AG; that RWE AG is a publicly held company organized under the laws of the Federal Republic of Germany with corporate headquarters in Essen, Germany; that RWE's lines of business include electricity, water and wastewater, waste and recycling, natural gas and other services; and, upon information and belief, that Thames Water Plc had operations and other businesses in 44 countries worldwide.

8.     TWHI denies the allegations in paragraph 8 as alleged. By way of further answer, TWHI admits that a partial copy of the Employment Agreement is attached to the Fourth Amended Complaint. The Employment Agreement also included a "General Summary of Employment," a copy of which is attached hereto as Exhibit 1. TWHI submits that the Employment Agreement speaks for itself and respectfully refers the Court to the document. By way of further answer, TWHI properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Employment Agreement.

9. TWHI denies the allegations in paragraph 9. By way of further answer, TWHI admits that Mr. Chardavoyne was a member of the Board of Directors of TWHI until May 29, 2002 and that he served as President of TWHI from February 15, 1999 until May 29, 2002.

10. TWHI denies the allegations in paragraph 10 as alleged. By way of further answer, a partial copy of the Employment Agreement is attached to the Fourth Amended Complaint. TWHI submits that the writing speaks for itself and respectfully refers the Court to the document. TWHI admits that Mr. Chardavoyne was President and a Director of TWNA until May 29, 2002, and that TWNA paid his salary under the Employment Agreement. By way of further answer, TWHI properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Employment Agreement.

11. TWHI denies the allegations in paragraph 11 as alleged. By way of further answer, a partial copy of the Employment Agreement is attached to the Fourth Amended Complaint. TWHI submits that the writing speaks for itself and respectfully refers the Court to the document. By way of further answer, TWHI properly terminated Mr. Chardavoyne's employment effective May 29, 2003, pursuant to the terms of the Agreement. Moreover, the Court's March 5, 2007 Ruling dismissed Mr. Chardavoyne's claim for lack of notice. Thus, his inclusion of a reference to the issue of notice is inappropriate.

12. TWHI denies the allegations in paragraph 12 as alleged. By way of further answer, a partial copy of the Employment Agreement is attached to the Fourth Amended Complaint. TWHI submits that the writing speaks for itself and respectfully refers the Court to the document. By way of further answer, TWHI permitted Mr. Chardavoyne to use the Company car up to and including May 29, 2003, despite the fact that he had no business use for the car between May 30, 2002 and May 29, 2003.

13.     TWHI admits that on or about May 29, 2002, James McGivern, Managing Director, Thames Water Americas (who was expressly identified in Mr. Chardavoyne's Employment Agreement as the Line Manager to whom Mr. Chardavoyne directly reported), and Matthew Huckin, Human Resources Director, Thames Water Americas, met with Mr. Chardavoyne. TWHI admits that at that meeting, Mr. Huckin gave Mr. Chardavoyne an envelope containing a letter and a proposed agreement that, if accepted by Mr. Chardavoyne, would have modified the conditions of his separation from employment as established by the Employment Agreement. TWHI admits that a copy of the Letter is attached to the Fourth Amended Complaint as Exhibit B, and that a copy of the proposed agreement is attached to the Fourth Amended Complaint as Exhibit C. TWHI lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 13, and leaves plaintiff to his proof. By way of further answer, at the meeting, Mr. McGivern advised Mr. Chardavoyne that his employment was being terminated effective May 29, 2003, and that the decision to terminate his employment was at the direction of William Alexander, Chief Executive Officer of Thames Water Plc and Chairman of TWHI.

14.     TWHI denies the allegations in paragraph 14 as alleged. Paragraph 14 purports to quote the Letter which is attached as Exhibit B to the Fourth Amended Complaint. TWHI submits that the document speaks for itself and respectfully refers the Court to the document.

