IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID E. CHARDAVOYNE | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:03-CV-56 (WWE) |
| | : | |
| | : | |
| VS. | : | |
| | : | |
| THAMES WATER HOLDINGS | : | |
| INCORPORATED, THAMES WATER | : | |
| NORTH AMERICA, INC. | : | |
| Defendants. | : | JULY 16, 2008 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR JUDGMENT ON THE PLEADINGS
## AND TO THE EXTENT NECESSARY MOTION FOR SUMMARY JUDGMENT

Stephen P. Fogerty, Esq.
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West
Westport, CT 06880
Tele: (203) 227-2855
Fax: (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson III, Esq.
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel. No.: (860) 522-6103
Fax No.: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

*Counsel for the Defendant,*
*Thames Water Holdings, Incorporated*

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................... 1

SUMMARY OF THE ARGUMENT .................................................................... 1

BACKGROUND ................................................................................................... 3

    I.     PROCEDURAL HISTORY......................................................................... 3

          A.     The March 5 Ruling.......................................................... 3

          B.     The Plaintiff's Third Amended Complaint................................................................ 5

          C.     The April 24 Decision....................................................... 5

    II.    THE PLAINTIFF'S CLAIMS IN THE FOURTH AMENDED COMPLAINT ....................................... 6

    III.   THE TERMS OF THE EMPLOYMENT AGREEMENT ............................................................................. 8

STANDARD OF REVIEW .................................................................................... 9

    I.     MOTION FOR JUDGMENT ON THE PLEADINGS.......................................................................... 9

    II.    MOTION FOR SUMMARY JUDGMENT ............................................. 10

ARGUMENT ....................................................................................................... 12

    I.     THE PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT BASED ON AN ALLEGED LACK OF AUTHORITY FAILS AS A MATTER OF LAW UNDER FUNDAMENTAL PRINCIPLES OF CONTRACT LAW ........................................................... 12

    II.    THE PLAINTIFF'S LACK OF AUTHORITY CLAIM IS WITHOUT MERIT AND IS CONTRARY TO FUNDAMENTAL PRINCIPLES OF CORPORATE AND AGENCY LAW ........................................................................... 13

III.   THE PLAINTIFF LACKS STANDING TO
       ASSERT A CLAIM FOR AN ALLEGED
       VIOLATION OF TWH'S BYLAWS OR
       ANY OTHER GOVERNING DOCUMENTS ..................................................... 15

IV.    THE PLAINTIFF'S LACK OF AUTHORITY
       CLAIM FAILS AS A MATTER OF LAW
       UNDER THE DOCTRINE OF IMPLIED
       RATIFICATION AND/OR THE DOCTRINE OF
       RATIFICATION BY ACQUIESENCE ............................................................... 18

V.     THE PLAINTIFF'S LACK OF AUTHORITY
       CLAIM FAILS BECAUSE A CORPORATION
       CANNOT BE LIABLE FOR UNAUTHORIZED
       ACTS ............................................................................................................... 25

VI.    THE DISMISSAL OF THE LACK OF AUTHORITY
       THEORY SHOULD RESULT IN THE DISMISSAL
       OF OTHER CLAIMS BY THE PLAINTIFF ..................................................... 25

CONCLUSION ........................................................................................................... 28

## PRELIMINARY STATEMENT

The defendant, Thames Water Holdings Incorporated ("TWH"), submits this memorandum of law in support of its motion for judgment on the pleadings, and to the extent necessary, motion for summary judgment on the plaintiff's Fourth Amended Complaint.

For the reasons set forth below, the Court should grant TWH's motion.

## SUMMARY OF THE ARGUMENT

Count I of the Fourth Amended Complaint is a claim for breach of contract based on an Employment Agreement between the plaintiff and TWH. In its March 5, 2007 Ruling and April 24, 2008 Decision, the Court indicated that it interprets the plaintiff's breach of contract claim to be based on three theories: (1) a lack of authority theory, (2) a theory that the Employment Agreement was breached by TWH's failure to provide the plaintiff with 872 shares of RWE AG stock and (3) a theory that the Employment Agreement was breached by TWH's allegedly demanding that a company car be returned to New Jersey, as opposed to Connecticut, and by TWH not paying the plaintiff for car-related expenses.

As demonstrated below, under fundamental principles of contract, corporate and agency law, the plaintiff's lack of authority theory fails as a matter of law and judgment in favor of TWH should enter on that theory. Specifically, the plaintiff's lack of authority theory fails as a matter of law for five reasons.

First, the plaintiff has not identified any term in the Employment Agreement that incorporates TWH's bylaws or any other governing documents, let alone a term that promises that the termination of the plaintiff's employment will be carried out in compliance with TWH's bylaws or any other governing documents. Thus, even assuming for the sake of argument that the plaintiff's termination was not carried out in compliance with TWH's bylaws or governing

documents, that act did not breach any contractual duty owed to the plaintiff under the terms of the Employment Agreement.

Second, under fundamental principles of corporate and agency law, the plaintiff cannot, as a matter of law, assert a breach of contract claim against TWH based on a theory that his termination was carried out without authority. The leading treatise on the subject and the case law confirm that if a corporation does not object to an officer or other person doing an act on its behalf, even if that act was not authorized, an objection cannot be raised by a third person.

Third, the plaintiff's lack of authority theory fails, as a matter of law, because he does not have the standing to assert such a claim against TWH. Any claim for noncompliance with TWH's bylaws or governing documents would be a claim that belongs exclusively to TWH. For any other entity or person to assert such a claim on behalf of TWH, the claim, if viable at all, would have to be asserted as a shareholders' derivative action, an action that the plaintiff has not and cannot maintain.

Fourth, a review of the pleadings and undisputed facts confirms that the plaintiff's lack of authority theory is barred by TWH's implied ratification and/or ratification by acquiescence of the plaintiff's termination, as a matter of law.

Finally, even assuming for the sake of argument that the plaintiff could somehow prove that his termination was not authorized, his lack of authority claim fails as a matter of law because a corporation is not liable for actions it does not authorize. In other words, even assuming that the plaintiff could establish that the termination of his employment was not authorized, that proof would require the dismissal of his claim against TWH.