15.     TWHI denies the allegations in paragraph 15, including all of its subparts, and specifically denies that the Letter is not a notice of termination required under Section 11.1 of the Employment Agreement. By way of further answer, the Letter, either standing alone or in combination with the proposed agreement and information provided to Mr. Chardavoyne, provided proper notice of termination to Mr. Chardavoyne pursuant to the terms of the

4

Employment Agreement. Moreover, the Court's March 5, 2007 Ruling dismissed Mr. Chardavoyne' claim for lack of notice. Thus, his inclusion of a reference to the issue of notice is inappropriate.

16.    TWHI denies the allegations in paragraph 16 as alleged. Paragraph 16 purports to quote the Letter and the Proposed Separation Agreement attached to the Fourth Amended Complaint. TWHI submits that the documents speak for themselves and respectfully refers the Court to the documents.

17.    TWHI admits that Mr. Chardavoyne notified TWHI that the proposed agreement was not acceptable to him.

18.    TWHI admits that Mr. Chardavoyne has maintained that the Letter is not a notice of termination, and has stated his reasons. TWHI denies the truth or validity of Mr. Chardavoyne's assertions. By way of further answer, on May 29, 2002, Mr. Chardavoyne was provided proper notice of the termination of his employment pursuant to the terms of the Employment Agreement. Moreover, the Court's March 5, 2007 Ruling dismissed Mr. Chardavoyne's claim for lack of notice. Thus, his inclusion of a reference to the issue of notice is inappropriate.

19.    TWHI admits that Mr. Chardavoyne has informed TWHI that he does not consider the Letter to be effective notice of the termination of his employment under Section 11.1 of the Agreement, and has stated his reasons. TWHI denies the truth or validity of Mr. Chardavoyne's assertions. By way of further answer, on May 29, 2002, Mr. Chardavoyne was provided proper notice of the termination of his employment pursuant to the terms of the Employment Agreement. Moreover, the Court's March 5, 2007 Ruling dismissed Mr.

Chardavoyne's claim for lack of notice. Thus, his inclusion of a reference to the issue of notice is inappropriate.

20.     Paragraph 20 is denied. By way of further answer, Mr. Chardavoyne was informed that he was, in fact, terminated.

21.     Paragraph 21 is denied. By way of further answer, Mr. Chardavoyne was informed that he was terminated. Moreover, the Court's March 5, 2007 Ruling dismissed Mr. Chardavoyne's claim for lack of notice. Thus, his inclusion of a reference to the issue of notice is inappropriate.

22.     TWHI denies the allegations in paragraph 22 as alleged. TWHI admits that Mr. Chardavoyne was not paid compensation after June 6, 2003. By way of further answer, TWHI had no obligation to pay compensation because Mr. Chardavoyne's employment was properly terminated pursuant to the terms of the Employment Agreement on May 29, 2003, and Mr. Chardavoyne provided no services after May 29, 2002.

23.     TWHI denies the allegations in paragraph 23, including all subparagraphs to it. Moreover, the Court's March 5, 2007 Ruling dismissed Mr. Chardavoyne's claim for lack of notice. Thus, his inclusion of a reference to the issue of notice is inappropriate.

24.     Paragraph 24 is denied.

**COUNT I (Breach of Contract)**

25.     The answers to paragraphs 1 through 24, set forth above are hereby incorporated by reference and made the answer to paragraph 25 as if fully set forth herein.

26.     Paragraph 26 is denied, except TWHI admits that it was a party to a contract with Mr. Chardavoyne. For the terms of that contract, TWHI respectfully refers the Court to the document.

6

27.    Paragraph 27 is denied, except TWHI admits that it was a party to a contract with Mr. Chardavoyne.  For the terms of that contract, TWHI respectfully refers the Court to the document.

28.    Paragraph 28 is denied.

29.    Paragraph 29 is denied, including all subparagraphs to it.  Moreover, the Court's March 5, 2007 Ruling dismissed Mr. Chardavoyne's claim for lack of notice.  Thus, his inclusion of a reference to the issue of notice is inappropriate.

30.    Paragraph 30 is denied.

**COUNT II (Failure to Pay Wages Pursuant to Conn. Gen. Stat. § 31-72)**

31.    The answers to paragraphs 1 through 30 set forth above are hereby incorporated and made the answer to paragraph 31 as if fully set forth herein.