With regard to the company car theory, the Court in its April 24 Decision noted that that theory was dependent upon the plaintiff establishing that TWH's "attempt to terminate him was

2

improper." (4/24/08 Mem. of Decision, at 4)  With the dismissal of the lack of authority theory, there is no remaining claim that the plaintiff's termination was improper.  As such, the plaintiff's company car theory fails as a matter of law under the Court's reasoning in its April 24 Decision. Consequently, with the dismissal of the lack of authority theory, TWH respectfully submits that the Court should reconsider the viability of the plaintiff's company car theory and on reconsideration, enter a judgment in favor of TWH on that theory.

With the dismissal of the lack of authority and the company car theories, Count II of the Fourth Amended Complaint, which asserts a claim under Connecticut's Wage Act, should also be dismissed.  Specifically, with the dismissal of those two theories, the only remaining breach of contract claim is the plaintiff's claim that the Employment Agreement was breached by TWH's failure to provide him with 872 shares of RWE AG stock.  In its April 24 Decision, the Court held that the Wage Act does not apply to that claim.  (4/24/08 Mem. of Decision, at 6-7)

Accordingly, with the dismissal of the plaintiff's lack of authority theory and company car theory, the only remaining claim from the Fourth Amended Complaint is the plaintiff's claim that the Employment Agreement was breached by TWH's failure to provide him with 872 shares of RWE AG stock.

## BACKGROUND

### I.    PROCEDURAL HISTORY

#### A.    The March 5 Ruling

On March 5, 2007, the Court entered a ruling granting in part and denying in part the defendants' motion for reconsideration.  (Docket Entry No. 124)  As part of its analysis, the Court recognized as follows:

> In a letter dated June 10, 2002, defendants' counsel Gerald Richardson wrote plaintiff's counsel:

> The Agreement ... allows the Company to provide no work to Mr. Chardavoyne and to require him to stay away from its premises in its non-attendance provisions. Assuming the absence of a separation agreement, then the Company began its exercising of its rights pursuant to the Agreement's non-tenants provisions effective May 29, 2002. On that date, the Company clearly communicated its elimination of Mr. Chardavoyne's job, which left him with no duties to perform. In addition, it told him of its expectations for him to remove his personal belongings from the Company's premises and to return all of the company's property in his possession or under his control.

Defendants ceased payments of plaintiff's wages for services after June 6, 2003. Defendants also stopped making payments for his employee benefits after June 30, 2003.

(3/5/07 Ruling, at 4-5)[1]

The March 5 Ruling concluded as follows:

> For the foregoing reasons, the Motion for Reconsideration [doc. #107] is GRANTED. Upon review, the Court VACATES its prior Ruling on Summary Judgment [doc. #102]. The Motion for Summary Judgment [doc. #85] is GRANTED in part and DENIED in part. The Court grants summary judgment on (1) all claims against TWNA; (2) plaintiff's breach of contract claims with the exception of the allegations concerning termination without authority claim and failure to provide stock shares; (3) on plaintiff's breach of the covenant of good faith and fair dealing claim with the exception of allegations concerning termination without authority and the failure to provide the stock shares; and (4) on the conversion claim. Plaintiff is instructed to amend his complaint consistent with this ruling within 15 days of this ruling's filing date.

(3/5/07 Ruling, at 14)

---

[1]    A copy of Attorney Richardson's June 10, 2002 letter is on file with the Court as Exhibit 10A in support of the defendants' motion for summary judgment. (Docket Entry No. 85) Another copy of the letter is attached as Exhibit A to TWH's Local Rule 56(a)(1) Statement filed contemporaneously with this memorandum.

### B.    The Plaintiff's Third Amended Complaint

On March 22, 2007, the plaintiff, David E. Chardavoyne, filed a Third Amended

Complaint. (Docket Entry No. 125) Subsequently, TWH filed a motion to strike that complaint,

because it continued to assert claims and allegations upon which summary judgment had been

granted. (Docket Entry No. 131)

The Court denied TWH's motion to strike the Third Amended Complaint on September

4, 2007, noting that the allegations would not cause confusion, as the Court would not give a

copy of the complaint to the jury. (Docket Entry No. 142) TWH filed a motion to dismiss, and

to the extent necessary, motion for summary judgment on September 24, 2007. (Docket Entry

No. 143)

### C.    The April 24 Decision

On April 24, 2008, the Court entered a memorandum of decision granting in part and

denying in part TWH's motion to dismiss and to the extent necessary, motion for summary

judgment. (Docket Entry No. 154)

As part of its analysis, the Court again summarized the June 10, 2002 letter from

Attorney Gerald Richardson on behalf of TWH. (4/24/08 Mem. of Decision, at 2-3) It also

repeated its acknowledgment that under the pleadings, Chardavoyne was alleging that he "did

not receive wages for services after June 6, 2003, and payments for his employee benefits ceased

after June 30, 2003." (Id. at 3)

In summarizing its March 5 Ruling, the Court in its April 24 Decision noted as follows:

> In ruling on summary judgment, the Court held that plaintiff
> presented a claim for the jury to decide whether he had suffered a
> termination of his position that lacked proper authority and that did
> not comply with the governing corporate documents.

(4/24/08 Mem. of Decision, at 3)

In rejecting TWH's argument that Chardavoyne's claim that a demand for the return of a company car failed as a matter of law because no provision in the Employment Agreement promised that TWH would not request or demand that the car be returned, the April 24 Decision quoted paragraph 7 of the Employment Agreement and held as follows:

> The Court construes plaintiff's breach of contract claim as asserting that defendant failed to comply with the governing documents when it terminated him and that he is entitled to the wages and benefits. Construing the evidence and facts in favor of plaintiff, a question of fact exists as to whether plaintiff was entitled to the company car if the defendant's attempt to terminate him was improper. Accordingly, the Court will leave plaintiff to his proof that demand for return of the car to New Jersey violated the agreement and that he is entitled to 'payment due for company car-related expenses.'

(4/24/08 Mem. of Decision, at 4)

The April 24 Decision concluded as follows:

> Based on the foregoing, defendant's motion to dismiss and for summary judgment [Doc. #143] is GRANTED in part and DENIED in part. The Court GRANTS summary judgment on plaintiff's claims of breach of the implied covenant of good faith and fair dealing, and on plaintiff's claim of violation of the Connecticut Wage Act based on non-payment of the RWE AG stock. Plaintiff's motion for attorney's fees and costs [Doc. #147] is DENIED.