32.    Paragraph 32 is denied.

33.    Paragraph 33 is denied.

34.    Paragraph 34 is denied.

### AFFIRMATIVE DEFENSES

**FIRST AFFIRMATIVE DEFENSE**

The plaintiff's claims are barred, in whole or in part, because they fail, as a matter of law, to state a cause of action upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

The plaintiff's claims are barred, in whole or in part, because the plaintiff lacks standing to assert them and/or because his claims, if viable, could only be asserted via a shareholders' derivative action, an action that he does not and cannot maintain.

**THIRD AFFIRMATIVE DEFENSE**

The plaintiff's claims are barred, in whole or in part, by express and/or implied ratification and/or ratification by acquiescence.

**FOURTH AFFIRMATIVE DEFENSE**

Although the Fourth Amended Complaint does not expressly allege that TWHI's by-laws or governing documents were not complied with, the Court, in its April 24, 2008 decision, has indicated that it "construes plaintiff's breach of contract claim as asserting that defendant failed to comply with the governing documents when it terminated him and that he is entitled to … wages and benefits." Such a claim by the plaintiff fails as a matter of law. In the alternative, if the claim is viable, to the extent it does not fall within the elements that the plaintiff has the burden of proof on and without assuming the burden of proof, the defendant asserts as an affirmative defense that the plaintiff's claims are barred, in whole or in part, because the by-laws/governing documents at issue were amended by implication and/or by the day-to day operations, conduct, customs, usages, practices and/or acquiescence of the defendant and/or its shareholder(s). The termination of the plaintiff's employment was proper under the original by-laws/governing documents and/or the amendments.

**FIFTH AFFIRMATIVE DEFENSE**

In the alternative, if the plaintiff establishes that the actions and/or inactions at issue were not authorized, or otherwise some how not proper, the plaintiff's claims are barred, in whole or in part, because the actions and/or inactions which the plaintiff maintains violated his rights, would not have been authorized by the defendant, which is a corporation. Simply stated, a corporation is not liable for actions or inactions which are not authorized, based on, but not limited to, the doctrines of *ultra vires* and/or *intra vires*.

8

**SIXTH AFFIRMATIVE DEFENSE**

The plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, promissory estoppel and/or equitable estoppel.

**SEVENTH AFFIRMATIVE DEFENSE**

The plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**EIGHTH AFFIRMATIVE DEFENSE**

The plaintiff has the burden of proof in establishing all of the elements for all of the claims that he is asserting. Among those elements that he has the burden of proof to establish, is a material breach of the contract by the defendant and his full and complete performance of all of his obligations under the contract. To the extent it does not fall within the elements that the plaintiff has the burden of proof on and without assuming the burden of proof, the defendant asserts as an affirmative defense that the plaintiff's claims are barred, in whole or in part, because the plaintiff breached the contract at issue.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff is not entitled to some or all of the relief he seeks, including but not limited to medical and dental insurance benefits and retirement benefits, because such relief is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

**TENTH AFFIRMATIVE DEFENSE**

The plaintiff's claims are barred, in whole or in part, based on the plaintiff's failure to mitigate, minimize and/or otherwise avoid his alleged damages.

**ELEVENTH AFFIRMATIVE DEFENSE**

The plaintiff has the burden of proof in establishing all of the elements for all of the claims that he is asserting. Among those elements that he has the burden of proof to establish, is

a material breach of the contract by the defendant and his full and complete performance of all of his obligations under the contract. To the extent it does not fall within the elements that the plaintiff has the burden of proof on and without assuming the burden of proof, the defendant asserts as an affirmative defense that the plaintiff's claims are barred, in whole or in part, because the plaintiff has been paid all compensation and benefits to which he was entitled under the terms of his Employment Agreement.

## TWELFTH AFFIRMATIVE DEFENSE

The plaintiff has the burden of proof in establishing all of the elements for all of the claims that he is asserting. Among those elements that he has the burden of proof to establish, is a material breach of the contract by the defendant and his full and complete performance of all of his obligations under the contract. To the extent it does not fall within the elements that the plaintiff has the burden of proof on and without assuming the burden of proof, the defendant asserts as an affirmative defense that the plaintiff's claims are barred, in whole or in part, because the defendant substantially performed the contract at issue.