(4/24/08 Mem. of Decision, at 8)

## II.    THE PLAINTIFF'S CLAIMS IN THE FOURTH AMENDED COMPLAINT

On June 5, 2008, Chardavoyne filed a Fourth Amended Complaint. (Docket Entry No. 157) It contains two counts. By the first count, he alleges the breach of an Employment Agreement that he entered into with TWH. In the second count, Chardavoyne alleges a violation of Conn. Gen. Stat. § 31-72, the Connecticut Wage Act.

More specifically, in paragraph 18 of the Fourth Amended Complaint, Chardavoyne alleges that he "has consistently and repeatedly advised Thames Water Holdings that the Letter [provided to him on May 29, 2002] is not a notice of termination as required by Section 11.1 of the Employment Agreement, and of the reasons therefor."

In paragraph 19 of the Fourth Amended Complaint, Chardavoyne alleges that he "also advised Thames Water Holdings and Thames Water North America, by letter dated July 12, 2002, that the Letter and Draft Separation Agreement [provided to him on May 29, 2002] were ineffective as notice of termination because these documents did not comply with the requirements of the Employment Agreement and had not been authorized." In paragraph 21 of the Fourth Amended Complaint, Chardavoyne alleges that TWH "has taken the position that the Letter and Draft Separation Agreement [provided to him on May 29, 2002] were notice of termination under Section 11.1 of the Employment Agreement."

In paragraph 22, Chardavoyne alleges that TWH did not pay him wages after June 6, 2003. (Fourth Am. Compl. ¶ 22) Chardavoyne repeats his allegation that TWH has not paid him wages since June 6, 2003 in paragraphs 29c, 32 and 33 of the Fourth Amended Complaint.

In paragraph 23b of the Fourth Amended Complaint, Chardavoyne alleges that since his May 29, 2002 meeting with James McGivern and Matthew Huckin, TWH has "fail[ed] and continu[ed] to refuse to provide 'written notice' of termination as required by the Employment Agreement and Section 11.1 therein."

In paragraph 24, Chardavoyne alleges that "[a]lthough ... employees of the Thames Water enterprise have been advised of Thames Water Holdings' legal obligations, Thames Water Holdings has refused to comply with those obligations, ...."

In paragraph 29d of the Fourth Amended Complaint, Chardavoyne alleges that TWH breached the Employment Agreement because:

> Defendant owes and has not paid Chardavoyne all payments due for company car-related expenses pursuant to Section 7 of the Employment Agreement. Defendant also demanded in violation of the Employment Agreement that Chardavoyne deliver the company car to New Jersey. The company car has now been retrieved by Defendant and returned to it.

(Fourth Am. Compl. ¶ 29d)

## III.    THE TERMS OF THE EMPLOYMENT AGREEMENT

TWH and Chardavoyne entered into an Employment Agreement on or about January 15, 1999. (Fourth Am. Compl., Ex. A, Employment Agreement, at 1) During his employment with TWH, Chardavoyne was to perform such duties "in relation to the business of the Parent Company as may from time to time be vested in or assigned to him by his Line Manager" and he was required to "in all respects comply with the reasonable directions given by or under the authority of his Line Manager." (Id. at 2, ¶ 2.4) James McGivern was identified in the Employment Agreement as Chardavoyne's "Line Manager." (Id. at 1, ¶ 1.1) Under the agreement, Chardavoyne was required to, "without further remuneration," carry out duties on behalf of any other Group Company for as long as required by the Chief Executive. (Id. at 2, ¶ 2.5) William Alexander was identified as the Chief Executive under the Employment Agreement. (Id. at 1, ¶ 1.1)

As part of the Employment Agreement, TWH reserved the right "to change, modify or cancel at its sole discretion from time to time any or all of [the] benefits [promised to Chardavoyne]." (Id. at 3, ¶ 5.4) TWH promised, "during the term of th[e] Agreement," to provide Chardavoyne "with a car for his use in the business of the Company or any Group Company...." (Id. at 3, ¶ 7)

8

The Employment Agreement also identified Chardavoyne's duties upon his termination. (Id. at 5-6, ¶ 13)  Among other obligations, upon his termination, Chardavoyne was required to "immediately return to the Company in good condition any car provided to him pursuant to Clause 8 … and any other communication or computing equipment and peripheral devices belonging to the Company."  (Employment Agreement at 6, ¶ 13.3)

TWH filed an Answer, Affirmative Defenses and Counterclaims to the Fourth Amended Complaint on July 2, 2008.  (Docket Entry No. 160)  This motion followed.

## STANDARD OF REVIEW

### I.    MOTION FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."

"The 'standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of Rule 12(b)(6) motion for failure to state a claim.'" The Patterson Collection v. Sullivan, 2008 U.S. Dist. LEXIS 24301, at *3 (D.Conn. Mar. 26, 2008) (Eginton, J.) (quoting Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001)).  Thus, the "Court must 'assess the legal feasibility of the complaint,' rather than 'assay the weight of the evidence which might be offered in support thereof.'" Patterson Collection, supra, at *3 (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)).

On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff.  See Bernardo v. George Weston Bakeries Distribution, Inc., 2007 U.S. Dist. LEXIS 39158, at *3-4 (D.Conn. May 30, 2007) (Eginton, J.).  "Generally 'conclusory allegations or legal conclusions

masquerading as factual conclusions will not suffice to prevent a motion to dismiss.'" Hanig v.
Yorktown Cent. Sch. Dist., 384 F.Supp.2d 710, 721 (S.D.N.Y. 2005).

In assessing the legal sufficiency of a claim, the court may consider those facts alleged in
the complaint, documents attached as an exhibit thereto or incorporated by reference, and
documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by
reference. Id. (citing cases). See id. ("the Court can consider documents referenced in the
Complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and
relied on in bringing their suit.").

The Supreme Court revised the standard for a Rule 12(b)(6) motion in Bell Atlantic Corp.
v. Twombly, 127 S.Ct. 1955, 1974 (2007). Twombly held that the "famous" no-set-of-facts
formulation "has earned its retirement," and instead dismissed the plaintiff's antitrust-conspiracy
complaint because it did not contain facts sufficient to "state a claim to relief that is plausible on
its face." Id.