## THIRTEENTH AFFIRMATIVE DEFENSE

The plaintiff has the burden of proof to establish his right to assert a claim under the Connecticut Wage Act. To the extent it does not fall within the elements that the plaintiff has the burden of proof on and without assuming the burden of proof, the defendant asserts as an affirmative defense that the plaintiff's claim under the Connecticut Wage Act is barred, in whole or in part, because the plaintiff was not employed in Connecticut on the relevant date(s).

## FOURTEENTH AFFIRMATIVE DEFENSE

The plaintiff has the burden of proof to establish both his right to assert a claim under the Connecticut Wage Act, and assuming his proof of such a claim, his right to an award of double

damages and/or attorney's fees. Assuming proof of a claim under the Connecticut Wage Act, the plaintiff has the burden of proving bad faith, arbitrariness and unreasonableness by the defendant in order to be eligible for an award of double damages and/or attorney's fees. To the extent it does not fall within the elements that the plaintiff has the burden of proof on and without assuming the burden of proof, the defendant asserts as an affirmative defense that any claim for double damages and/or attorney's fees under the Connecticut Wage Act, is barred, in whole or in part, because the defendant's actions or inactions were carried out in good faith, were reasonable and constituted a legitimate business decision.

**FIFTEENTH AFFIRMATIVE DEFENSE**

This Court lacks personal jurisdiction over the defendant, Thames Water Holdings, Incorporated.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Venue of this action is not properly laid in this District.

**WHEREFORE**, TWHI prays that this Court enter judgment in its favor on all claims for relief asserted in the plaintiff's Fourth Amended Complaint and that the Court award TWHI its costs pursuant to Fed. R. Civ. P. 54 and the Local Rules for the District of Connecticut.

## COUNTERCLAIMS

Defendant/counterclaim-plaintiff, Thames Water Holdings Incorporated ("TWHI"), for its Counterclaims against plaintiff/counterclaim-defendant, David E. Chardavoyne, states as follows:

## JURISDICTION

1.      This Court's jurisdiction over these counterclaims is based on 28 U.S.C.

§ 1367 because the counterclaims arise out of the same transaction or occurrence that is the

subject matter of the plaintiff's claims as set forth in the Amended Complaint dated July 16,

2003, the Third Amended Complaint dated March 20, 2007 and the Fourth Amended Complaint

dated June 4, 2008.

## PARTIES

2.    TWHI is a corporation organized and existing under the laws of the State of

Delaware with its principal place of business in New Jersey.

3.    David E. Chardavoyne ("Mr. Chardavoyne") is the plaintiff/counterclaim-

defendant herein.

## FACTS

*The Agreement*

4.    On or about January 15, 1999, TWHI entered into an employment agreement

("Agreement") with Mr. Chardavoyne ("Executive").

5.    Paragraph 2.1 of the Agreement provides: "The appointment shall be effective

from 15 February and the Company shall employ the Executive and the Executive shall serve the

Company as President, US within Thames Water PLC with all attendant responsibilities, duties

and authority, or in such other appointment as the Chief Executive may from time to time

direct."

6.    Paragraph 11.1 of the Agreement provides: "Save as provided for in clauses 12.1,

12.2. and 12.3 below, the Executive's employment hereunder shall continue subject to the terms

of this Agreement until terminated (a) by the Company giving to the Executive not less than

twelve months' written notice expiring at any time; or (b) by the Executive giving not less than

six months' written notice expiring at any time."

12

7.    Paragraph 7 of the Agreement provides: "The Company shall, during the term of this Agreement, provide the Executive with a car for his use in the business of the Company or any Group Company and shall bear all standing costs relating thereto including the costs of insuring, testing, taxing, repairing and maintaining the same and shall reimburse the Executive's running expense of the car in accordance with the Company's rules and procedures for the time being in force. The cost of all fuel will be met by the Company, including reasonable private mileage in the USA."