The Second Circuit in Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007), pet. for cert. granted,
76 U.S.L.W. 3654 (U.S. June 16, 2008), closely analyzed the text of Twombly and determined
that it:

> is not requiring a universal standard of heightened fact pleading,
> but is instead requiring a flexible 'plausibility standard,' which
> obliges a pleader to amplify a claim with some factual allegations
> in those contexts where such amplification is needed to render the
> claim *plausible*.

490 F.3d at 157-58 (emphasis added).

## II.    MOTION FOR SUMMARY JUDGMENT

Under Rule 12(d) of the Federal Rules of Civil Procedure, if matters outside the
pleadings are considered by the Court, a Rule 12(c) motion is to be treated as a motion for

summary judgment. In the instant case, the Rule 12(c) motion should be granted on the pleadings. However, if the Court believes it to be necessary, it may analyze the motion under Fed. R. Civ. P. 56.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court examined the standard for summary judgment under Rule 56. It recognized that the "plain language of Rule 56(c) **mandates** the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." <u>Id.</u> at 322-23 (emphasis added). The moving party only bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. <u>Id.</u> at 323.[2] There is, however, no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. <u>Celotex</u>, 477 U.S. at 323.

In <u>Scott v. Harris</u>, 127 S.Ct. 1769 (2007), the Supreme Court again addressed the standard for analyzing a motion for summary judgment. In particular, it recognized that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for

---

[2]     Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." <u>Nora Beverages, Inc. v. Perrier Group of Am., Inc.</u>, 164 F.3d 736, 742 (2d Cir. 1998).

purposes of ruling on a motion for summary judgment." Id. at 1776.  Accordingly, the moving

party is entitled to summary judgment when the non-moving party has failed to make a sufficient

showing on an essential element of his case with respect to which he has the burden of proof.

Celotex, 477 U.S. at 323.

## ARGUMENT

**I.    THE PLAINTIFF'S CLAIM FOR BREACH OF CONTRACT BASED ON AN ALLEGED LACK OF AUTHORITY FAILS AS A MATTER OF LAW UNDER FUNDAMENTAL PRINCIPLES OF CONTRACT LAW**

The application of fundamental principles of contract law to the undisputed facts

demonstrates that Chardavoyne's lack of authority theory fails as a matter of law.

Under Pennsylvania law, in order to establish a claim for breach of contract, a party must

demonstrate:  (1) the existence of a contract, including its essential term; (2) a breach of a duty

imposed by the contract; and (3) resultant damages.  Corestates Bank, N.A. v. Cutillo, 723 A.2d

1053, 1058 (Pa. Super. 1999); Kalina v. Donato, 1998 Pa. Dist. & Cnty. Dec. LEXIS 39, at *5-6

(Pa. Com. Pl. Apr. 3, 1998), aff'd 734 A.2d 444 (Pa. Super. 1998).  See In re K-Dur Antitrust

Litig., 338 F.Supp.2d 517, 548-49 (D.N.J. 2004) (applying Pennsylvania law); Gundlach v.

Reinstein, 924 F.Supp. 684, 688 (E.D.Pa. 1996), aff'd, 114 F.3d 1172 (3d Cir. 1997).[3]

Indeed, as the Court's March 5 Ruling recognized, a claim for breach of contract fails, as

a matter of law, if a plaintiff cannot identify the term in the contract which has allegedly been

breached.  (3/5/07 Ruling, at 10-11)  Moreover, as the March 5 Ruling acknowledged, a claim

for breach of contract fails as a matter of law when a plaintiff cannot identify how he has been

damaged by the alleged breach.  (Id.)

---

[3]/    Under paragraph 24 of the Employment Agreement, Pennsylvania law governs the interpretation of the agreement.  (3/5/07 Ruling, at 6)

In the instant case, Chardavoyne has not identified any term in the Employment

Agreement which incorporates TWH's bylaws or any other governing documents, let alone a

term that promises that the termination of Chardavoyne's employment will be carried out in

compliance with TWH's bylaws or any other governing documents. Thus, even assuming for the

sake of argument that Chardavoyne's termination was not carried out in compliance with TWH's

bylaws or governing documents, that act did not breach any contractual duty owed to

Chardavoyne under the terms of the Employment Agreement.

Furthermore, even assuming a breach of the terms of the Employment Agreement,

Chardavoyne cannot establish any damages. Specifically, even assuming that TWH's bylaws or

documents governing the management of TWH were not complied with, that noncompliance

would not damage Chardavoyne.

Consequently, Chardavoyne's breach of contract claim based upon a lack of authority

theory, fails as a matter of law. Accordingly, the Court should enter judgment in favor of TWH

on Chardavoyne's lack of authority theory.

## II.    THE PLAINTIFF'S LACK OF AUTHORITY CLAIM IS WITHOUT MERIT AND IS CONTRARY TO FUNDAMENTAL PRINCIPLES OF CORPORATE AND AGENCY LAW

The application of fundamental principles of corporate and agency law further

demonstrates that Chardavoyne's lack of authority theory fails as a matter of law. In particular,

Fletcher Cyclopedia Of The Law Of Private Corporations recognizes that:

> As a general rule, if a corporation does not raise the objection that
> an officer or other person entering into a contract or doing any
> other act on its behalf is not authorized to do so, the objection
> cannot be raised by third persons, particularly if the corporation has
> ratified the act.
>
> As already stated, the general rule is that only the shareholders, or
> the shareholders and the corporation, can question the validity of a

> corporate act or instrument on the ground that the required consent
> of shareholders was not obtained or that the consent was not valid
> because not given as provided by a statute, articles of incorporation
> or the bylaws.

2 William Meade Fletcher, Fletcher Cyclopedia Of The Law Of Private Corporations, § 437.70,

at pp. 353-54 (2006 Revised Volume) (footnotes omitted).

This fundamental principle of corporate and agency law, which is recognized in the

leading treatise on the subject, is also supported by extensive case law. Franklin Savings Assoc.

v. Director of the Office of Thrift Supervision, 742 F.Supp. 1089, 1100 (D.Kan. 1990) ("[I]t is

generally recognized that if a corporation does not object to an officer's lack of authority, a third

person may not so object."), rev'd on other grounds, 934 F.2d 1127 (10th Cir. 1991); Farmers

Union Oil Co. v. Maixner, 376 N.W.2d 43, 46 (N.D. 1985) ("As a general rule, if a corporation

does not object to an officer's lack of authority, a third person may not object."); MacKay v.