8.    Paragraph 14 of the Agreement provides: "The Chief Executive may at any time during the term of the Executive's employment hereunder elect not to provide work for the Executive to do and/or require the Executive not to attend at the premises of any Group Company and no such event shall constitute a repudiation of this Agreement or a dismissal of the Executive whether constructive or otherwise."

9.    Paragraphs 13 and 13.3 of the Agreement provide: "Upon termination of his employment with the Company for whatsoever reason the Executive shall without prejudice to any claim for damages or other remedy which either party might have against the other: . . . immediately return to the Company in good condition any car provided him to pursuant to Clause 8 above and any other communication or computing equipment and peripheral devices belonging to the Company."

*Notice of Termination and Termination of Employment*

10.    On May 29, 2002, TWHI gave Mr. Chardavoyne notice of the termination of his employment pursuant to Paragraph 11.1(a) of the Agreement.

11.    From and after May 29, 2002, as permitted by the Agreement, TWHI assigned Mr. Chardavoyne no duties or responsibilities, and he performed no work for TWHI.

12.     After May 29, 2002, Mr. Chardavoyne had no legitimate business use for the Company car provided to him by TWHI.

13.     Effective May 29, 2003, Mr. Chardavoyne's employment was properly terminated pursuant to the terms of the Agreement.

*The Car*

14.     On or about May 7, 2002, TWHI leased a 2002 Lincoln sedan, vehicle identification number 1LNHM87A62Y672200 ("the Car"), from Miller Auto Leasing Company.

15.     The lease, which expired in May 2005, required TWHI to make lease payments of $804.54 a month, and to pay 12¢ per mile above 45,000 miles for the term of the lease.

16.     TWHI, as the lessee, was responsible for operating expenses, such as: washing, parking, garage, highway and road service, towing charges or tolls and all fines incurred in connection with the Car; registration and inspection costs; taxes; and certain maintenance and repairs. Under the terms of the lease, TWHI "shall indemnify and hold harmless Miller and Miller's agents and employees from and against (i) any damage, loss, theft or destruction of any Vehicle and its contents during the lease term, and (ii) any loss, damage, injury, claim, demand, cost and expense (including attorney's fees) arising out of or connected with the use, operation or condition (including all defects whether or not discoverable by either party) of any Vehicle during the Lease Term, except any portion of any such loss, etc. that is within the coverage of any insurance to be provided by Miller as specified in the applicable Schedule A."

17.     TWHI provided the Car to Mr. Chardavoyne under the terms of the Agreement for his business use during his employment.

18.     TWHI also permitted Mr. Chardavoyne to use the Car between May 29, 2002, the date he was notified pursuant to the Agreement that his employment would be terminated, and

May 29, 2003, the effective date of termination of his employment, despite the fact that he had no business use for it during that period.

19.    Mr. Chardavoyne was contractually obligated under Paragraph 13.3 of the Agreement to return the Car on May 29, 2003.

20.    On May 28, 2003, and on several occasions thereafter, TWHI demanded that Mr. Chardavoyne return the Car.

21.    On December 14, 2004, Mr. Chardavoyne returned the Car.

22.    Knowing that his duties and responsibilities had been eliminated on May 29, 2002, that after May 29, 2002 he had no authority to conduct any business, and to the best of TWHI's knowledge did not conduct any business, on behalf of TWHI, and that TWHI had terminated his employment on May 29, 2003, Mr. Chardavoyne's wrongful retention of the car constituted wanton and willful malicious misconduct.

23.    TWHI incurred expenses - including but not limited to lease payments, insurance, and taxes - associated with the Car while the Car was in the wrongful possession of Mr. Chardavoyne.

## FIRST COUNTERCLAIM - CONVERSION

24.    TWHI repeats and realleges Paragraphs 1 through 23 above, as if fully set forth herein.

25.    Mr. Chardavoyne used the Company car leased by TWHI and provided to Mr. Chardavoyne pursuant to the Agreement during the time of his employment.