Lay, 470 P.2d 614, 616 (Colo. App. 1970) ("If an agent exceeds his authority his principal may

complain but a third person may not."); Shoolman v. Wales Mfg. Co., 118 N.E.2d 71, 75 (Mass.

1954) (Third party cannot question whether action was authorized by a corporation); Shawmut

Commercial Paper Co. v. Auerbach, 101 N.E. 1000, 1000 (Mass. 1913) (Although, under the

bylaws, Auerbach "had no right as a matter of law to sign the corporate name," ... "[i]f the

corporation was satisfied to have Auerbach indorse the notes with its name, neither the plaintiff

nor any other third party could raise any question as to his authority."). See L.R. Schmaus Co. v.

Commissioner of Internal Revenue, 406 F.2d 1044, 1045 (7th Cir. 1969) ("As a general rule, if a

corporation does not raise the objection that an officer lacked authority to do an act on behalf of

the corporation, such objection may not be raised by a third person.").

Consequently, in the instant case, Chardavoyne's lack of authority claim fails as a matter

of law. In addition to the Employment Agreement containing no term by which TWH promised

14

Chardavoyne that it would comply with its bylaws or other governing documents in the course of

terminating his employment, under fundamental principles of corporate and agency law,

Chardavoyne cannot, as a matter of law, assert a breach of contract claim against TWH based on

a theory that his termination was carried out without authority.  Accordingly, the Court should

enter judgment in favor of TWH on Chardavoyne's lack of authority theory.

## III.    THE PLAINTIFF LACKS STANDING TO ASSERT A CLAIM FOR AN ALLEGED VIOLATION OF TWH'S BYLAWS OR ANY OTHER GOVERNING DOCUMENTS

Chardavoyne's lack of authority theory further fails as a matter of law because he does

not have the standing to assert such a claim against TWH.

"Standing represents a jurisdictional requirement which remains open to review at all

stages of the litigation." National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994).

Indeed, "Article III standing must be determined as a threshold matter in every federal case."

Mann v. GTCR Golder Rauner, L.L.C., 483 F.Supp.2d 884, 893 (D. Ariz. 2007).

At its core, the standing doctrine determines whether a litigant is entitled to have the

Court decided the merits of the dispute or of particular issues.  Id.  "There are two components to

standing - one 'rooted in the Constitution's case-or-controversy requirement,' and the other 'a

prudential component, which embraces judicially self-imposed restraints on federal

jurisdiction.'"  Id. (citation omitted).  "A litigant must satisfy both [components] to seek redress

in federal court."  Id. at 893-94 (citation and internal quotation marks omitted).

With regard to the first component, the "irreducible constitutional minimum of standing

contains three elements:  (1) there must be an 'injury in fact,' -- an invasion of a legally protected

interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or

hypothetical; (2) there must be a causal connection between the injury and the conduct

15

complained of; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Fort Washington Teachers Assoc. v. Board of Educ.</u>, 478 F.3d 494, 498 (2d Cir. 2007) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)) (internal quotation marks omitted).

With regard to the second component of standing, "[p]rudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in representative branches, and the requirement that a plaintiff's complaint fall within the zone of interest protected by the law invoked." <u>Mann</u>, 483 F.Supp.2d at 894 (citation omitted).

"Courts generally refuse to recognize standing based on economic harm that is merely a consequence of an injury suffered by another party. For example, corporate shareholders, officers, and employees cannot pursue personal claims that are based on alleged misconduct towards the corporation unless they are able to show some 'direct' harm to themselves." <u>Duran v. City of Corpus Christi</u>, 240 Fed. Appx. 639, 641-42 (5th Cir. 2007). <u>See id.</u> at 642 n.9 (citing cases). In particular, corporate officers, shareholders or employees do not have standing to bring claims which are derivative of a corporation's claims. <u>See Duran</u>, 240 Fed. Appx. at 641-42, 642 n.9 (citing cases); <u>Kuhn v. Kehrwald</u>, 2006 U.S. Dist. LEXIS 85653, at *4-5 (E.D. Wis. Nov. 22, 2006). For a plaintiff to have standing, he must allege injuries separate from and not derivative of the injuries allegedly suffered by the corporation. <u>See Kuhn</u>, <u>supra</u>, at *4-5.

In the instant case, Chardavoyne does not have standing to assert his lack of authority claim against TWH, a corporation. Any claim for noncompliance with TWH's bylaws or governing documents would be a claim that belongs exclusively to TWH. For any other entity or person to assert such a claim on behalf of TWH, the claim, if viable at all, would have to be

16

asserted as a shareholders' derivative action, an action Chardavoyne has not and cannot maintain.

Moreover, under the law governing shareholders' derivative actions, Chardavoyne's lack of authority claim fails as a matter of law and should be dismissed. In Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031 (Del. 2004), the Delaware Supreme Court defined the standard for determining whether a claim is direct or derivative. Under Tooley, "the proper analysis" for distinguishing between direct and derivative claims requires a court to examine "the nature of the wrong and to whom the relief should go." Id. at 1039. More specifically, Tooley held that the issue of "whether the complaint alleges a direct or derivative claim ... must turn solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" Id. at 1033.

In analyzing the first prong, the Tooley court found it helpful to "[l]ook[] at the body of the complaint and consider[] the nature of the wrong alleged and the relief requested[.]" Id. at 1036. From there, the question becomes whether "the plaintiff [has] demonstrated that he or she can prevail without showing any injury to the corporation[.]" Id. "The second prong of the analysis should logically follow." Stated somewhat differently, the Delaware Supreme Court in Tooley stressed that "[t]he stockholder's claimed direct injury must be independent of any alleged injury to the corporation." Id. at 1039. "The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing any injury to the corporation." Id.