26.    After his termination, Mr. Chardavoyne wrongfully converted such car to his own use, depriving TWHI of the use and enjoyment of such car, and interfered with TWHI's lawful rights and interests in the car.

27.    TWHI sustained damages as a result of Mr. Chardavoyne's unauthorized conduct in assuming and exercising control over TWHI's car, for which TWHI is entitled to both compensatory and punitive damages.

## SECOND COUNTERCLAIM - STATUTORY THEFT (C.G.S. §52-564)

28.    TWHI repeats and realleges Paragraphs 1 through 23, 25 and 26 above as if fully set forth herein.

29.    C.G.S. § 53a-119 provides in relevant part:

> A person commits larceny when, with intent to deprive another person of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to:
>
> 1.    Embezzlement. A person commits embezzlement when he wrongfully appropriates to himself or another property of another in his care or custody.

30.    Mr. Chardavoyne obtained the Company car by means of larcenous conduct in violation of C.G.S. § 53a-119.

31.    Mr. Chardavoyne's conduct as described above constitutes a theft of property within the meaning of C.G.S. § 52-564.

32.    TWHI has sustained damages as a result of Mr. Chardavoyne's theft of property, for which TWHI is entitled to recover from Mr. Chardavoyne treble damages pursuant to C.G.S. § 52-564.

## THIRD COUNTERCLAIM - BREACH OF CONTRACT

33.    TWHI repeats and realleges Paragraphs 1 through 32 above as if fully set forth herein.

34.    Mr. Chardavoyne refused to return the car after May 29, 2003 as he was contractually obligated to do so pursuant to Paragraphs 13 and 13.3 of the Agreement.

35.    Because of Mr. Chardavoyne's breach of his contract, TWHI has suffered

damages.

**WHEREFORE**, defendant/counterclaim-plaintiff TWHI prays for the following relief

on its Counterclaims:

1.    Compensatory damages;

2.    Punitive damages pursuant to common law;

3.    Treble damages pursuant to C.G.S. § 52-564;

4.    Costs of this action; and

5.    Such other and further relief as the Court deems fair, just and equitable.

**THE DEFENDANT
THAMES WATER HOLDINGS,
INCORPORATED**


By:    _____
Stephen P. Fogerty
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, Connecticut 06880
Tele:    (203) 227-2855
Fax:    (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson, III
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, Connecticut 06103
Tele:    (860) 522-6103
Fax:    (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

Its Attorneys

17

# EXHIBIT 1

# GENERAL SUMMARY OF EMPLOYMENT

| | |
|---|---|
| **Name:** | David E Chardavoyne |
| **Job Title:** | President, US |
| **Reports to:** | Chief Executive through Mr J McGivern (Business Development Director) |
| **Salary:** | $200,000 annually subject to annual reviews commencing July 1999 |
| **Bonus:** | Up to 50% of annual salary in cash (minimum of 20% for 1999/2000) |
| **Long Term Incentive:** | 20% per annum held in shares for 4 years subject to comparative performance with other Water Plcs. Any unvested shares will vest at normal retirement. |
| **Notice Period:** | 12 months for notice by Company; six months for notice by Executive. |
| **Annual Leave:** | 20 days |
| **Car:** | Up to a value of $40,000 |
| **Pension:** | 401(k) Plan<br>6% Employee contribution<br>3.5% Employer contribution<br>$160,000 Earning Cap |
| **Medical:** | Health, Dental, Life and Long Term Disability Insurance<br>Health and Dental Cover subject to $100 per month contribution by the Employee. |

DEC 0192

JAN 26 '99 11:56                    203 333 2572        PAGE.02

## **CERTIFICATION**

This is to certify that on this 2nd day of July, 2008, a copy of the foregoing was caused to be mailed, postpaid to:

Patrick McHugh, Esq.
William M. Tong, Esq.
Richard Gora, Esq.
Finn Dixon & Herling LLP
177 Broad Street, 15th Floor
Stamford, CT 06901-2048


                               _____
                               Ralph W. Johnson, III

1188629_1 DOC