Under the Tooley test, the management of the affairs of a corporation is a "duty ... owed to the corporation and not separately or independently to the stockholders." Dieterich v. Harrer,

857 A.2d 1017, 1027 (Del. Ch. 2004). Moreover, any monetary recovery for the breach of the duty to manage the affairs of a corporation "would properly belong to the corporation, rather than to the stockholders personally." Id. at 1028. See Katz v. Halperin, 1996 Del. Ch. LEXIS 13, at *12-15 (Del. Ch. Feb. 5, 1996) (corporate mismanagement claim is derivative in nature).

In this case, Chardavoyne does not have standing to assert a breach of contract claim against TWH based on a theory that his termination was carried out without authorization, because it was not in compliance with TWH's bylaws or governing documents. Chardavoyne's lack of authority claim fails as a matter of law because such a claim, if viable at all, could only be maintained by TWH. Under the circumstances, any alleged injury would have been suffered by TWH. At a minimum, any alleged injury to Chardavoyne resulting from the noncompliance with TWH's governing documents would not be independent of the injury suffered by TWH. Thus, if anything, any action asserted by any entity other than TWH, would be a derivative action. Chardavoyne has not and cannot assert a derivative action.

Thus, Chardavoyne does not have the standing to assert his lack of authority theory. Accordingly, the Court should enter judgment in favor of TWH on Chardavoyne's lack of authority theory.

## IV.  THE PLAINTIFF'S LACK OF AUTHORITY CLAIM FAILS AS A MATTER OF LAW UNDER THE DOCTRINE OF IMPLIED RATIFICATION AND/OR THE DOCTRINE OF RATIFICATION BY ACQUIESENCE

The application of fundamental principles of agency law to the undisputed facts further confirms that Chardavoyne's lack of authority claim fails as a matter of law and should be dismissed. Specifically, a review of the pleadings and undisputed facts confirms that Chardavoyne's lack of authority theory is barred by TWH's implied ratification and/or ratification by acquiescence of Chardavoyne's termination, as a matter of law.

18

"'If a corporate officer ... performs an act ... without being authorized so to do, but which could have been authorized in the first instance ... such ... transaction may nevertheless become binding on the company if ratified expressly or by implication.'" Bradbury v. PTN Publishing Co., Inc., 1998 U.S. Dist. LEXIS 10185, at *10 (E.D.N.Y. July 8, 1998) (quoting Hannigan v. Italo Petroleum Corp. of Am., 47 A.2d 169, 171 (Del. 1945)) (internal quotation marks omitted).

"Ratification is a concept deriving from the law of agency which contemplates the *ex post* conferring upon or confirming of the legal authority of an agent in circumstances in which the agent had no authority or arguably had no authority." Bradbury, supra, at *10 (citation and internal quotation marks omitted). "One way of conceptualizing [its] effect is that it provides, after the fact, the grant of authority that may have been wanting at the time of the agent's act." Id. (citations and internal quotation marks omitted). For example, a corporation's maintaining a lawsuit based upon the actions of an agent, which were allegedly not authorized, constitutes an implied ratification of the agent's acts. Anderson v. Scott, 47 A. 607, 608 (N.H. 1900).

Section 82 of the RESTATEMENT (SECOND) OF AGENCY defines ratification as follows:

> Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.

RESTATEMENT (SECOND) OF AGENCY § 82. "An affirmance of an unauthorized transaction can be inferred from a failure to repudiate it." RESTATEMENT (SECOND) OF AGENCY § 94. "Silence under such circumstances that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent, is evidence from which assent can be inferred." Id. § 94, cmt. a.

19

Similarly, § 98 of the RESTATEMENT (SECOND) OF AGENCY recognizes that "[t]he receipt by a purported principal, with knowledge of the facts, of something to which he would not be entitled unless an act purported to be done for him were affirmed, and to which he makes no claim except through such act, constitutes an affirmance unless at the time of such receipt he repudiates the act."

With regard to ratification based upon the commencement of a lawsuit or defense of a lawsuit, § 97 of the RESTATEMENT (SECOND) OF AGENCY provides as follows:

> There is affirmance if the purported principal, with knowledge of the facts, in an action in which the third person or the purported agent is an adverse party:
>
>> (a) brings suit to enforce promises which were part of the unauthorized transaction or to secure interests which were the fruit of such transaction and to which he would be entitled only if the act had been authorized; or
>>
>> (b) bases a defense upon the unauthorized transaction as though it were authorized; or
>>
>> (c) continues to maintain such suit or base such defense.

RESTATEMENT (SECOND) OF AGENCY, § 97.

In this case, a review of the pleadings and undisputed facts confirms that Chardavoyne's lack of authority theory is barred by TWH's implied ratification and/or ratification by acquiescence of Chardavoyne's termination, as a matter of law. In particular, as the April 24 Decision and March 5 Ruling acknowledge, (4/24/08 Mem. of Decision, at 3; 3/5/07 Ruling, at 5), TWH stopped paying Chardavoyne's salary after June 6, 2003 and did not pay for his benefits after June 30, 2003. (4/24/08 Mem. of Decision at 3; 3/5/07 Ruling, at 5) In other words, after Chardavoyne received notice of his termination and one year of salary, between May 29, 2002

and May 29, 2003, TWH stopped paying his salary and stopped paying for his medical benefits. (Fourth Am. Compl. ¶ 22; Third Am. Compl. ¶¶ 23-24) This constituted a ratification of Chardavoyne's termination by TWH, as a matter of law. This ratification was repeated on each date that Chardavoyne was due a paycheck. For example, if he was paid on a weekly basis, the ratification of his termination occurred every week after June 6, 2003. Similarly, on each date after June 30, 2003, that his medical benefits should have been renewed or paid for by TWH, if Chardavoyne had been employed by TWH, TWH repeatedly re-ratified the termination of his employment by not paying for Chardavoyne's benefits. Moreover, by not paying Chardavoyne's salary and benefits TWH received or retained the benefit of the monies it did not pay.

The ratification of the termination of a director and officer by a corporation occurs, as a matter of law, when that corporation refuses to recognize the plaintiff as an officer or director and refuses to pay him his salary and benefits.[4] Thus, TWH's ratification of the termination of Chardavoyne's employment occurred when it did not pay Chardavoyne's salary after June 6, 2003 or pay his benefits after June 30, 2003.

TWH also ratified the termination of Chardavoyne's employment by demanding the return of the company car after May 29, 2002 and again after May 29, 2003 and by refusing to pay car-related expenses. As the Court recognized in the April 24 Decision, under paragraph 7 of the Employment Agreement, if Chardavoyne was employed by TWH, he was entitled to the use of a company car. (4/24/08 Mem. of Decision, at 4; see Fourth Am. Compl. ¶¶ 12, 29d;

---

[4]    As noted above, in paragraph 21 of the Fourth Amended Complaint, Chardavoyne concedes that TWH "has taken the position that the Letter and Draft Separation Agreement [provided to him on May 29, 2002] were notice of termination under Section 11.1 of the Employment Agreement." In paragraph 24, Chardavoyne alleges that "[a]lthough ... employees of the Thames Water enterprise have been advised of Thames Water Holdings' legal obligations, Thames Water Holdings has refused to comply with those obligations, ...."

Third Am. Compl. ¶¶ 13, 32d)  By demanding the return of the car and by not paying car-related expenses, TWH ratified the termination of Chardavoyne's employment, as a matter of law.

TWH's defense of this lawsuit and its assertion of counterclaims against Chardavoyne further establish its implied ratification and/or ratification by acquiescence, as a matter of law. See RESTATEMENT (SECOND) OF AGENCY, § 97; Anderson, 47 A. at 608.  More specifically, in response to Chardavoyne's filing of this lawsuit on January 8, 2003, (Docket Entry No. 1), TWH did not capitulate and provide Chardavoyne with the relief that he was demanding.  To the contrary, TWH defended against Chardavoyne's lawsuit and denied any wrongdoing.[5]  Thus, TWH ratified the termination of Chardavoyne's employment by implication and/or by acquiescence.  See West Salem Land Co. v. Montgomery Land Co., 15 S.E. 524, 525 (Va. 1892) ("Ratification may also be presumed from a failure to exercise promptly the right of disaffirmance.").  See also RESTATEMENT (SECOND) OF AGENCY § 94; id. § 94, cmt. A; id. § 98.

Indeed, in addition to defending against Chardavoyne's claims, TWH has asserted counterclaims against Chardavoyne by which it maintains that he should have returned the company car to TWH after May 29, 2003. (Docket Entry Nos. 60, 62, 74, 120, 160)  More specifically, by its counterclaims, TWH maintains that by refusing to return the company car on May 29, 2003, Chardavoyne committed conversion, statutory theft and breach of contract. (Docket Entry No. 160)  TWH's initial counterclaims were filed on November 22, 2004, (Docket Entry No. 60)  In them, TWH maintained that Chardavoyne's refusal to return the car, which he still had possession of at the time, constituted replevin and conversion.  (Id.)  In particular, at

---

[5]/      Moreover, as noted above, even though this lawsuit was pending, as of January 8, 2003, TWH stopped paying Chardavoyne after June 6, 2003, did not pay for his medical benefits after June 30, 2003 and asked for the return of the car after May 29, 2002 and after May 29, 2003.

paragraph 13 of its November 22, 2004 counterclaims, TWH maintained that "[e]ffective May

29, 2003, Mr. Chardavoyne's employment was properly terminated pursuant to the terms of the

[Employment] Agreement." (Id.)[6] In paragraph 19 of those counterclaims, TWH maintained

that "Chardavoyne was contractually obligated under Paragraph 13.3 of the [Employment]

Agreement to return the car on May 29, 2003." (Docket Entry No. 60) In paragraph 20 of its

November 22, 2004 counterclaims, TWH maintained that "[o]n May 28, 2003, and on several

occasions since, TWH[] ha[d] demanded that Mr. Chardavoyne return the car." (Id.) TWH's

counterclaims further establish the ratification of the termination of Chardavoyne's employment

by TWH, by implication and/or by acquiescence, as a matter of law.[7]

    Moreover, as the Court recognized in both its April 24 Decision and March 5 Ruling,

TWH in the June 10, 2002 letter from its attorney, Gerald Richardson, demanded that

Chardavoyne "stay away from [TWH's] premises" and required "him to remove his personal

belongings from the Company's premises and to return all of the company's property in its

possession or under his control." (4/24/08 Mem. of Decision, at 3; 3/5/07 Ruling, at 4-5) This

---

[6]/    Indeed, in paragraph 21 of the Fourth Amended Complaint, Chardavoyne concedes that TWH "has taken the position that the Letter and Draft Separation Agreement [provided to him on May 29, 2002] were notice of termination under Section 11.1 of the Employment Agreement."

[7]/    The pleadings also confirm that Chardavoyne has alleged that TWH was aware of his claims regarding his termination. In particular, Chardavoyne filed this lawsuit against TWH on January 8, 2003. In paragraph 19 of the Fourth Amended Complaint, Chardavoyne alleges that he advised TWH via a July 12, 2002 letter "that the Letter and Draft Separation Agreement [provided to him on May 29, 2002] were ineffective as notice of termination because these documents did not comply with the requirements of the Employment Agreement and had not been authorized." In paragraph 21, Chardavoyne concedes that TWH "has taken the position that the Letter and Draft Separation Agreement were notice of termination under Section 11.1 of the Employment Agreement." In paragraph 24 of the Fourth Amended Complaint, Chardavoyne alleges that "[a]lthough ... employees of the Thames Water enterprise have been advised of Thames Water Holdings' legal obligations, Thames Water Holdings has refused to comply with those obligations, ...."

letter, quoted by the Court, further establishes that no reasonable jury could find that TWH had not ratified Chardavoyne's termination. Indeed, the ratification occurred as a matter of law, before TWH stopped paying Chardavoyne's salary and benefits.

Chardavoyne's deposition testimony further confirms that TWH ratified the termination of his employment (effective May 29, 2003) on or about May 29, 2002. In his deposition, Chardavoyne confirmed that after the May 29, 2002 meeting with McGivern and Huckin, he did not return to TWH's office because he knew that the locks had been changed so he could not get into TWH's office. (Pl.'s Depo. Tr. at 108-09) Moreover, on June 10, 2002, Chardavoyne mailed Huckin two credit cards and a telephone card that had been provided as part of his employment. (Pl.'s 6/10/02 Letter; Pl.'s Depo. Tr. at 115) Chardavoyne returned the cards because the company wanted them back. (Pl.'s Depo. Tr. at 115-16) In his deposition, Chardavoyne further confirmed that the company told him more than once to return the company car he was provided under the Employment Agreement. (Id. at 116, 157)[8] The ratification of the termination of a director and officer by a corporation occurs, as a matter of law, when that corporation refuses to recognize the plaintiff as an officer or director, refuses to pay him his salary and benefits, relieves him of his duties, bars him from the corporate offices, changes the locks on the office and demands the returns of corporate credit cards and a company car.

In sum, under the undisputed facts, no reasonable jury could find that TWH did not ratify the termination of Chardavoyne's employment. Thus, Chardavoyne's lack of authority claim

---

[8]     Excerpts from Chardavoyne's deposition transcript are on file with the Court as Exhibit 7 in support of the defendant's summary judgment motion. (Docket Entry No. 85) Additional copies of the pages from the transcript cited above are attached collectively as Exhibit C to TWH's Local Rule 56(a)(1) Statement. A copy of Chardavoyne's June 10, 2002 letter is on file with the Court as Exhibit 9 in support of the defendant's summary judgment motion. (Id.) Another copy of the letter is attached as Exhibit B to TWH's Local Rule 56(a)(1) Statement filed contemporaneously with this memorandum.

fails as a matter of law. Accordingly, the Court should enter judgment in favor of TWH on that claim.

## V.    THE PLAINTIFF'S LACK OF AUTHORITY CLAIM FAILS BECAUSE A CORPORATION CANNOT BE LIABLE FOR UNAUTHORIZED ACTS

Even assuming for the sake of argument that Chardavoyne could somehow prove that his termination was not authorized, his lack of authority claim fails as a matter of law. Simply stated, a corporation, such as TWH, is not liable for actions it does not authorize. Accord Langer v. Superior Steel Corp., 178 A. 490, 491-93 (Pa. 1935). This is particularly true when a plaintiff is aware of the alleged lack of authority.

In the instant case, a review of the Fourth Amended Complaint confirms that Chardavoyne maintains that prior to May 29, 2003, he repeatedly informed TWH of his position that his termination was conducted without authorization. For example, in paragraph 19 of the Fourth Amended Complaint, Chardavoyne alleges that he advised TWH by a letter dated July 12, 2002 "that the Letter and Draft Separation Agreement [provided to him on May 29, 2002] were ineffective as notice of termination because these documents did not comply with the requirements of the Employment Agreement and had not been authorized."

Accordingly, under fundamental principles of corporate law, even assuming that Chardavoyne can establish that the termination of his employment was not authorized, that proof would require the dismissal of Chardavoyne's claim against TWH, because a corporation cannot be liable for conduct which is not authorized.

## VI.    THE DISMISSAL OF THE LACK OF AUTHORITY THEORY SHOULD RESULT IN THE DISMISSAL OF OTHER CLAIMS BY THE PLAINTIFF

With the dismissal of Chardavoyne's lack of authority claim, the two remaining breach of contract theories asserted in the Fourth Amended Complaint are: (1) TWH allegedly breached

the Employment Agreement by failing to provide Chardavoyne with 872 shares of RWE AG stock and (2) TWH allegedly breached the Employment Agreement by its demanding that Chardavoyne return the company car to New Jersey and by its not paying Chardavoyne company car-related expenses.

With regard to the second remaining theory, the Court in its April 24 Decision noted that that theory was dependent upon Chardavoyne establishing that TWH's "attempt to terminate him was improper." (4/24/08 Mem. of Decision, at 4) With the dismissal of Chardavoyne's lack of authority theory, there is no remaining claim by Chardavoyne that his termination was improper. As such, Chardavoyne's company car theory should fail as a matter of law under the Court's reasoning in its April 24 Decision. Consequently, with the dismissal of Chardavoyne's lack of authority theory, TWH respectfully submits that the Court should reconsider the viability of Chardavoyne's company car theory and on reconsideration, enter a judgment in favor of TWH on that theory.

With the dismissal of the lack of authority and the company car theories, Count II of the Fourth Amended Complaint, which asserts a claim under Connecticut's Wage Act, should also be dismissed. Specifically, with the dismissal of those two theories, the only remaining breach of contract claim is Chardavoyne's claim that the Employment Agreement was breached by TWH's failure to provide him with 872 shares of RWE AG stock. In its April 24 Decision, the Court held that the Wage Act does not apply to that claim. (4/24/08 Mem. of Decision, at 6-7)

Accordingly, with the dismissal of Chardavoyne's lack of authority theory and company car theory, the only remaining claim from the Fourth Amended Complaint is Chardavoyne's claim that the Employment Agreement was breached by TWH's failure to provide him with 872 shares of RWE AG stock.

Finally, to the extent necessary, TWH gives notice to the plaintiff that if the Court does not grant TWH's Rule 12(c) motion, TWH's Rule 50(a) motion for judgment as a matter of law/motion for directed verdict, among other grounds, will rely upon the arguments set forth in this memorandum of law submitted in support of TWH's Rule 12(c) motion.

## CONCLUSION

For the foregoing reasons, the Court should grant TWH's motion in the manner set forth above.

Respectfully submitted,

**THE DEFENDANT
THAMES WATER HOLDINGS,
INCORPORATED**


By: _____
Stephen P. Fogerty
CT Fed. Bar No. 01398
**HALLORAN & SAGE LLP**
315 Post Road West,
Westport, CT 06880
Tele: (203) 227-2855
Fax: (203) 227-6992
E-mail: Fogerty@halloran-sage.com

and

Ralph W. Johnson III
CT Fed. Bar No. 15277
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tele: (860) 522-6103
Fax: (860) 548-0006
E-mail: Johnsonr@halloran-sage.com

Its Attorneys

28

## CERTIFICATION

This is to certify that on this 16th day of July, 2008, a copy of the foregoing was caused to be served via U.S. mail, postpaid to:

Patrick McHugh, Esq.
William M. Tong, Esq.
Richard Gora, Esq.
Finn Dixon & Herling LLP
177 Broad Street, 15th Floor
Stamford, CT 06901-2048

The Honorable Warren W. Eginton
c/o Chambers
United States District Court
  for the District of Connecticut
915 Lafayette Boulevard
Bridgeport, CT 06604
*(Courtesy Copy, Via Hand Delivery)*

_____
Ralph W. Johnson III

1206288_1.DOC

29